**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

In re:                                          Chapter 11

**AVENTURA HOTEL PROPERTIES, LLC,**            **Case No. 21-12374-BKC-RAM**
**TRIPTYCH MIAMI HOLDINGS, LLC,**             **Case No. 21-12375-BKC-RAM**

      **Debtor.**                              **Jointly Administered Under**
_____/           **Case No. 21-12374-BKC-RAM**

**DISCLOSURE STATEMENT IN SUPPORT OF FIRST AMENDED CHAPTER 11 PLAN**
**OF LIQUIDATION PROPOSED BY AVENTURA**
**HOTEL PROPERTIES, LLC**

**GENOVESE JOBLOVE & BATTISTA, P.A**.
Jesus M. Suarez
Fla. Bar No. 60086
jsuarez@gjb-law.com
John H. Genovese
Fla. Bar No. 280852
jgenovese@gjb-law.com
Barry P. Gruher
Fla. Bar No. 960993
bgruher@gjb-law.com
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

*Counsel for Debtor-in-Possession*
*Aventura Hotel Properties, LLC*

Dated:  August 16, 2021

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IN SUPPORT OF FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION ("DISCLOSURE STATEMENT") IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY AVENTURA HOTEL PROPERTIES, LLC, DATED AUGUST 16, 2021 (THE "AMENDED PLAN" or "PLAN")[1], AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO SOLICITATION OF VOTES TO ACCEPT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE.

**THE PLAN IS SUBJECT TO THE DEBTOR SUCCESSFULLY CONSUMMATING A SALE OF ITS PRINCIPAL ASSET, AN ACRE OF LAND IN MIAMI DADE COUNTY, FLORIDA.  IN ORDER FOR THE DEBTOR TO SUCCESSFULLY CONFIRM THIS PLAN AND COMPLY WITH ITS OBLIGATION TO OBLIGATIONS TO SENIOR LENDER LV MIDTOWN, LLC UNDER THE LV SETTLEMENT AGREEMENT, IT MUST SELL THE PROPERTY FOR AT LEAST $22 MILLION.  IF THE DEBTOR IS UNABLE CLOSE ON SUCH A TRANSACTION, OR OTHERWISE RENEGOTIATE THE TERMS OF ITS AGREEMENT WITH ITS SENIOR LENDER, EITHER PURSUANT TO THE TERMS OF THE SALE APPROVAL ORDER [ECF NO. 106] OR OTHERWISE, THE DEBTOR MAY INSTEAD ELECT TO SEEK DISMISSAL OR CONVERSION OF ITS BANKRUPTCY CASE PURSUANT TO SECTION 1112 OF THE BANKRUPTCY CODE.**

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE AMENDED PLAN *IN THEIR ENTIRETY* BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN THIS DISCLOSURE STATEMENT ("RISK FACTORS IN CONNECTION WITH THE PLAN") BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH DOCUMENTS. ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN.  ALTHOUGH THE DEBTOR BELIEVES AND HAS MADE EVERY EFFORT TO ENSURE THAT THIS SUMMARY PROVIDES ADEQUATE INFORMATION WITH RESPECT TO THE PLAN, IT DOES NOT PURPORT TO BE COMPLETE AND IS QUALIFIED TO THE EXTENT IT DOES NOT SET FORTH THE ENTIRE CONTENT OF THE PLAN.  IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN CONTAINED IN THIS DISCLOSURE

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meaning ascribed to such terms in the Plan.

STATEMENT, THE PLAN SHALL CONTROL.  ACCORDINGLY, EACH HOLDER OF A CLAIM SHOULD REVIEW THE PLAN IN ITS ENTIRETY.

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST OR EQUITY INTEREST IN THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED. THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OF ANY DEBTOR AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTEREST IN SUCH DEBTOR.

AS TO ANY CONTESTED MATTERS OR OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING ANY DEBTOR OR ANY OTHER PARTY, NOR WILL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, ANY DEBTOR AND DEBTOR-IN-POSSESSION IN THE CHAPTER 11 CASES.

NO HOLDER OF A CLAIM SHOULD RELY ON ANY INFORMATION RELATING TO ANY DEBTOR, ITS RESPECTIVE PROPERTY OR THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND (I) THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF, AND (II) THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING THE PLAN.  NO REPRESENTATIONS HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT CONCERNING ANY DEBTOR OR THE PLAN, EXCEPT AS EXPLICITLY SET FORTH IN THE DISCLOSURE STATEMENT. APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT INDICATE THAT THE BANKRUPTCY COURT RECOMMENDS EITHER ACCEPTANCE OR REJECTION OF THE PLAN NOR DOES SUCH APPROVAL CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT OF THE FAIRNESS

OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH ACCOUNTING PRINCIPLES GENERALLY ACCEPTED IN THE UNITED STATES.

ALTHOUGH THE PROFESSIONALS EMPLOYED BY THE DEBTOR HAVE ASSISTED IN PREPARING THIS DISCLOSURE STATEMENT BASED UPON FACTUAL INFORMATION AND ASSUMPTIONS RESPECTING FINANCIAL, BUSINESS, AND ACCOUNTING DATA FOUND IN THE BOOKS AND RECORDS OF THE DEBTOR, THEY HAVE NOT INDEPENDENTLY VERIFIED SUCH INFORMATION AND MAKE NO REPRESENTATIONS AS TO THE ACCURACY THEREOF, INCLUDING SPECIFICALLY IN CONNECTION WITH THE INFORMATION CONTAINED IN THE WATERFALL ANALYSIS ATTACHED TO THIS DISCLOSURE STATEMENT.  THE PROFESSIONALS EMPLOYED BY THE DEBTOR SHALL HAVE NO LIABILITY FOR THE INFORMATION IN THIS DISCLOSURE STATEMENT OR IN THE EXHIBITS ATTACHED HERETO.

THE DEBTOR RESERVES THE RIGHT TO OBJECT TO ANY CLAIM PRIOR TO THE DATE ESTABLISHED BY THE BANKRUPTCY COURT.  ON AND AFTER THE EFFECTIVE DATE OF THE PLAN, THE LIQUIDATING TRUST WILL BE VESTED WITH FULL AUTHORITY TO UNDERTAKE THE CLAIMS OBJECTION PROCESS WITH RESPECT TO ALL CLAIMS THAT HAVE NOT BEEN PREVIOUSLY RESOLVED BY COURT ORDER OR OTHERWISE (INCLUDING, BUT NOT LIMITED TO, GENERAL UNSECURED CLAIMS AND THE SECURED CLAIM OF QR TRIPTYCH).  THE ACTUAL AMOUNTS OF THE DISTRIBUTIONS UNDER THE PLAN TO THE HOLDERS OF ALLOWED GENERAL UNSECURED CLAIMS THAT ARE OBJECTED TO BY THE DEBTOR OR THE LIQUIDATING TRUSTEE, AS THE CASE MAY BE, WILL BE DETERMINED AFTER COMPLETION OF THE CLAIMS OBJECTION PROCESS.

**IRS CIRCULAR 230 NOTICE:**  TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT

OR UPON THE MERITS OF THE PLAN.  NEITHER THIS DISCLOSURE STATEMENT NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995.  SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY.  THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS.

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RESULT FOR ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS.  THE DEBTOR ALSO BELIEVES THAT THE PLAN WILL ENABLE THE DEBTOR TO ACCOMPLISH THE OBJECTIVES OF AN ORDERLY LIQUIDATION UNDER CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS.   THUS, IT IS THE OPINION OF THE DEBTOR THAT THE TREATMENT OF CREDITORS AND EQUITY INTERESTS UNDER THE PLAN CONTEMPLATE A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED CONVERSION OF THE CHAPTER 11 CASE TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.**

**IF YOU ARE ENTITLED TO VOTE TO APPROVE THE PLAN, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THIS DISCLOSURE STATEMENT.  THE DEBTOR STRONGLY URGES CREDITORS TO VOTE TO <u>ACCEPT</u> THE PLAN.**

# TABLE OF CONTENTS

## ARTICLE I

**INTRODUCTION AND OVERVIEW** ...................................................................................1

1.01    General Terms of the Amended Plan .........................................................................1

1.02    Overview of Chapter 11 and the Plan Confirmation Process ....................................2

1.03    Summary of Voting Requirements for Plan Confirmation.........................................3

  (a)    In General.................................................................................................................3

  (b)    Impaired Classes Entitled to Vote ...........................................................................4

  (c)    Unimpaired Classes Deemed to Accept the Plan .....................................................4

  (d)    Voting Deadline .......................................................................................................4

  (e)    Voting Instructions ..................................................................................................4

  (f)    Ballots .....................................................................................................................4

  (g)    Additional Information ............................................................................................4

## ARTICLE II

**THE DEBTOR'S CORPORATE HISTORY** .......................................................................5

2.01    The Debtor's Corporate Structure .............................................................................5

2.02    The Debtor's Business Operations ............................................................................6

2.03    The Debtor's Capital Structure .................................................................................7

  (a)    The Land ..................................................................................................................7

  (b)    Debt Structure .........................................................................................................8

  (c)    Short Term Cash Financing .....................................................................................8

2.04    Events Leading Up to the Chapter 11 Bankruptcy Case ...........................................8

  (a)    The COVID-19 Pandemic ........................................................................................8

  (b)    Pre-Bankruptcy Restructuring Efforts ....................................................................9

2.05    The Bankruptcy Case................................................................................................9

  (a)    Claims Asserted Against Debtor ............................................................................10

  (b)    The QR Triptych Litigation ....................................................................................11

  (c)    The Debtor's Miscellaneous Assets .......................................................................12

  (d)    The LV Settlement Agreement ................................................................................12

  (e)    The Sale Motion and Approved Bidding Procedures...............................................13

## ARTICLE III

**SUMMARY OF THE PLAN** ...............................................................................................17

3.01    Summary...................................................................................................................17

3.02    Provisions for Treatment of Unclassified Claims ....................................................17

(a)   Administrative Claims .................................................................17

(b)   Professional Fee Claims .............................................................18

(c)   Priority Tax Claims ....................................................................18

(d)   Statutory Fees ............................................................................18

(e)   Summary of Treatment of Claims, Equity Interests and Estimated  Recoveries. .......19

(f)   Classification of Claims and Equity Interests Under the Plan ...................22

**ARTICLE IV**

**MEANS OF IMPLEMENTING THE AMENDED PLAN ...............................22**

4.01   The Debtor will Sell the Property ...............................................22

4.02   The Liquidating Trust ................................................................22

(a)   Execution and Implementation ..................................................23

(b)   Liquidating Trust Assets .............................................................23

(c)   Liquidating Trustee ....................................................................23

(d)   Powers of the Liquidating Trustee .............................................24

(e)   Corporate Action ........................................................................26

(f)   Costs and Expenses ....................................................................26

(g)   Compensation of the Liquidating Trustee .................................26

(h)   Retention of Professionals .........................................................26

(i)   Tax Consequences of Liquidating Trust ....................................26

(j)   Duration .....................................................................................27

(k)   Indemnification ..........................................................................27

(l)   Bond............................................................................................28

(m)   Resignation, Death or Removal .................................................28

(n)   Transfer of Assets Free and Clear of all Liens, Claims and Encumbrances...............29

**ARTICLE V**

**PRESERVATION OF CAUSES OF ACTION .........................................29**

5.01   Transfer of Causes of Action .....................................................29

5.02   No Release of Any Claim or Causes of Action..........................29

5.03   Summary and Disclosure of Causes of Action ..........................30

5.04   Summary and Disclosure of Causes of Action ..........................32

**ARTICLE VI**

**PROVISIONS GOVERNING DISTRIBUTIONS.....................................32**

6.01   Manner of Cash Payments Under the Amended Plan .................32

6.02   Entity Making Distribution ........................................................32

6.03   Distribution Dates.......................................................................33

| | | |
|---|---|---|
| 6.04 | Record Date for Distributions | 33 |
| 6.05 | Delivery of Distributions | 33 |
| 6.07 | Compliance with Tax Requirements | 34 |
| 6.08 | No Payments of Fractional Dollars | 34 |
| 6.09 | Interests on Claims | 35 |
| 6.10 | No Distribution in Excess of Allowed Amount of Claims | 35 |
| 6.11 | Setoff and Recoupment | 35 |
| 6.12 | De Minimis Distributions; Charitable Donations | 35 |
| 6.13 | Withholding of Distributions | 36 |
| 6.14 | Distributions in Satisfaction; Allocation | 36 |
| 6.15 | No Distributions on Late-Filed Claims | 36 |

**ARTICLE VII**
**DISPUTED CLAIMS ........................................................................................36**

| | | |
|---|---|---|
| 7.01 | Resolution of Disputed Claims | 36 |
| 7.02 | Objection Deadline | 37 |
| 7.03 | Estimation of Claims | 37 |
| 7.04 | No Distributions Pending Allowance | 37 |

**ARTICLE VIII**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ...... 38**

| | | |
|---|---|---|
| 8.01 | General Treatment: Rejected if not Previously Assumed | 38 |
| 8.02 | Bar to Claims Arising from Rejection, Termination or Expiration | 38 |
| 8.03 | Rejection of Executory Contracts and Unexpired Leases | 38 |
| 8.04 | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 39 |
| 8.05 | Proof of Claim Based on Assumed Executory Contracts or Unexpired Leases | 39 |
| 8.06 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 39 |
| 8.07 | Effect of Confirmation Order | 39 |
| 8.08 | Indemnification and Reimbursement | 39 |

**ARTICLE IX**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ..............................40**

| | | |
|---|---|---|
| 9.01 | Conditions Precedent | 40 |
| 9.02 | Waiver | 40 |

**ARTICLE X**
**EFFECT OF CONFIRMATION; INDEMNIFICATION,**
**INJUNCTIVE AND RELATED PROVISIONS ..............................................41**

| | | |
|---|---|---|
| 10.01 | Compromise and Settlement | 41 |
| 10.02 | Binding Effect | 41 |

10.03    Discharge of Claims ................................................................................41

10.04    Discharge of Debtor ..............................................................................41

10.05    Exculpation ...........................................................................................42

10.06    Limitations on Exculpation ...................................................................42

10.07    Injunction .............................................................................................42

10.08    Release of Liens ....................................................................................43

**ARTICLE XI**

**RETENTION OF JURISDICTION** ....................................................................**43**

**ARTICLE XII**

**RISK FACTORS IN CONNECTION WITH THE AMENDED PLAN**.................**45**

12.01    Business Risk ........................................................................................45

12.02    Bankruptcy Risk ...................................................................................45

12.03    Failure to Close on Sale of Property .....................................................46

12.04    Rejection of Amended Plan ...................................................................46

12.05    No Duty to Update Disclosures .............................................................46

12.06    Representations Outside the Disclosure Statement ................................46

12.07    Tax and Other Related Considerations ..................................................47

**ARTICLE XIII**

**MISCELLANEOUS PROVISIONS** ...................................................................**47**

13.01    Modification of Amended Plan ..............................................................47

13.02    Revocation of Amended Plan ................................................................47

13.03    Binding Effect ......................................................................................47

13.04    Successors and Assigns .........................................................................48

13.05    Governing Law .....................................................................................48

13.06    Reservation of Rights ............................................................................48

13.07    Section 1125(e) Good Faith Compliance ...............................................48

13.08    Further Assurances ...............................................................................48

13.09    Service of Documents ...........................................................................49

13.10    Filing of Additional Documents ............................................................49

13.11    No Stay of Confirmation Order .............................................................49

13.12    Automatic Stay .....................................................................................49

**ARTICLE XIV**

**CONFIRMATION REQUIREMENTS** ..............................................................**50**

14.01    Standard to Confirm a Plan ..................................................................50

(a)    Best Interest Test ..................................................................................50

iv

(b)    Liquidation Analysis ................................................................50

(c)    Feasibility.................................................................................52

(d)    Acceptance by Impaired Class ................................................52

**ARTICLE XV**

**ALTERNATIVES TO THE PLAN** ................................................................**53**

15.01    Liquidation Pursuant to Chapter 7 of the Bankruptcy Code.....................53

15.02    Alternative Plan of Reorganization ........................................53

15.03    Dismissal of the Chapter 11 Case ..........................................54

**ARTICLE XVI**

**CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN** ....................**54**

**ARTICLE XVII CONCLUSION** ................................................................**56**

## EXHIBITS

EXHIBIT A    Liquidating Analysis

---

**THE DEBTOR HEREBY ADOPTS AND INCORPORATES EACH EXHIBIT ATTACHED TO THIS DISCLOSURE STATEMENT BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN.**

---

v

# ARTICLE I
## INTRODUCTION AND OVERVIEW

**1.01    General Terms of the Plan**

Aventura Hotel Properties, LLC (the "Debtor") proposes a *First Amended Chapter 11 Plan of Liquidation* (and including all Plan Documents and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference and are a part of, the "Plan") dated as of August 16, 2021.

**The Amended Plan is subject to the Debtor successfully consummating a sale of its principal asset, an acre of land in Miami Dade County, Florida.  In order for the Debtor to successfully confirm the Amended Plan and comply with its present obligations to senior lender LV Midtown, it must sell the property for at least $22 million.  If the Debtor is unable close on such a transaction, or otherwise renegotiate the terms of its agreement with LV Midtown set forth in the LV Settlement Agreement (as defined below) or otherwise, the Debtor may instead elect to seek dismissal or conversion of its bankruptcy case pursuant to Section 1112 of the Bankruptcy Code.**

This Disclosure Statement and the other documents described herein are being furnished by the Debtor to Creditors in the Debtor's Chapter 11 Case pending before the Bankruptcy Court. This Disclosure Statement is intended to provide adequate information of a kind, and in sufficient detail, to enable the Debtor's Creditors to make an informed judgment about the Plan, including whether to accept or reject such Plan.  This Disclosure Statement sets forth certain information regarding: (i) the Debtor's prepetition operating and financial history; (ii) the Debtor's need to file for relief under chapter 11 of the Bankruptcy Code; (iii) significant events that have occurred during the Debtor's Chapter 11 Case; (iv) the terms of the Plan; (v) the manner in which distributions will be made under the Plan; (vi) certain effects of confirmation of the Plan; (vii) certain risk factors associated with the Plan; and (viii) the confirmation process and the voting procedures that holders of Claims and Equity Interests entitled to vote under the Plan must follow for their votes to be counted.

This Disclosure Statement is subject to the Bankruptcy Court's approval, as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of each of the Classes whose votes are being solicited to make an informed judgment with respect to the Plan.  **THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION WITH RESPECT TO THE MERITS OF THE PLAN.  ALL CREDITORS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE TO ACCEPT OR REJECT THE PLAN**.

The summary of the Plan provided herein is qualified in its entirety by reference to the Plan.  To the extent that the information provided in this Disclosure Statement and the Plan (including any Plan Supplements) conflict, the terms of the Plan (including any Plan Supplements) will control.  Terms not otherwise specifically defined herein will have the meanings attributed to them in the Plan.  Each definition in this Disclosure Statement and in the Plan includes both the

singular and plural. Headings are for convenience or reference and shall not affect the meaning or interpretation of this Disclosure Statement.

On the Effective Dates of the Plan, the Debtor will transfer and vest any and all Assets of the Estate of the Debtor into the Liquidating Trust to be created under the Plan, with such Liquidating Trust under the direction and control of _____ as the Liquidating Trustee therein. The Liquidating Trustee shall have those powers and duties set forth in the Plan, including all of the powers and duties of a chapter 7 trustee or a chapter 11 trustee, including under Sections 704 and 1106 of the Bankruptcy Code.

The Liquidating Trust will be created solely to implement the terms of the Plan. The primary purposes of the Liquidating Trust will be to collect and liquidate the Assets of the Estate, pursue those claims and Causes of Action transferred to, and vested in, the Liquidating Trust and to distribute to the Liquidating Trust Beneficiaries all proceeds from the liquidation of the Assets of the Estate pursuant to the terms of the Plan and in accordance with Treasury Regulation Section 301.7701-4(d). Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided in the Plan otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Assets.

The Plan provides that the Liquidating Trust shall issue beneficial interests in such Liquidating Trust to the Liquidating Trust Beneficiaries. Under the Plan, (i) the Class A Beneficial Interests in the Liquidating Trust will be issued to the Holders of all Allowed Unsecured Claims, and (b) the Class B Beneficial Interests in the Liquidating Trust will be issued to the Holders of the Equity Interests in the Debtor.

The Liquidating Trustee shall make Distributions from the Liquidating Trust in accordance with the Plan to the Liquidating Trust Beneficiaries, in each case on a Pro Rata basis within Class A or Class B as applicable, provided that the Holders of the Class B Beneficial Interests in the Liquidating Trust shall be subordinated in all respects to the Holders of the Class A Beneficial Interests in each such Liquidating Trust. The Liquidating Trustee shall be deemed to have been appointed as the representative of each Estate by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

**1.02    Overview of Chapter 11 and the Amended Plan Confirmation Process**

Chapter 11 of the Bankruptcy Code allows debtors to reorganize or to liquidate and wind up their affairs for the benefit of the debtors and their creditors. Upon the commencement of a chapter 11 case, an estate is created comprised of all the legal and equitable interests of a debtor as of the date the petition is filed, and the current owner(s) and management typically remain in control of the debtor as a debtor-in-possession. The debtor remains in possession of its property without the oversight of a trustee.

Pursuant to section 362 of the Bankruptcy Code, the filing of a chapter 11 petition imposes an automatic stay of all attempts by creditors or third-parties to collect or enforce prepetition claims against a debtor or otherwise interfere with its property or business, unless relief from the automatic stay is obtained from the bankruptcy court.

The Bankruptcy Code is designed to encourage the parties-in-interest in a chapter 11 case to negotiate the terms of a chapter 11 plan so that it may be confirmed. A chapter 11 plan is the vehicle for satisfying or otherwise addressing the claims against and the interests in the debtor. Confirmation of a chapter 11 plan makes it binding on the debtor and all of its creditors and the prior obligations owed by the debtor to such parties are compromised in exchange for the obligations specified in the plan.

After a chapter 11 plan has been filed, the holders of impaired claims against the debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the debtor to file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical, reasonable investor to make an informed judgment about the plan. This Disclosure Statement is presented to holders of Claims against the Debtor entitled to vote under section 1125 of the Bankruptcy Code in connection with the Debtor's solicitation of votes on the Plan.

### 1.03    Summary of Voting Requirements for Amended Plan Confirmation

#### (a)    In General

Creditors should refer only to this Disclosure Statement and the Plan and any Court approved solicitations to determine whether to vote to accept or reject the Plan. Under the Bankruptcy Code, only holders of Claims that are "impaired" are entitled to vote to accept or reject the Plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (1) the plan leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder thereof, or (2) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan, among other things, cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

An impaired class of creditors votes to accept a plan if the holders of at least two-thirds (2/3) in dollar amount, and more than one-half (1/2) in number, of those creditors that actually cast ballots vote to accept such plan. Those classes that are not impaired are not entitled to vote and are deemed to accept a plan. Those classes that are not entitled to a distribution and will not retain property under a plan are deemed to reject a plan.

A class of equity interest holders is deemed to accept a plan if the holders of at least two-thirds (2/3) in amount of those interest holders that actually cast ballots vote to accept such plan. A class of equity interest holders is impaired, not entitled to vote, and deemed to reject the plan if the plan treats such holders by providing that they will retain no property and receive no distributions under the plan.

**Any Claim in an Impaired Class that is subject to a pending objection or is scheduled as unliquidated, disputed or contingent is not entitled to vote unless the holder of such Claim has obtained an order of the Bankruptcy Court temporarily allowing the Claim for the purpose of voting on the Plan.**

Pursuant to the Bankruptcy Code, only creditors who actually vote on the Plan will be counted for purposes of determining whether the required number of acceptances have been obtained for the Plan. Failure to deliver a properly completed ballot by the Voting Deadline (as defined herein) will result in an abstention; consequently, the vote will neither be counted as an acceptance or rejection of the Plan.

**(b) Impaired Classes Entitled to Vote**

The Plan contains 5 Classes. Claims in Classes 2, 3 5 and the Equity Interests in Class 5 are Impaired and therefore are entitled to vote on the Plan.

**(c) Unimpaired Classes Deemed to Accept the Amended Plan**

Claims in Class 1 is Unimpaired, and as such will not be solicited and will be deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

**(d) Voting Deadline**

If a Creditor holds a Claim or Equity Interest classified in a voting Class of Claims or Equity Interests under the Plan, the Creditor's acceptance or rejection of such Plan is important and must be in writing and submitted on time. The record date for determining which Creditors may vote on the Plan is _____ ___, 2021 (the "**Voting Record Date**"). The voting deadline is _____ ___, 2021, at 4:00 p.m. (prevailing Eastern Time) (the "**Voting Deadline**").

**(e) Voting Instructions**

**IN ORDER FOR A VOTE TO BE COUNTED, THE BALLOT MUST BE PROPERLY COMPLETED IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND RETURNED TO THE CLERK OF THE COURT OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA (MIAMI DIVISION) BY THE VOTING DEADLINE AT THE ADDRESS PRINTED ON THE BALLOT.**

**(f) Ballots**

Creditors must use only the Ballot or Ballots sent to them with the notice of this Disclosure Statement. If a Creditor has multiple Claims that it is entitled to vote, it should receive multiple Ballots. **IF A CREDITOR RECEIVES MORE THAN ONE BALLOT, THEN THE CREDITOR SHOULD ASSUME THAT EACH BALLOT IS FOR A SEPARATE CLAIM AND SHOULD COMPLETE AND RETURN ALL OF THEM.**

**(g) Additional Information**

If you have any questions about (i) the procedure for voting on your Claim, (ii) the package of materials that you have received, (iii) the amount of your Claim, (iv) obtaining or replacing a Ballot, or (v) obtaining an additional copy of the Plan, this Disclosure Statement, or any exhibits to such documents, please contact the Debtor's counsel, Genovese Joblove & Battista, P.A., 100

S.E. Second Street, 44th Floor, Miami, FL 33131, Attn: Jesus M. Suarez, telephone: (305) 349-2300, email: jsuarez@gjb-law.com.

## ARTICLE II
## THE DEBTOR'S CORPORATE HISTORY

**2.01    The Debtor's Corporate Structure**

The Debtor is a Florida limited liability company organized on January 9, 2013 and later utilized to acquire, develop, construct and operate a mixed-use project located in the hub of the city's three most dynamic and creative new neighborhoods: Miami Design District, Wynwood Art District, and Midtown/Edgewater Corridor (the "Triptych Project").   In July 2014, the Debtor acquired the land at 3601 N. Miami Avenue, Miami, Florida 33127[2] (the "Land") for purposes of developing the Triptych Project.

*Figure 1: Rendering of Triptych Project*



---

[2] The subject real estate is a 0.99-acre, high density, mixed-use zoned site located at 3601, 3610, 3630, 3651, and 3701 North Miami Avenue in Miami-Dade County, Florida. A total of nine parcels were purchased by the Debtor totaling 44,783 square feet and identified as follows: Folio numbers 01-3124-026-0010; 01-3124-026-0050; 01-3124-026-0060; 01-3124- 026-0070; 01-3124-026-0150; 01-3124-026-0160; 01-3124-026-0170; 01-3124-026-0030; 01-3124-026-0040.

The Triptych Debtor is an entity that holds 100% of the membership interests of the Debtor. The Debtor and the Triptych Debtor are headquartered at the offices of HES Group, located at 1001 SW 2nd Avenue, Suite 300, Miami, Florida 33126.

## 2.02    The Debtor's Business Operations

On July 10, 2014, the Debtor acquired the Land with the proceeds of a $7.5 million acquisition loan from Midtown Land 8, LLC ("Kresher Loan").

In 2015, the Debtor obtained a Conditional Approval Resolution by the City of Miami Urban Development Review Board for the Triptych Project. Thereafter, the Debtor obtained an appraisal from CBRE that valued the Land "as is" at $27,500,000.

In 2016, the Debtor entered into a Franchise Agreement with Hilton Worldwide for the branding and management of a 297-room Triptych Curio Collection by Hilton Hotel (the "Hilton Curio Concept"). The Debtor invested approximately $5 million to develop the Hilton Curio Concept, which included obtaining architectural and engineering designs from the world-class Miami-based firm of Bermello, Ajamil & Associates and interior design services from Wilson & Associates. That same year, the Debtor engaged OHL Construction and entered into a LOI authorizing it to commence pre-construction work for the Triptych Project.

In 2017, the Debtor obtained an appraisal from Landauer Valuation & Advisory that valued the Land "as is" at $33,800,000. Later that year, the Debtor considered repositioning the Triptych Project to be smaller in scope, but ultimately decided against it. In November 2017, the Debtor refinanced the Kresher Loan with a $9.5 million loan from 21 Brands, S.A. in exchange for a first priority mortgage against the Land (the "21 Brands Loan").

In 2018, the Debtor received an appraisal from CBRE that valued the Land "as is" at $40 million. On July 31, 2018, the Debtor entered into a $15 million first mortgage loan with LV Midtown, LLC ("LV Midtown") that was used, in part, to refinance the 21 Brands Loan. At the same time, the Debtor granted an $8.2 million subordinated mortgage in favor of QR Triptych, LLC ("QR Triptych") and paid it $3 million from the loan proceeds received from LV Midtown.

On October 31, 2019, the Debtor executed a Term Sheet with Hyatt Franchise Corporation to develop and manage a Joie De Vivre by Hyatt Hotel (the "Joire de Vivre Concept"). In December 2019, the Debtor received an appraisal from CBRE that valued the Land "as is" at $42 million.

The Triptych Project was expected to break ground in October 2020 and be completed by October 2023. However, the timeline was impacted by the COVID-19 pandemic that brought the world to a standstill and brought unprecedented delays and obstacles that frustrated the Debtor's ability to obtain additional capital and construction financing to move forward with the development of the Triptych Project.

**2.03    The Debtor's Capital Structure**

**(a)    The Land**

The Debtor owns the land in fee simple.

*Figure 2: Triptych Project Site*



*Figure 3: Triptych Project Site Detail*



### (b)     Debt Structure

On July 31 2018, four years after the Debtor acquired the Land, it entered into a loan transaction with LV Midtown (an affiliate of Linkvest Capital Group ("Linkvest")).

The Loan Transaction provided for LV Midtown to make a loan to the Debtor in the principal amount of $15,000,000 secured by, among other things, a first priority mortgage against the Land (the "Linkvest Loan"). The Linkvest Loan is also secured by a pledge by the Triptych Debtor of all of the membership interests in the Debtor, subject to the terms of a Pledge and Security Agreement dated July 31, 2018 (the "Pledge Agreement").

In connection with the Loan Transaction, the Debtor also executed a Redemption Agreement with QR Triptych (the "Redemption Agreement") that provided QR Triptych's interests in the Triptych Debtor to be redeemed in exchange for (i) payment of $3 million from the proceeds of the Linkvest Loan; and (ii) the Debtor executing a promissory note in the original principal amount of $8,238,579 (the "QR Note"). The QR Note is secured by a second priority mortgage against the Land and is subject of a Subordination and Intercreditor Agreement executed between LV Midtown and QR Triptych. The Debtor and Triptych Debtor have sued to avoid QR Triptych's mortgage and the QR Note, to avoid over $5.2 million in transfers from the Debtor to QR Triptych and to an entity controlled by its principal and to re-characterize QR Triptych's claim against the Debtor as subordinated equity in the Triptych Debtor. *See* §2.05(b), *infra*.

### (c)     Short Term Cash Financing

The Debtor's short-term cash needs have been typically financed through interest-free advances from HES Group companies. In certain instances, HES Group companies advanced expenses on the Debtor's behalf. The Debtor, in turn, repaid the advances as circumstances permitted. In total, HES Group companies claim to have advanced net cash of over $3 million which remains unpaid.

## 2.04     Events Leading Up to the Chapter 11 Bankruptcy Case

### (a)     The COVID-19 Pandemic

Beginning in or about December 2019, an international pandemic of unprecedented scale spread across the globe, where inhabitants of all nations were affected by the virus referred to as the coronavirus disease 2019 ("COVID-19"). On March 11, 2020, the World Health Organization announced that the COVID-19 outbreak was properly characterized as a pandemic. . The COVID-19 pandemic resulted in global shutdowns and caused economic and commercial disruptions in various sectors, including a heavy impact on the real estate and hospitality markets. The COVID-19 pandemic and the related restrictions on travel, business activity, and individual movement have had a significant impact on the hospitality industry.

Pandemic induced lockdowns, event cancellations, and stoppage of corporate travel affected the hospitality industry across the board. The Smith Travel Research ("STR") data reflects that beginning in March 2020, occupancies began to plummet and by late March, the U.S. hotel

industry had effectively come to a halt. According to an STR[3] report, in a year-over-year comparison with April 2019, the industry recorded a nearly 64% drop in hotel occupancy and a 79.9% drop in RevPAR[4]. According to another report by Skift Research and McKinsey & Company, "hotel demand may not reach pre-COVID-19 levels until 2023, while revenue per available room may not recover until 2024."

Throughout 2020, there continued to be extraordinary uncertainty; the crisis and ensuing emergency orders severely impaired the value and progress of the Triptych Project. One example of the pandemic's impact on the project was the standstill effect it had on the Debtor's negotiations with a national hotel chain. Due to the COVID-19 pandemic, the deadline to execute certain franchise documents was extended until December 31, 2020, effectively putting Triptych Project, and related negotiations with the national hotel chain, on hold.

### (b)    Pre-Bankruptcy Restructuring Efforts

In August 2020, LV Midtown initiated a foreclosure proceeding captioned *LV Midtown LLC v. Aventura Hotel Properties, LLC et al.*, Case No. 2020-018857-CA-01, pending in the Eleventh Judicial Circuit in and for Miami-Dade, Florida (the "Foreclosure Case"). Throughout the Foreclosure Case, the Debtors attempted to negotiate an appropriate resolution of the Linkvest Loan that accounts for, among other things, the significant equity in the Land and the various alternatives.

Based on the above unprecedented circumstances and disputes with Linkvest, among other things, the Debtors determined that the filing of a Chapter 11 bankruptcy was in the best interests of the Triptych Project and all of its stakeholders. The Debtor anticipated using the Chapter 11 process to provide the necessary breathing room needed to weather the economic storm caused by the Coronavirus pandemic, to recapitalize and continue development of the Triptych Project, and if necessary, facilitate a sales process for the Land that maximizes the return to all of its stakeholders.

### 2.05    The Bankruptcy Case

On March 12, 2021 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and, as a result, the Foreclosure Case has been stayed since the Petition Date by operation of section 362 of the Bankruptcy Code.

On March 15, 2021, the Court granted the Debtors' *Ex-Parte* Motion for Joint Administration [ECF No. 11], providing for the designation of Case No. 21-12374-BKC-RAM as the "Lead Case." To date, a creditors' committee, trustee or examiner has not been appointed in

---

[3] Founded in 1985, STR provides premium data benchmarking, analytics and marketplace insights for global hospitality sectors. STR was acquired in October 2019 as a division of CoStar Group, Inc., the leading provider of commercial real estate information, analytics and online marketplaces.

[4] Revenue per available room (RevPAR) is a metric used in the hospitality industry to measure hotel performance. The measurement is calculated by multiplying a hotel's average daily room rate by its occupancy rate. RevPAR is also calculated by dividing a hotel's total room revenue by the total number of available rooms in the period being measured.

this case. The Debtors are operating and managing the business and affairs of their respective bankruptcy estates (the "Estates") as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On April 15, 2021, the Court entered a final Order Granting the Application to Employ Jesus M. Suarez and the Law Firm of Genovese Joblove & Battista, P.A. as Counsel for the Debtors-in-Possession [ECF No. 34].

**(a)    Claims Asserted Against Debtor**

The Debtor's bankruptcy schedules reflect general unsecured claims in the amount of $1,110,273.90, of which the Debtor scheduled $295,242 as disputed as of the Petition Date. The Debtor's general unsecured creditors are largely trade and professional creditors that remain unpaid and arise from the development of the Project.

On April 1, 2021, the Miami-Dade County Tax Collector filed Claim No. 1-1 in the amount of $427,287.44 plus statutory interest accruing at 18% (the "MDCTC Claim"). The MDCTC Claim represents real estate property taxes past due on the Land and payable to Miami-Dade County for tax years 2020 and estimated tax liability for 2021 (final tax bills will be available on November 1, 2021).

On April 1, 2021, the Miami Dade Tax Collector also gave notice of additional creditors holding tax certificates for tax year 2019 [ECF No. 28] (the "2019 Real Estate Taxes"). The 2019 Real Estate Taxes are secured by a lien on the Land and are $219,890.50 plus interest.

On May 19, 2021, Secured Creditor LV Midtown, LLC  ("LV Midtown" or "Secured Creditor")  filed a secured claim, Claim No. 5-1, in an amount not less than $18,944,582.14, plus accrued interest, attorneys' fees and costs as of the Petition Date (the "Secured Claim") in the Bankruptcy Case.

On May 19, 2021, QR Triptych, LLC ("QR Triptych") filed Claim No. 6-1 [Debtor AHP] (the "QR Claim").  The QR Claim asserts a claim against the Debtor in the amount of $8,238,579.20, and purports to be secured by a subordinate mortgage on the Property.  However, the QR Claim does not contain evidence of the Debtor's alleged indebtedness to QR Triptych and instead relies upon a promissory note evidencing only indebtedness to LV Midtown.

On  July 22, 2021, QR Triptych amended the QR Claim [Claim No. 6-2] to assert a claim for $10,597.809.81, providing for what they claim to be past-due interest and attorneys' fees (the "QR Amended Claim").  The QR Amended Claim includes an alleged promissory note purportedly executed on behalf of  the Debtor that had not been included in the initial QR Claim.  The Debtor objected to the QR Claim (as may be amended) in the Avoidance Litigation (defined below).

On May 19, 2021, Elisabeth Eljuri [Claim No. 3-1] and Ivan Sandrea [Claim No. 4-1] filed general unsecured claims against the Debtor in the amounts of $2,170,291 ("Eljuri Claim") and $1,479,005.91 (the "Sandrea Claim").  The Eljuri Claim and Sandrea Claim represent general unsecured creditors that (i) advanced cash into the bank account of the Debtor for the Project; or (ii) paid expenses on directly on  behalf of the Project; or (iii) otherwise conferred a benefit for the

Project. The Eljuri Claim and Sandrea Claim remain subject to further review and potential objection in whole or in part.

On July 26, 2021, OHL Building, Inc. filed a claim against the Debtor in the amount of $290,892 (the "OHL Claim"). The OHL Claim arises from a complaint that it filed prior to the Petition Date against the Debtor HES Group Holding, LLC in the Eleventh Judicial Circuit in and for Miami Dade County, Florida (Case No. 2020-022171-CA-01). The OHL Claim remains subject to objection, but was deemed timely filed by the Bankruptcy Court [ECF No 104].

**(b)    The QR Triptych Litigation**

On June 15, 2021, the Debtors commenced an adversary proceeding against QR Triptych and JQ Real Estate, LLC. *See* Adv. Case No. 21-12374-RAM (the "Avoidance Litigation"). The Debtor and the Triptych Debtor Avoidance Litigation to avoid certain inequitable transactions made for the benefit of QR Triptych - a former equity investor in the Triptych Debtor– that were paid from the assets of the Debtor. In summary, the Debtor and the Triptych Debtor seek to avoid (i) $2.2 million transferred by the Debtor to Defendant JQRE (an entity related to QR Triptych and to which the Debtors were not indebted); (ii) $3 million transferred by the Debtor to Defendant QR Triptych on account of its equity in the Triptych Debtor; and (iii) the incurrence by the Debtor of an $8.2 million subordinated mortgage in favor of Defendant QR Triptych in exchange for nothing of value to the Debtor. The Debtors also objected to QR Triptych's filed proof of claim and seek mandatory and equitable subordination.

On July 16, 2021, the Defendants in the Avoidance Litigation filed an Answer [Adv. Case ECF No. 8].

On August 6, 2021, the Debtor and Triptych Debtor filed a Motion to Strike the Adversary Defendants' Affirmative Defenses [Adv. Case ECF No. 10]. The Debtor believes the Adversary Defendants have failed to raise legally sufficient affirmative defenses. Notwithstanding, the Defendants may have the opportunity to replead their defenses and to challenge elements of the Debtor's *prima facia* case. In either respect, the Debtor anticipates that the Adversary Defendants will vigorously defend the claims and will raise litigable issues. For example. the Defendants claim, among other things, the Debtor and Triptych Debtor were alter-ego's of each other and that by allegedly providing value to one entity they are relieved of an obligation to provide value to the other entity. The Defendants also allege unspecified wrongdoing by the Debtors' Officers and Directors which they claim impairs the ability of the Debtor to prevail in its claims against them.

The Debtor disputes the defenses raised by the Defendants in the Avoidance Litigation and expects to prevail in prosecuting their claims within a reasonable degree of certainty. Nonetheless, all litigation claims are uncertain, costly to prosecute and subject to risk. Additionally, the Debtor is not aware of the financial condition of the Defendants and cannot presently ascertain whether any affirmative recoveries against these Defendants are ultimately collectible. Notwithstanding, the Debtors believe that many of the issues raised in the Avoidance Litigation are not novel, and are capable of being adjudicated by the Bankruptcy Court within three to six months.

(c)    **The Debtor's Miscellaneous Assets**

The Debtor's schedules reflect (i) accounts receivable in the amount of $704,610.00; (ii) miscellaneous office furnishings of unknown value; and (iii) *de minimis* cash balances in its Debtor-in-Possession account at City National Bank of Florida.  Additionally, the Debtor may hold litigation claims against (i) recipients of otherwise avoidable transfers; (ii) its current and officers and directors; (iii) vendors; (iv) suppliers; and (v) other third parties.

(d)    **The LV Settlement Agreement**

On June 16, 2021, the Court approved a settlement between the Debtors and the Secured Creditor [ECF No. 85] (the "LV Settlement")[5] that provides, among other things for:

(a)    The allowance of Secured Creditor's Secured Claim in the amount of $20,468,837.91 as of September 15, 2021 (the "Payoff Amount").

(b)    Notwithstanding the stipulated Indebtedness and Payoff Amount, the Secured Creditor shall agree to accept a discounted lump sum amount of $19,600,000 ("Release Price") in full and final satisfaction of the Secured Claim against the Estates under 11 U.S.C. § 506 of the Code provided that (a) such Release Price is indefeasibly paid to and actually received by Secured Creditor in cleared funds on or before September 15, 2021, (b) each of the milestones identified in the LV Settlement are completed; and (c) and the Debtors have timely complied with each and every term of the LV Settlement.

(c)    In consideration to the Estates for the compromise of alleged defenses to the claim of the Secured Creditor and for the timely sale and/or liquidation of the Property (as set forth in the LV Settlement), the Secured Creditor consented to a carve-out/surcharge from the Payoff Amount in favor of the bankruptcy estate of Debtor AHP in the amount of $800,000.00 (the "Surcharge Contribution") solely to the extent of available cash proceeds in excess of the Release Price, for the benefit of the Debtors bankruptcy estates (i.e., for the payment of administrative expenses and for distribution to general unsecured creditors). Further, Secured Creditor agreed to a reduction of the Payoff Amount by $68,837.91 (the "Settlement Reduction"), which Settlement Reduction is reflected in the Release Price and Secured Creditor waived any right to assert such amount against the Estates or against any third party (subject to the terms of the LV Settlement).

Further, the Release Price was determined to be the full amount of Secured Creditor's credit bid under 11 U.S.C. § 363(k) or otherwise (the "Credit Bid") with respect to any sale process in respect of the Property that complies with the LV Settlement and that actually closes on or before September 15, 2021.

---

[5] Please refer the Debtors' *Expedited* Motion to Approve Settlement and Compromise with LV Midtown, LLC [ECF No. 55] and the Order Approving the LV Settlement [ECF No. 85] for a complete description of the LV Settlement.

**(e)      The Sale Motion and Approved Bidding Procedures**

The Debtor scrutinized proposals from leading international brokerages to facilitate the marketing and sale of the Property.  On April 26, 2021, the Debtors reached an agreement to broker the sale of the Property John Crotty and Avison Young-Florida, LLC ("Avison Young").

On June 1, 2021, the Court granted the Debtors' Motion to Employ Avison Young and approved the Exclusive Sales Listing Agreement with the Avison Young (the "Listing Agreement") [ECF No. 53].

Pursuant to the terms of the Listing Agreement, Avison Young assisted the Debtors in marketing and selling the Triptych Project by: (i) preparing a marketing program; (ii) preparing descriptive marketing materials; (iii) providing advice and assistance in structuring the offering price and sales terms; (iv) exercising reasonable efforts to procure a buyer for the Triptych Project; (v) negotiating, in coordination with Debtors' representatives, the terms and conditions of the sale of the Triptych Project; and (v) distributing marketing information on the Triptych Project to co-brokers.

The Listing Agreement provides for Avison Young to receive a brokerage fee in the amount of 150 basis points (1.50%) of the gross sales price of the Triptych Project (collectively, the "Commission").  In order to facilitate lender approval, Avison Young agreed to waive any commission due or cost advanced by it under the Listing Agreement if the purchase price did not exceed the Release Price.

Upon its retention, Avison Young developed a sales and marketing process and made a call for interested buyers to submit offers on or before June 24, 2021.  In the course of the sales process, Avison Young contacted and marketed the property to over 14,000 hospitality investors, 6,300 potential investors through the Real Clear Markets platform, 2,100 developers, and 1,110 outside brokers.  The marketing efforts resulted in over 3,200 CoStar listing page visits and the execution of 59 confidentiality agreements by potential buyers.

After the expiration of the call for offers, the Debtors analyzed all offers received for the purchase of the Property.  In consultation with Avison Young and counsel, the Debtors exercised their business judgment to advance negotiations for the sale of the Property to Integra.

On July 15, 2021, the Debtor and Integra Real Estate, LLC ("Integra") entered into the Contract for the "As Is" Sale and Purchase of Vacant Land, pursuant to the terms set forth therein (the "Contract") and attached as Exhibit "A" to the Sale Motion (defined below).  Pursuant to the Contract, Integra's deadline to complete all due diligence with respect to purchase of Property is Saturday, August 14, 2021 (the "Due Diligence Deadline").

On July 15, 2021, the Debtors filed a Motion for Entry of an Order (A) Authorizing the Sale of Real Property of the Chapter 11 Estate Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §363; (B) Establishing Bidding Procedures and Sale Process; (C) Approving Asset Purchase Agreement with Integra Real Estate, LLC; (D) Scheduling Sale Hearing; and (E) Granting Related Relief [ECF No. 94] (the "Sale Motion").

On July 29, 2021, the Court granted the Sale Motion, Approved the Contract with Integra (the "Sale Approval Order") and made the following findings:

a.     The Court has jurisdiction over this matter and over the property of the Debtors pursuant to 28 U.S.C. §§ 157(a) and 1334, venue is proper in this district pursuant to 28 U.S.C. § 1408, and this is a core proceeding pursuant to 28 U.S.C. § 157(b).

b.     Good and sufficient notice of the relief sought in the Motion was given in accordance with Bankruptcy Rule 2002, and no other or further notice was required and any requirements for other or further notice were waived and dispensed with pursuant to Fed. R. Bankr. P. 2002, 6004, 6006 and 9007 and pursuant to the Court's powers under section 105 of the Bankruptcy Code.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion was been afforded to all parties-in-interest.

c.     The bidding procedures set forth in the Sale Approval Order are fair, reasonable and appropriate, and are designed to maximize the recovery on the proposed sale of the Property.

d.     The entry of the Sale Approval Order  was in the best interests of the Debtor, its estate, creditors, and all other parties-in-interest.

The Court also scheduled a sale hearing to approve the sale of the Property pursuant to 11 U.S.C. § 363 of the Bankruptcy Code (the "Sale Hearing")  on **Wednesday, August 25, 2021 at 11:00 am EDT**, before the Honorable Robert A. Mark, by Zoom Video Conference.  An Auction (as defined herein below) with respect to sale of the Property, if necessary, shall be conducted before the Honorable Robert A. Mark, by Zoom Video Conference at the Sale Hearing on **Wednesday, August 25, 2021 at 11:00 a.m. EDT** in accordance with the bidding procedures approved by the Bankruptcy Court,

The Sale Procedures Order provides for bidding procedures as set forth below and authorizes and directs the Debtors to carry out the actions reasonably necessary to carry out the bidding procedures. All competitive bidders, creditors and/or interested parties participating in an Auction of the Properties, should it be necessary, shall comply with the following bidding procedures:

i.     competing bid(s) shall be made upon substantially similar terms and provisions as contained in the Contract and as otherwise provided in the order(s) of the Bankruptcy Court approving the Motion and Bidding Procedures as set forth herein, provided however, that such competing bids shall not contain a Due Diligence Period and must be subject to and not otherwise provide for the impairment of the Parking Rights Agreement between Debtor and Fifteen Midtown Properties, LLC ("Competing Bid(s)");

ii.     Competing Bid(s) shall be received, in writing, by Debtor's counsel **Jesus M. Suarez, Esq., 100 SE Second Street, 44th Floor, Miami, Florida 33301, jsuarez@gjb-law.com**, by **5:00 p.m. on August 23, 2021** (the "Bid Deadline"), in

14

the form of a fully executed, substantially similar version of the Contract (the "Competing Bid Contract"), along with: (a) a refundable deposit in the amount of five percent (5%) of the purchase price identified in the Competing Bid Contract (the "Competing Bid Deposit") in readily available funds delivered to the Closing Agent (wire transfer instructions shall be provided by the Closing Agent and/or Debtors' counsel upon written request directed to jsuarez@gjb-law.com); provided however, that in the event that the Competing Bid is accepted and approved as the highest and best offer, such Competing Bid Deposit shall be non-refundable; (b) the Competing Bid shall not be subject to any contingency whatsoever, shall be subject to Bankruptcy Court approval, and shall be accompanied by evidence that the prospective buyer submitting the Competing Bid has the ability to consummate the purchase transaction and comply with all terms thereto; and (c) information that indicates to the Debtor, in the Debtor's discretion, and subject to Bankruptcy Court approval, that the prospective buyer's Competing Bid is submitted as a good faith, arm's length transaction entitled to the protections of §363(m) of the Bankruptcy Code;

iii.    the Debtors, in their  discretion in consultation with Secured Creditor, and subject to Bankruptcy Court approval, shall determine whether any Competing Bid(s) received by the Bid Deadline constitute a qualified bid with capacity to close as provided in the respective Competing Bid Contract and may be accepted as a qualified bid (the "Qualified Bid").  Any Competing Bid determined to be a Qualified Bid shall be irrevocable until the selection of the Successful Bidder (as hereinafter defined) and the Back-Up Bidder (which offer shall remain irrevocable until the closing of the sale to the Successful Bidder or the Back-Up Bidder);

iv.    Integra shall be deemed to have submitted a Qualified Bid provided that, at the time of the auction sale, the Due Diligence Deadline has expired, Integra has not terminated the Contract, and Integra has otherwise complied with its obligations thereunder.  Secured Creditor LV Midtown, LLC shall be deemed a Qualified Bidder and may submit a Qualified Bid in an amount not to exceed their 363(k) Bid (as defined below) in the amount of the Release Price without the necessity of otherwise complying with these Bid Procedures;

v.    should the Debtors receive multiple Qualified Bids by the Bid Deadline, the Bankruptcy Court shall conduct the Sale Hearing as a final and absolute auction, at which time the Bankruptcy Court will determine the best and highest offer for sale of the Property (the "Auction").  The Auction shall be conducted via Zoom Video Conference at the Sale Hearing on **Wednesday, August 25, 2021 at 11:00 a.m EDT**.  Only prospective buyers that have been determined to have submitted a Qualified Bid shall be permitted to participate in the Auction;

vi.    any prospective buyers with a Qualified Bid (the "Qualified Bidder(s)") shall be permitted to participate in the Auction. The minimum bidding increments above the highest and best Qualified Bid accepted at the time of the

Auction, shall be not less than two-hundred fifty thousand dollars ($250,000.00) (the "Bid Increment(s)");

vii.    the competitive bidding among the Qualified Bidders shall continue until the Bankruptcy Court determines it has received the highest and/or best bid for the Property. The prospective buyer submitting the highest and/or best bid for the Property shall be determined to be the successor bidder ("Successful Bidder");

viii.    the Qualified Bidder submitting the second highest and/or best Qualified Bid accepted at the Auction, if any, shall be deemed the back-up bidder (the "Back-Up Bidder") and shall be obligated to close on the transaction contemplated under the purchase Contract submitted for approval with such Qualified Bid within seven (7) days from the tendering of written notice by the Debtors to the Back-Up Bidder of the Successful Bidder's failure to close and the Competing Bid Deposit of the Back-Up Bidder shall be held by the Closing Agent until the closing of the sale of the Property, shall be refunded pursuant to part ix below if the Property is sold to the Successful Bidder, and shall be non-refundable if Back-Up Bidder is called upon to close on its Qualified Bid and fails to do so; and

ix.    notwithstanding the above Bidding Procedures, in the event that Integra or another Qualified Bidder(s) is not deemed to be the Successful Bidder or Back-Up Bidder at the Auction, then all Deposits or Additional Deposits shall be refunded by the Debtors or Closing Agent (collectively, the "Refundable Deposit(s)") to the respective party submitting the Refundable Deposit, within five (5) business days of the Auction or upon further order of the Bankruptcy Court, and Secured Creditor LV Midtown, LLC may exercise its Qualified Bid in an amount not up to the amount 363(k) Bid (as defined below) and shall be the Successful Bidder.

(collectively, the "Bidding Procedures"). Notwithstanding the above Bidding Procedures, Secured Creditor LV Midtown, LLC shall have the right, but not the obligation, to credit bid up to the amount of the Release Price pursuant to §363(k) of the Bankruptcy Code in connection with the sale of the Property pursuant to this Motion (the "363(k) Bid"). Pursuant to the LV Settlement, the 363(k) Bid is not subject to objection. In the event that Secured Creditor LV Midtown, LLC exercises its 363(k) Bid option, such bid shall be subject to the Bidding Procedures, except that Secured Creditor LV Midtown, LLC shall not be required to submit a Deposit or Additional Deposit for purposes of bidding at the Auction nor shall Secured Creditor be required to submit a Competing Bid in advance of the auction.

**On August 13, 2021, Integra Real Estate, LLC ("Integra") terminated the sales contract in the amount of $25.5 million to purchase the Property. The Debtor does not presently have a back-up contract to substitute Integra's terminated Contract. The Debtor anticipates that Qualified Bids may be received in advance of the Qualified Bid Deadline; however the Debtor does not believe it will be able to consummate the Plan if the Successful Bid is less than approximately $22 million.**

**The Debtor currently lacks any cash to pay closing costs and other ordinary and customary expenses due at closing, including property taxes and real estate commissions. The Debtor may not realize the Sale Proceeds contemplated by the Plan if (i) a Competing Bid Contract is deemed the Successful Bidder and the Purchase Price approved by the Bankruptcy Court is less than the Purchase Price of at least $22 million; or (ii) Secured Creditor LV Midtown is deemed to be the Successful Bidder pursuant to its 363K Bid which does not provide for a cash recovery by the Debtor; or (iii) the Surcharge Contribution from LV Midtown's collateral is not applied by the Bankruptcy Court as set forth in the Plan.**

## ARTICLE III
## SUMMARY OF THE AMENDED PLAN

**3.01    Summary**

THE FOLLOWING IS A SUMMARY OF SOME OF THE SIGNIFICANT ELEMENTS OF THE PLAN. THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN AND THE EXHIBITS AND SCHEDULES THERETO.

The Plan classifies Claims and Equity Interests separately in accordance with the Bankruptcy Code and provides different treatment for different Classes of Claims and Equity Interests. Claims and Equity Interests shall be included in a particular Class only to the extent such Claims or Equity Interests qualify for inclusion within such Class. The Plan separates the various Claims (other than those that do not need to be classified) into 5 separate Classes. These Classes take into account the differing nature and priority of Claims against, and Equity Interests in the Debtor. Unless otherwise indicated, the characteristics and amounts of the Claims or Equity Interests in the following Classes are based on the books and records of the Debtor.

Other than as specifically provided in the Plan, the treatment under the Plan of each Claim and Equity Interest will be in full satisfaction, settlement, release and discharge of all Claims or Equity Interests. The Liquidating Trustee will make all payments and other distributions to be made under the Plan unless otherwise specified.

**3.02    Provisions for Treatment of Unclassified Claims**

**(a)    Administrative Claims**

Pursuant to the Plan, the Debtor shall pay each holder of an Allowed Administrative Claim, in satisfaction of such Allowed Administrative Claim, the full unpaid amount of such Allowed Administrative Claim in Cash: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (3) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that any Claim seeking administrative expense status included as a part of a proof of claim filed in this Chapter 11 Case shall not qualify as an

17

Administrative Claim. The Administrative Claims shall first be paid from the Surcharge Contribution and/or the QR Triptych Surcharge.

**(b)    Professional Fee Claims**

On or prior to the deadline set by the Bankruptcy Court for Professionals to file final fee applications, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Confirmation Hearing. The Debtor shall pay the Allowed Professional Fee Claim of each Professional from Available Cash in accordance with the Orders of the Bankruptcy Court unless otherwise agreed to by the Holder of such Allowed Professional Fee Claim. From and after the Confirmation Date until the Effective Date, the Debtor, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period. The Broker Fee shall be satisfied from Sale Proceeds. Any other Professional Fees shall be paid from the Surcharge Contribution and the QR Triptych Surcharge.

**(c)    Priority Tax Claims**

Pursuant to the Plan, the Debtor shall pay each holder of an Allowed Priority Tax Claim, in satisfaction of such Allowed Priority Tax Claim, the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the later of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; provided, however, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Priority Tax Claim.

**(d)    Statutory Fees**

Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the Monthly Operating Reports for the relevant periods, indicating the cash disbursements for the relevant period. The Liquidating Trustee shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Liquidating Trustee, until the earlier of the closing of the Chapter 11 Case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing such case or converting such case to another chapter under the United States Bankruptcy Code, and the Liquidating Trustee shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, Post-Confirmation Quarterly Operating reports indicating all the cash disbursements for the relevant period. The Statutory Fees shall first be paid from the Surcharge Contribution and the QR Triptych Surcharge.

The table below provides a summary of the classification, treatment and estimated recoveries of Claims and Equity Interests under the Plan. This information is provided in summary

form below for illustrative purposes only, is subject to material change based on contingencies related to the claims reconciliation process, and is qualified in its entirety by reference to the provisions of the Plan.

> (e)  **Summary of Treatment of Claims, Equity Interests and Estimated Recoveries.**

The table below provides a summary of the classification, treatment and estimated recoveries of Claims and Equity Interests under the Plan.  This information is provided in summary form below for illustrative purposes only, is subject to material change based on contingencies related to the claims reconciliation process, and is qualified in its entirety by reference to the provisions of the Plan.

**THE ESTIMATED PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.**

| Class | Treatment of Claims and Interests | Estimated Aggregate Claims | Estimated Percentage Recovery |
|---|---|---|---|
| Class 1: Secured Real Estate Tax Claims | Except to the extent that a holder of an Secured Real Estate Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different classification and treatment, each holder of an Allowed Secured Real Estate Tax Claim shall receive the full unpaid amount of such Secured Real Estate Tax Claim in Cash, on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such Secured Real Estate Tax becomes Allowed or as soon as practicable thereafter, and (iii) the date such Allowed Other Priority Claim is payable under applicable non-bankruptcy law; provided, however, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Other Priority Claim.   The Secured Real Estate Tax Claim include (i) Property Taxes; and (ii) Property Tax Certificates. To the extent Property Taxes for Tax Year 2021, the real estate taxes payable by Debtor as Seller under the *Sale Approval Order* shall be escrowed for payment when due by the closing agent designated under the Sale Approval Order to consummate that Closing. | $646,177.92 | 100% |
| Class 2: Allowed Secured Claim of LV Midtown | The Allowed Secured Claim of LV Midtown shall be satisfied by the holder the Allowed Secured Claim of LV Midtown receiving from the Debtor Sale Proceeds from the Closing of the Property up to the amount of the Release Price as provided for in the LV Settlement Agreement net of (i) ordinary and customary closing costs; (ii) the Secured Real Estate Tax Claims securing the Class 1 Claim; and (iii) the Broker Fee, but only to the extent the Sale Proceeds exceed the Release Price. The Sale Proceeds constitute, in part, the liquidation of the collateral securing the Class 2 Claim, which the Debtor shall liquidate at Closing pursuant to a Confirmation Order authorizing the sale of the Property pursuant to section 363 of the Bankruptcy Code or otherwise; (ii) realization of the | $20,468,837.91 | 92.5% as pursuant to LV Settlement Agreement, providing that (i) LV Midtown will accept $19,600,000; and (ii) contribute $800,000 of its collateral as a |

| Class | Treatment of Claims and Interests | Estimated Aggregate Claims | Estimated Percentage Recovery |
|---|---|---|---|
| | indubitable equivalent of the Class 2 Claim, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. § 1129(b)(2)(A)(iii); or (iii) satisfaction of such Class 2 Claim as otherwise authorized by the Code or agreed to by the holder of such Class 2 Claim. Such satisfaction shall occur on the later of the Effective Date or the date each respective Class 2 Secured Claim of LV Midtown is Allowed by a Final Order. Any portion of the Allowed Claim of a holder of a Class 2 Secured Claim of LV Midtown that is not satisfied as part of its Allowed Class 2 Secured Claim of LV Midtown shall be treated as a Class 5 Allowed General Unsecured Claim pursuant to the term of the Plan. | | Surcharge Contribution. |
| Class 3: Disputed Secured Claim of QR Triptych | The Debtor shall reserve and contribute to the Liquidating Trust the Excess Sale Proceeds. The Excess Sale Proceeds shall be held in trust by the Liquidating Trustee and shall be disbursed in accordance with any Final Order, decree or judgment entered by the Bankruptcy Court resolving or adjudicating the Avoidance Litigation after the expiration of all appellate periods of the resolution of any appeals thereof. In the event that the Bankruptcy Court determines, after the exhaustion of all appeals, that the holder of the Disputed Secure Claim of QR Triptych is, in whole or in part, entitled to assert an allowed claim secured against the Property and/or Excess Sale Proceeds, or any portion thereof, then the holder of the Disputed Secured Claim of QR Triptych shall be entitled to (i) receive a distribution of the Excess Sale Proceeds up to the amount the Bankruptcy Court determines the Disputed Secured Claim of QR Triptych, less the QR Triptych Surcharge that the Bankruptcy Court may determine and award under Sections 506(a) and 506(c) of the Bankruptcy Code; (ii) realization of the indubitable equivalent of the Disputed Secured Claim of QR Triptych, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. §1129(b)(2)(A)(iii) of the Bankruptcy Code; or (iii) satisfaction of such Disputed Secured Claim of QR Triptych as otherwise authorized by the Bankruptcy Code or agreed to by the holder of the Disputed Secured Claim of QR Triptych. If the Disputed Secured Claim of QR Triptych is recharacterized as equity in the Triptych Debtor by a final, non-appealable order, decree or judgment of the Bankruptcy Court, then it shall be treated in accordance with the treatment provided for in any plan of reorganization that may be confirmed for the Triptych Debtor or as otherwise provided for under applicable law | $10,597,709.81 | 0%. Claim is disputed in its entirety. |
| Class 4: Allowed | In full satisfaction, settlement, release, extinguishment and discharge of each such Allowed General Unsecured Claim, | $4,759,570.81 | Unknown |

| Class | Treatment of Claims and Interests | Estimated Aggregate Claims | Estimated Percentage Recovery |
|---|---|---|---|
| General Unsecured Claims | each Holder of an Allowed General Unsecured Claim shall receive a Class A Beneficial Interest in the Liquidating Trust on a Pro Rata basis with all other Holders of Allowed General Unsecured Claims. Such Class A Beneficial Interest shall entitle such Holder to Distributions from time to time from the Liquidating Trust, as determined by the Liquidating Trustee in the exercise of his business judgment after accounting for any Liquidating Trust Reserves, on a Pro Rata basis with the Holders of all Class A Beneficial Interests in the Liquidating Trust, which Distributions will be made from Available Cash on deposit from time to time with the Liquidating Trust, provided that the maximum Distributions to the Holders of Allowed General Unsecured Claims shall be the full amount of each Allowed General Unsecured Claim without interest. The first Distribution shall be made as soon as reasonably practicable following the Effective Date, provided however, that any Distribution to the Holders of Disputed Claims shall be reserved in the Disputed Claims Fund. No Distribution shall be made to Holders of Allowed General Unsecured Claims unless and until (i) all Allowed Administrative Claims, all Allowed Professional Fee Claims, all Allowed Priority Tax Claims, all U.S. Trustee Fees and all Claims in Classes 2 and 3 have been paid in full, reserved or otherwise resolved, and (ii) the Liquidating Trustee has paid or reserved for all obligations of the Liquidating Trust and has established the Liquidating Trust Reserve in connection therewith. Notwithstanding, the Liquidating Trustee may distribute to Holders of Allowed General Unsecured Claims (i) any portion of the Surcharge Contribution received as a Liquidating Trust Asset and not otherwise used by the Liquidating Trustee to pay expenses of the Liquidating Trust; and (ii) any Sale Proceeds in excess of the Disputed Claim of QR Triptych |  |  |
| Class 5: Allowed Equity Interests | In full satisfaction, settlement, release, extinguishment and discharge of the Allowed Class 6 Equity Interest, the Triptych Debtor shall receive a Class B Beneficial Interest in the Liquidating Trust, which Class B Beneficial Interest shall entitle the Triptych Debtor Triptych to receive Distributions from time to time from the Liquidating Trust, as determined by the Liquidating Trustee in the exercise of their business judgment after accounting for any Liquidating Trust Reserves, from Available Cash on deposit from time to time with the Liquidating Trust, provided that no Distribution shall be made to the Triptych Debtor Triptych on account of the Allowed Class 5 Equity Interest unless and until (i) all Allowed Administrative Claims, all Allowed Professional Fee Claims, all Allowed Priority Claims, all Allowed Priority Tax Claims, all U.S. Trustee Fees, all Claims in Classes 2 and 3 and all Allowed General Unsecured Claims in Class 4 represented by the Class A Beneficial Interests have been paid in full, reserved or otherwise resolved, and (ii) the Liquidating | Unknown | Unknown |

| Class | Treatment of Claims and Interests | Estimated Aggregate Claims | Estimated Percentage Recovery |
|-------|-----------------------------------|----------------------------|-------------------------------|
|       | Trustee has paid or reserved for all obligations of the Liquidating Trust and has established the Liquidating Trust Reserve in connection therewith. |  |  |

**(f)     Classification of Claims and Equity Interests Under the Amended Plan**

The following table designates the Classes of Claims against and Equity Interests in the Debtor under the Plan, and specifies which Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to accept or reject the Plan.

| Class | Claim | Status | Entitled to Vote? |
|-------|-------|--------|-------------------|
| 1 | Secured Real Estate Tax Claims | Unimpaired | No; Deemed to Accept the Plan |
| 2 | Allowed Secured Claim of LV Midtown | Impaired | Yes |
| 3 | Disputed Secured Claim of QR Triptych | Impaired | Yes |
| 4 | Allowed General Unsecured Claims | Impaired | Yes |
| 5 | Allowed Equity Interests | Impaired | Yes |

**ARTICLE IV**
**MEANS OF IMPLEMENTING THE AMENDED PLAN**

**4.01     The Debtor will Sell the Property**

The Plan will be funded through the sale of the Property in the manner described in the Sale Approval Order.  *See* Section §2.05(e), *supra*.

**4.02     The Liquidating Trust**

On the Effective Date of the Plan, (i) the Liquidating Trust shall be created and shall be governed by the terms of the Liquidating Trust Agreement, (ii) the Liquidating Trust Assets shall vest in, and be transferred to, the Liquidating Trust, which Liquidating Trust shall constitute, be appointed as and be deemed a representative of the Debtor's Estate pursuant to and in accordance with the terms of Section 1123(b)(3)(B) of the Bankruptcy Code solely for the benefit of the Liquidating Trust Beneficiaries, and (iii) the Liquidating Trust, through the Liquidating Trustee, is and shall, among the other powers set forth herein and in the Liquidating Trust Agreement, be authorized and appointed to investigate, prosecute, enforce, pursue and settle any and all Causes of Action, provided however, that any settlement of a Cause of Action proposed by the Liquidating

Trustee shall require the approval of the Bankruptcy Court upon the filing of a motion in connection therewith.

NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, THE VESTING IN AND TRANSFER OF THE LIQUIDATING TRUST ASSETS TO THE LIQUIDATING TRUST SHALL BE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OF ANY KIND WHATSOEVER. NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, NO ASSETS OF THE DEBTOR OR THE DEBTOR'S ESTATE SHALL VEST IN THE DEBTOR OR ANY OTHER PERSON OR ENTITY FROM AND AFTER THE EFFECTIVE DATE, OTHER THAN THE LIQUIDATING TRUST.

### (a)      Execution and Implementation

On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtor and the Liquidating Trustee and all other necessary steps shall be taken to establish the Liquidating Trust, which shall be for the benefit of the Liquidating Trust Beneficiaries thereunder. The Liquidating Trust is created solely to implement the terms of the Plan. The primary purposes of the Liquidating Trust is to collect and liquidate the Assets of the Debtor's Estate, pursue those claims and Causes of Action transferred to, and vested in, the Liquidating Trust and distribute to the Liquidating Trust Beneficiaries all proceeds from the liquidation of the applicable Assets pursuant to the terms of the Plan and in accordance with Treasury Regulation Section 301.7701-4(d). Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein or otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Liquidating Trust Assets of the Debtor's Estate.

### (b)      Liquidating Trust Assets

The Liquidating Trust shall consist of the Liquidating Trust Assets from the Debtor's Estate after any required Distributions by the Debtor on the Effective Date. The Debtor shall transfer the Liquidating Trust Assets to the Liquidating Trust. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code and any other applicable law. In connection with the transfer of the Liquidating Trust Assets to the Liquidating Trust, such Liquidating Trust Assets, including, without limitation, Causes of Action, shall vest in the Liquidating Trust on the Effective Date.

### (c)      Liquidating Trustee

The Liquidating Trust shall be governed by the Liquidating Trustee according to the Liquidating Trust Agreement for the Liquidating Trust. The Liquidating Trustee for the Liquidating Trust shall mean _____ (the "Liquidating Trustee"), the Liquidating Trustee named to administer the Liquidating Trust, and all successor Liquidating Trustees. The Liquidating Trustee shall be deemed to have been appointed as the respective Estate's representative for the Debtor by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

**(d)**      **Powers of the Liquidating Trustee**

In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall, among other things, have the rights, powers and duties of a chapter 7 trustee under Section 704 of the Bankruptcy Code and a chapter 11 trustee under section 1106 of the Bankruptcy Code.  In connection with the administration of the Liquidating Trust, except as otherwise set forth herein, the Trustee is authorized to perform only those acts necessary and desirable to accomplish the purposes of the Liquidating Trust.  The Liquidating Trust shall succeed the rights of the Debtor necessary to protect, conserve and liquidate all Liquidating Trust Assets as quickly as reasonably practicable.  Subject to the limitations set forth in this Trust Agreement, the Plan and the Confirmation Order, the Liquidating Trustee may exercise all powers granted it hereunder related to, or in connection with, the collection, prosecution, liquidation, and distribution to the Beneficiaries, of the Trust Assets. Without limiting, but subject to, the foregoing, the Liquidating Trustee shall be expressly authorized:

(a)      To open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidating Trust.

(b)      To receive, conserve and manage the Trust Asset

(c)      To hold legal title to any and all Trust Assets.

(d)      Subject to the applicable provisions of the Plan, to prosecute, collect and liquidate the Trust Assets.

(e)      To take discovery from third parties, including but not limited to, issuing Fed.R.Bankr.P. 2004 subpoenas and discovery requests.

(f)      Make decisions regarding the retention or engagement of Trustee's Professionals and to pay, from the Trust Assets and the proceeds thereof, the fees and charges incurred by the Liquidating Trust and the fees and expenses of the Liquidating Trustee's Professionals, as well as the disbursements, expenses or related support services relating to the implementation of the Plan and performance by the Trustee of its duties under this Agreement. To pay all lawful, expenses, debts, charges and liabilities of the Liquidating Trust.

(g)      To wind down the affairs of the Trust including the filing of final tax returns, if applicable, establish any administrative reserves necessary to close the Trust and make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

(h)      To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of its discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(i)      To enter into any agreement or execute any document required by or consistent with the Plan and perform all obligations thereunder.

(j)      To abandon in any commercially reasonable manner, including abandonment or

donation to a charitable organization of its choice, any assets if it concludes that they are of no significant value or benefit to the Liquidating Trust.

(k)  Except as otherwise set forth in this Trust Agreement, to have exclusive power to prosecute and/or settle all causes of actions including, without limitation, Avoidance Actions or any other causes of action or counterclaims as described in the Plan and Disclosure Statement (the "Causes of Action") and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and litigate or settle such Actions on behalf of the Liquidating Trust, and pursue such actions to settlement or final order, all in accordance with the terms of this Agreement.

(l)  To hold any unclaimed Distributions or payment to a Beneficiary in accordance with this Agreement, the Confirmation Order and the Plan.

(m)  To purchase or create and carry all insurance policies and pay all insurance premiums and costs it deems necessary or advisable.

(n)  To implement and/or enforce all provisions of the Plan.

(o)  To collect and liquidate all Trust Assets pursuant to the Plan, the Confirmation Order and this Agreement and to ultimately close the Chapter 11 Case.

(p)  To object to Claims and supervise and administer the resolution, settlement and payment of such Claims and the distribution to the Beneficiaries in accordance with this Agreement and the Plan. Specifically, the Liquidating Trustee may compromise or settle any such Claim (disputed or otherwise) free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order or this Agreement.

(q)  Exercise such rights of setoff as the Debtor or the Estate may have had against any Beneficiary and/or seek Court approval of such exercise.

(r)  Voluntarily engage in arbitration or mediation with regard to any dispute.

(s)  To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax information returns required with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise, (iii) make tax elections by and on behalf of the Liquidating Trust and (iv) pay taxes, if any, payable by the Liquidating Trust.

(t)  To make all distributions to holders of Allowed Claims provided for or contemplated by the Plan. Resolve issues pe1taining to the retention or disposal of the Liquidating Trust's administrative and business records.

(u)  To perform any other actions or duties required to be performed by the Liquidating Trustee pursuant to the provisions of the Plan and/or Confirmation Order.

For the avoidance of doubt, and without limitation of the foregoing, the Liquidating Trustee shall explicitly have the authority to: (i) investigate, prosecute, settle, liquidate, dispose of, and/or abandon any and all Claims and Causes of Action, subject to Bankruptcy Court approval, after notice and hearing; and (ii) file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Debtor or the Liquidating Trust, and request a prompt determination of such requests; and (iii) investigate, prosecute, settle, liquidate, dispose

of, and/or abandon any and all other Claims and Causes of Action reserved in the Plan, subject to Bankruptcy Court approval, after notice and hearing.

**(e)    Corporate Action**

All actions contemplated to be performed by the Debtor pursuant to the Plan, or any corporate or partnership action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the shareholders, partners, members or managers of the Debtor.  All Persons, governmental units, title agencies, licensing agencies and offices of recordation may rely upon the authority vested in the Debtor in order to effectuate the Plan and the transactions contemplated herein.

**(f)    Costs and Expenses**

The costs and expenses of the Liquidating Trust, and the reasonable fees and expenses of the Liquidating Trustee and the Liquidating Trustee's Professionals, United States Trustee fees, shall be paid out of the Liquidating Trust Assets for the Liquidating Trust.  Those Professionals shall continue to file fee applications with the Bankruptcy Court for services provided to the Liquidating Trust and Liquidating Trustee, and all requests of Professionals retained by the Liquidating Trust for payment of fees or expenses shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Bankruptcy Court to ensure that such payment conforms to the terms of any engagement agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules.

**(g)    Compensation of the Liquidating Trustee**

The Liquidating Trustee shall be entitled to reasonable compensation at his standard hourly rates.

**(h)    Retention of Professionals**

The Liquidating Trustee may retain and compensate attorneys, accountants and other professionals (collectively, the "Professionals") to assist in his duties as Liquidating Trustee under the Plan and Liquidating Trust on such terms (including on a contingency or hourly basis) as the Liquidating Trustee deems appropriate without Bankruptcy Court approval. Without limiting the foregoing, the Liquidating Trustee may retain any Professional that represented the Debtor or other parties in interest in this Chapter 11 Case.

**(i)    Tax Consequences of Liquidating Trust**

For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as: (A) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to those Holders of Allowed Claims and Equity Interests receiving Beneficial Interests in the Liquidating Trust (the "Liquidating Trust Beneficial Interests"), followed by (B) the transfer by such Liquidating Trust

26

Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for the Liquidating Trust Beneficial Interests.

Accordingly, those Holders of Allowed Claims and Equity Interests receiving Liquidating Trust Beneficial Interests shall be treated for United States federal income tax purposes as the grantors and deemed owners of their respective share of the Liquidating Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. Notwithstanding the foregoing, (i) in the event that any portion of a Liquidating Trust is treated as a "qualified settlement fund" pursuant to Section 1.468B-1 of the Treasury Regulations, the United States federal income tax consequences shall be determined in accordance with the rules set forth in Section 468B of the Internal Revenue Code and the Treasury Regulations thereunder; and/or (ii) in the event that the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims Fund as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations, any Holders of such Disputed Claims shall, to the extent of such Disputed Claims, not be treated as having received any portion of the Liquidating Trust Assets transferred to the Liquidating Trust hereunder and shall not be deemed as grantors of the Liquidating Trust to the extent of such Disputed Claims

### (j)    Duration

The Liquidating Trust shall remain in existence and continue in full force and effect until all of the following shall have occurred: (a) the Liquidating Trust Assets have been reduced to Cash or the Liquidating Trustee has determined that it is impractical or not in the best interest of the Liquidating Trust Beneficiaries to do so; (b) all costs, expenses and obligations incurred in administering the Liquidating Trust have been paid and discharged; (c) the Liquidating Trust Assets have been distributed to the Liquidating Trust Beneficiaries in accordance with the Plan; and (d) a final report has been filed and a Final Decree closing the Chapter 11 Case has been entered; provided, however, that the Liquidating Trust shall not remain in existence more than five years from the date of the Liquidating Trust Agreement, unless extended pursuant to the terms hereof. If warranted by the facts and circumstances provided for in the Plan, and subject to the approval of the Bankruptcy Court of a motion of the Liquidating Trustee seeking an extension of the term of the Liquidating Trust as necessary to the purpose of the Liquidating Trust, then the term of the Liquidating Trust may be extended for a finite term based on the particular circumstances. Each extension must be approved by the Bankruptcy Court within six months of the beginning of the extended term with notice thereof to all Liquidating Trust Beneficiaries. Notwithstanding the foregoing, the Liquidating Trust shall in no event remain in existence for more than twenty-one years from the Effective Date.

### (k)    Indemnification

The Liquidating Trustee and the Liquidating Trustee's attorneys, employees, officers, directors, agents, representatives, and Professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such Persons and Entities may incur or may become subject to

or in connection with any action, suit, proceeding or investigation that is brought or threatened against such Persons or Entities in respect of that person's or entity's or the Liquidating Trustee's actions or inactions regarding the implementation or administration of the Plan, the Liquidating Trust or the Liquidating Trust Agreements or the discharge of their duties hereunder or thereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.

Any claim of the Liquidating Trustee and the other parties entitled to indemnification under this section, to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Liquidating Trust Assets, including but not limited to the Available Cash, or any applicable insurance coverage. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of their retained professionals regardless of whether such advice is provided in writing or verbally. Notwithstanding the foregoing, the Liquidating Trustee shall not be under any obligation to consult with his retained professionals, and his determination not to do so shall not result in the imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

**(l)    Bond**

As a condition to serving as Liquidating Trustee, the Liquidating Trustee, and any successor trustee, shall post a bond in favor of the Liquidating Trust in an amount that is not less than the amount of Cash held by the Liquidating Trust on the Effective Date, which bond shall be in substantially the same form as is required by the United States Trustee for trustees in the Southern District of Florida.

For the avoidance of doubt, the Liquidating Trust shall be responsible for all costs associated with the posting of the foregoing bond, including the premium associated with such bond. In addition, the Liquidating Trustee is hereby authorized, out of funds available from the Liquidating Trust, to obtain all reasonably necessary insurance coverage for himself and the Liquidating Trust, their agents, representatives, employees or independent contractors whether as a named insured on the policies or otherwise, including, but not limited to, coverage with respect to (a) appropriate directors and officers/trustee liability insurance,(b) any property that is or may in the future become the property of the Liquidating Trust, and (c) the liabilities, duties, and obligations of the Liquidating Trustee and the Liquidating Trust. Such bond shall be subject to discharge and release upon an appropriate motion and order from the Bankruptcy Court upon the Liquidating Trustee's resignation, death or removal, or for other cause.

**(m)    Resignation, Death or Removal**

The Liquidating Trustee may resign at any time; provided, however, that he shall file a motion with the Bankruptcy Court in connection therewith and request that a successor or replacement be appointed in accordance herewith, which motion shall be on notice to the top twenty (20) Creditors holding Allowed Claims and the Office of the United States Trustee. The Office of the United States Trustee or any party in interest, by motion filed with the Bankruptcy Court, or the Bankruptcy Court on its own order to show cause, may seek to remove the Liquidating Trustee for cause, including under Section 324 of the Bankruptcy Code, or, if Section 324 is deemed inapplicable, then for the same reasons that would otherwise suffice under Section

324, for the violation of any material provision of the Plan, or in the event the Liquidating Trustee becomes incapable of acting hereunder as a result of physical or mental disability and such physical or mental disability continues for a period in excess of thirty (30) days (except in the case of death, in which instance the procedures for replacement will begin immediately).

In the event of a resignation or removal, the Liquidating Trustee, unless he is incapable of doing so, shall continue to perform his duties hereunder until such a time as a successor is approved by a Final Order of the Bankruptcy Court. In the event the Liquidating Trustee resigns or is removed, the Liquidating Trust Beneficiaries, shall have 90 days to select a successor Liquidating Trustee by filing a motion with the Bankruptcy Court. If the Liquidating Trust Beneficiaries do not select a successor Liquidating Trustee, then the Office of the United States Trustee may file a motion with the Bankruptcy Court seeking an order directing the United States Trustee to select such successor.

**(n)    Transfer of Assets Free and Clear of all Liens, Claims and Encumbrances**

NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, THE VESTING IN AND TRANSFER OF THE LIQUIDATING TRUST ASSETS TO THE LIQUIDATING TRUST SHALL BE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OF ANY KIND WHATSOEVER.

NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, NO ASSETS OF THE DEBTOR OR THE DEBTOR'S ESTATE SHALL VEST IN THE DEBTOR OR ANY OTHER PERSON OR ENTITY FROM AND AFTER THE EFFECTIVE DATE OTHER THAN THE LIQUIDATING TRUST.

## ARTICLE V
## PRESERVATION OF CAUSES OF ACTION

**5.01    Transfer of Causes of Action**

Pursuant to the terms of the Plan, all Causes of Action are being transferred to the Liquidating Trust. On and as of the Effective Date, all Causes of Action shall be preserved and vested in the Liquidating Trust. After the Effective Date, the Liquidating Trust, through the Liquidating Trustee, will have the right to pursue, not pursue, enforce, file, settle, compromise, release, withdraw, arbitrate or litigate any Cause of Action that vests in the Liquidating Trust, provided, however, that any settlement of a Cause of Action shall require the approval of the Bankruptcy Court upon the filing of a motion and a hearing.

**5.02    No Release of Any Claim or Causes of Action**

THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSE OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUST. Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims. As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure

Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or Liquidating Trustee do not possess or do not intend to transfer to or vest any Cause of Action in the Liquidating Trustee if a particular Creditor votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Liquidating Trusts. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Liquidating Trustee, as a result of such failure, be estopped or precluded under any theory from pursuing any such Cause of Action. Nothing in the Plan operates as a release of any Cause of Action.

**5.03    Summary and Disclosure of Causes of Action**

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors and Holders of Equity Interests are advised that the Liquidating Trustee will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. Accordingly, neither a vote to accept either Plan by any Creditor or Holder of an Equity Interest nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Cause of Action following Confirmation of the Plan.

For avoidance of doubt, the Debtor and the Liquidating Trustee specifically preserve any and all claims and Causes of Action against any of the following for actions taken or omitted to be taken that caused either of the Debtor damage or harm: (i) any Holders of Equity Interests; (ii) QR Triptych, LLC; (iii) JQ Real Estate, LLC; (iv) Jesus Quintero; and (vi) ZP Investments, LLC (collectively, the "Known Targets") for the enforcement and collection of amounts owed in connection therewith to the Debtor and the avoidance of any releases provided by the Debtor or transfers of property interests of the Debtor. For the further avoidance of Doubt, the Avoidance Litigation shall be transferred to the Liquidating Trust and the Liquidating Trustee shall be substituted as plaintiff on behalf of the Debtor.

In addition to the above, the Causes of Action which are all specifically preserved under the Plan, include, without limitation, specifically the following:

i.    Any and all claims and causes of action, including Causes of Action, under state or federal law against the Known Targets , any and all present and former managers, partners (limited or general partners), directors, officers, shareholders, principals, employees, agents and affiliates of, the Debtor and of any affiliates of the Debtor, and any professionals employed by the Debtor, including accountants, auditors and lawyers, including without limitation, in any way related to, including providing aid and assistance in connection with: (i) the operation, management, funding and fund raising of the Debtor, including without limitation, breach of fiduciary duty, negligence, negligent management, fraud, civil theft, civil RICO or conspiracy, conversion, alter ego, misrepresentation, professional malpractice, corporate advantage, theft of corporate opportunities, wasting of corporate assets, equitable subordination of claims, breach of contract and federal or

state statutory claims (including securities laws violations), as well as aiding and abetting any of the above; (ii) the sale, transfer, exchange or disposition of any property of or securities in the Debtor or any of its affiliates, or any partnership interests, preferred stock, common stock or equity or similar interest or securities therein, either prior to or after the Petition Date; or (iii) the conversion, misappropriation or misapplication of property of the Debtor or any of its affiliates or any products or proceeds therefrom.

       ii.    Any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor or the Estate, whether arising before or after the Petition Date, including without limitation, those which are: (i) property of the Estate of the Debtor under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under Section 506(c) of the Bankruptcy Code; (vii) for subordination under Section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for professional malpractice against professionals employed by the Debtor; (xi) against any and all former managers, partners (limited or general partners), officers and directors of the Debtor, including for breach of fiduciary duty or improper distributions; (xii) under and pursuant to any policies of insurance maintained by the Debtor, including without limitation, the directors' and officers' liability insurance policy; (xiii) for theft of corporate opportunity; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; and (xvii) against any lender of the Debtor related in any way to the lending relationship with the Debtor, and further including but not limited to claims against any such lender for exerting excessive or unreasonable control over the Debtor, for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, for any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, or any cause of action or defense based on the negligence of such lender, for any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing; and (xviii) all claims against any Person with any connections with or to the Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, federal law or state law, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

iii.    Any and all claims and causes of action involving or in any way related to the collection of accounts receivables, notes receivables, loans receivables or other receivables owed to the Debtor; and

iv.    Any and all claims and causes of action seeking to subordinate, equitably or otherwise, Claims filed against the Estate, or to re-characterize such Claims as Equity Interests in the Debtor;

v.    The Estate shall remain open, even if the Chapter 11 Case has been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the recoveries therefrom have been received.

**5.04    Summary and Disclosure of Causes of Action**

The Liquidating Trust (a) may commence or continue in any appropriate court, tribunal or any other appropriate setting (e.g., American Arbitration Association or other arbitration association) any suit or other proceeding for the enforcement of any Cause of Action which the Debtor had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action; provided, however, that from and after the Effective Date, the Liquidating Trust shall be authorized to compromise and settle any Cause of Action or objection to a Claim upon approval by the Bankruptcy Court after notice and a hearing.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

**6.01    Manner of Cash Payments Under the Amended Plan**

Any Distribution pursuant to the Plan, to the extent posted in the United States mail, shall be deemed made when deposited by the Debtor or the Liquidating Trustee (or their respective agent(s)), as applicable, into the United States mail, or paid by wire transfer. At the option of the Debtor or the Liquidating Trustee, as applicable, any Cash payment to be made pursuant to the Plan shall be made, at the election of the Debtor or the Liquidating Trustee, as applicable, by check drawn on a domestic bank, by wire transfer, or by ACH, from a domestic bank, or other method mutually agreed upon by the holder of the Allowed Claim and the Debtor. Whenever any Distribution to be made under the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on that due date.

**6.02    Entity Making Distribution**

Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims and Allowed Equity Interests shall be made by the Debtor, if before the Effective Date, or the Liquidating Trustee if on or after the Effective Date. The Debtor and the Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of their duties, unless otherwise ordered by the Bankruptcy Court.

**6.03    Distribution Dates**

Distributions to holders of Claims and Equity Interests shall be made as provided in Articles II and III of the Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**6.04    Record Date for Distributions**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims or Equity Interests that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims or Equity Interests (as applicable) for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Debtor or Liquidating Trustee, as applicable, shall have no obligation to recognize any transfer of any Claim or Equity Interest occurring after the Record Date.  In making any Distribution with respect to any Claim or Equity Interest, the Debtor or Liquidating Trustee, as applicable, shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim or Equity Interest filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtor as of the Record Date.

**6.05    Delivery of Distributions**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims and Allowed Equity Interests shall be made by the Debtor or Liquidating Trustee, as applicable, at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim or Equity Interest filed by such holder or (b) the last known address of such holder if no proof of Claim or Equity Interest is filed or if the Debtor or Liquidating Trustee, as applicable, have not been notified in writing of a change of address.

**6.06    Undeliverable and Unclaimed Distributions**

In the event that any Distribution to any holder of an Allowed Claim or Allowed Equity Interest made by the Debtor or Liquidating Trustee, as applicable is returned as undeliverable, the Debtor or Liquidating Trustee, as applicable, shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Debtor or Liquidating Trustee, as applicable, has determined the then current address of such holder; provided, however, that all Distributions to holders of Allowed Claims or Allowed Equity Interests made by the Debtor or Liquidating Trustee, as applicable, that are unclaimed for a period of ninety (90) days after the date of the first attempted Distribution shall have its, his or her Claim or Equity Interest for such undeliverable Distribution deemed satisfied and will be forever barred from asserting any such Claim or Equity Interest against the Debtor or Liquidating Trustee, as applicable, or their property.  Any Distributions which are undeliverable

or have not been negotiated within the time set forth above shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Debtor or Liquidating Trustee, as applicable.  The Debtor or Liquidating Trustee, as applicable, shall have no further obligation to make any Distribution to the holder of such Claim or Equity Interest on account of such Claim or Equity Interest, and any entitlement of any holder of such Claim or Equity Interest to any such Distributions shall be extinguished and forever barred; provided, however, that the holder of such Claim or Equity Interest may receive future Distributions on account of such Claim or Equity Interest by contacting the Debtor or Liquidating Trustee, as applicable, at some point prior to the final Distribution.

**6.07    Compliance with Tax Requirements**

The Debtor or Liquidating Trustee, as applicable, may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims or Equity Interests; *provided*, *however*, that the Debtor or Liquidating Trustee, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims or Equity Interests without first filing a notice with the Court (and serving such notice on the holder of the Claim or Equity Interest) describing the nature and amount of the proposed withholding and providing the Creditor or holder of Equity Interest an opportunity to object.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims or Equity Interests.

The Debtor or Liquidating Trustee, as applicable, shall be authorized to collect such tax information from the holders of Claims or Equity Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan. In order to receive Distributions under the Plan, all holders of Claims or Equity Interests will need to identify themselves to the Debtor or Liquidating Trustee, as applicable, and provide all tax information the Debtor or Liquidating Trustee, as applicable, deem appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder).  The Debtor or Liquidating Trustee, as applicable, may refuse to make a Distribution to any holder of a Claim or Equity Interest that fails to furnish such information within the time period specified by the Debtor or Liquidating Trustee, as applicable, and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, provided further that, if the Debtor or Liquidating Trustee, as applicable, fail to withhold in respect of amounts received or distributable with respect to any such holder and such Debtor are later held liable for the amount of such withholding, such holder shall reimburse the Debtor or Liquidating Trustee, as applicable, for such liability.  Notwithstanding any other provision of the Plan, each holder of an Allowed Claim or Equity Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit.

**6.08    No Payments of Fractional Dollars**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under

the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

**6.09    Interests on Claims**

Except as specifically provided for in the Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims or Equity Interests and no holder of a Claim or Equity Interest shall be entitled to interest on any Claim accruing on or after the applicable Petition Date.  Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or similar charges.

**6.10    No Distribution in Excess of Allowed Amount of Claims**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

**6.11    Setoff and Recoupment**

The Debtor or Liquidating Trust, as applicable, may setoff against, or recoup from, any Claim or Equity Interest and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that such Debtor or Liquidating Trust, as applicable, or the Estate may have against the holder of such Claim or Equity Interest, but neither the failure to do so nor the allowance of any Claim or Equity Interest under the Plan shall constitute a waiver or release by the Debtor or Liquidating Trustee, as applicable, or the Estate of any right of setoff or recoupment that any of them may have against the holder of any Claim or Equity Interest.    Any such setoffs or recoupments may be challenged in Bankruptcy Court. Notwithstanding any provision in the Plan to the contrary, nothing therein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; provided, however, that such setoff or recoupment rights are timely asserted; provided further that all rights of the Debtor or Liquidating Trustee, as applicable, and the Estate with respect thereto are reserved.

**6.12    De Minimis Distributions; Charitable Donations**

Notwithstanding anything to the contrary in the Plan, the Debtor or Liquidating Trustee, as applicable, shall not be required to make a Distribution to any Creditor of holder of an Equity Interest if the dollar amount of the Distribution is less than $10 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.  On or about the time that the final Distribution is made, the Debtor or Liquidating Trustee, as applicable, may make a donation of undistributable funds as defined by Local Rule 3011-1(C)(1), in the reasonable discretion of the Debtor or Liquidating Trustee, as applicable, to the following organizations (each of which qualifies for not-for-profit status under section 501(c)(3) of the Tax Code) with undistributable funds if, in the reasonable judgment of the Debtor or Liquidating Trustee, as

applicable, the cost of calculating and making the final Distribution of the undistributable funds remaining is excessive in relation to the benefits to the or holders of Claims or Equity Interests who would otherwise be entitled to such Distributions: (i) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida; (ii) Legal Services of Greater Miami, Inc.; (iii) Dade Legal Aid- Put Something Back Program; or (iv) Miami Foundation for Mental Health, Inc.

**6.13    Withholding of Distributions**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan.  The Debtor or Liquidating Trustee, as applicable, may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the reasonable discretion of the Debtor or Liquidating Trust, as applicable, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.  The Debtor or Liquidating Trust, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims or Equity Interests without first filing a notice with the Court (and serving such notice on the holder of the Claim or Equity Interest) describing the nature and amount of the proposed withholding and providing the Creditor or holder an opportunity to object.

**6.14    Distributions in Satisfaction; Allocation**

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Equity Interests in the Debtor and their Estate, whether known or unknown, that arose or existed prior to the Effective Date.  Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest (if any).

**6.15    No Distributions on Late-Filed Claims**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in the Chapter 11 Case shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Case, without the need for (a) any further action by the Debtor or Liquidating Trustee, as applicable, (b) an order of the Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

**ARTICLE VII**
**DISPUTED CLAIMS**

**7.01    Resolution of Disputed Claims**

The Debtor or the Liquidating Trustee, as applicable, shall have the right to make and file objections to Claims or Equity Interests in the Bankruptcy Court.  Unless otherwise ordered by the

Bankruptcy Court after notice and a hearing, all Disputed Claims or Equity Interests shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

**7.02    Objection Deadline**

All objections to Disputed Claims or Equity Interests shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.

**7.03    Estimation of Claims**

At any time, the Debtor or Liquidating Trustee, as applicable, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim or Equity Interests to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Liquidating Trustee, as applicable, have previously objected to such Claim or Equity Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim or Equity Interest at any time during litigation concerning any objection to such Claim or Equity Interest, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim or Equity Interest, that estimated amount shall constitute either the Allowed amount of such Claim or Equity Interest or a maximum limitation on the Claim or Equity Interest, as determined by the Bankruptcy Court.

If the estimated amount constitutes a maximum limitation on the Claim or Equity Interest, the Debtor or Liquidating Trustee, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim or Equity Interest. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**7.04    No Distributions Pending Allowance**

Notwithstanding any other provision in the Plan, if any portion of a Claim or Equity Interest is disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim or Equity Interest unless and until such Disputed Claim or Equity Interest becomes an Allowed Claim or Allowed or Equity Interest.

To the extent that a Disputed Claim or Equity Interests ultimately becomes an Allowed Claim or Equity Interest, Distributions (if any) shall be made to the holder of such Allowed Claim or Equity Interest in accordance with the provisions of the Plan. Upon allowance, a holder of the Allowed Disputed Claim or Equity Interest shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim or Equity Interest been allowed on the Effective Date.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.01    General Treatment: Rejected if not Previously Assumed**

Within fourteen (14) days prior to the Confirmation Hearing, the Debtor shall file and serve a Notice of all contracts that it intends to assume and assign to the Liquidating Trust (the "Assumption Schedule"). Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, upon the Effective Date, all executory contracts and unexpired leases that exist between the Debtor and any Person or Entity shall be deemed rejected, unless included on the Assumption Schedule or previously assumed. The Liquidating Trustee shall have sixty (60) days from the Effective Date to supplement the Assumption Schedule and the Bankruptcy Court will determine any disputes regarding any cure or rejection damages. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumption or rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption or rejection is in the best interests of the Debtor, the Liquidating Trust, their Estate, and all parties in interest in the Chapter 11 Case.

**8.02    Bar to Claims Arising from Rejection, Termination or Expiration**

Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in herein ("**General Treatment; Rejected if not Previously Assumed**") or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtor or Liquidating Trustee, as applicable, no later than thirty (30) days after (a) the *date of the entry of any order of the Bankruptcy Court authorizing rejection*, with respect to any executory contract or unexpired lease rejected by the Debtor or otherwise pertaining to such order, or (b) *the Confirmation Date*, with respect to any executory contract or unexpired lease that is deemed rejected pursuant hereto ("**General Treatment; Rejected if not Previously Assumed**").

Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtor, or the Estate, assets, properties, or interests in property, or the Liquidating Trustee, or the Estate, assets, properties, or interests in property. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor or the Liquidating Trustee of any objections to such Claim if asserted.

**8.03    Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, the Debtor will reject all of the executory contracts and unexpired leases not listed on the Assumption Schedule.

**8.04    Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed pursuant to the Plan will include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated pursuant to the Plan or separate motion and Final Order of the Bankruptcy Court.

**8.05    Proof of Claim Based on Assumed Executory Contracts or Unexpired Leases**

Any and all proofs of claim relating to executory contracts or unexpired leases that have been assumed in the Chapter 11 Case will be deemed amended and superseded by the amount of Cure Claim identified in the Plan, the Confirmation Order or other order of the Bankruptcy Court authorizing assumption of executory contracts to the Debtor or the Liquidating Trustee.

**8.06    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

All Allowed Cure Claims will be satisfied by the Debtor by payment of the Cure in Cash to (i) holders of such Cure Claims or on the Effective Date or as soon as reasonably practicable thereafter, or (ii) on such other terms as may be either ordered by the Bankruptcy Court or agreed by the Debtor and the applicable contract counter-party without any further notice to or action, order, or approval of the Bankruptcy Court.  Any provisions or terms of executory contracts or unexpired leases to be assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the Cure, or by an agreed-upon waiver of the Cure.

**8.07    Effect of Confirmation Order**

Entry of the Confirmation Order will constitute a finding of adequate assurance of future performance by the Liquidating Trustee within the meaning of section 365 of the Bankruptcy Code.  Any objections relating to adequate assurance of future performance, or any other matters relating to the assumption and assignment of executory contracts and unexpired leases (other than Cure Claim disputes) must be asserted as an objection to confirmation of the Plan.  Assumption of any executory contract or unexpired lease pursuant to the Confirmation Order or other order of the Bankruptcy Court will limit the Claims of any such contract counter-party to the (i) Allowed Cure Claim and (ii) Claims for ongoing performance under the unexpired lease or executory contract by Reorganized Debtor pursuant to section 365(k) of the Bankruptcy Code.

**8.08    Indemnification and Reimbursement**

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtor for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtor against any Claims, costs, liabilities or causes of action as provided in the Debtor's operating agreement, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be

paid only to the extent of any applicable insurance coverage.  Nothing contained in the Plan shall affect the rights of partners, managers, directors, officers or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities or Causes of Action or limit the rights of the Debtor or the Debtor's Estate to object to or otherwise contest or challenge Claims or rights asserted by any current or former partner, manager, officer, director or employee of the Debtor.

## ARTICLE IX
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

**9.01    Conditions Precedent**

The following are conditions precedent to the Effective Date that must be satisfied or waived by the Debtor:

    i.   The Successful Bidder pursuant to the Sale Approval Order shall have been awarded to a Successful Bid that provides sufficient Sale Proceeds for the Debtor to perform under the terms proposed in this Plan;

    ii.   The Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor confirming and approving the Plan in all respects;

    iii.   There shall be no stay or injunction in effect with respect to the Confirmation Order;

    iv.   The Plan Documents shall be in a form and substance reasonably acceptable to the Debtor, and have been duly executed and delivered; provided, however, that no party to any such agreements and instruments, may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

**9.02    Waiver**

Notwithstanding the foregoing conditions, the Debtor reserves, in its sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in the Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**ARTICLE X**
**EFFECT OF CONFIRMATION; INDEMNIFICATION,**
**INJUNCTIVE AND RELATED PROVISIONS**

**10.01   Compromise and Settlement**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Equity Interests.

**10.02   Binding Effect**

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtor, Liquidating Trust, and any holder of a Claim against, or Equity Interest in, such Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted such Plan.

**10.03   Discharge of Claims**

Except as provided herein, the rights afforded in the Plan and the payments and Distributions to be made hereunder shall discharge all existing debts, Claims and Equity Interests, of any kind, nature, or description whatsoever against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided herein, upon the Effective Date, all existing Claims against and Equity Interests in the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Liquidating Trust, its successors or assignees, or any of its assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting against each Reorganized Debtor any such discharged Claim against or Equity Interest in the Debtor.

**10.04   Discharge of Debtor**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation of the Plan will not discharge Claims against the Debtor; provided, however, that no Holder of any Claim or Equity Interest may, on account of such Claim or Equity Interest, seek or receive any payment or other Distribution from, or seek recourse against, any of the Estate, the Liquidating Trust, the

Liquidating Trustee, and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

**10.05   Exculpation**

**Notwithstanding anything contained herein the contrary, Genovese Joblove & Battista, P.A. (and its respective employees, attorneys, professionals and agents) shall neither have nor incur any liability relating to the Chapter 11 Case to any Entity for any and all Claims and Causes of Action arising after the applicable Petition Date and through the Effective Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan or distributing property thereunder, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other post-petition act taken or omitted to be taken in connection with the Chapter 11 Case; provided, however, that the foregoing provisions of this Article shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, fraud or willful misconduct.**

**10.06   Limitations on Exculpation**

Nothing in the Plan shall be construed to release or exculpate any Person from, or require indemnification of any Person against losses arising from criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or limit the liability of the professionals of the Debtor to the Debtor pursuant to Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

**10.07   Injunction**

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Liquidating Trust, the Estate, and their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied pursuant to the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Liquidating Trust, the Estate, and their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtor or any of its assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order. On the Effective Date, all such Claims against, and Equity Interests in, the Debtor shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released pursuant to the Plan or Confirmation Order, from:

      i.  commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Liquidating Trust, the Estate and their successors and assigns and their assets and properties;

      ii.  enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Liquidating Trust, the Estate and their successors and assigns and their assets and properties;

      iii.  creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Liquidating Trust, the Estate and their successors and assigns and their assets and properties; and

      iv.  commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder).

### 10.08   Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate distributed under the Plan shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to the Liquidating Trust.

### ARTICLE XI
### RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Liquidating Trust, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

(i)        allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim against or Equity Interest in the Debtor, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interest;

(ii)       grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Case by the Debtor for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(iii)      resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(iv)      ensure that Distributions to holders of Allowed Claims or Equity Interests are accomplished pursuant to the provisions of the Plan, including by resolving any disputes regarding, as applicable, the Debtor's or Liquidating Trust's entitlement to recover assets held by third parties;

(v)       decide or resolve any motions, contested or litigated matters (including but not limited to any adversary proceeding) and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Liquidating Trust after the Effective Date;

(vi)      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

(vii)     issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

(viii)    enforce Articles within this Plan;

(ix)      resolve any cases, controversies, suits or disputes with respect to the injunction and other provisions contained in Article XI, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

(x)       resolve any issues or matters related to the Liquidating Trust;

(xi)      enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

44

(xii)    resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

(xiii)    enter an order and a Final Decree closing the Chapter 11 Case.

## ARTICLE XII
## RISK FACTORS IN CONNECTION WITH THE AMENDED PLAN

The holders of Claims against and Equity Interests in the Debtor should read and carefully consider the following risk factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith), before deciding whether to vote to accept or reject the Plan.  These risk factors should not, however, be regarded as constituting the only risks associated with the Plan and their implementation.

### 12.01  Business Risk

The holders of Claims should consider the following business risk factors associated with the Plan:

i.    The Plan contemplates that the will be able to sell the Property pursuant to the Sale Approval Order for a minimum sales price of $22 million.  If the Debtor is unable to secure such a transaction, either pursuant to the terms of the Sale Approval Order (as is defined in the Plan ) or otherwise, the Debtor may elect to seek dismissal or conversion of its bankruptcy case pursuant to section 1112 of the Bankruptcy Code.

ii.    The Debtor may not close on the sale of the Property; and

iii.    The Debtor may not realize the Sale Proceeds contemplated by the Waterfall Analysis if (i) a Competing Bid Contract is deemed the Successful Bidder's and the Purchase Price approved by the Bankruptcy Court is less than the Purchase Price in the Contract presently approved by the Bankruptcy Court in the Sale Approval Order [ECF No. 106] of $25,500,000; or (ii) LV Midtown is deemed to be the Successful Bidder pursuant to its 363K Bid which does not provide for a cash recovery by the Debtor; or (iii) the Surcharge Contribution from LV Midtown's collateral is not applied by the Bankruptcy Court as set forth in the Amended Plan.

### 12.02  Bankruptcy Risk

Although the Debtor believes the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

**12.03    Failure to Close on Sale of Property**

The Plan provides for the transfer of the Property to the Successful Bidder as set forth in the Sale Approval Order [ECF No. 106]. In the event that the Auction contemplated by the Sale Approval Order does not result in the sale of the Property to a Successful Bidder or Back-Up Bidder, then Debtor will not proceed with confirmation of the Plan. Additionally, the Amended Plan contemplates that the will be able to sell the Property pursuant to the Sale Approval Order for a minimum sales price of $22 million. If the Debtor is unable to secure such a transaction, either pursuant to the terms of the Sale Approval Order (as is defined below) or otherwise, the Debtor may elect to seek dismissal or conversion of its bankruptcy case pursuant to section 1112 of the Bankruptcy Code. . The Auction is currently scheduled for Wednesday, August 25. 2021 at 11:00 a.m. If the Auction results in a Purchase Price less than $22,000,000, the Debtor may elect not to proceed with the confirmation of the Plan.

**12.04    Rejection of Amended Plan**

Classes 2, 3, 4 and 5 under the Plan are the only Classes that are entitled to vote to accept or reject the Plan. If the requisite acceptances are not received by at least one Impaired Class, the Debtor will not be able to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code, because at least one Impaired Class will not have voted in favor of the Plan as required by section 1129(a)(10) of the Bankruptcy Code. In addition, the Debtor may seek to accomplish an alternative restructuring of its capitalization and obligations to creditors and obtain acceptances to an alternative plan of reorganization for the Debtor, or otherwise, the Debtor may be required to liquidate the Estate under chapter 7 or 11 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to the Debtor's creditors and equity holders as those proposed in the Plan.

**12.05    No Duty to Update Disclosures**

The Debtor has no duty to update the information contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Debtor is required to do so pursuant to an order of the Bankruptcy Court. Delivery of the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

**12.06    Representations Outside the Disclosure Statement**

This Disclosure Statement contains representations concerning or related to the Debtor and the Plan that are conditionally approved by the Bankruptcy Code and the Bankruptcy Court. Please be advised that any representations or inducements outside this Disclosure Statement and any related documents which are intended to secure your acceptance or rejection of the Plan should not be relied upon by holders of Claims that are entitled to vote to accept or reject the Plan.

**12.07   Tax and Other Related Considerations**

A discussion of potential tax consequences of the Plan is provided below; however, the content of this Disclosure Statement is not intended and should not be construed as tax, legal, business or other professional advice.  Holders of Claims and/or Equity Interests should seek advice from their own independent tax, legal or other professional advisors based on their own individual circumstances.

**ARTICLE XIII**
**MISCELLANEOUS PROVISIONS**

**13.01   Modification of Amended Plan**

Subject to the limitations contained in the Amended Plan, the Debtor reserves the right in its sole discretion, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; provided, however, that (1) any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan as required under and in accordance with Section 1127 of the Bankruptcy Code or applicable Bankruptcy Rules; and (2) after the entry of the Confirmation Order, the Liquidating Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**13.02   Revocation of Amended Plan**

The Debtor reserves the right in its sole discretion to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; and (2) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of either of the Debtor or any other Entity; or (c) constitute an admission of any sort by either of the Debtor or any other Entity.

**13.03   Binding Effect**

On the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or present or former direct or indirect holder of an Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

**13.04    Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**13.05    Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

**13.06    Reservation of Rights**

The Plan shall have no force or effect unless and until the Effective Date occurs.  Neither the filing of the Plan, any statement or provision contained therein, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

**13.07    Section 1125(e) Good Faith Compliance**

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtor and its representatives have acted in "good faith" under sections 1125(e) and 1129(a)(3) of the Bankruptcy Code.

**13.08    Further Assurances**

The Debtor, all holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**13.09    Service of Documents**

Any pleading, notice or other document required herein to be served on or delivered to the Debtor shall be sent by both email and first class, certified U.S. mail, postage prepaid as follows:

**If before the Effective Date under the Amended Plan, to:**

**AVENTURA HOTEL PROPERTIES, LLC**
c/o HES Group
Attn: Francisco Arocha
1001 S.W Second Avenue
Suite 300
Miami, Florida 33130

**GENOVESE JOBLOVE & BATTISTA, P.A.**
Attn:  Jesus M. Suarez
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Email: jsuarez@gjb-law.com

**If after the Effective Date under the Amended Plan, to:**

_____
Liquidating Trustee

**13.10    Filing of Additional Documents**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**13.11    No Stay of Confirmation Order**

The Debtor shall request that the Court waive stay of enforcement of the Confirmation Order otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 7062.

**13.12    Automatic Stay**

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Case until the Effective Date.

**ARTICLE XIV**
**CONFIRMATION REQUIREMENTS**

**14.01   Standard to Confirm a Plan**

In order for the Plan to be confirmed, the Bankruptcy Code requires that the Bankruptcy Court determine that the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code and that the disclosures concerning such Plan have been adequate and have included information concerning all payments made or promised in connection with such Plan and these Chapter 11 Case.  The Bankruptcy Code also requires that: (1) the Plan be accepted by the requisite votes of Creditors except to the extent that confirmation despite dissent is available under Bankruptcy Code section 1129(b); (2) the Plan is feasible (that is, there is a reasonable probability that the Debtor will be able to perform its obligations under its Plan without needing further financial reorganization not contemplated by such Plan); and (3) the Plan is in the "best interests" of all Creditors in that Chapter 11 Case (that is, Creditors will receive at least as much under such Plan as they would receive in a hypothetical liquidation case under chapter 7 of the Bankruptcy Code).  To confirm each such Plan, the Bankruptcy Court must find that all of the above conditions are met, unless the applicable provisions of Bankruptcy Code section 1129(b) are employed to confirm such Plan, subject to satisfying certain conditions, over the dissent or deemed rejections of Classes of Claims.

Set forth below is a summary of the relevant statutory confirmation requirements.

**(a)     Best Interest Test**

Each Holder of a Claim or Interest in an Impaired Class must either (i) accept the Plan or (ii) receive or retain under such Plan Cash or property of a value, as of the Effective Date of such Plan, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  The Bankruptcy Court will determine whether the Cash and property issued under such Plan to each Holder of a Claim or Interest equals or exceeds the value that would be allocated to such Holders in a liquidation under chapter 7 of the Bankruptcy Code (the "Best Interests Test").

**(b)     Liquidation Analysis**

For purposes of the Best Interest Test, in order to determine the amount of liquidation value available to Creditors, the Debtor has prepared a liquidation analysis (the "Liquidation Analysis"), which concludes that in a Chapter 7 liquidation, holders of pre-petition unsecured Claims would receive less of a recovery than the recovery they would receive under the Plan. This conclusion is premised upon the assumptions set forth in the Liquidation Analysis, which the Debtor believes is reasonable. The Debtor's Liquidation Analysis is attached as **Exhibit "A"** hereto.  The Debtor believes the Holders of Claims against and Equity Interests in the Debtor will have an equal or greater recovery as a result of an orderly chapter 11 liquidation as discussed herein and under the Plan than could be realized in a chapter 7 liquidation for the Debtor for the following reasons.

To determine the value that a Holder of a Claim or Interest in an Impaired Class would receive if the Debtor were liquidated under chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtor's Property if the Debtor's Chapter 11 Case had been converted to chapter 7 liquidation cases and the Debtor's Property were liquidated by a chapter 7 trustee (the "Liquidation Value").  The Liquidation Value would consist of the net proceeds from the disposition of the Debtor's Assets, augmented by Cash held by the Debtor and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 reorganization case.

As explained below, the Liquidation Value available for satisfaction of Claims and Equity Interests in the Debtor would be reduced by: (a) the costs, fees and expenses of the liquidation under chapter 7, which would include disposition expenses and the compensation of a trustee and his or her counsel and other professionals retained, (b) the fees of the chapter 7 trustee, and (c) certain other costs arising from conversion of the Chapter 11 Case to chapter 7.  Here, the Debtor believes that Holders of Allowed General Unsecured Claims will clearly benefit from the reorganization of the Debtor under the terms of the Plan.

Moreover, under the Plan, the Debtor will avoid the increased costs and expenses of a chapter 7 liquidation, including the fees payable to a chapter 7 trustee and his or her professionals. The Cash to be distributed to Creditors would be reduced by the chapter 7 trustee's statutory fee, which is calculated on a sliding scale from which the maximum compensation is determined based on the total amount of moneys disbursed or turned over by the chapter 7 trustee.  Bankruptcy Code § 326(a) permits reasonable compensation not to exceed 3% of the proceeds in excess of $1 million distributable to creditors.[6]  The chapter 7 trustee's professionals, including legal counsel and accountants, would add substantial administrative expenses that would be entitled to be paid ahead of Allowed Claims and Equity Interests against the Debtor. These chapter 7 trustee fees would reduce the funds available for distribution to the Debtor's Creditors from additional recoveries such as preferential payments, expunged Administrative Expense Claims and the proceeds of successful Estate litigation or settlement.

It is also anticipated that a chapter 7 liquidation would result in a significant delay in payments being made to Creditors.  Bankruptcy Rule 3002(c) provides that conversion of a chapter 11 case to chapter 7 will trigger a new bar date for filing claims against the Debtor, and that the new bar date will be 90 days after the first date set for the meeting of creditors called under section 341 of the Bankruptcy Code.  Not only would a chapter 7 liquidation delay distribution to Creditors, but it is possible that additional claims that were not asserted in the Chapter 11 Case, or were late-filed, could be filed against the Debtor.  Reopening the bar date in connection with conversion to chapter 7 would provide these and other claimants an additional opportunity to file claims against the Estate.

---

[6] Bankruptcy Code § 326(a) permits a chapter 7 trustee to receive 25% of the first $5,000 distributed to creditors, 10% of additional amounts up to $50,000, 5% of additional distributions up to $1 million and reasonable compensation up to 3% of distributions in excess of $1 million.

For the reasons set forth above, the Debtor believes that the Plan provides a superior recovery for Holders of Claims and Interests, and the Plan meet the requirements of the Best Interests Test.

### (c)    Feasibility

In connection with confirmation of the Plan, the Bankruptcy Court will be required to determine that the Plan is feasible pursuant to Section 1129(a)(11) of the Bankruptcy Code. Therefore, even if the Plan is accepted by each Class of Claims and Interests voting on the Plan, and even if the Bankruptcy Court determines that the Plan satisfy the Best Interests Test, the Bankruptcy Code requires that, in order for the Plan to be confirmed by the Bankruptcy Court, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

The Plan proposes the liquidation of the Debtor and a wind down of its business and operational affairs.  The Plan is feasible provided the Debtor realizes approximately the Sale Proceeds contemplated in the Plan and in the Liquidation Analysis. Accordingly, the Debtor believes that the Plan complies with the financial feasibility standard of Section 1129(a)(11) of the Bankruptcy Code.

### (d)    Acceptance by Impaired Class

Bankruptcy Code § 1129(b) provides that a plan can be confirmed even if it has not been accepted by all impaired classes as long as at least one impaired class of claims has accepted it. The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown."  The Bankruptcy Court may confirm the Plan at the request of the Debtor notwithstanding either the Plan's rejection (or deemed rejection) by impaired classes as long as such Plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted it.  A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to classes of equal rank.

A class of claims under a plan accepts the plan if the plan is accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims in the class that actually vote on the plan.  A class of interests accepts the plan if the plan is accepted by holders of interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan.

A class that is not "impaired" under a plan is conclusively presumed to have accepted the plan.  Solicitation of acceptances from such a class is not required.  A class is "impaired" unless (i) the legal, equitable and contractual rights to which a claim or interest in the class entitles the holder are not modified, or (ii) the effect of any default is cured and the original terms of the obligation are reinstated.

A plan is fair and equitable as to a class of secured claims that rejects the plan if the plan provides (i)(a) that the holders of claims included in the rejecting class retain the liens securing those claims, whether the property subject to those liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and (b) that each holder of a claim of such class receives on account of that claim deferred cash payments totaling at least the

allowed amount of that claim, of a value, as of the effective date of the plan, at least equal to the value of the holder's interest in the estate's interest in such property; (ii) for the sale, subject to Bankruptcy Code § 363(k), of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of the liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under clause (i) or (ii) of this paragraph; or (iii) for the realization of the indubitable equivalent of such claims.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides (i) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (ii) that the holder of any claim or interest that is junior to the claims of such rejecting class will not receive or retain on account of such junior claim or interest any property at all.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (i) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (ii) that the holder of any interest that is junior to the interest of such rejecting class will not receive or retain under the plan on account of such junior interest any property at all.  The Debtor believes the Plan to be both fair and equitable.

## ARTICLE XV
## ALTERNATIVES TO THE AMENDED PLAN

In the event the Plan is not confirmed or consummated, then the alternatives are as follows:

### 15.01  Liquidation Pursuant to Chapter 7 of the Bankruptcy Code

The Debtor could be liquidated under chapter 7 of the Bankruptcy Code.  The Debtor believes that liquidation would result in lower aggregate distributions being made to creditors than those provided for in the Plan, which is demonstrated by the Liquidation Analysis discussed above and attached as Exhibit "A" to the Disclosure Statement.

### 15.02  Alternative Amended Plan of Liquidation

The Debtor believes that failure to confirm the Plan will lead inevitably to an expensive and protracted Chapter 11 Case.  In formulating and developing the Plan, the Debtor have explored numerous other alternatives and engaged in an extensive negotiating process with LV Midtown.

The Debtor believes that not only does the Amended Plan fairly adjust the rights of various Classes of Claims, but also that the Amended Plan provides superior recoveries to the Debtor's creditors over any alternative capable of rational consideration (such as a chapter 7 liquidation), thus enabling many stakeholders to maximize their returns.  Rejection of the Plan in favor of some alternative method of reconciling the Claims and Interests will require, at the very least, an extensive and time consuming process (including the possibility of protracted and costly litigation) and will not result in a better recovery for any Class of Claims or Interests.

THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY ALTERNATIVE BECAUSE THE PLAN MAXIMIZES THE AMOUNT OF DISTRIBUTIONS TO ALL HOLDERS OF CLAIMS AND INTERESTS AND ANY ALTERNATIVE TO CONFIRMATION OF THE PLAN WILL RESULT IN SUBSTANTIAL DELAYS IN THE DISTRIBUTION OF ANY RECOVERIES. **THEREFORE, THE DEBTOR RECOMMENDS THAT ALL HOLDERS OF IMPAIRED CLAIMS ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

**15.03   Dismissal of the Chapter 11 Case**

Dismissal of the Debtor's Chapter 11 Case would have the effect of restoring (or attempting to restore) all parties to the status quo ante. Upon dismissal of the Debtor's Chapter 11 Case, the Debtor would lose the protection of the Bankruptcy Code, thereby requiring, at the very least, an extensive and time consuming process of negotiation with the creditors of the Debtor, and possibly resulting in costly and protracted litigation in various jurisdictions. The Debtor believes that these actions would seriously undermine its ability to obtain financing and could lead ultimately to the liquidation of the Debtor under chapter 7 of the Bankruptcy Code. Therefore, the Debtor believes that dismissal of the Debtor's Chapter 11 Case is not a viable alternative to the Plan.

**ARTICLE XVI**
**CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE AMENDED PLAN**

The following discussion summarizes certain federal income tax consequences expected to result from the consummation of the Plan. This discussion is only for general information purposes and only describes the expected tax consequences to Holders entitled to vote on the Plan. It is not a complete analysis of all potential federal income tax consequences and does not address any tax consequences arising under any state, local or foreign tax laws or federal estate or gift tax laws. This discussion is based on the Internal Revenue Code of 1986, as amended, Treasury Regulations promulgated thereunder, judicial decisions, and published rulings and administrative pronouncements of the IRS, all as in effect on the date of the Disclosure Statement. These authorities may change, possibly retroactively, resulting in federal income tax consequences different from those discussed below. No ruling has been or will be sought from the IRS, and no legal opinion of counsel will be rendered, with respect to the matters discussed below. There can be no assurance that the IRS will not take a contrary position regarding the federal income tax consequences resulting from the consummation of the Plan or that any contrary position would not be sustained by a court.

This discussion does not address all federal income tax considerations that may be relevant to a particular Holder in light of that Holder's particular circumstances or to Holders subject to special rules under the federal income tax laws, such as financial institutions, insurance companies, brokers, dealers or traders in securities, commodities or currencies, tax-exempt organizations, tax-qualified retirement plans, partnerships and other pass-through entities, foreign corporations, foreign trusts, foreign Estate, Holders who are not citizens or residents of the U.S., Holders subject to the alternative minimum tax, and Holders who have a functional currency other than the U.S. dollar.

HOLDERS SHOULD CONSULT THEIR TAX ADVISORS REGARDING THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO THEM OF THE CONSUMMATION OF THE PLAN, AS WELL AS ANY TAX CONSEQUENCES ARISING UNDER ANY STATE, LOCAL OR FOREIGN TAX LAWS, OR ANY OTHER FEDERAL TAX LAWS.

**TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (a) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THE DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY ANY TAXPAYER, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (b) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN, AND (c) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

Payments of interest, dividends and certain other payments are generally subject to backup withholding at the applicable withholding rate unless the payee of such payments furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor. The Debtor may be required to withhold the applicable percentage of any payments made to a Holder who does not provide his, her or its taxpayer identification number. Backup withholding is not an additional tax, but an advance payment that may be refunded to the taxpayer by the IRS to the extent that the backup withholding results in an overpayment of tax by such taxpayer in such taxable year.

In accordance with the Plan, each Holder of an Allowed General Unsecured Claim against the Debtor shall be entitled to receive his, her or its Distributions under the Plan. Each Holder of an Allowed General Unsecured Claim may recognize gain or loss upon receipt of such Distributions equal to the difference between the "amount realized" by such Creditor and such Creditor's adjusted tax basis in his, her or its Claim. The amount realized is equal to the value of such Creditor's Distributions. Any gain or loss realized by an Unsecured Creditor should constitute ordinary income or loss to such creditor unless such Claim is a capital asset in the hands of such Unsecured Creditor. If a Claim is a capital asset and it has been held for more than one year, such Creditor may realize long-term capital gain or loss.

The federal income tax consequences to such Creditors may differ and will depend on factors specific to each such Creditor, including, but not limited to: (i) whether the Creditor's Claim (or a portion thereof) constitutes a Claim for principal or interest, (ii) the origin of the Creditor's Claim, (iii) the type of consideration received by the Creditor in exchange for the Claim, (iv) whether the Creditor is a United States person or a foreign person for United States federal income tax purposes, (v) whether the Creditor reports income on the accrual or cash basis method, and (vi) whether the Creditor has taken a bad debt deduction or otherwise recognized a loss with respect to the Claim.

**THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCES TO EACH SUCH CREDITOR OR EQUITY INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN IS COMPLEX AND IN**

**SOME CASES UNCERTAIN.   THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR AND EQUITY INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN**

THE FOREGOING DISCUSSION OF FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. EACH HOLDER SHOULD CONSULT ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN.   NEITHER THE DEBTOR NOR ITS PROFESSIONALS WILL HAVE ANY LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.

## ARTICLE XVII
## CONCLUSION

The Debtor believes that confirmation and implementation of the Plan is preferable because they will provide the greatest recovery to Holders of Claims and Equity Interests.   Other alternatives do not include the Investment Guarantee Amount or the Exit Financing, and could involve significant delay, uncertainty and substantial administrative costs and are likely to reduce any return to creditors who hold Claims and holders of Equity Interests. The Debtor urges the Holders of Claims and Equity Interests who are entitled to vote on the Plan to vote to accept the Plan.

**Dated: August 16, 2021**

**AVENTURA HOTEL PROPERTIES, LLC**

By:   /s/ Francisco Arocha
  Name:  Francisco Arocha
  Title:    Manager

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Counsel for Aventura Hotel Properties, LLC,*
*the Debtor-in-Possession*
100 SE 2nd Street, 44th Floor
Miami, FL 33131-2100
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:   /s/  *Jesus M. Suarez*
    Jesus M. Suarez
    Fla. Bar No. 60086
    jsuarez@gjb-law.com
    John H. Genovese
    Fla. Bar No. 280852
    jgenovese@gjb-law.com
    Barry P. Gruher
    Fla. Bar No. 960993
    bgruher@gjb-law.com

**EXHIBIT A- LIQUIDATION ANALYSIS**

**In re Aventura Hotel Properties, LLC**
Chapter 11 Liquidation Analysis

| | | | |
|---|---|---|---|
| $ | 22,000,000.00 | | **Sale Proceeds** |
| $ | (330,000.00) | | Broker Fee |
| $ | (15,000.00) | | Broker Expenses (Estimated) |
| $ | (267,800.00) | | Document Stamps - Subject to Section 1146 Recovery |
| $ | (646,177.92) | | **Class 1 Secured Real Estate Tax Claim (Estimate)** |
| | | $ 218,890.50 | 2019 Tax Certificates ( 2019 Estimated) |
| | | $ 206,715.50 | 2020 Taxes |
| | | $ 220,571.92 | 2021 Taxes (Estimate) |
| $ | (20,500,000.00) | | **Class 2 Secured Claim  of LV Midtown** |
| $ | 241,022.08 | | **Gross Cash from Sale Proceeds** |
| $ | 800,000.00 | | Surcharge Contribution from LV Midtown |
| $ | (205,000.00) | | -US Trustee Fees |
| $ | (250,000.00) | | -Debtor's Attorneys Fees (Net Estimate) |
| $ | 267,800.00 | | Section 1146(a) Recovery |
| | Unknown | | QR Triptych Surcharge |
| $ | 853,822.08 | | **Available Cash** |
| | | | Cash Subject to Avoidance Litigation / |
| | | $ 241,022.08 | Class 3 Disputed Secured Claim of QR Triptych |
| $ | 800,000.00 | | Surcharge Contribution |
| $ | (205,000.00) | | -US Trustee Fees |
| $ | (250,000.00) | | -Debtor's Attorneys Fees (Net Estimate) |
| $ | 267,800.00 | | Section 1146(a) Recovery |
| $ | 612,800.00 | | **Unencumbered Cash** |

| | | |
|---|---|---|
| $ | 4,759,570.00 | Class 5 General Unsecured Claims (Subject to Reconciliation) |
| | Unknown | Proceeds from Litigation Claims |
| | 13% | Projected  Recovey to Class 5 GUC's from Unencumbered Cash |

**In re Aventura Hotel Properties, LLC**
Chapter 7 Liquidation Analysis

| | | | |
|---|---:|---:|---|
| $ | 22,000,000.00 | | **Sale Proceeds** |
| $ | (660,000.00) | | Broker Fee (Est 3%) |
| $ | (25,000.00) | | Broker Expenses (Estimated) |
| $ | (267,800.00) | | Document Stamps |
| $ | (646,177.92) | | **Class 1 Secured Real Estate Tax Claim (Estimate)** |
| | | $ 218,890.50 | 2019 Tax Certificates ( 2019 Estimated) |
| | | $ 206,715.50 | 2020 Taxes |
| | | $ 220,571.92 | 2021 Taxes (Estimate) |
| $ | (20,500,000.00) | | **Class 2 Secured Claim  of LV Midtown** |
| $ | (98,977.92) | | **Gross Cash from Sale Proceeds** |
| $ | - | | Surcharge Contribution from LV Midtown |
| $ | (698,250.00) | | -Chapter 7 Trustee Fees (Max) |
| $ | (150,000.00) | | -Chapter 7 Professional Fees |
| $ | (250,000.00) | | -Chapter 11 Admin Fees (Subordinated to Ch 7 Fees) |
| $ | - | | Section 1146(a) Recovery |
| $ | - | | QR Triptych Surcharge |
| $ | (1,197,227.92) | | **Available Cash** |
| | | | Cash Subject to Avoidance Litigation / |
| | | $ (1,197,227.92) | Class 3 Disputed Secured Claim of QR Triptych |
| $ | - | | **Unencumbered Cash** |

| | | |
|---|---:|---|
| $ | 4,759,570.00 | Class 5 General Unsecured Claims (Subject to Reconciliation) |
| | Unknown | Proceeds from Litigation Claims |
| | 0% | Projected  Recovey to Class 5 GUC's from Unencumbered Cash |