**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | **Chapter 11** |
| **AVENTURA HOTEL PROPERTIES, LLC,** | **Case No. 21-12374-BKC-RAM** |
| **TRIPTYCH MIAMI HOLDINGS, LLC,** | **Case No. 21-12375-BKC-RAM** |
| **Debtors.** | **Jointly Administered Under** |
| _____/ | **Case No. 21-12374-BKC-RAM** |

**NOTICE OF FILING**

**PLEASE TAKE NOTICE** that Aventura Hotel Properties, LLC ("AHP" or the

"Debtor"), by and through counsel, hereby files the redline copies of the *First Amended Chapter*

*11 Plan of Liquidation Proposed by Aventura Hotel Properties, LLC* [ECF No. 115] attached

hereto as **Exhibit A** and *Disclosure Statement in Support of First Amended Chapter 11 Plan of*

*Liquidation Proposed by Aventura Hotel Properties, LLC* [ECF No. 116] attached hereto as

**Exhibit B.**

Dated this 16th day of August, 2021.

Respectfully Submitted,

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Counsel for the Debtor-in-Possession*
100 SE 2nd Street, 44th Floor
Miami, FL 33131-2100
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:   /s/  *Jesus M. Suarez*
Jesus M. Suarez, Esq.
Fla. Bar No. 60086
jsuarez@gjb-law.com
Barry P. Gruher, Esq.
Fla. Bar No. 960993
bgruher@gjb-law.com

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a copy of the foregoing Notice was served via CM/ECF

Notification to all parties registered to receive electronic service on the 16<u>th</u> day of August, 2021.

By:   <u>/s/  *Jesus M. Suarez*        </u>
Jesus M. Suarez, Esq.
Fla. Bar No. 60086
jsuarez@gjb-law.com
Barry P. Gruher, Esq.
Fla. Bar No. 960993
bgruher@gjb-law.com

# **<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:                                                     Chapter 11

**AVENTURA HOTEL PROPERTIES, LLC,**          **Case No. 21-12374-BKC-RAM**
**TRIPTYCH MIAMI HOLDINGS, LLC,**            **Case No. 21-12375-BKC-RAM**

            **Debtors.**                              **Jointly Administered Under**
_____/        **Case No. 21-12374-BKC-RAM**


**FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION**
**PROPOSED BY AVENTURA HOTEL PROPERTIES, LLC**

GENOVESE JOBLOVE & BATTISTA, P.A.
Jesus M. Suarez
Fla. Bar No. 60086
jsuarez@gjb-law.com
John H. Genovese
Fla. Bar No. 280852
jgenovese@gjb-law.com
Barry P. Gruher
Fla. Bar No. 960993
bgruher@gjb-law.com
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310


*Counsel for Debtor-in-Possession*
*Aventura Hotel Properties, LLC*

Dated: August 11,16, 2021

**TABLE OF CONTENTS**

ARTICLE I.        DEFINED TERMS AND RULES OF INTERPRETATION...............1
   A.    Defined Terms..................................................1
   B.    Rules of Interpretation..............................~~10~~11
   C.    Exhibits...........................................~~10~~11

ARTICLE II.       ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY CLAIMS AND UNITED STATES TRUSTEE FEES............11
   A.    Administrative Claims..........................................11
   B.    Professional Fee Claims.........................~~11~~12
   C.    Priority Tax Claims.............................~~11~~12
   D.    Statutory Fees.................................~~11~~12

ARTICLE III.      CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN.................~~12~~13
   A.    Summary of Classes Under the Plan...............~~12~~13
   B.    Classification and Treatment of Claims and Equity Interests.........~~13~~14

ARTICLE IV.       ACCEPTANCE, REJECTION, AMENDMENT AND REVOCATION OR WITHDRAWAL OF THE PLAN.....................~~16~~17
   A.    Classes Entitled to Vote........................~~16~~17
   B.    Acceptance by Class of Claims...................~~16~~17
   C.    Nonconsensual Confirmation......................~~17~~18
   D.    Revocation or Withdrawal; No Admissions.........~~17~~18
   E.    Amendment of Plan Documents.....................~~17~~18
   F.    Special Provision Governing Unimpaired Claims.................18

ARTICLE V.        MEANS FOR IMPLEMENTATION OF THE PLAN.................18
   A.    Creation and Vesting..........................................18
   B.    Execution and Implementation....................~~18~~19
   C.    Liquidating Trust Assets.....................................19
   D.    Liquidating Trustee.............................~~19~~20
   E.    Powers of Liquidating Trustee...................~~19~~20
   F.    Corporate Action................................~~20~~22
   G.    Costs and Expenses..............................~~21~~22
   H.    Compensation of Liquidating Trustee.............~~21~~22

I.      Retention of Professionals .................................................................... 2123

J.      Tax Consequences of Liquidating Trust .............................................. 2123

K.      Duration ................................................................................................ 2223

L.      Indemnification .................................................................................... 2224

M.     Bond ...................................................................................................... 2324

N.      Resignation, Death or Removal ........................................................... 2325

O.      Preservation of Causes of Action ........................................................ 2425

P.      Prosecution and Settlement of Causes of Action ................................ 2526

ARTICLE VI.      PROVISIONS GOVERNING DISTRIBUTIONS ............................ 2526

A.      Manner of Cash Payments Under the Plan .......................................... 2526

B.      Entity Making Distributions ................................................................ 2527

C.      Distribution Dates ................................................................................ 2527

D.      Record Date for Distributions ............................................................. 2527

E.      Delivery of Distributions ..................................................................... 2627

F.      Undeliverable and Unclaimed Distributions ....................................... 2627

G.      Compliance with Tax Requirements .................................................... 2628

H.      No Payments of Fractional Dollars ..................................................... 2729

I.      Interest on Claims ................................................................................ 2729

J.      No Distribution in Excess of Allowed Amount of Claim .................... 2829

K.      Setoff and Recoupment ........................................................................ 2829

L.      De Minimis Distributions; Charitable Donation .................................. 2829

M.     Withholding from Distributions ........................................................... 2830

N.      Distributions in Satisfaction; Allocation ............................................ 2930

O.      No Distributions on Late-Filed Claims ............................................... 2930

ARTICLE VII.     DISPUTED CLAIMS .......................................................................... 2931

A.      Resolution of Disputed Claims ............................................................ 2931

B.      Objection Deadline .............................................................................. 2931

C.      Estimation of Claims ........................................................................... 3031

D.      No Distributions Pending Allowance .................................................. 3031

ARTICLE VIII.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
                 LEASES ................................................................................................ 3032

A.      General Treatment:  Rejected if not Previously Assumed ................... 3032

B.      Bar to Claims Arising from Rejection, Termination or Expiration ...... 3132

| | | |
|---|---|---|
| C. | Assumption of Executory Contracts and Unexpired Leases | ~~31~~33 |
| D. | Indemnification and Reimbursement | ~~32~~34 |
| ARTICLE IX. | CONDITIONS PRECEDENT TO THE EFFECTIVE DATE | ~~33~~34 |
| A. | Conditions Precedent | ~~33~~34 |
| B. | Waiver | ~~33~~34 |
| ARTICLE X. | EFFECT OF CONFIRMATION; INDEMNIFICATION, INJUNCTIVE AND RELATED PROVISIONS | ~~33~~35 |
| A. | Compromise and Settlement | ~~33~~35 |
| B. | Binding Effect | ~~34~~35 |
| C. | Discharge of Claims | ~~34~~35 |
| D. | No Discharge of the Debtor | ~~34~~36 |
| E. | Exculpation | ~~34~~36 |
| F. | Limitations on Exculpation and Releases | ~~35~~36 |
| G. | Injunction | ~~35~~36 |
| H. | Release of Liens | ~~36~~37 |
| ARTICLE XI. | RETENTION OF JURISDICTION | ~~36~~38 |
| ARTICLE XII. | MISCELLANEOUS PROVISIONS | ~~37~~39 |
| A. | Modification of Plan | ~~37~~39 |
| B. | Revocation of Plan | ~~38~~39 |
| C. | Binding Effect | ~~38~~39 |
| D. | Successors and Assigns | ~~38~~40 |
| E. | Governing Law | ~~38~~40 |
| F. | Reservation of Rights | ~~39~~40 |
| G. | Section 1125(e) Good Faith Compliance | ~~39~~40 |
| H. | Further Assurances | ~~39~~40 |
| I. | Service of Documents | ~~39~~41 |
| J. | Filing of Additional Documents | ~~39~~41 |
| K. | No Stay of Confirmation Order | ~~39~~41 |
| L. | Bankruptcy Rule 9019 Request; Impact | ~~40~~41 |
| M. | Automatic Stay | ~~40~~41 |

Exhibit 1 – Form of Liquidating Trust Agreement

## FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Aventura Hotel Properties, LLC (the "Debtor") proposes this First Amended *Chapter 11 Plan of Liquidation*[1] (and including all Plan Documents and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference and are a part of the "Amended Plan" or "Plan"), pursuant to the provisions of chapter 11 of the Bankruptcy Code (as defined in Article I.A herein ("Defined Terms")). Pursuant to the terms of this Plan, the Debtor will transfer the Property, its principal asset, to the Success Bidder determined under the Sale Approval Order under Section 363 of the Bankruptcy Code.

**The Plan is subject to the Debtor successfully consummating a sale of its principal asset, an acre of land in Miami Dade County, Florida. In order for the Debtor to successfully confirm this Plan and comply with its present obligations to senior lender LV Midtown, LLC, it must sell the property for at least $22 million. If the Debtor is unable close on such a transaction, or otherwise renegotiate the terms of the LV Settlement Agreement (as defined below), either pursuant to the Sale Approval Order (as defined below) or otherwise, the Debtor may instead elect to seek dismissal or conversion of its bankruptcy case pursuant to Section 1112 of the Bankruptcy Code.**

On August 11, 2021, the Debtor proposed its initial Plan of Liquidation [ECF No. 109] (the "Initial Plan"). The Initial Plan contemplated a sale of the property for $25.5 million pursuant to a sales contract with Integra Real Estate, LLC ("Integra"). On August 13, 2021, Integra terminated the contract, thefore requiring an amendment to the Initial Plan.

For a discussion of the Debtor's history, business, operations, assets and liabilities, for a summary and analysis of the Plan, preservation of Causes of Action, risk factors, liquidation analysis, tax implications and alternatives to the Plan, reference should be made to the *Disclosure Statement for Chapter 11 Plan of Liquidation Proposed by Aventura Hotel Properties, LLC,* dated August 11, 2021, as such disclosure statement may be amended, modified or supplemented (the "Disclosure Statement").

**ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THE PLAN AND THE DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3018 AND IN THIS PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

---

[1]  All capitalized terms not otherwise defined herein shall be subject to the definition of such capitalized terms in Article I.A. hereof.

# ARTICLE I.
## DEFINED TERMS AND RULES OF INTERPRETATION

**A.      Defined Terms**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

(1)      *"Administrative Claims"* means: (A) Claims that have been timely filed before the date provided by any other separate order of the Bankruptcy Court, for costs and expenses of administration under sections 365(d)(3), 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including, without limitation: the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the businesses of the Debtor (such as wages, salaries or commissions for services and payments for goods and other services and leased premises); and (B) the actual and necessary costs and expenses incurred in the ordinary course by the Debtor after the Petition Date of preserving the Estate that are entitled to priority under sections 365(d)(3), 503(b) and/or 507(a)(2) of the Bankruptcy Code.  Any fees or charges assessed against the Estate of the Debtor under section 1930 of chapter 123 of title 28 of the United States Code are excluded from the definition of Administrative Claim and shall be paid in accordance with Article II.D (the "United States Trustee Fees") of this Plan.  Notwithstanding anything to the contrary herein, the filing of an Administrative Claim shall not be required in order to receive payment for any tax liability described in sections 503(b)(1)(B) and (C) in accordance with section 503(b)(1)(D) of the Bankruptcy Code.  For avoidance of doubt, Professional Fee Claims shall not constitute Administrative Claims.

(2)      *"Affiliate"* means, any Person that is an "affiliate" of the Debtor within the meaning of section 101(2) of the Bankruptcy Code.

(3)      *"Allowed"* means, with respect to any Claim against the Debtor, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtor in its Schedules filed in the Chapter 11 Case as other than disputed, contingent or unliquidated and as to which the Debtor or other party-in-interest has not filed an objection by the Claims Objection Bar Date; (b) a Claim filed in the Chapter 11 Case and that either is not Disputed or has been allowed by a Final Order; or (c) a Claim filed in the Chapter 11 Case that is allowed: (i) in any stipulation of amount and nature of Claim executed prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation or written agreement with Debtor of the amount and nature of Claim executed on or after the Effective Date; or (iii) in or pursuant to any contract, instrument or other agreement entered into or assumed in connection herewith; (d) a Claim that is allowed pursuant to the terms of this Plan; or (e) a Disputed Claim that the Debtor ultimately determines will not be objected to (such claim being deemed Allowed at the time such determination is made).

(4)      *"Assets"* means all assets of the Debtor's Estate including "property of the estate" as described in section 541 of the Bankruptcy Code, including Cash, Causes of Action, securities, proceeds of insurance and insurance policies, all rights and interests in all real and personal property, and all files, books and records of the Debtor's Estate, including documents that are subject to any applicable privilege.

(5)       "*Available Cash*" means the Sale Proceeds received under this Plan from the transfer of the Property at the Closing as contemplated by the Sale Approval Order net of (i) ordinary and customary closing costs; (ii) the Secured Real Estate Tax Claims securing the Class 1 Claim; and (iii) the Allowed Secured Claim of LV Midtown securing the Class 2 Claim.

(6)       "*Avoidance Litigation*" means the adversary proceeding filed by the Debtor and Triptych Debtor against QR Triptych, LLC and JQ Real Estate, LLC.  See Adv. Case No. 21-12374-RAM.  The Avoidance Litigation was filed to avoid certain inequitable transactions made for the benefit of QR Triptych - a former equity investor in the Triptych Debtor– that were paid from the assets of Debtor AHP.  In summary, Debtors seek to avoid (i) $2.2 million transferred by Debtor AHP to Defendant JQRE (an entity related to QR Triptych and to which the Debtors were not indebted); (ii) $3 million transferred by Debtor AHP to Defendant QR Triptych on account of its equity in Debtor TMH; and (iii) the incurrence by Debtor AHP of an $8.2 million subordinated mortgage in favor of Defendant QR Triptych in exchange for nothing of value to Debtor AHP. The Debtors also objected to QR Triptych's filed proof of claim and seek mandatory and equitable subordination.

(7)       "*Bankruptcy Code*" means Articles 101 *et seq.* of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

(8)       "*Bankruptcy Court*" means the United States Bankruptcy Court for the Southern District of Florida, Miami Division.

(9)       "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, promulgated under 28 U.S.C. § 2075, the Local Rules of the Bankruptcy Court, and general orders and chambers procedures of the Bankruptcy Court, each as applicable to the Chapter 11 Case and as amended from time to time.

(10)      "*Bar Date Order*" means that certain *Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors & Deadlines* dated as of March 15, 2021 [ECF No. 1], establishing May 21, 2021 as the general bar date for filing proofs of Claim in the Chapter 11 Case and September 8, 2021 as the bar date for governmental units to file a proof of Claim.

(11)      "*Books and Records*" means all books and records of the Debtor, including, without limitation, all documents and communications of any kind, whether physical or electronic.

(12)      "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as that term is defined in Bankruptcy Rule 9006(a)).

(13)      "*Broker*" means John K. Crotty and firm of Avison Young – Florida, LLC, retained pursuant to Order of the Bankruptcy Court  [ECF No. 53].

(14)      "*Broker Fee*" means Sales Proceeds due as compensation to Broker pursuant to the Listing Agreement [ECF No. 41 at Ex. A] approved by the Bankruptcy Court [ECF No. 53].

(15)      "*Cash*" means cash and cash equivalents in certified or immediately available U.S. funds, including but not limited to bank deposits, checks and similar items.

(16)    **"*Causes of Action*"** means (i) the Avoidance Litigation; and (ii) all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims and cross claims (including, without limitation, all claims and causes of action that constitute property of the estate under Section 541 of the Bankruptcy Code, all claims and any avoidance, preference, recovery, subordination or other actions against Creditors, insiders and/or any other entities under the Bankruptcy Code, and any and all state and common law claims for breach of fiduciary duty against directors, officers and/or managers solely to the extent such directors, officers and/or managers served in such capacity prior to the Effective Date) against any Person or Entity, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date, including, but not limited to, any action under sections 502, 506, 510, 522(f), 522(h), 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan or any previous Order of the Bankruptcy Court), including the Debtor's rights of setoff, recoupment, contribution, reimbursement, subrogation or indemnity (as those terms are defined by the non-bankruptcy law of any relevant jurisdiction) and any other direct or indirect claim of any kind whatsoever, whenever and wherever arising or asserted.

(17)    **"*Chapter 11 Case*"** means the chapter 11 case commenced when the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date.

(18)    **"*Claim*"** means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured; or (c) any other claim, as such term is defined in section 101(5) of the Bankruptcy Code.

(19)    **"*Claims Objection Bar Date*"** means the bar date for objecting to proofs of Claim as established by order of the Bankruptcy Court; provided, however, that the Debtor or the Liquidating Trustee, as applicable, may seek additional extensions of this date from the Bankruptcy Court, with notice only to those parties entitled to notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.  A party requesting to extend the Claims Objection Bar Date may specify which entities may benefit from such an extension.

(20)    **"*Class*"** means a category of holders of Claims or Equity Interests as set forth in Article III herein and pursuant to section 1122(a) of the Bankruptcy Code.

(21)    **"*Class A Beneficial Interests*"** means those certain Class A beneficial interests in the Liquidating Trust to be issued to the Holders of the Allowed General Unsecured Claims representing the right to Distributions from the proceeds of the Liquidating Trust Assets, which Class A beneficial interests shall not be certificated, but shall have priority for all purposes to Distributions over the Class B Beneficial Interests.

(22)    **_Class B Beneficial Interests_**" means those certain Class B beneficial interests in the Liquidating Trust to be issued to the Holders of Allowed Equity Interests representing the right to Distributions from the proceeds of the Liquidating Trust Assets, which Class B beneficial interests shall not be certificated, but shall be subordinated in all respects to the payment in full of all Allowed General Unsecured Claims represented by the Class A Beneficial Interests.

(23)    **_Closing_**" means the transfer by the Debtor of the Property to the Successful Bidder free and clear of liens, claims and encumbrances as contemplated by the _Sale Approval Order_.

(24)    **_Confirmation Date_**" means the date on which the Confirmation Order is entered by the Bankruptcy Court.

(25)    **_Confirmation Hearing_**" shall mean the hearing conducted by the Bankruptcy Court to consider confirmation of the Plan under Section 1129 of the Bankruptcy Code.

(26)    **_Confirmation Order_**" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

(27)    **_Creditor_**" shall have the meaning in section 101(10) of the Bankruptcy Code.

(28)    **_Cure_**" means a Claim for all non-contingent, accrued and unpaid monetary obligations, or adequate assurance of cure or compensation, or other amounts as may be agreed upon by the parties, under an executory contract or unexpired lease (or assumed or assumed and assigned) by any Debtor pursuant to section 365 of the Bankruptcy Code or the Plan.

(29)    **_Cure Claim_**" means a Claim for a Cure.

(30)    **_Debtor_**" means Aventura Hotel Properties, LLC, and where applicable, the Estate thereof.

(31)    **_Debtor in Possession_**" means the Debtor in its capacity as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

(32)    **_Deficiency Claim_**" means any Unsecured Claim for all, or any portion of, a Secured Claim that is determined to be unperfected or undersecured.

(33)    **_Disallowed_**" with respect to a Claim means a Claim that is not Allowed.

(34)    **_Disclosure Statement_**" means the Amended Disclosure Statement and exhibits thereto that relate to this Amended Plan and prepared pursuant to Section 1125 of the Bankruptcy Code, as amended, modified or supplemented from time to time, which has been approved by the Bankruptcy Court and which is distributed to holders of Claims and Equity Interests with this Plan.

(35)    **_Disclosure Statement Order_**" means that certain order of the Bankruptcy Court, dated _____, 2021 [ECF No. _____] approving, among other things, the Disclosure

Statement as containing adequate information pursuant to Section 1125 of the Bankruptcy Code, and setting various deadlines in connection with Confirmation of the Plan.

(36)    "***Disputed***" means, with respect to any Claim: (a) listed on the Schedules as unliquidated, disputed or contingent, unless a proof of Claim has been filed in a liquidated, non-contingent amount; (b) as to which the Debtor, the Liquidating Trustee or any other party in interest, as applicable, has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules; or (c) as otherwise disputed in accordance with applicable bankruptcy or insolvency law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

(37)    "***Disputed Claims Fund***" shall mean a fund established by the Liquidating Trustee to (i) hold any Excess Sale Proceeds pending the determination of the Disputed Claim of QR Triptych; and (ii) hold any distribution that would otherwise be paid to a Disputed Claim and in each case maintaining sufficient funds  to pay and reserve for accruing interest on Disputed  Claims, and potential fees, costs, penalties or other charges against the Estate that could be incurred  in connection with the allowance of a Disputed Claim to the extent permitted in  such contract by and between the Debtor and Holder of the Disputed Claim.  Claims estimated by the Bankruptcy Court at $0 for all purposes in the Bankruptcy Case are disallowed in their entirety, are not Disputed Claims, and are not entitled to any distributions under the Plan.

(38)    (37) "***Distributions***" means the distributions of Cash to be made in accordance with the Plan.

(39)    (38) "***Distribution Agent***" means the Person or Entity responsible for making Distributions under the Plan, which will be the Debtor or the Liquidating Trustee as set forth herein.

(40)    (39) "***Effective Date***" means, subject to the satisfaction or waiver as applicable of the conditions set forth in Article IX, a date that is not later than ten (10) calendar says after the Confirmation Order is entered.  Within one (1) Business Day of the Effective Date, the Debtor or the Liquidating Trustee, as applicable, shall file a notice of the Effective Date with the Bankruptcy Court.

(41)    (40) "***Entity***"  has the meaning set forth in section 101(15) of the Bankruptcy Code.

(42)    (41) "***Equity Interests***" means the membership interests in the Debtor as of the Petition Date, which membership interests are owned 100% by Triptych Miami Holdings, LLC, a jointly administered debtor (Case No. 21-12375-RAM).

(43)    (42) "***Estate***" means the Debtor's estate created pursuant to section 541 of the Bankruptcy Code upon the filing of the Chapter11 Case.

(44)    (43) "***Excess Sale Proceeds***" means the Available Cash up to the amount of the Disputed Claim of QR Triptych, net of: (i) Priority Tax Claims; (ii) Administrative Claims; (iii) Statutory Fees; (iv) the Broker Fee; (v) the Surcharge Contribution; (vi) the QR Triptych Surcharge; and (vii) the Section 1146(a) Recovery.

(45) (44) "*Final Decree*" means the decree contemplated under Bankruptcy Rule 3022.

(46) (45) "*Final Order*" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction with respect to the subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to file an appeal, motion for reconsideration or rehearing, or request for a stay has expired with no appeal, motion for reconsideration or rehearing, or request for a stay having been timely filed.

(47) (46) "*General Bar Date*" means May 21, 2021, as established in the Bar Date Order.

(48) (47) "*General Unsecured Claims*" means Claims against the Debtor that are not Administrative Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, Secured Claims or Equity Interests.

(49) (48) "*Impaired*" means "*impaired*" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

(50) (49) "*Lien*" means any lien, mortgage, charge, security interest, pledge or other encumbrance against or interest in property to secure payment or performance of a claim, debt or litigation.

(51) (50) "*Liquidating Trust*" means that certain irrevocable grantor trust created and established pursuant to the Plan for the benefit of Holders of Allowed Claims against and Allowed Equity Interests in the Debtor, into which the Liquidating Trust Assets shall be transferred and vested on the Effective Date for all purposes under the Plan.

(52) (51) "*Liquidating Trust Agreement*" means that certain Liquidating Trust Agreement, the form of which is attached hereto as **Exhibit 1** to the Plan, and which sets forth the terms and conditions of the Liquidating Trust, as well as the duties and responsibilities of the Liquidating Trustee. The final version of the Liquidating Trust Agreement shall be filed prior to the Confirmation Hearing, and its terms shall be treated as if comprising the terms of the Plan.

(53) (52) "*Liquidating Trust Assets*" means all Assets of the Debtor and the Debtor's Estate in existence on the Effective Date of the Plan which Assets (i) are proposed to be transferred to and vested in the Liquidating Trust under and in accordance with the terms of the Plan and Confirmation Order on the Effective Date of the Plan, and (ii) shall include all Assets as may have been created by virtue of the Bankruptcy Code, and expressly includes all Causes of Action and the rights to prosecute, enforce and settle same.  The Liquidating Trust Assets include (i) Available Cash; (ii) the Surcharge Contribution and QR Triptych Surcharge to the extent not otherwise used to satisfy Administrative Claims, Professional Fee Claims, and Statutory Fees; and (iii) the Section 1146(a) Recovery.

(54) (53) "*Liquidating Trust Beneficiaries*" means the Holders of Allowed Claims and Allowed Equity Interests as of the Effective Date and Holders of any Disputed Claims provided for in the Disputed Claims Fund.

(55) (54) "*Liquidating Trust Beneficial Interests*" means the Class A Beneficial Interests and the Class B Beneficial Interests.

(56) (55) "*Liquidating Trustee*" means _____, individually, the Liquidating Trustee named to administer the Liquidating Trust pursuant to the terms hereof, and all successor Liquidating Trustees.

(57) (56) "*Liquidating Trust Reserve*" means the amount of Available Cash determined from time to time by the Liquidating Trustee in the exercise of his business judgment required to be reserved from any Distribution in order to pay post-confirmation U.S. Trustee fees and all obligations of the Liquidating Trust, including fees and expenses of Professionals engaged by the Liquidating Trustee.

(58) (57) "*LV Settlement Agreement*" shall mean the Settlement and Compromise with LV Midtown, LLC [ECF No. 55] approved by Order of the Bankruptcy Court on June 17, 2021.

(59) (58) "*Net Litigation Proceeds*" means all proceeds from the prosecution and/or settlement of all Causes of Action by the Liquidating Trustee, after payment of all fees and expenses related thereto, which Net Litigation Proceeds shall be used by the Liquidating Trustee solely to make Distributions to the holders of Allowed Claims and Allowed Equity Interests hereunder.

(60) (59) "*Other Priority Claims*" means Claims accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than Priority Tax Claims.

(61) (60) "*Person*" means an individual, partnership, corporation, limited liability company, cooperative, trust, estate, unincorporated organization, association, joint venture, government unit or agency or political subdivision thereof or any other form of legal entity or enterprise.

(62) (61) "*Petition Date*" means March 12, 2021, the date on which the Debtor filed the Chapter 11 Case.

(63) (62) "*Plan*" has the meaning set forth in the preamble hereof.

(64) (63) "*Plan Documents*" means the documents, if any, that aid in effectuating the Plan, including, without limitation, all addenda, exhibits, schedules, which documents (as may be amended, modified or supplemented from time to time) shall be in form and substance reasonably acceptable to the Debtor and shall be filed no later than 10 days prior to the Confirmation Date.

(65) (64) "*Priority Tax Claims*" means Claims of governmental units of the kind specified in section 507(a)(8) of the Bankruptcy Code.

(66)   (65) "**Pro Rata**" shall mean the proportion (expressed as a percentage) that the amount of a Claim in a particular Class or Classes bears to the aggregate amount of all Claims (including Disputed Claims, but excluding disallowed Claims) in such Class or Classes, unless this Plan provides otherwise.

(67)   (66) "**Professionals**" means any Person (i) employed in the Chapter 11 Case pursuant to a Final Order in accordance with sections 105, 327, 328, 363 or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to the Effective Date pursuant to sections 105, 327, 328, 329, 330, 331 or 363 of the Bankruptcy Code and (ii) employed by the Liquidating Trustee.

(68)   (67) "**Professional Fee Claim**" means a Claim of any Professional for compensation and reimbursement of expenses to the extent allowed by the Bankruptcy Court under Section 330(a) or Section 331 of the Bankruptcy Code or otherwise.

(69)   (68) "**Property**" shall mean the Debtor's right, title and interest in the assemblage of land located at 3601 N. Miami Avenue, in Miami-Dade County, Florida as more particularly described on Exhibit "A" attached to the Contract approved by the *Sale Approval Order*.

(70)   (69) "**Property Taxes**" shall mean real estate property taxes due the Miami Dade Tax Collector which constitute a lien on the Property pursuant to Fla. Stat. §197.122.

(71)   (70) "**Property Tax Certificates**" shall mean Property Taxes for tax year 2019 that have been certificated and purchased by third parties as set forth by the Miami-Dade County Tax Collector in their *Notice to Debtor of Additional Creditors* [ECF No. 28].

(72)   (71) "**QR Triptych Surcharge**" shall mean any surcharge that may be asserted and recovered by the Debtor from the Property under 11 U.S.C. §506(c)of the Bankruptcy Code to the extent that QR Triptych, LLC is determined to hold an Allowed secured claim against the Property as determined by the Bankruptcy Court in accordance with 11 U.S.C. §506(a)(1) of the Code and/or in connection with the Avoidance Litigation and/or in connection with the Section 1146(a) Recovery but excluding the Surcharge Contribution.

(73)   (72) "**Record Date**" means the date that the Disclosure Statement is approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

(74)   (73) "**Reinstated" or "Reinstatement"** means, with respect to any Claim of Interest, the treatment provided for in section 1124 of the Bankruptcy Code.

(75)   (74) "**Representatives**" means, with regard to an Entity (including the Debtor), any current or former partners, officers, directors, employees, attorneys, Professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, independent contractors, members and professionals).

(76)   (75) "**Sale Approval Order**" shall mean the Order Granting Debtor's Motion for Entry of an Order (A) Authorizing the Sale of Real Property of the Chapter 11 Estate Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §363; (B)

9

Establishing Bidding Procedures and Sale Process; (C) Approving Asset Purchase Agreement with Integra Real Estate, LLC; (D) Scheduling Sale Hearing; and (E) Granting Related Relief [ECF No. 106].

(77)    (76) "**Sale Proceeds**" shall mean all cash received pursuant to the Plan from the transfer of the Property to a Successful Bidder (as defined in the *Sale Approval Order*) at the closing contemplated by the *Sale Approval Order*.

(78)    (77) "**Schedules**" mean the schedules of assets and liabilities, schedules of executory contracts and statements of financial affairs filed by the Debtor pursuant to section 521 of the Bankruptcy Code [ECF No. 25], as may be amended, modified or supplemented from time to time.

(79)    (78) "**Schedule of Assumed Executory Contracts and Unexpired Leases**" means the schedule to be included in the Disclosure Statement or Plan Documents and identifying (i) the executory contracts and unexpired leases to be assumed by the Debtor; and (ii) the amount of Cure Claims with respect to each executory contract or unexpired lease proposed to be assumed.

(80)    (79) "**Secured Claims**" means Claim(s) against the Debtor that are secured by a Lien on property in which the Estate has an interest, which Liens are valid, perfected and enforceable under applicable law or by reason of a Final Order, or that are subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

(81)    (80) "*Surcharge Contribution*" means Sale Proceeds up to the amount of $800,000 that are otherwise the collateral of LV Midtown, LLC, but shall be contributed to the Debtor as provided in the LV Settlement Agreement if the Sale Proceeds exceed Release Price (as defined in the LV Settlement Agreement and as otherwise provided by 11 U.S.C. §506(c) of the Bankruptcy Code) in the amount of $19,600,000, but excluding the QR Triptych Surcharge.

(82)    (81) "*Section 1146(a) Recovery*" shall mean any cash saved or not expended by the Debtor as a result of transferring the Property pursuant to this Plan and being exempted from the payment of any transfer tax, stamp tax, and Miami-Dade Surcharge Tax pursuant Section 1146(a) of the Bankruptcy Code.

(83)    (82) "**Tax Code**" means the United States Internal Revenue Code of 1986, as amended.

(84)    (83) "**Triptych Case**" means the chapter 11 bankruptcy case styled *In re Triptych Miami Holdings, LLC*, Case No. 21-12375-RAM pending in the Bankruptcy Court and jointly administered with this Chapter 11 Case.

(85)    (84) "**Triptych Debtor**" shall mean Triptych Miami Holdings, LLC, as a debtor-in-possession in the Triptych Case.

(86)    (85) "**U.S. Trustee**" means the United States Trustee appointed under Article 591 of title 28 of the United States Code to serve in the Southern District of Florida.

(87) (86) "*Unimpaired*" means not "impaired" within the meaning of sections 1123(a)(4) and 1124 of the Bankruptcy Code, with respect to a Claim, Equity Interest, or Class of Claims or Equity Interests.

## B.    Rules of Interpretation

(i)    For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been filed or to be filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) the words "herein," "hereof" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

(ii)    The provisions of Federal Rule of Bankruptcy Procedure 9006(a) shall apply in computing any period of time prescribed or allowed hereby.

(iii)    All references herein to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## C.    Exhibits

All exhibits and schedules to the Plan and Disclosure Statement are incorporated into and are part of the Plan as if set forth herein.

## ARTICLE II
## ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS, PRIORITY CLAIMS AND UNITED STATES TRUSTEE FEES

## A.    Administrative Claims

The Debtor shall pay each holder of an Allowed Administrative Claim, in satisfaction of such Allowed Administrative Claim, the full unpaid amount of such Allowed Administrative Claim in Cash: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (3) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (4) at such time and upon such

terms as set forth in an order of the Bankruptcy Court; provided, however, that any Claim seeking administrative expense status included as a part of a proof of claim filed in this Chapter 11 Case shall not qualify as an Administrative Claim. The Administrative Claims shall first be paid from the Surcharge Contribution and/or the QR Triptych Surcharge.

### B.    Professional Fee Claims

On or prior to the deadline set by the Bankruptcy Court for Professionals to file final fee applications, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Confirmation Hearing. The Debtor shall pay the Allowed Professional Fee Claim of each Professional from Available Cash in accordance with the Orders of the Bankruptcy Court unless otherwise agreed to by the Holder of such Allowed Professional Fee Claim. From and after the Confirmation Date until the Effective Date, the Debtor, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period. The Broker Fee shall be satisfied from Sale Proceeds. Any other Professional Fees shall be paid from the Surcharge Contribution and the QR Triptych Surcharge.

### C.    Priority Tax Claims

The Debtor shall pay each holder of an Allowed Priority Tax Claim, in satisfaction of such Allowed Priority Tax Claim, the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the later of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; provided, however, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Priority Tax Claim.

### D.    Statutory Fees

Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the Monthly Operating Reports for the relevant periods, indicating the cash disbursements for the relevant period. The Liquidating Trustee shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Liquidating Trustee, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code, and the Liquidating Trustee shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, Post-Confirmation Quarterly Operating reports indicating all the cash disbursements for the relevant period. The Statutory Fees shall first be paid from the Surcharge Contribution and the QR Triptych Surcharge.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS
## UNDER THE PLAN

**A.**    **Summary of Classes under the Amended Plan**

(i)    In accordance with section 1123(a)(1) of the Bankruptcy Code, the Debtor has not classified Administrative Claims and Priority Tax Claims, as described in Article II.

(ii)    The following table classifies Claims against and Equity Interests in the Debtor for all purposes, including voting, confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.  Each Class set forth below is treated hereunder as a distinct Class for voting and Distribution purposes.  Pursuant to the terms of this Plan, the Debtor will transfer the Property, its principal asset, to the Success Bidder determined under the Sale Approval Order under Section 363 of the Bankruptcy Code in order to fund distributions under the Plan.

(iii)    Summary of Classification and Treatment of Classified Claims and Equity Interests.

| Class | Claim | Status | Entitled to Vote? |
|---|---|---|---|
| 1 | Secured Real Estate Tax Claims | Unimpaired | No; Deemed to Accept the Plan |
| 2 | Allowed Secured Claim of LV Midtown | Impaired | Yes |
| 3 | Disputed Secured Claim of QR Triptych | Impaired | Yes |
| 4 | Allowed General Unsecured Claims | Impaired | Yes |
| 5 | Allowed Equity Interests | Impaired | Yes |

B.    **Classification and Treatment of Claims and Equity Interests.**

(i)    **Secured Real Estate Tax Claims (Class 1)**

(a) **Classification**: Class 1 consists of Secured Real Estate Tax Claims

(b) **Treatment**: Except to the extent that a holder of an Secured Real Estate Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different classification and treatment, each holder of an Allowed Secured Real Estate Tax Claim shall receive the full unpaid amount of such Secured Real Estate Tax Claim in Cash, on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such Secured Real Estate Tax becomes Allowed or as soon as practicable thereafter, and (iii) the date such Allowed Other Priority Claim is payable under applicable non-bankruptcy law; provided, however, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Other Priority Claim.   The Secured Real Estate Tax Claim include (i) Property Taxes; and (ii) Property Tax Certificates.  To the extent Property Taxes for Tax Year 2021, the real estate taxes payable by Debtor as Seller under the *Sale Approval Order* shall be escrowed for payment when due by the closing agent designated under the Sale Approval Order to consummate that Closing.

(c) **Voting**: Class 1 is Unimpaired, and therefore, the holders of Secured Real Estate Tax Claims in Class 1 are not entitled to vote to accept or reject the Plan and are deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

(ii)    **Allowed Secured Claim of LV Midtown (Class 2)**

(a) **Classification**: Class 2 consists of the Allowed Secured Claim of LV Midtown.

(b) **Treatment**:  On May 19, 2021, Secured Creditor LV Midtown, LLC ("LV Midtown") filed a secured claim, Claim No. 5-1, in an amount not less than $18,944,582.14, plus accrued interest, attorneys' fees and costs as of the Petition Date in the Bankruptcy Case, which claim was compromised, impaired by and allowed to the extent set forth in the LV Settlement (the "Allowed Secured Claim of LV Midtown").  The Allowed Secured Claim of LV Midtown shall be satisfied by the holder the Allowed Secured Claim of LV Midtown receiving from the Debtor Sale Proceeds from the Closing of the Property up to the amount of the Release Price as provided for in the LV Settlement Agreement net of (i) ordinary and customary closing costs; (ii) the Secured Real Estate Tax Claims securing the Class 1 Claim; and (iii) the Broker Fee, but only to the extent the Sale Proceeds exceed the Release Price.  The Sale Proceeds constitute, in part, the liquidation of the collateral securing the Class 2 Claim, which the Debtor shall liquidate at Closing pursuant to a Confirmation Order authorizing the sale of the Property pursuant to section 363 of the Bankruptcy Code or otherwise; (ii) realization of the indubitable equivalent of the Class 2 Claim, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. § 1129(b)(2)(A)(iii); or (iii) satisfaction of such Class 2 Claim as otherwise authorized by the Code or agreed to by the holder of such Class 2 Claim. Such satisfaction shall occur on the later of the Effective Date or the date each respective Class 2 Secured Claim of LV Midtown is Allowed by a Final Order. Any portion of the Allowed Claim

15

of a holder of a Class 2 Secured Claim of LV Midtown that is not satisfied as part of its Allowed Class 2 Secured Claim of LV Midtown shall be treated as a Class 5 Allowed General Unsecured Claim pursuant to the term of this Plan.

(c) **Voting**: Class 2 is Impaired and therefore, the holder of the Allowed Class 2 Secured Claim of LV Midtown are entitled to vote to accept or reject the Plan.

(iii) **Disputed Secured Claim of QR Triptych (Class 3)**

(a) **Classification**: Class 3 consists of the Disputed Secured Claim of QR Triptych.

(b) **Treatment**: On May 19, 2021, QR Triptych, LLC ("QR Triptych") filed Claim No. 6-1 [Debtor AHP] (the "Disputed Secured Claim of QR Triptych"). The Disputed Secured Claim of QR Triptych asserts a claim against AHP in the principal amount of $8,238,579.20 ("Principal"), and purports to be secured by a subordinate mortgage on the Property. However, the Disputed Secured Claim of QR Triptych does not contain evidence of AHP's alleged indebtedness to QR Triptych and instead relies upon a promissory note evidencing only indebtedness to LV Midtown. On July 22, 2021, QR Triptych amended the Disputed Secured Claim of QR Triptych [Claim No. 6-2] to assert a claim for $10,597.809.81, providing for Principal, plus disputed past-due interest thereon and attorneys' fees. The QR Disputed Secured Claim of QR Triptych (as amended) includes a copy of an alleged promissory note purportedly executed on behalf of the Debtor, which was omitted in the initial Disputed Secured Claim of QR Triptych. The Debtor objected to the Disputed Secured Claim of QR Triptych (as may be amended) in the Avoidance Litigation. In the Avoidance Litigation, the Debtor seeks, among other things, to avoid the mortgage recorded by QR Triptych encumbering the Property and to recharacterize the Disputed Claim of QR Triptych as subordinated equity in the Triptych Debtor.

16

The Debtor shall reserve and contribute to the Liquidating Trust the Excess Sale Proceeds. The Excess Sale Proceeds shall be held in trust by the Liquidating Trustee and shall be disbursed in accordance with any Final Order, decree or judgment entered by the Bankruptcy Court resolving or adjudicating the Avoidance Litigation after the expiration of all appellate periods of the resolution of any appeals thereof. In the event that the Bankruptcy Court determines, after the exhaustion of all appeals, that the holder of the Disputed Secure Claim of QR Triptych is, in whole or in part, entitled to assert an allowed claim secured against the Property and/or Excess Sale Proceeds, or any portion thereof, then the holder of the Disputed Secured Claim of QR Triptych shall be entitled to (i) receive a distribution of the Excess Sale Proceeds up to the amount the Bankruptcy Court determines the Disputed Secured Claim of QR Triptych, less the QR Triptych Surcharge that the Bankruptcy Court may determine and award under Sections 506(a) and 506(c) of the Bankruptcy Code; (ii) realization of the indubitable equivalent of the Disputed Secured Claim of QR Triptych, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. §1129(b)(2)(A)(iii) of the Bankruptcy Code; or (iii) satisfaction of such Disputed Secured Claim of QR Triptych as otherwise authorized by the Bankruptcy Code or agreed to by the holder of the Disputed Secured Claim of QR Triptych. If the Disputed Secured Claim of QR Triptych is recharacterized as equity in the Triptych Debtor by a final, non-appealable order, decree or judgment of the Bankruptcy Court, then it shall be treated in accordance with the treatment provided for in any plan of reorganization that may be confirmed for the Triptych Debtor or as otherwise provided for under applicable law.

(c)    **Voting**: Class 3 is Impaired and therefore, the holder of the Allowed Class 3 Secured Claim of QR Triptych are entitled to vote to accept or reject the Plan.

(d)    **Allowed General Unsecured Claims (Class 4)**

(e)    **Classification**: Class 4 consists of the Allowed General Unsecured Claims.

(f)    **Treatment:**    In full satisfaction, settlement, release, extinguishment and discharge of each such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive a Class A Beneficial Interest in the Liquidating Trust on a Pro Rata basis with all other Holders of Allowed General Unsecured Claims.    Such Class A Beneficial Interest shall entitle such Holder to Distributions from time to time from the Liquidating Trust, as determined by the Liquidating Trustee in the exercise of his business judgment after accounting for any Liquidating Trust Reserves, on a Pro Rata basis with the Holders of all Class A Beneficial Interests in the Liquidating Trust, which Distributions will be made from Available Cash on deposit from time to time with the Liquidating Trust, provided that the maximum Distributions to the Holders of Allowed General Unsecured Claims shall be the full amount of each Allowed General Unsecured Claim without interest.    The first Distribution shall be made as soon as reasonably practicable following the Effective Date, provided however, that any Distribution to the Holders of Disputed Claims shall be reserved in the Disputed Claims Fund.    No Distribution shall be made to Holders of Allowed General Unsecured Claims unless and until (i) all Allowed Administrative Claims, all Allowed Professional Fee Claims, all Allowed Priority Tax Claims, all U.S. Trustee Fees and all Claims in Classes 2 and 3 have been paid in full, reserved or otherwise resolved, and (ii) the Liquidating Trustee has paid or reserved for all obligations of the Liquidating Trust and has established the Liquidating Trust Reserve in connection therewith.    Notwithstanding, the Liquidating Trustee may distribute to Holders of Allowed General Unsecured Claims (i) any portion of the Surcharge Contribution received as a Liquidating Trust Asset and not otherwise used by the Liquidating Trustee to pay expenses of the Liquidating Trust; and (ii) any Sale Proceeds in excess of the Disputed Claim of QR Triptych.

(g)    **Voting**: Class 5 is Impaired and therefore, the holders of Allowed Class 5 General Unsecured Claims are entitled to vote to accept or reject the Plan.

(iv)    **Equity Interests (Class 5)**

(a)    **Classification**: Class 5 consists of the Equity Interests.

(b)    **Treatment**: In full satisfaction, settlement, release, extinguishment and discharge of the Allowed Class 6 Equity Interest, the Triptych Debtor shall receive a Class B Beneficial Interest in the Liquidating Trust, which Class B Beneficial Interest shall entitle the Triptych Debtor to receive Distributions from time to time from the Liquidating Trust, as determined by the Liquidating Trustee in the exercise of their business judgment after accounting for any Liquidating Trust Reserves, from Available Cash on deposit from time to time with the Liquidating Trust, provided that no Distribution shall be made to the Triptych Debtor on account of the Allowed Class 5 Equity Interest unless and until (i) all Allowed Administrative Claims, all Allowed Professional Fee Claims, all Allowed Priority Claims, all Allowed Priority Tax Claims,

all U.S. Trustee Fees, all Claims in Classes 2 and 3 and all Allowed General Unsecured Claims in Class 4 represented by the Class A Beneficial Interests have been paid in full, reserved or otherwise resolved, and (ii) the Liquidating Trustee has paid or reserved for all obligations of the Liquidating Trust and has established the Liquidating Trust Reserve in connection therewith.

(c) **Voting**: Class 5 is Impaired and therefore, the Triptych Debtor is entitled to vote to accept or reject the Plan.

**ARTICLE IV**
**ACCEPTANCE, REJECTION, AMENDMENT AND**
**REVOCATION OR WITHDRAWAL OF THE PLAN**

**A.**    **Classes Entitled to Vote**

Each holder of a Claim, as of the Record Date, in an Impaired Class shall be entitled to vote to accept or reject the Plan, in its sole and absolute discretion, subject to applicable law. Class 1 is unimpaired and therefore deemed to have accepted the Plan.  Classes 2, 3, 4and 5 are impaired.  Votes from holders of Claims in Classes 2 through 5 will be solicited as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order or orders of the Bankruptcy Court.

**B.**    **Acceptance by Class of Claims and Equity Interests**

Impaired Class of Claims shall be deemed to accept the Plan if (a) holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  For purposes of calculating the number of Allowed Claims in a Class of Claims that have voted to accept or reject the Plan under section 1126(c) of the Bankruptcy Code, all Allowed Claims in such Class held by one Entity or any Affiliate thereof shall be aggregated and treated as one Allowed Claim in such Class.  For purposes of any Claim in any Impaired Class that is Disputed as to its amount only, the holder of such claim shall be entitled to vote on the Plan as if such holder held an Allowed Claim in an amount equal to the undisputed portion of such Claim.

Impaired Class of Equity Interests shall be deemed to accept the Plan if holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in in amount of the Allowed Equity Interests actually voting in such Class have voted to accept the Plan.  For purposes of calculating the number of Allowed Equity Interests in a Class of Equity Interests that have voted to accept or reject the Plan under section 1126(d) of the Bankruptcy Code, all Allowed Equity Interests in such Class held by one Entity or any Affiliate thereof shall be aggregated and treated as one Allowed Interest in such Class.

**C.**    **Nonconsensual Confirmation**

19

In the event that any Class of Claims or Equity Interests entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1129(a) of the Bankruptcy Code, the Debtor reserves the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, or (b) alter, amend or modify the Plan in accordance with Article XIII.  The Debtor shall exercise the right to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code.

**D.      Revocation or Withdrawal; No Admissions**

*Right to Revoke or Withdraw*.  The Plan may be revoked or withdrawn prior to the Confirmation Date by the Debtor in its sole discretion.

*Effect of Withdrawal or Revocation; No Admissions*.  If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any admission or statement against interest by any Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

**E.      Amendment of Plan Documents**

From and after the Effective Date, the authority to amend, modify, or supplement the Plan, the Exhibits to the Plan and any documents attached to such Plan and Exhibits to the Plan shall be as provided in such Plan and Exhibits to the Plan and their respective attachments.

F.      **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights with respect to any Unimpaired Claim, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

**ARTICLE V**
**MEANS OF PLAN IMPLEMENTATION**

**The Amended Plan contemplated the Debtor will be able to sell the Property pursuant to the Sale Approval Order for at least $22 million.  If the Debtor is unable close on such a transaction, or otherwise renegotiate the terms of the LV Settlement Agreement with its senior lender, either pursuant to the terms of the Sale Approval Order or otherwise, the Debtor may instead elect to seek dismissal or conversion of its bankruptcy case pursuant to Section 1112 of the Bankruptcy Code.**

A.      **Creation and Vesting**.

On the Effective Date of the Plan, (i) the Liquidating Trust shall be created and shall be governed by the terms of the Liquidating Trust Agreement, (ii) the Liquidating Trust Assets shall vest in, and be transferred to, the Liquidating Trust, which Liquidating Trust shall constitute, be appointed as and be deemed a representative of the Debtor's Estate pursuant to and in accordance with the terms of Section 1123(b)(3)(B) of the Bankruptcy Code solely for the benefit of the Liquidating Trust Beneficiaries, and (iii) the Liquidating Trust, through the Liquidating Trustee, is and shall, among the other powers set forth herein and in the Liquidating Trust Agreement, be authorized and appointed to investigate, prosecute, enforce, pursue and settle any and all Causes of Action, provided however, that any settlement of a Cause of Action proposed by the Liquidating Trustee shall require the approval of the Bankruptcy Court upon the filing of a motion in connection therewith.   NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, THE VESTING IN AND TRANSFER OF THE LIQUIDATING TRUST ASSETS TO THE LIQUIDATING TRUST SHALL BE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OF ANY KIND WHATSOEVER.  NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, NO ASSETS OF THE DEBTOR OR THE DEBTOR'S ESTATE SHALL VEST IN THE DEBTOR OR ANY OTHER PERSON OR ENTITY FROM AND AFTER THE EFFECTIVE DATE, OTHER THAN THE LIQUIDATING TRUST.

B.      **Execution and Implementation**

On or before the Effective Date, each Liquidating Trust Agreement shall be executed by the Debtor and the Liquidating Trustee and all other necessary steps shall be taken to establish the Liquidating Trust, which shall be for the benefit of the Liquidating Trust Beneficiaries thereunder.  The Liquidating Trust is created solely to implement the terms of the Plan. The primary purposes of the Liquidating Trust are to collect and liquidate the Assets of the Debtor's Estate, pursue those claims and Causes of Action transferred to, and vested in, the Liquidating Trust and distribute to the Liquidating Trust Beneficiaries all proceeds from the liquidation of

the applicable Assets pursuant to the terms of the Plan and in accordance with Treasury Regulation Section 301.7701-4(d). Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein or otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Liquidating Trust Assets of the Debtor's Estate.

C.    **Liquidating Trust Assets**

The Liquidating Trust shall consist of the Liquidating Trust Assets from the Debtor's Estate after any required Distributions by the Debtor on the Effective Date.  The Debtor shall transfer the Liquidating Trust Assets to the Liquidating Trust. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code and any other applicable law. In connection with the transfer of the Liquidating Trust Assets to the Liquidating Trust, such Liquidating Trust Assets, including, without limitation, Causes of Action, shall vest in the Liquidating Trust on the Effective Date.

### D.    Liquidating Trustee

The Liquidating Trust shall be governed by the Liquidating Trustee according to the Liquidating Trust Agreement and the terms of the Plan.  The Liquidating Trustee for the Liquidating Trust shall mean _____, individually and all successor Liquidating Trustees. The Liquidating Trustee shall be deemed to have been appointed as the Estate's representative for the Debtor by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

### E.    Powers of Liquidating Trustee

In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall, among other things, have the rights, powers and duties of a chapter 7 trustee under Section 704 of the Bankruptcy Code and a chapter 11 trustee under section 1106 of the Bankruptcy Code and shall include, without limitation, the following: (i) to hold, manage, dispose of, sell, convert to Cash, and distribute the. In connection with the administration of the Liquidating Trust, except as otherwise set forth herein, the Trustee is authorized to perform only those acts necessary and desirable to accomplish the purposes of the Liquidating Trust. The Liquidating Trust shall succeed the rights of the Debtor necessary to protect, conserve and liquidate all Liquidating Trust Assets, including investigating, prosecuting and resolving the Causes of Action; (ii) to hold the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date; (iii) in the Liquidating Trustee's reasonable business judgment, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Liquidating Trust Assets, including Causes of Action; (iv) to monitor and enforce the implementation of the Plans; (v) to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Liquidating Trust or the Debtor; (vi) in the Liquidating Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtor or the Liquidating Trust, and manage, control, prosecute and/or settle on behalf of the Estate and/or Liquidating Trust's Objections to Claims on account of which the Liquidating Trustee will be responsible (if Allowed) for making Distributions under the Plan; (vii) to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtor and to implement the Plan; (viii) to hold, manage, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority; (ix) to act as a signatory to the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of the Debtor's Assets; (x) to dispose of the books and records transferred to the Liquidating Trustee in a manner deemed appropriate by the Liquidating Trustee in accordance with applicable law; provided, however, that the Liquidating Trustee shall not dispose of any books and records that are reasonably likely to pertain to pending litigation in which the Debtor or its current or former managers, partners, officers or directors are a party without further order of the Bankruptcy Court; (xi) to take all necessary action and file all appropriate motions to obtain an order closing the Chapter 11 Case; (xii) to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Liquidating Trust and execute any documents or pleadings related to the liquidation of the Liquidating Trust Assets or other matters related to the Liquidating Trust; (xiii) to establish and maintain bank accounts and terminate such accounts as the Liquidating Trustee deems appropriate; (xiv) to set off amounts owed to the Debtor against distributions to Liquidating

24

~~Trust Beneficiaries; (xv) to bring suits or defend itself against such suits, if any, as the Liquidating Trustee determines in connection with any matter arising from or related to the Plan or the Liquidating Trust Agreement that affects in any way the rights or obligations of the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Beneficiaries; (xvi) to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee; (xvii) to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the Liquidating Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the Liquidating Trust and are consistent with and are not contrary to the treatment of the Liquidating Trust as a "grantor trust" for United States federal income tax purposes; and (xviii) to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and the Liquidating Trust Agreement.~~ as quickly as reasonably practicable.  Subject to the limitations set forth in this Trust Agreement, the Plan and the Confirmation Order, the Liquidating Trustee may exercise all powers granted it hereunder related to, or in connection with, the collection, prosecution, liquidation, and distribution to the Beneficiaries, of the Trust Assets. Without limiting, but subject to, the foregoing, the Liquidating Trustee shall be expressly authorized:

    (a)   To open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidating Trust.

    (b)   To receive, conserve and manage the Trust Asset

    (c)   To hold legal title to any and all Trust Assets.

    (d)   Subject to the applicable provisions of the Plan, to prosecute, collect and liquidate the Trust Assets.

    (e)   To take discovery from third parties, including but not limited to, issuing Fed.R.Bankr.P. 2004 subpoenas and discovery requests.

    (f)   Make decisions regarding the retention or engagement of Trustee's Professionals and to pay, from the Trust Assets and the proceeds thereof, the fees and charges incurred by the Liquidating Trust and the fees and expenses of the Liquidating Trustee's Professionals, as well as the disbursements, expenses or related support services relating to the implementation of the Plan and performance by the Trustee of its duties under this Agreement. To pay all lawful, expenses, debts, charges and liabilities of the Liquidating Trust.

    (g)   To wind down the affairs of the Trust including the filing of final tax returns, if applicable, establish any administrative reserves necessary to close the Trust and make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

    (h)   To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of its discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(i)    To enter into any agreement or execute any document required by or consistent with the Plan and perform all obligations thereunder.

(j)    To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets if it concludes that they are of no significant value or benefit to the Liquidating Trust.

(k)    Except as otherwise set forth in this Trust Agreement, to have exclusive power to prosecute and/or settle all causes of actions including, without limitation, Avoidance Actions or any other causes of action or counterclaims as described in the Plan and Disclosure Statement (the "Causes of Action") and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and litigate or settle such Actions on behalf of the Liquidating Trust, and pursue such actions to settlement or final order, all in accordance with the terms of this Agreement.

(l)    To hold any unclaimed Distributions or payment to a Beneficiary in accordance with this Agreement, the Confirmation Order and the Plan.

(m)    To purchase or create and carry all insurance policies and pay all insurance premiums and costs it deems necessary or advisable.

(n)    To implement and/or enforce all provisions of the Plan.

(o)    To collect and liquidate all Trust Assets pursuant to the Plan, the Confirmation Order and this Agreement and to ultimately close the Chapter 11 Case.

(p)    To object to Claims and supervise and administer the resolution, settlement and payment of such Claims and the distribution to the Beneficiaries in accordance with this Agreement and the Plan. Specifically, the Liquidating Trustee may compromise or settle any such Claim (disputed or otherwise) free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order or this Agreement.

(q)    Exercise such rights of setoff as the Debtor or the Estate may have had against any Beneficiary and/or seek Court approval of such exercise.

(r)    Voluntarily engage in arbitration or mediation with regard to any dispute.

(s)    To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax information returns required with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise, (iii) make tax elections by and on behalf of the Liquidating Trust and (iv) pay taxes, if any, payable by the Liquidating Trust.

(t)    To make all distributions to holders of Allowed Claims provided for or contemplated by the Plan. Resolve issues pe1taining to the retention or disposal of the Liquidating Trust's administrative and business records.

(u)    To perform any other actions or duties required to be performed by the Liquidating Trustee pursuant to the provisions of the Plan and/or Confirmation Order.

In all circumstances, the Liquidating Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust in furtherance of the purposes of the Liquidating Trust.

For the avoidance of doubt, and without limitation of the foregoing, the Liquidating Trustee shall explicitly have the authority to: (i) investigate, prosecute, settle, liquidate, dispose of, and/or abandon any and all Claims and Causes of Action, subject to Bankruptcy Court approval, after notice and hearing; and (ii) file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Debtor or the Liquidating Trust, and request a prompt determination of such requests; and (iii) investigate, prosecute, settle, liquidate, dispose of, and/or abandon any and all other Claims and Causes of Action reserved in the Plan, subject to Bankruptcy Court approval, after notice and hearing.

### F.    Corporate Action

All actions contemplated to be performed by the Debtor pursuant to the Plan, or any corporate or partnership action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the shareholders, partners, members or managers of the Debtor.  All Persons, governmental units, title agencies, licensing agencies and offices of recordation may rely upon the authority vested in the Debtor in order to effectuate the Plan and the transactions contemplated herein.

### G.    Costs and Expenses

The costs and expenses of the Liquidating Trust, and the reasonable fees and expenses of the Liquidating Trustee and the Liquidating Trustee's Professionals, United States Trustee fees, shall be paid out of the Liquidating Trust Assets.  Those Professionals shall continue to file fee applications with the Bankruptcy Court for services provided to the Liquidating Trust and Liquidating Trustee, and all requests of Professionals retained by the Liquidating Trust for payment of fees or expenses shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Bankruptcy Court to ensure that such payment conforms to the terms of any engagement agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules.

### H.    Compensation of Liquidating Trustee

The Liquidating Trustee shall be entitled to reasonable compensation at his standard hourly rates.

### I.        Retention of Professionals

The Liquidating Trustee may retain and compensate attorneys, accountants and other professionals (collectively, the "Professionals") to assist in his duties as Liquidating Trustee under the Plan and Liquidating Trust on such terms (including on a contingency or hourly basis) as the Liquidating Trustee deems appropriate ~~without~~but subject to Bankruptcy Court approval. Without limiting the foregoing, the Liquidating Trustee may retain any Professional that represented the Debtor or other parties in interest in this Chapter 11 Case.

### J.        Tax Consequences of Liquidating Trust

For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as: (A) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to those Holders of Allowed Claims and Equity Interests receiving Liquidating Trust Beneficial Interests, followed by (B) the transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for the applicable Liquidating Trust Beneficial Interests. Accordingly, those Holders of Allowed Claims and Equity Interests receiving Liquidating Trust Beneficial Interests shall be treated for United States federal income tax purposes as the grantors and deemed owners of their respective share of the Liquidating Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. Notwithstanding the foregoing, (i) in the event that any portion of a Liquidating Trust is treated as a "qualified settlement fund" pursuant to Section 1.468B-1 of the Treasury Regulations, the United States federal income tax consequences shall be determined in accordance with the rules set forth in Section 468B of the Internal Revenue Code and the Treasury Regulations thereunder; and/or (ii) in the event that the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims Fund as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations, any Holders of such Disputed Claims shall, to the extent of such Disputed Claims, not be treated as having received any portion of the Liquidating Trust Assets transferred to the Liquidating Trust hereunder and shall not be deemed as grantors of the Liquidating Trust to the extent of such Disputed Claims

### K.        Duration

The Liquidating Trust shall remain in existence and continue in full force and effect until all of the following shall have occurred: (a) the Liquidating Trust Assets have been reduced to Cash or the Liquidating Trustee has determined that it is impractical or not in the best interest of the Liquidating Trust Beneficiaries to do so; (b) all costs, expenses and obligations incurred in administering the Liquidating Trust have been paid and discharged; (c) the Liquidating Trust Assets have been distributed to the Liquidating Trust Beneficiaries in accordance with the Plan; and (d) a final report has been filed and a Final Decree closing the Chapter 11 Case has been entered; provided, however, that the Liquidating Trust shall not remain in existence more than five years from the date of the respective Liquidating Trust Agreement, unless extended pursuant to the terms hereof. If warranted by the facts and circumstances provided for in the Plan, and subject to the approval of the Bankruptcy Court of a motion of the Liquidating Trustee seeking

an extension of the term of the Liquidating Trust as necessary to the purpose of the Liquidating Trust, then the term of the Liquidating Trust may be extended for a finite term based on the particular circumstances. ~~Each extension must be approved by the Bankruptcy Court within six months of the beginning of the extended term with notice thereof to all Liquidating Trust Beneficiaries. Notwithstanding~~ the foregoing, the Liquidating Trust shall ~~in no event remain in existence for more than twenty-one years from the Effective Date~~.

## L.     Indemnification

The Liquidating Trustee and the Liquidating Trustee's attorneys, employees, officers, directors, agents, representatives, and Professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such Persons and Entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such Persons or Entities in respect of that person's or entity's or the Liquidating Trustee's actions or inactions regarding the implementation or administration of the Plan, the Liquidating Trust or the Liquidating Trust Agreement or the discharge of their duties hereunder or thereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence. Any claim of the Liquidating Trustee and the other parties entitled to indemnification under this section, to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Liquidating Trust Assets, including but not limited to the Available Cash, or any applicable insurance coverage. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of their retained professionals regardless of whether such advice is provided in writing or verbally. Notwithstanding the foregoing, the Liquidating Trustee shall not be under any obligation to consult with his retained professionals, and his determination not to do so shall not result in the imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

## M.     Bond

As a condition to serving as Liquidating Trustee, the Liquidating Trustee, and any successor trustee, shall post a bond in favor of the Liquidating Trust in an amount that is not less than the amount of Cash held by the Liquidating Trust on the Effective Date, which bond shall be in substantially the same form as is required by the United States Trustee for trustees in the Southern District of Florida. For the avoidance of doubt, the Liquidating Trust shall be responsible for all costs associated with the posting of the foregoing bond, including the premium associated with such bond. In addition, the Liquidating Trustee is hereby authorized, out of funds available from the Liquidating Trust, to obtain all reasonably necessary insurance coverage for himself and the Liquidating Trust, its agents, representatives, employees or independent contractors whether as a named insured on the policies or otherwise, including, but not limited to, coverage with respect to (a) appropriate directors and officers/trustee liability insurance,(b) any property that is or may in the future become the property of the Liquidating Trusts, and (c) the liabilities, duties, and obligations of the Liquidating Trustee and the

Liquidating Trust. Such bond shall be subject to discharge and release upon an appropriate motion and order from the Bankruptcy Court upon the Liquidating Trustee's resignation, death or removal, or for other cause.

### N.    Resignation, Death or Removal

The Liquidating Trustee may resign at any time; provided, however, that he shall file a motion with the Bankruptcy Court in connection therewith and request that a successor or replacement be appointed in accordance herewith, which motion shall be on notice to the top twenty (20) Creditors holding Allowed Claims and the Office of the United States Trustee. The Office of the United States Trustee or any party in interest, by motion filed with the Bankruptcy Court, or the Bankruptcy Court on its own order to show cause, may seek to remove the Liquidating Trustee for cause, including under Section 324 of the Bankruptcy Code, or, if Section 324 is deemed inapplicable, then for the same reasons that would otherwise suffice under Section 324, for the violation of any material provision of the Plan, or in the event the Liquidating Trustee becomes incapable of acting hereunder as a result of physical or mental disability and such physical or mental disability continues for a period in excess of thirty (30) days (except in the case of death, in which instance the procedures for replacement will begin immediately). In the event of a resignation or removal, the Liquidating Trustee, unless he is incapable of doing so, shall continue to perform his duties hereunder until such a time as a successor is approved by a Final Order of the Bankruptcy Court. In the event the Liquidating Trustee resigns or is removed, the Liquidating Trust Beneficiaries, shall have 90 days to select a successor Liquidating Trustee by filing a motion with the Bankruptcy Court. If the Liquidating Trust Beneficiaries do not select a successor Liquidating Trustee, then the Office of the United States Trustee may file a motion with the Bankruptcy Court seeking an order directing the United States Trustee to select such successor.

### O.    Preservation of Causes of Action.

**Pursuant to the terms of the Plan, all Causes of Action are being transferred to the Liquidating Trust.  On and as of the Effective Date, all Causes of Action shall be preserved and vested in the Liquidating Trust.  After the Effective Date, the Liquidating Trust, through the Liquidating Trustee, will have the right to pursue, not pursue, enforce, file, settle, compromise, release, withdraw, arbitrate or litigate any Cause of Action that vests in the Liquidating Trust, provided, however, that any settlement of a Cause of Action shall require the approval of the Bankruptcy Court upon the filing of a motion and a hearing.**

**THE  AMENDED PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSE OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUST.** Creditors, Holders of Equity Interest and all parties in interest are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan and transferred to the Liquidating Trust for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims.  As such, Creditors, Holders of Equity Interest and all parties in interest are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular person/entity in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior

to the Effective Date of the Plan as any indication that the Debtor or Liquidating Trust do not possess or do not intend to transfer to or vest any Cause of Action in the Liquidating Trust if a particular Creditor, Holder of Equity Interest and/or party in interest votes to accept the Plan. It is the expressed intention of the Plan to preserve rights, objections to Claims, Causes of Action, and rights of action of the Debtor, whether now known or unknown, for the benefit of Liquidating Trust. A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Liquidating Trust, as a result of such failure, be estopped or precluded under any theory from pursuing any such Cause of Action. Nothing in the Plan operates as a release of any Cause of Action.

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors, Holders of Equity Interest and all parties in interest are advised that the Liquidating Trust will have the same rights that a Chapter 7 trustee would have with respect to the Causes of Action. However, the Disclosure Statement contains a description of the potential Causes of Action being preserved hereunder. Notwithstanding, neither a vote to accept the Plan by any Creditor, Holder of Equity Interest and/or party in interest nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor, Holder of Equity Interest, party in interest or any other Person or Entity. Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Cause of Action following Confirmation of the Plan.

The Estate shall remain open, even if the Bankruptcy Case shall has been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the recoveries therefrom have been received.

P.    **Prosecution and Settlement of Causes of Action**

The Liquidating Trust, through the Liquidating Trustee (a) may commence or continue in any appropriate court, tribunal or any other appropriate setting (e.g., American Arbitration Association or other arbitration association) any suit or other proceeding for the enforcement of any Cause of Action which the Debtor had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action, provided, however, that any such settlement shall require the approval of the Bankruptcy Court after notice and a hearing.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

A.    **Manner of Cash Payments Under the Amended Plan**

Any Distribution pursuant to the Plan, to the extent posted in the United States mail, shall be deemed made when deposited by the Debtor or the Liquidating Trust (or their respective agent(s)), as applicable, into the United States mail, or paid by wire transfer. At the option of the Debtor or the Liquidating Trust, as applicable, any Cash payment to be made pursuant to the Plan shall be made, at the election of the Debtor or the Liquidating Trust, as

applicable, by check drawn on a domestic bank, by wire transfer, or by ACH, from a domestic bank, or other method mutually agreed upon by the holder of the Allowed Claim and the Debtor or the Liquidating Trust.  Whenever any Distribution to be made under the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on that due date.

B.    **Entity Making Distributions**

Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims shall be made by the Debtor, if before the Effective Date, or the Liquidating Trust if on or after the Effective Date.  The Debtor and the Liquidating Trust shall not be required to give any bond or surety or other security for the performance of their duties, unless otherwise ordered by the Bankruptcy Court.

C.    **Distribution Dates**

Distributions to holders of Claims and Equity Interests shall be made as provided in Articles II and III of this Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

D.    **Record Date for Distributions**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims or Equity Interests that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims or Equity Interests (as applicable) for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Debtor or Liquidating Trust, as applicable, shall have no obligation to recognize any transfer of any Claim or Equity Interest occurring after the Record Date.  In making any Distribution with respect to any Claim or Equity Interest, the Debtor or Liquidating Trust, as applicable, shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim or Equity Interest filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtor as of the Record Date.

E.    **Delivery of Distributions**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims and Allowed Equity Interests shall be made by the Debtor or Liquidating Trust, as applicable, at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim or Equity Interest filed by such holder or (b) the last known address of such holder if no proof of Claim or Equity Interest is filed or if the Debtor or Liquidating Trust, as applicable, have not been notified in writing of a change of address.

### F.    Undeliverable and Unclaimed Distributions

In the event that any Distribution to any holder of an Allowed Claim or Allowed Equity Interest made by the Debtor or Liquidating Trust, as applicable is returned as undeliverable, the Debtor or Liquidating Trust, as applicable, shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Debtor or Liquidating Trust, as applicable, has determined the then current address of such holder; provided, however, that all Distributions to holders of Allowed Claims or Allowed Equity Interests made by the Debtor or Liquidating Trust, as applicable, that are unclaimed for a period of ninety (90) days after the date of the first attempted Distribution shall have its, his or her Claim or Equity Interest for such undeliverable Distribution deemed satisfied and will be forever barred from asserting any such Claim or Equity Interest against the Debtor or Liquidating Trust, as applicable, or their property.  Any Distributions which are undeliverable or have not been negotiated within the time set forth above shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Debtor or Liquidating Trust, as applicable.  The Debtor or Liquidating Trust, as applicable, shall have no further obligation to make any Distribution to the holder of such Claim or Equity Interest on account of such Claim or Equity Interest, and any entitlement of any holder of such Claim or Equity Interest to any such Distributions shall be extinguished and forever barred; provided, however, that the holder of such Claim or Equity Interest may receive future Distributions on account of such Claim or Equity Interest by contacting the Debtor or Liquidating Trust, as applicable, at some point prior to the final Distribution.

### G.    Compliance with Tax Requirements

The Debtor or Liquidating Trust, as applicable, may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims or Equity Interests; provided, however, that the Debtor or Liquidating Trust, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims or Equity Interests without first filing a notice with the Court (and serving such notice on the holder of the Claim or Equity Interest) describing the nature and amount of the proposed withholding and providing the Creditor or holder of Equity Interest an opportunity to object.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims or Equity Interests.  The Debtor or Liquidating Trust, as applicable, shall be authorized to collect such tax information from the holders of Claims or Equity Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan.  In order to receive Distributions under the Plan, all holders of Claims or Equity Interests will need to identify themselves to the Debtor or Liquidating Trust, as applicable, and provide all tax information the Debtor or Liquidating Trust, as applicable, deem appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder).  The Debtor or Liquidating Trust, as applicable, may refuse to make a Distribution to any holder of a Claim or Equity Interest that fails to furnish such information within the time period specified by the Debtor or Liquidating Trust, as applicable, and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, provided further that, if the Debtor or Liquidating Trust, as

applicable, fails to withhold in respect of amounts received or distributable with respect to any such holder and such Debtor are later held liable for the amount of such withholding, such holder shall reimburse the Debtor or Liquidating Trust, as applicable, for such liability. Notwithstanding any other provision of the Plan, each holder of an Allowed Claim or Equity Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit.

### H.    No Payments of Fractional Dollars

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

### I.    Interest on Claims

Except as specifically provided for in this Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims or Equity Interests and no holder of a Claim or Equity Interest shall be entitled to interest on any Claim accruing on or after the Petition Date.  Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim.  Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or similar charges.

J.      **No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

K.      **Setoff and Recoupment**

The Debtor or Liquidating Trust, as applicable, may setoff against, or recoup from, any Claim or Equity Interest and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that the Debtor or Liquidating Trust, as applicable, or the Estate may have against the holder of such Claim or Equity Interest, but neither the failure to do so nor the allowance of any Claim or Equity Interest under the Plan shall constitute a waiver or release by the Debtor or Liquidating Trust, as applicable, or the Estate of any right of setoff or recoupment that any of them may have against the holder of any Claim or Equity Interest.  Any such setoffs or recoupments may be challenged in Bankruptcy Court.  Notwithstanding any provision in the Plan to the contrary, nothing herein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; provided, however, that such setoff or recoupment rights are timely asserted; provided further that all rights of the Debtor or Liquidating Trust, as applicable, and the Estate with respect thereto are reserved.

L.      **De Minimis Distributions; Charitable Donation**

Notwithstanding anything to the contrary in the Plan, the Debtor or Liquidating Trust, as applicable, shall not be required to make a Distribution to any Creditor of holder of an Equity Interest if the dollar amount of the Distribution is less than $10 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution.  On or about the time that the final Distribution is made, the Debtor or Liquidating Trust, as applicable, may make a donation of undistributable funds as defined by Local Rule 3011-1(C)(1), in the reasonable discretion of the Debtor or Liquidating Trust, as applicable, to the following organizations (each of which qualifies for not-for-profit status under section 501(c)(3) of the Tax Code) with undistributable funds if, in the reasonable judgment of the Debtor or Liquidating Trust, as applicable, the cost of calculating and making the final Distribution of the undistributable funds remaining is excessive in relation to the benefits to the or holders of Claims or Equity Interests who would otherwise be entitled to such Distributions: (i) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida; (ii) Legal Services of Greater Miami, Inc.; (iii) Dade Legal Aid- Put Something Back Program; or (iv)  Miami Foundation for Mental Health, Inc.

M.      **Withholding from Distributions**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan.  The Debtor or Liquidating Trust, as applicable, may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the reasonable discretion of the Debtor or Liquidating Trust, as applicable, required to be withheld by any law, regulation,

36

rule, ruling, directive, or other governmental requirement.  The Debtor or Liquidating Trust, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims or Equity Interests without first filing a notice with the Court (and serving such notice on the holder of the Claim or Equity Interest) describing the nature and amount of the proposed withholding and providing the Creditor or holder an opportunity to object.

### N.    Distributions in Satisfaction; Allocation

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Equity Interests in the Debtor and their Estate, whether known or unknown, that arose or existed prior to the Effective Date.  Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest (if any).

### O.    No Distributions on Late-Filed Claims

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in the Chapter 11 Case, including, without limitation, the General Bar Date and any bar date established in the Plan or in the Confirmation Order, shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Case, without the need for (a) any further action by the Debtor or Liquidating Trust, as applicable, (b) an order of the Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating thereto.

### ARTICLE VII
### DISPUTED CLAIMS

### A.    Resolution of Disputed Claims

The Debtor or the Liquidating Trust, as applicable, shall have the right to make and file objections to Claims or Equity Interests in the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims or Equity Interests shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

### B.    Objection Deadline

All objections to Disputed Claims or Equity Interests shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.

## C.    Estimation of Claims

At any time, the Debtor or Liquidating Trust, as applicable, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim or Equity Interests to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Liquidating Trust, as applicable, have previously objected to such Claim or Equity Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim or Equity Interest at any time during litigation concerning any objection to such Claim or Equity Interest, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim or Equity Interest, that estimated amount shall constitute either the Allowed amount of such Claim or Equity Interest or a maximum limitation on the Claim or Equity Interest, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the Claim or Equity Interest, the Debtor or Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim or Equity Interest.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

## D.    No Distributions Pending Allowance

Notwithstanding any other provision in the Plan, if any portion of a Claim or Equity Interest is disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim or Equity Interest unless and until such Disputed Claim or Equity Interest becomes an Allowed Claim or Allowed or Equity Interest.

To the extent that a Disputed Claim or Equity Interests ultimately becomes an Allowed Claim or Equity Interest, Distributions (if any) shall be made to the holder of such Allowed Claim or Equity Interest in accordance with the provisions of the Plan.  Upon allowance, a holder of the Allowed Disputed Claim or Equity Interest shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim or Equity Interest been allowed on the Effective Date.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

## A.    General Treatment: Rejected if not Previously Assumed.

Within fourteen (14) days prior to the Confirmation Hearing, the Debtor shall file and serve a Notice of all contracts that it intends to ~~reject~~assume and assign to the Liquidating Trust (the "~~Rejection~~Assumption Schedule").  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, upon the Effective Date, all executory contracts and unexpired leases that exist between the Debtor and any Person or Entity shall be deemed ~~assumed~~rejected, unless included on the ~~Rejection~~Assumption Schedule or previously ~~rejected.    Within 14 days prior to the Confirmation Hearing, the Debtor shall file a proposed Schedule of Cure Amounts for any leases or contracts that will be assumed under~~

the Plan (the "Cure Schedule"). Any party objecting the proposed cure amount as set forth in the Cure Schedule shall file an objection within three (3) days prior to the Confirmation hearing. If no objection is filed, then the proposed cure amount will be deemed approved. The Debtor shall have forty-five assumed. The Liquidating Trustee shall have sixty (4560) days from the Effective Date to supplement the Rejection Schedule and Cure Assumption Schedule and the Bankruptcy Court will determine any disputes regarding any cure or rejection damages. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumption or rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption or rejection is in the best interests of the Debtor, the Liquidating Trust, their Estate, and all parties in interest in the Chapter 11 Case.

**B.      Bar to Claims Arising from Rejection, Termination or Expiration**

Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Article VIII.A herein ("General Treatment; Rejected if not Previously Assumed") or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtor or Liquidating Trust, as applicable, no later than thirty (30) days after (a) the *date of the entry of any order of the Bankruptcy Court authorizing rejection*, with respect to any executory contract or unexpired lease rejected by the Debtor or otherwise pertaining to such order, or (b) *the Confirmation Date*, with respect to any executory contract or unexpired lease that is deemed rejected pursuant to VIII.A hereof ("General Treatment; Rejected if not Previously Assumed"). Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtor, or the Estate, assets, properties, or interests in property, or the Liquidating Trust, or the Estate, assets, properties, or interests in property. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor or the Liquidating Trust of any objections to such Claim if asserted.

39

**C.      Assumption of Executory Contracts and Unexpired Leases**

(1)      *Assumption of Executory Contracts and Unexpired Leases; Schedule of Assumed Executory Contracts and Unexpired Leases*.  On the Effective Date, the Debtor will ~~assume~~reject all of the executory contracts and unexpired leases not listed on the ~~Rejection~~Assumption Schedule.

(2)      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*. Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed pursuant to the Plan will include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated pursuant to the Plan or separate motion and Final Order of the Bankruptcy Court.

(3)      *Proof of Claim Based on Executory Contracts or Unexpired Leases that Have Been Assumed*.  Any and all proofs of claim relating to executory contracts or unexpired leases that have been assumed in the Chapter 11 Case will be deemed amended and superseded by the amount of Cure Claim identified in the Plan, the Confirmation Order or other order of the Bankruptcy Court authorizing assumption of executory contracts to the Debtor or the Liquidating Trust.

(4)      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*.   All Allowed Cure Claims will be satisfied by the Debtor by payment of the Cure in Cash to (i) holders of such Cure Claims or on the Effective Date or as soon as reasonably practicable thereafter, or (ii) on such other terms as may be either ordered by the Bankruptcy Court or agreed by the Debtor and the applicable contract counter-party without any further notice to or action, order, or approval of the Bankruptcy Court.   Any provisions or terms of executory contracts or unexpired leases to be assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the Cure, or by an agreed-upon waiver of the Cure.

(5)      Confirmation Order.  Entry of the Confirmation Order will constitute a finding of adequate assurance of future performance by the Liquidating Trust within the meaning of section 365 of the Bankruptcy Code.   Any objections relating to adequate assurance of future performance, or any other matters relating to the assumption and assignment of executory contracts and unexpired leases (other than Cure Claim disputes) must be asserted as an objection to confirmation of the Plan.  Assumption of any executory contract or unexpired lease pursuant to the Confirmation Order or other order of the Bankruptcy Court will limit the Claims of any such contract counter-party to the (i) Allowed Cure Claim and (ii) Claims for ongoing performance under the unexpired lease or executory contract by Liquidating Trust pursuant to section 365(k) of the Bankruptcy Code.

**D.    Indemnification and Reimbursement.**

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtor for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtor against any Claims, costs, liabilities or causes of action as provided in the Debtor's partnership agreement, operating agreement, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be paid only to the extent of any applicable insurance coverage.  Nothing contained in the Plan shall affect the rights of partners, managers, directors, officers or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities or Causes of Action or limit the rights of the Debtor or the Debtor's Estate to object to or otherwise contest or challenge Claims or rights asserted by any current or former partner, manager, officer, director or employee of the Debtor.

**ARTICLE IX**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**A.      Conditions Precedent**

The following are conditions precedent to the Effective Date that must be satisfied or waived by the Debtor:

(1)      The Successful Bidder pursuant to the Sale Approval Order shall have been awarded to a Successful Bid that provides sufficient Sale Proceeds for the Debtor to perform under the terms proposed in this Plan;

(2)      (1) The Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor confirming and approving the Plan in all respects.

(3)      (2) The Court shall have entered a Confirmation Order in form and substance acceptable to the Debtor confirming and approving the Plan in all respects.

(4)      (3) There shall be no stay or injunction in effect with respect to the Confirmation Order.

(5)      (4) The Plan Documents shall be in a form and substance reasonably acceptable to the Debtor, and have been duly executed and delivered; provided, however, that no party to any such agreements and instruments, may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

**B.      Waiver**

Notwithstanding the foregoing conditions, the Debtor reserves, in its sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.  Any such written waiver of a condition precedent set forth in this Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**ARTICLE X**
**EFFECT OF CONFIRMATION; INDEMNIFICATION,**
**INJUNCTIVE AND RELATED PROVISIONS**

**A.      Compromise and Settlement**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the

42

Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Equity Interests.

### B.      Binding Effect

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtor, the Liquidating Trust, and any holder of a Claim against, or Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

### C.      Discharge of Claims

Except as provided herein, the rights afforded in the Plan and the payments and Distributions to be made hereunder shall discharge all existing debts, Claims and Equity Interests, of any kind, nature, or description whatsoever against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided herein, upon the Effective Date, all existing Claims against and Equity Interests in the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Liquidating Trust, its successors or assignees, or any of its assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting against the Liquidating Trust any such discharged Claim against or Equity Interest in the Debtor.

**D.      No Discharge of the Debtor**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation of the Plan will not discharge Claims against the Debtor; provided, however, that no Holder of any Claim or Equity Interest may, on account of such Claim or Equity Interest, seek or receive any payment or other Distribution from, or seek recourse against, any of the Estate, the Liquidating Trust, the Liquidating Trustee, and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

**E.      Exculpation**

**Notwithstanding anything contained herein the contrary, Genovese Joblove & Battista, P.A. (and their respective employees, attorneys, professionals and agents) shall neither have nor incur any liability relating to the Chapter 11 Case to any Entity for any and all Claims and Causes of Action arising after the Petition Date and through the Effective Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan or distributing property thereunder, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with the Chapter 11 Case; provided, however, that the foregoing provisions of this Article shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, fraud or willful misconduct.**

**F.      Limitations on Exculpation**

Nothing in this Plan shall be construed to release or exculpate any Person from, or require indemnification of any Person against losses arising from criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or limit the liability of the professionals of the Debtor to the Debtor pursuant to Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

**G.      Injunction**

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Liquidating Trust, the Estate, and their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied pursuant to the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Liquidating Trust, the Estate, and their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents,

instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtor or any of their assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order. On the Effective Date, all such Claims against, and Equity Interests in, the Debtor shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released pursuant to the Plan or Confirmation Order, from:

(i)     commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Liquidating Trust, the Estate and their successors and assigns and their assets and properties;

(ii)    enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Liquidating Trust, the Estate and their successors and assigns and their assets and properties;

(iii)   creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Liquidating Trust, the Estate and their successors and assigns and their assets and properties; and

(iv)    commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder).

## H.     Release of Liens

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate distributed under the Plan shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to the Liquidating Trust.

## ARTICLE XI
## <u>RETENTION OF JURISDICTION</u>

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Liquidating Trust, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

(i)      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim against or Equity Interest in the Debtor, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interest;

(ii)      grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Case by the Debtor for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Date;

(iii)      resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(iv)      ensure that Distributions to holders of Allowed Claims or Equity Interests are accomplished pursuant to the provisions of the Plan, including by resolving any disputes regarding, as applicable, the Debtor's or Liquidating Trust's entitlement to recover assets held by third parties;

(v)      decide or resolve any motions, contested or litigated matters (including but not limited to any adversary proceeding) and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Liquidating Trust after the Effective Date;

(vi)      enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;

(vii)      issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

(viii)      enforce Articles within this Plan;

(ix)      resolve any cases, controversies, suits or disputes with respect to the injunction and other provisions contained in Article XI, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

(x)      resolve any issues or matters related to the Liquidating Trust;

46

(xi)    enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

(xii)    resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

(xiii)    enter an order and a Final Decree closing the Chapter 11 Case.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**A.    Modification of Plan**

Subject to the limitations contained in the Plan, the Debtor reserves the right in its sole discretion, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, provided, however, that (1) any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan as required under and in accordance with Section 1127 of the Bankruptcy Code or applicable Bankruptcy Rules; and (2) after the entry of the Confirmation Order, the Liquidating Trust may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**B.    Revocation of Plan**

The Debtor reserves the right in its sole discretion to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans. If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; and (2) the Plan filed by the Debtor shall not be affected as a result thereof; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of either of the Debtor or any other Entity; or (c) constitute an admission of any sort by either of the Debtor or any other Entity.

### C.    Binding Effect

On the Effective Date, the provisions herein shall bind any holder of a Claim against, or present or former direct or indirect holder of an Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

### D.    Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

### E.    Governing Law

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

### F.    Reservation of Rights

The Plan shall have no force or effect unless and until the Effective Date occurs. Neither the filing of the Plan, any statement or provision contained herein, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

### G.    Section 1125(e) Good Faith Compliance

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtor  and each of its Representatives have acted in "good faith" under sections 1125(e) and 1129(a)(3) of the Bankruptcy Code.

### H.    Further Assurances

The Debtor, all holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

### I.    Service of Documents

Any pleading, notice or other document required herein to be served on or delivered to the Debtor shall be sent by both email and first class, certified U.S. mail, postage prepaid as follows:

**AVENTURA HOTEL PROPERTIES, LLC**
c/o HES Group
Attn: Francisco Arocha
1001 S.W Second Avenue
Suite 300
Miami, Florida 33130

**GENOVESE JOBLOVE & BATTISTA, P.A.**
Attn:  Jesus M. Suarez, Esq.
100 SE 2nd Street, 44th Floor
Miami, FL 33131Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Email: jsuarez@gjb-law.com

### J.    Filing of Additional Documents

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

### K.    No Stay of Confirmation Order

The Debtor shall request that the Court waive stay of enforcement of the Confirmation Order otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 7062.

### L.    Bankruptcy Rule 9019 Request; Impact

The Plan, including the Plan Supplement or other Plan Document, may provide for one or more compromises or settlements.  Pursuant to Bankruptcy Rule 9019, the Debtor hereby requests approval of all compromises and settlements included in the Plan, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of any such compromise or settlement.

### M.    Automatic Stay

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Case until the Effective Date.

Dated:  August ~~11,~~16, 2021

**AVENTURA HOTEL PROPERTIES, LLC**

By:  __/s/__ *Francisco Arocha*
Name:  Francisco Arocha
Title:    Manager

**GENOVESE JOBLOVE & BATTISTA, P.A**.

By: */s/ Jesus M. Suarez*
Jesus M. Suarez
Fla. Bar No. 60086
jsuarez@gjb-law.com
John H. Genovese
Fla. Bar No. 280852
jgenovese@gjb-law.com
Barry P. Gruher
Fla. Bar No. 960993
bgruher@gjb-law.com
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

*Counsel for Debtor-in-Possession*
*Aventura Hotel Properties, LLC*

50

## EXHIBIT 1
## LIQUIDATING TRUST AGREEMENT

Document comparison by Workshare Compare on Monday, August 16, 2021
3:36:42 PM

| Input: | |
|---|---|
| Document 1 ID | file://\\GJB-FS01\UsersProfiles\jsuarez\Desktop\Florunder\AHP Plan of Liquidation - Final IV(1).doc |
| Description | AHP Plan of Liquidation - Final IV(1) |
| Document 2 ID | file://\\GJB-FS01\UsersProfiles\jsuarez\Desktop\Florunder\FA AHP Plan of Liquidation - FINAL II(2).doc |
| Description | FA AHP Plan of Liquidation - FINAL II(2) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 165 |
| Deletions | 159 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 330 |

## LIQUIDATING TRUST AGREEMENT

**THIS LIQUIDATING TRUST AGREEMENT** (the "**Agreement**"), dated as of this ____ day of September, 2021, is by and among, Aventura Hotel Properties, LLC (the "**Debtor**"); and _____ individually, the liquidating trustee (the "**Liquidating Trustee**") appointed under and pursuant to the *First Amended Chapter 11 Plan of Liquidation Proposed by Aventura Hotel Properties, LLC.* [ECF No. _____] (the "**Plan**") dated August 21,16, 2021.[1]

### WITNESSETH:

**WHEREAS**, the Debtor filed voluntary petitions for relief under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**"), commencing a chapter 11 bankruptcy case (Case Nos. 21-12374-BKC-RAM) (the "**Chapter 11 Case**") in the United States Bankruptcy Court for the Southern District of Florida (the "**Bankruptcy Court**");

**WHEREAS**, on September __, 2021, the Bankruptcy Court entered the Confirmation Order confirming the Plan [ECF No. ____];

**WHEREAS**, the Plan provides for the creation of a grantor trust for the benefit of the Liquidating Trust Beneficiaries (as defined herein) under and pursuant to the terms of the Plan;

**WHEREAS**, this Agreement is executed by the parties hereto in order to establish a liquidating trust, which trust is to be known as the "AHP Liquidating Trust" (the "**Liquidating Trust**"), in accordance with Treasury Regulation Section 301.7701-4(d), whose primary purpose is to provide a mechanism for the liquidation of the assets of the Estate, and to distribute the proceeds of the liquidation, net of all claims, expenses, charges, liabilities, and obligations of the Liquidating Trust, to the Liquidating Trust Beneficiaries in accordance with the terms of the Plan, and not to continue or engage in the conduct of any trade or business, except to the extent necessary to accomplish the liquidation of assets of the Estate (as defined herein);

---

[1] Capitalized terms not defined herein shall have the definitions provided for in the Plan.

**WHEREAS**, the corpus of the Liquidating Trust and all income earned thereon remaining after the satisfaction of all trust expenses and liabilities shall be used solely for the purpose of discharging the legal obligations of the Debtor's Estate pursuant to the Plan;

**WHEREAS**, the parties to this Agreement desire that the Liquidating Trust created pursuant to this Agreement qualify as a liquidating trust in accordance with Treasury Regulation Section 301.7701-4(d) and that on qualification, the Liquidating Trust shall be taxed as a "grantor trust" under and in accordance with the relevant provisions of the Internal Revenue Code of 1986, as amended (the "**Internal Revenue Code**" or "**I.R.C.**") and the Treasury Regulations pertaining thereto, except as otherwise provided for United States federal income tax purposes in the event that (i) any portion of this Liquidating Trust is treated as a "qualified settlement fund" pursuant to Section 1.468B-1 of the Treasury Regulations, or (ii) the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims Fund as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations.

**NOW, THEREFORE**, in consideration of the premises and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and subject to the terms and conditions of this Agreement and the Plan, the Debtor and the Liquidating Trustee have executed this Agreement for the sole benefit of the Liquidating Trust Beneficiaries and no other party as follows:

## ARTICLE I
## GRANT, ACCEPTANCE, NAME, AND DEFINITIONS

**1.1   Grant.** (i) Other than Available Cash already distributed under the Plan at Closing or otherwise, the Debtor, for itself and the Debtor's Estate, hereby irrevocably grants, assigns, transfers, conveys, delivers, delegates, sets over and vests the Liquidating Trust Assets (as defined in the Plan) in and to the Liquidating Trustee to be held in trust for the benefit of the Liquidating Trust Beneficiaries and subject to the terms and provisions set out below and in the Plan.

2

Additionally, the Debtor, for itself and the Debtor's Estate, irrevocably grants, assigns, transfers, conveys, delivers, delegates, sets over and vests the Causes of Action to the Liquidating Trustee, whether under the Bankruptcy Code or applicable non-bankruptcy law, including, without limitation, the power to investigate, prosecute and/or settle all such Causes of Action. To the extent that any law, regulation or contractual provision prohibits the transfer of ownership of any of the Assets from the Debtor or the Debtor's Estate to the Liquidating Trust or the Liquidating Trustee, or if for any reason the Debtor or the Debtor's Estate shall retain or receive at any point any property which is included in, or intended under the Plan and this Agreement to be included in, the definition of Liquidating Trust Assets, then the Estate shall and are hereby deemed to hold such property (and any proceeds or products thereof) in trust for the Liquidating Trust Beneficiaries of the Liquidating Trust and shall promptly notify the Liquidating Trustee of the existence of such property and shall promptly take such actions with respect to such property as the Liquidating Trustee shall direct in writing. It is intended that the Liquidating Trust Assets transferred pursuant to this Section 1.1 shall provide the Liquidating Trust Beneficiaries with distributions on account of their Allowed Claims and Allowed Equity Interests pursuant to and in accordance with the Plan.

(ii)   This transfer will be treated for federal income tax purposes as a deemed transfer by the Debtor to the Beneficiaries followed by a deemed transfer by the Beneficiaries to the Trust, in accordance with Revenue Procedure 94-45, 1994-2 C.B. 684. The taxation of the deemed transfers from the Debtor to the Beneficiaries will be treated as if the Debtor distributed the Assets to the Beneficiaries in liquidation of their interests in the Debtor under IRC §§731 and 736.

(iii)   The Liquidating Trustee hereby accepts the Liquidating Trust Assets and the Liquidating Trust  created hereunder, subject to the terms and provisions set out below and, in the Plan, on behalf of  and for the benefit of the Liquidating Trust Beneficiaries.

**1.2    Name.**  The trust created pursuant to the terms hereof shall be known as the

3

"AHP Liquidating Trust" and shall be referred to herein as the "Liquidating Trust."

**1.3    Certain Terms Defined.**  For all purposes of this Agreement, the capitalized terms used herein shall have the following meanings:

(i)    *"Agreement"* shall mean this Liquidating Trust Agreement as originally executed and as it may from time to time be amended pursuant to the terms hereof;

(ii)    *"Assets"* or "Liquidating Trust Assets" means all Assets of the Estate, which Liquidating Trust Assets are proposed to be transferred to and vested in the Liquidating Trust under and in accordance with the terms of the Plan on the Effective Date.  Liquidating Trust Assets shall include any and all property of the Estate as defined under and included in Section 541(a) of the Bankruptcy Code existing on the Effective Date of the Plan, including all Causes of Action and the rights to prosecute, enforce and settle same;

(iii)    *"Alternate"* shall have the meaning set forth in Section 12.2 of this Agreement;

(iv)    *"Class A Beneficial Interests"* shall mean those certain Class A beneficial interests in the Liquidating Trust to be issued to the Holders of Allowed Claims representing the right to Distributions from the proceeds of the Liquidating Trust Assets, which Class A beneficial interests shall not be certificated, but shall have priority for all purposes to Distributions over the Class B Beneficial Interests.

(v)    *"Class B Beneficial Interests"* shall mean those certain Class B beneficial interests in the Liquidating Trust to be issued to the Holders of Equity Interests representing the right to Distributions from the proceeds of the Liquidating Trust Assets, which Class B beneficial interests shall not be certificated, but shall be subordinated in all respects to the payment in full of all Allowed Claims represented by the Class A Beneficial Interests.

(1)    ~~(vi)~~ *"Disputed Claims Fund"* as  soon as practicable following the entry of the Confirmation Order, the Liquidating Trustee shall establish the Disputed Claims Fund.  The

4

Liquidating Trustee shall be responsible for making the Distributions to the  Holders of Allowed Claims and  Allowed  Equity  Interests  pursuant  to  the  terms  of  the  Plan,  provided  that  the Disputed Claims Fund, if applicable, is maintained and includesDisputed Claim Fund shall (i) hold any Excess Sale Proceeds pending the determination of the Disputed Claim of QR Triptych (as defined in the Plan); and (ii) hold any distribution that would otherwise be paid to a Disputed Claim and in each case maintaining sufficient funds  to pay and reserve for accruing interest on Disputed Claims, and potential fees, costs, penalties or other charges against the Estate that could be incurred in connection with the allowance of a Disputed Claim to the extent permitted in  such contract by and between the Debtor and Holder of the Disputed Claim.  Claims estimated by the Bankruptcy Court at $0 for all purposes in the Bankruptcy Case are disallowed in their entirety, are not Disputed Claims, and are not entitled to any distributions under the Plan.

(vi)    (vii)  *"Distribution Record Date"* means a date selected by the Liquidating Trustee  preceding each distribution date (other than the initial distribution date), as the record date for  determining the holders of Allowed  Claims and Allowed Equity Interests entitled to participate in the distribution on such distribution date;

(vii)    (viii)  *"Effective Date"* means subject to the satisfaction or waiver as applicable of the conditions set forth in the Plan, a date that is not later than tenfourteen (1014) Calendar Days after the Confirmation Order is entered.

(viii)    (ix)  *"Estate"* means the Estate that was created by the commencement of the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges and Causes of Action of the Debtor and any and all Assets and interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that the Debtor or the Estate shall have had as of the  Petition Date, or which the Debtor or the Estate acquired after the commencement of the

5

Chapter 11 Case, whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise the bankruptcy estate of the Debtor;

(ix)    (x) *"Liquidating Trust"* shall have the meaning set forth in Section 1.2 hereof;

(x)    (xi) *"Liquidating Trust Beneficiaries"* or *"Beneficiaries"* means the Holders of Class A Beneficial Interests and Class B Beneficial Interests as of the Effective Date and Holders of any Disputed Claims provided for in the Disputed Claims Fund.

(xi)    (xii) *"Liquidating Trustee"* shall mean, subject to Bankruptcy Court approval, _____, individually, the Liquidating Trustee named to administer this Liquidating Trust, and all  successor Liquidating Trustees;

(xii)    (xiii) *"Liquidating Trust Reserve"* means the amount of Available Cash determined from time to time by the Liquidating Trustee on the Effective Date in the exercise of their business judgment required to be reserved from any Distribution in order to pay Post Confirmation Administrative Claims, post-confirmation U.S. Trustee fees and other obligations of the Liquidating Trust, including to provide for a source of indemnification and reimbursement for the Liquidating Trustee and other parties entitled to such indemnification and reimbursement as set forth in the Liquidating Trust Agreement, the Plan, and the Confirmation Order.

**1.4  Other Definitions.**  All capitalized terms used herein and not otherwise defined herein  shall have the meanings ascribed to them in the Plan.

<u>**ARTICLE II**</u>
<u>**NATURE OF TRANSFER**</u>

**2.1    Purpose of Liquidating Trust.**  The Liquidating Trust is created solely to implement the terms of the Plan. The primary purposes of the Liquidating Trust are to collect and liquidate  the Assets, pursue those Causes of Actions transferred to, and vested in, the Liquidating Trust and distribute to the Liquidating Trust Beneficiaries all proceeds from the liquidation of the

6

Assets pursuant to the terms of the Plan. Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein or in the Plan or otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Assets.

2.2    **Representative of the Estate.**  If and to the extent the conveyance or assignment of any of the Causes of Action to the Liquidating Trust would preclude or impair the prosecution thereof by the Liquidating Trustee under the Bankruptcy Code or otherwise, then the Liquidating Trust is intended to and shall be deemed to be a "representative of the Estate" approved to retain and enforce such Causes of Action pursuant to 11 U.S.C. §§ 1123(b)(3)(A) and (3)(B).

2.3    **Grantor Trust.**  The Liquidating Trust created by this Agreement is intended: (i) as a trust governed and construed in all respects as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d) and as a grantor trust in favor of the Liquidating Trust Beneficiaries pursuant to the relevant provisions of the Code and the Treasury Regulations pertaining thereto; and (ii) to comply with the requirements of a liquidating trust as set forth in Revenue Procedure 94-45, 1994-2 C.B. 684, except as otherwise provided for United States federal income tax purposes in the event that (A) any portion of this Liquidating Trust is treated as a "qualified settlement fund" pursuant to Section 1.468B-1 of the Treasury Regulations, or (B) the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims Fund as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations. Subject to the immediately preceding sentence, the Liquidating Trustee is hereby authorized and directed: (i) to take any and all actions necessary to maintain the Liquidating Trust as a liquidating trust for federal income tax purposes in accordance with Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45 and as a "grantor trust" under and in accordance with the relevant provisions of the Code and Treasury Regulations pertaining thereto unless otherwise

required; and (ii) to take any and all actions permitted or required to be taken by the Liquidating Trustee pursuant to this Agreement and the Plan.

**2.4    Liabilities of the Debtor.**  The Liquidating Trustee, solely for and on behalf of the Liquidating Trust, shall utilize all or such part of the Assets as may be necessary to, and shall, pay any and all Allowed Claims and Allowed Equity Interests in the Debtor and all Disputed Claims in the Debtor in accordance with and pursuant to the terms of the Plan.

**2.5    Court Approval Not Required.**  The Liquidating Trustee shall, subject to the terms of this Trust Agreement or the Plan, be empowered to exercise all rights and powers granted to the  Liquidating Trustee in this Agreement, the Plan, and Confirmation Order in the exercise of her business judgment without need of further Bankruptcy Court approval. Nevertheless, the Liquidating Trustee may seek to obtain Bankruptcy Court approval if she determines in the exercise of her business judgment that it is appropriate to do so.

<u>**ARTICLE III**</u>
<u>**BENEFICIARIES**</u>

**3.1    Rights of Beneficiaries.**  Each Liquidating Trust Beneficiary shall be entitled to participate in the rights and benefits due to a Liquidating Trust Beneficiary hereunder. The interest of each Beneficiary in the Liquidating Trust is hereby declared and shall be in all respects personal property of such Beneficiaries and upon the death of an individual Beneficiary, their interest shall pass to their legal representative and such death shall not terminate the Liquidating Trust or otherwise affect the validity of this Agreement. Each Beneficiary shall have the rights with respect to the Assets as are provided by this Agreement and the Plan.  No widower, widow, heir, or devisee of any person who may be a Beneficiary shall have any right of power, homestead, inheritance, or partition, or any other right, statutory or otherwise, in any property whatsoever forming a part of the Assets, but the whole title to all the Assets shall be vested in the Liquidating Trustee and the sole interest of the Beneficiaries shall be the rights and benefits given to such

8

persons under this Agreement.

**3.2** **Transfer of Interests of Beneficiaries.** No interest of a Beneficiary may be transferred either by the Beneficiary or by a duly authorized agent or attorney, or by the properly appointed legal representatives of the Beneficiary except as otherwise provided for by the Plan and in accordance with Bankruptcy Rule 3001. In the event of any such transfer, the transferee shall take and hold such interest subject to the terms and provisions of this Trust Agreement and shall give prompt written notice of such transfer to the Liquidating Trustee. The Liquidating Trustee shall not be liable to any transferee of an interest of a Beneficiary for any distributions provided for hereunder unless such transfer is valid under the terms of the Plan and in accordance with Bankruptcy Rule 3001 and until the Liquidating Trustee receives written notice of such transfer together with appropriate assignment and transfer documents signed by the applicable Beneficiary.

**3.3** **Beneficiary Information.** The Liquidating Trustee may rely upon information relating to each Beneficiary as it appears in the books and records of the Liquidating Trust upon the Distribution Record Date. As of the close of business on the date the Confirmation Order is entered there shall be no further changes in the record Holders of Equity Interests. The Liquidating Trustee shall have no obligation to recognize any transfer of any such Interests occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes with only those Holders of record as of the close of business on the Distribution Record Date.

**3.4** **Certification of Interests.** The Liquidating Trustee shall not be required to issue certificates or other instruments representing or evidencing the interests of the Beneficiaries in the Liquidating Trust, but nothing contained herein shall prohibit them from doing so.

## ARTICLE IV
## DURATION OF ASSETS

**4.1** **Duration.** The Liquidating Trust shall remain in existence and continue in full

9

force and effect until all of the following shall have occurred: (a) the entirety of the Assets have been reduced to cash or the Liquidating Trustee has determined that it is impractical or not in the best interest of the Beneficiaries of the Liquidating Trust to do so; (b) all costs, expenses and obligations incurred in administering the Liquidating Trust have been paid and discharged; (c) the Assets have been distributed to the Beneficiaries in accordance with the Plan; and (d) a final report has been filed and a final decree closing the Bankruptcy Cases has been entered; provided, however, subject to the immediately succeeding sentence, the Liquidating Trust shall not remain in existence more than five years from the date of ~~this Agreement~~the Effective Date. If warranted by the facts and circumstances provided for in the Plan, and subject to the approval of the Bankruptcy Court of a motion of the Liquidating Trustee seeking an extension of the term of the Liquidating Trust as necessary to the purpose of the Liquidating Trust, then the term of the Liquidating Trust may be extended for a finite term based on the particular circumstances. ~~The Bankruptcy Court must approve each extension within six months of the beginning of the extended term with notice thereof to all Liquidating Trust Beneficiaries.\~~ Notwithstanding the foregoing, the Liquidating Trust shall in no event remain in existence for more than twenty-one years from the date of this Agreement.

## ARTICLE V
## ADMINISTRATION OF LIQUIDATING TRUST ESTATE

5.1 **Right and Powers.** The Liquidating Trustee shall have all rights and powers of a trustee under section 1106 and 704 of the Bankruptcy Code and, in accordance with section 1123(b) of the Bankruptcy Code, and as set forth in the Plan, and shall be designated and serve as the sole representative of the Debtor's Estate. Subject to the terms of the Plan and this Agreement, the Liquidating Trustee may, at such times and in such manner as he may deem appropriate, transfer, assign, or  otherwise dispose of all or any part of the Assets.

5.2 **Payment of Interest to Beneficiaries.** The Liquidating Trustee shall hold the

Assets without provision for or the payment of interest to any Beneficiary except to the extent provided for under the Plan.

**5.3    Payment of Claims, Expenses, and Liabilities and the Reserve Amounts**.

The Liquidating Trustee shall pay from the Assets all claims, expenses, charges, liabilities, and obligations of the Liquidating Trust, whether civil or otherwise, and all liabilities and obligations which the Liquidating Trustee, on behalf of the Liquidating Trust, has specifically assumed and agreed to pay pursuant to the terms of this Agreement, including any post-confirmation claims arising from the administration of the Liquidating Trust, together with such transferee liabilities which the Liquidating Trust may be obligated to pay as transferee of the Assets, including among the foregoing, and without limiting the generality of the foregoing, interest, taxes, assessments, and public charges of every kind and nature and the costs, charges, and expenses connected with or growing out of the execution or administration of this Liquidating Trust and such other payments and disbursements as are provided in this Agreement or which may be determined to be a proper charge against the Assets by the Liquidating Trustee or by any court of competent jurisdiction. In addition, the Liquidating Trustee may, pursuant to the terms of the Plan, make provision or reserve out of the Assets to meet present or future claims, expenses and liabilities of the Liquidating Trust, whether fixed or contingent, known or unknown.

**5.4    Federal Income Tax Information.**  By the annual tax return filing due date including extension, if applicable, the Liquidating Trustee shall mail to each Beneficiary of record during such year, a statement showing information sufficient for each Beneficiary to determine its share of income, gain, loss, deductions and credits for federal income tax purposes in accordance with §§1.671-4(a) and 1.671-4(b)(3) of the United States Treasury Regulations. The Liquidating Trustee shall not be required to report such tax information to any Beneficiary unless such

11

Beneficiary provides to the Liquidating Trustee a complete form W-9 or acceptable substitute signed under penalty of perjury. In determining each Beneficiary's share of income, gain, loss, deductions and credits, the Liquidating Trustee shall not allocate such items to any Beneficiary who is the Holder of an Equity Interest, which has no value until such time, if at all, as a value of the Equity Interest arises. For this purpose, an Equity Interest shall have no value for any taxable year in which the Beneficiary who is the holder of the Equity Interest would receive no distribution from the Liquidating Trust if the Liquidating Trust terminated and distributed all of its assets on the last day of the taxable year.

**5.5      Required Filing.**  The Liquidating ~~Trustee~~Trust shall prepare and file with appropriate state and federal agencies and authorities, all such documents, forms, reports and returns (including,  but not limited to, state and federal income tax returns and Forms 1099) as the Liquidating Trustee shall,  with  the  advice  and  assistance  of  their  post-confirmation professionals,  including but not  limited to legal counsel and accountants, deem necessary, required or appropriate in connection  with the creation, existence, operation or termination of the Trust. ~~The  Liquidating  Trustee  shall  file  returns  for  the  Liquidating  Trust  as  a  grantor  trust pursuant to Treas. Reg. §§ 1.671-4(a) and  1.671-4(b)(3)(ii).~~

**5.6      Tax Attributes and Tax Characteristics of the Trust.**  The Beneficiaries of the Liquidating Trust shall be treated as its grantors and deemed owners. The Liquidating Trustee shall file or cause to be filed tax returns for the Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a), or (b), as appropriate. Accordingly, the taxable income or loss of the Liquidating Trust, including taxable income attributable to any reserves, if any, will be allocated to the Beneficiaries on an annual basis, pro rata or as otherwise in accordance with their respective entitlement to receive distributions from the Liquidating Trust if the Liquidating Trust terminated and distributed all its assets on the last day of the taxable year (taking into account all prior and

concurrent distributions from the Liquidating Trust during such taxable year), subject to the terms herein, and the Beneficiaries shall be responsible to report and pay the taxes due on their proportionate share of the Liquidating Trust taxable income, whether or not any amounts are actually distributed by the Liquidating Trustee to the Beneficiaries. The value of the Assets transferred into the Liquidating Trust shall be the fair market value of such Assets at the time of such transfer, as reasonably determined by the Liquidating Trustee, in consultation with the Trustee and such advisors as the Liquidating Trustee deems appropriate, within a reasonable period of time after the Effective Date. Such valuation shall be binding on all parties including, but not limited to, the Debtor, the Debtor's Estate, the Trustee, the Liquidating Trustee, and all Beneficiaries, and these valuations will be used by such parties for all federal income tax purposes.

**5.7    Revenue Ruling Requests.**  The Liquidating Trustee on behalf of Beneficiaries may, but shall not be required to, file a ruling request (in accordance with the procedures set forth in Revenue Procedure 94-45, 1994-2 C.B. 684) with the Internal Revenue Service to have the Liquidating Trust classified as a liquidating trust as described in Treas. Reg. §301.7701-4(d).

**5.8    Necessary Documents.**  On the Effective Date, the ~~Liquidating Trustee~~Debtor shall execute and deliver all documents reasonably required by the Liquidating Trustee including the endorsement of any instruments, all business records of the Debtor, and authorizations to permit the Liquidating Trustee to access all bank records, tax returns, and other files and records of the Debtor, including files held by the ~~Liquidating Trustee~~Debtor's professionals, the Debtor's Estate or the Liquidating Trustee as necessary for the administration of the Liquidating Trust. The ~~Liquidating Trustee~~Debtor's professionals shall provide the Liquidating Trustee any and all documents or information reasonably requested by Liquidating Trustee for the administration of the Liquidating Trust.

13

**5.9    Privileges Transferred to Liquidating Trustee.**  The Liquidating Trustee, as set forth in the Plan, shall control all applicable legal privileges of the Debtor and its Estate, including control over all work product and attorney-client privilege for matters arising from or relating to transactions or activity occurring, in whole or in part, prior to the Effective Date.

**5.10    Disposition of Interests and Causes of Action.** Subject to the terms of this section, the Liquidating Trustee shall have the authority to initiate, prosecute, settle, resolve, dismiss, object to, reconcile or otherwise dispose of any Claim, Equity Interest, Administrative Expense Claim, or Causes of Action (collectively, the "**Claims/Causes of Action Resolution**"), where the amount at issue is more than $250,000 shall require Court approval, shall be subject to notice to the ~~Beneficiaries or to such lesser list of parties ordered by the Bankruptcy Court.~~Maser Service List (as set forth in paragraph 14.12 below), and All settlements  shall be guided by the principles of the settlement standards set forth by Bankruptcy Rule 9019 and the legal standards for settlement set forth in the Eleventh Circuit for such settlements, including *In Re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1549 (11th Cir. 1990), *cert den.*, 498 U.S. 959, 1126 L.Ed. 398, 111 S.Ct. 389 (1990), or such other prevailing, binding law.  No Court approval is required where the amount at issue is less than $250,000.00.

**5.11    Federal Rules of Bankruptcy Procedure**.  Any deadline imposed by this Agreement or the Plan may be extended by the Bankruptcy Court pursuant Federal Rule of Bankruptcy Procedure 9006(a) upon notice to the Master Service List.

**5.12    ~~5.11~~ Standing.**  Subject to Sections 5.10 and 5.13 of this Agreement and Article V(A) of the Plan, the Liquidating Trustee shall have the sole standing and authority to file objections to Administrative Expense Claims, Claims, Equity Interests, or prosecute, settle, liquidate, dispose of, and/or  abandon Causes of Action, and to defend against any and all counterclaims asserted in connection  therewith.

14

**5.13**    ~~5.12~~ **Qualified Settlement Fund; Disputed Ownership Fund**.  Notwithstanding anything in this Agreement to the contrary, in the event that (i) any portion of the Liquidating Trust is treated as a "qualified settlement fund" pursuant to Treas. Reg. § 1.468B-1, or (ii) the Liquidating Trustee timely elects to treat any portion of the Liquidating Trust subject to Disputed Claim or Disputed Equity Interests as a "disputed ownership fund" pursuant to Treas. Reg. § 1.468B- 9(c)(2)(ii), any federal income tax consequences shall be determined under IRC § 468B and the  Treasury Regulations thereunder.

## ARTICLE VI
## DISTRIBUTIONS TO BENEFICIARIES

**6.1    Distribution of the Liquidating Trust Assets.**  The Liquidating Trustee shall make an initial distribution (the "**Initial Distribution**") as soon as reasonably practicable after the Effective Date.  The Liquidating Trustee shall, in their sole discretion, make further Distributions to the Liquidating  Trust Beneficiaries of all Cash on hand in accordance with the terms of the Liquidating Trust  Agreement and the priorities set forth in the Plan (including any Cash received from the Debtor  on the Effective Date) except such amounts (i) as are retained by the Liquidating Trust on account  of Disputed Claims, (ii) as are reasonably necessary to meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, including to fund the Liquidating Trust Reserve; (iii) as are necessary  to pay reasonably incurred and anticipated fees and expenses (including any taxes imposed on the  Liquidating Trust or in respect of the Liquidating Trust Assets) of the Liquidating Trust and the Liquidating Trustee, and (iv) as are necessary to satisfy other liabilities incurred and anticipated  by the Liquidating Trust or imposed on the Liquidating Trust in accordance with this Plan or the  applicable Liquidating Trust Agreement.

**6.2    Assets Retained on Account of Disputed Claims.** After  the Effective Date, the Liquidating Trust Assets shall include sufficient funds to pay in full any  Disputed Claims,

15

and such funds will constitute the Disputed Claims Fund, which will be held for the benefit of the Holder of the Disputed Claims. When the claims are resolved, the Allowed Claim, if any, shall be paid from the Disputed Claims Fund pursuant to the terms of the Plan.

**6.3    No Distributions Pending Allowance.**  Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed, no payment or distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**6.4    Distributions After Allowance.**  To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Allowed Claim Holder in accordance with the provisions of the Plan. Upon allowance, an Allowed Claim Holder shall receive any Distributions that would have been made up to the date of allowance to such Allowed Claim Holder under the Plan had the Disputed Claim been allowed on the Effective Date plus any actual earnings on such distribution from the date that such distribution would have been made had the Disputed Claim been allowed on the Effective Date through the date of allowance.

**6.5    Tax Identification Numbers.**  The Liquidating Trustee may require any Beneficiary with an Allowed Claim entitled to a Distribution under the Plan to furnish their employer or taxpayer identification number (the "**TIN**") assigned by the Internal Revenue Service. Any Distribution under the Plan may be conditioned on the receipt of such TIN. If any such Holder of an Allowed Claim entitled to a Distribution hereunder fails to provide a requested TIN within forty-five (45) days after the request thereof, then such failure shall be deemed to be a waiver of such Holder's interest in any future Distributions, including the right to receive any future Distributions.

**ARTICLE VII**
**POWERS OF AND LIMITATIONS ON THE LIQUIDATING TRUSTEE**

**7.1    Limitations on Liquidating Trustee.** ~~The Liquidating Trustee shall not do any act or~~

16

undertake any activity unless he determines, in good faith, that such act or activity is desirable, necessary, or appropriate for the management, conservation, and protection of the Liquidating Trust Assets and is in compliance with this Agreement and the Plan. The investment powers of the Liquidating Trustee are limited to the powers to invest temporarily cash portions of the Estate in demand and time deposits in banks or savings institutions, temporary investment such as short-term certificates of deposit, investments in United States Treasuries, or money market funds. The Liquidating Trustee shall be restricted to the holding, liquidation, and collection of Liquidating Trust Assets and the payment and distribution thereof for the purposes set forth in the Plan, and to the conservation and protection of the Liquidating Trust and the Liquidating Trust Assets, and administration thereof in accordance with the provisions of this Trust Agreement and the Plan. Notwithstanding anything in this Agreement  to the contrary, the Trustee shall not do or undertake any of the following

(a)    Take any action in contravention of the Plan, the Confirmation Order or this Agreement.

(b)    Take any action that would significantly jeopardize treatment of the Liquidating Trust as a "liquidating trust" for federal income tax purposes.

(c)    Grant liens on any of the Trust Assets.

(d)    Guaranty any debt;

(e)    Loan Trust Assets to the Trustee.

(f)    Purchase Trust Assets from the Liquidating Trust.

(g)    Transfer Trust Assets to another trust with respect to which the Trustee serves as trustee.

**7.2    Specific Powers of Liquidating Trustee.** Subject to the provisions of the preceding paragraph, the Plan and this Agreement, the Liquidating Trustee shall have the

following specific powers in addition to any powers granted by 11 U.S.C. §§ 1106 and 704 or conferred upon them by any other provision of this Agreement or the Plan; provided, however, that enumeration of the following powers shall not be considered in any way to limit or control the power of the Liquidating Trustee to act as specifically authorized by any other provisions of this Agreement or the Plan, and to act in such manner as the Liquidating Trustee may deem necessary or appropriate to discharge all obligations of or assumed by the Liquidating Trustee or provided herein or in the Plan and to conserve and protect the Liquidating Trust and the Liquidating Trust Assets or to confer on the Beneficiaries the benefits intended to be conferred upon them by this Agreement or the Plan, at all times subject to the terms of this Agreement and the Plan:In connection with the administration of the Liquidating Trust, except as otherwise set forth herein, the Trustee is authorized to perform only those acts necessary and desirable to accomplish the purposes of the Liquidating Trust.  The Liquidating Trust shall succeed the rights of the Debtor necessary to protect, conserve and liquidate all Liquidating Trust Assets as quickly as reasonably practicable.   Subject to the limitations set forth in this Trust Agreement, the Plan and the Confirmation Order, the Liquidating Trustee may exercise all powers granted it hereunder related to, or in connection with, the collection, prosecution, liquidation, and distribution to the Beneficiaries, of the Trust Assets. Without limiting, but subject to, the foregoing, the Liquidating Trustee shall be expressly authorized

(a)    To determine when or on what terms Assets should be sold, liquidated or otherwise disposed of;open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidating Trust.

(b)    To collect and receive any and all money and other Assets of whatsoever kind or

18

nature due to or owing or belonging to the Liquidatingreceive, conserve and manage the Trust;.
Asset

(c)    Pending sale or other disposition or distribution, to retain all or any Assets regardless of whether or not such Assets are, or may become, unproductive or a wasting asset. The Liquidating Trustee shall not be under any duty to reinvest such part of the Liquidating Trust as may be in Cash, or as may be converted into Cash; nor shall the Liquidating Trustee be chargeable with interest thereon except to the extent that interest may be paid to the Liquidating Trust on such Cash amounts;To hold legal title to any and all Trust Assets.

(d)    To retain and set aside such funds out of the Assets as the Liquidating Trustee shall deem necessary or expedient to pay, or provide for the payment of (i) Allowed Claims and Allowed Equity Interests pursuant to the Plan; and (ii) any Reserve amounts;Subject to the applicable provisions of the Plan, to prosecute, collect and liquidate the Trust Assets.

(e)    Subject to section 5.10 of this Trust Agreement, to do and perform any acts or things necessary or appropriate for the management, conservation and protection of the Liquidating Trust, including acts or things necessary or appropriate to maintain Liquidating Trust Assets pending sale or other disposition thereof or distribution thereof to the Beneficiaries, and in connection therewith to employ such agents, including post- confirmation professionals as provided for in this Agreement or the Plan, and to confer upon them such authority as the Liquidating Trustee may deem expedient, and to pay fees and expenses therefor;To take discovery from third parties, including but not limited to, issuing Fed.R.Bankr.P. 2004 subpoenas and discovery requests.

(f)    To cause any investment of the Liquidating Trust to be registered and held in the name of the Liquidating Trustee or in the names of a nominee or nominees, or in the names of a nominee or nominees of another entity, without increase or decrease of liability with respect thereto;Make decisions regarding the retention or engagement of Trustee's Professionals and to

pay, from the Trust Assets and the proceeds thereof, the fees and charges incurred by the Liquidating Trust and the fees and expenses of the Liquidating Trustee's Professionals, as well as the disbursements, expenses or related support services relating to the implementation of the Plan and performance by the Trustee of its duties under this Agreement. To pay all lawful, expenses, debts, charges and liabilities of the Liquidating Trust.

(g) ~~Subject to the terms of this Agreement, to prepare, file, assert, commence and prosecute, or continue to prosecute in the case of existing actions, any and all Causes of Action, as the Liquidating Trustee may determine to be of value and~~ benefit to the ~~Liquidating Trust~~ and the ~~Beneficiaries;~~ To wind down the affairs of the Trust including the filing of final tax returns, if applicable, establish any administrative reserves necessary to close the Trust and make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

(h)    To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of its discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(i)    To enter into any agreement or execute any document required by or consistent with the Plan and perform all obligations thereunder.

(j)    To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets if it concludes that they are of no significant value or benefit to the Liquidating Trust.

(k)    ~~(h) Subject to the terms of this Agreement, to institute or defend actions or declaratory judgments, to substitute the Liquidating Trustee for the Debtor or the Debtor's Estate~~

as the real party in interest in pending litigation, and to take such other action, in the name of the Liquidating Trust if required, as the Liquidating Trustee may deem necessary or desirable to enforce any instruments, contracts, agreements, or causes of action relating to or forming a part of the Liquidating Trust;Except as otherwise set forth in this Trust Agreement, to have exclusive power to prosecute and/or settle all causes of actions including, without limitation, Avoidance Actions or any other causes of action or counterclaims as described in the Plan and Disclosure Statement (the "Causes of Action") and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and litigate or settle such Actions on behalf of the Liquidating Trust, and pursue such actions to settlement or final order, all in accordance with the terms of this Agreement.

(i) Subject to the terms of this Agreement, to cancel, terminate, or amend any instruments, contracts or agreements relating to or forming a part of the Liquidating Trust to the full extent permitted by such instruments, contracts or agreements and to execute new instruments, contracts, or agreements;

(j) To perform any act authorized, permitted, or required under any instrument, contract, agreement, or cause of action relating to or forming a part of the Liquidating Trust whether in the nature of an approval, consent, demand, or notice thereunder or otherwise;

(k) Subject to the terms of this Agreement, to deal in and with all accounts receivable, promissory notes and contracts which form a part of the Liquidating Trust Assets with full authority to compromise, settle and otherwise deal in and with such Liquidating Trust Assets as the Liquidating Trustee shall deem appropriate, subject to Bankruptcy Court approval after notice and hearing;

(l) To take all actions for and on behalf of the Debtor and the Debtor's Estate, including but not limited to, the preparation, execution and filing of documents, as the Liquidating Trustee shall deem necessary, desirable or appropriate in order to complete, conclude and finalize any filing, reporting or other obligations which the Debtor, the Debtor's Estate, the Liquidating Trustee, or the Liquidating Trust may have to any state or federal governmental authority, including the Liquidating Trustee's required completion and filing of all of the Debtor's final or

21

otherwise required federal, state, and local tax returns, which shall be done by the Liquidating Trustee;hold any unclaimed Distributions or payment to a Beneficiary in accordance with this Agreement, the Confirmation Order and the Plan.

(m)    Subject to the terms of this Agreement, to enter into such consulting or employment arrangements or otherwise retain such accountants, agents, attorneys, consultants or independent contractors as the Liquidating Trustee shall deem necessary, desirable and appropriate to enable the Liquidating Trustee to accomplish the purposes enumerated in this Agreement and the Plan;To purchase or create and carry all insurance policies and pay all insurance premiums and costs it deems necessary or advisable.

(n)    To make the distributions provided for in this Agreement orimplement and/or enforce all provisions of the Plan;.

(o)    Subject to the terms of this Agreement, to have control and management of the Liquidating Trust;To collect and liquidate all Trust Assets pursuant to the Plan, the Confirmation Order and this Agreement and to ultimately close the Chapter 11 Case.

(p)    To make the election described in Treas. Reg. § 1.468B-9(c)(2)(ii) to treat any portion of the Liquidating Trust subject to Disputed Claims as a "disputed ownership fund" for federal income tax purposes;object to Claims and supervise and administer the resolution, settlement and payment of such Claims and the distribution to the Beneficiaries in accordance with this Agreement and the Plan. Specifically, the Liquidating Trustee may compromise or settle any such Claim (disputed or otherwise) free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order or this Agreement.

(q)    To establish one or more "qualified settlement funds" within the meaning of IRC § 468B and the Treasury Regulations thereunder for any interests for which a "qualified settlement fund" is required or permitted by law;Exercise such rights of setoff as the Debtor or the

22

Estate may have had against any Beneficiary and/or seek Court approval of such exercise.

(r)     ~~To request any appropriate tax determination, including, without limitation, a determination pursuant to Section 505 of the Bankruptcy Code;~~ Voluntarily engage in arbitration or mediation with regard to any dispute.

(s)     To ~~destroy any records of the Debtor as authorized by the Bankruptcy Court (including, without limitation, the client files) and to request authority to destroy any records of the Debtor not previously authorized by the Bankruptcy Court;~~ (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax information returns required with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise, (iii) make tax elections by and on behalf of the Liquidating Trust and (iv) pay taxes, if any, payable by the Liquidating Trust.

(t)     To ~~take any action reasonably necessary to effectuate the wind down and dissolution of the Debtor in all respects without further corporate action under applicable law, regulation, order or rule required; and~~ make all distributions to holders of Allowed Claims provided for or contemplated by the Plan. Resolve issues pe1taining to the retention or disposal of the Liquidating Trust's administrative and business records.

(u)     To ~~take~~ perform any ~~and all other action as is authorized under the Plan.~~ other actions or duties required to be performed by the Liquidating Trustee pursuant to the provisions of the Plan and/or Confirmation Order

     **7.3  Preservation, Prosecution, and Defense of Causes of Action.**  Subject to the terms of this Agreement, the Liquidating Trustee shall have the right to pursue any and all Causes of Action of the Debtor or the Debtor's Estate, whether or not such causes of action had been commenced as of the Effective Date, and shall be substituted as a real party in interest in any actions commenced by or against the Debtor or the Debtor's Estate, provided, however, that any

settlement of a Cause of Action shall require the approval of the Bankruptcy Court upon the filing of a motion and a hearing only as required by Section 5.11 above.

**7.4    Indemnification of Liquidating Trustee and Liquidating Trust Professionals.**  The Liquidating Trustee and the Liquidating Trustee's attorneys, employees, officers, directors, agents, representatives, and professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such Persons and Entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such Persons or Entities in respect of that person's or entity's or the Liquidating Trustee's actions or inactions regarding the implementation or administration of the Plan, the Liquidating Trust or the Liquidating Trust Agreement or the discharge of their duties hereunder or thereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence. Any claim of the Liquidating Trustee and the other parties entitled to indemnification under this section, to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Liquidating Trust Assets, including but not limited to the Available Cash, or any applicable insurance coverage. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of their retained professionals regardless of whether such advice is provided in writing or verbally. Notwithstanding the foregoing, the Liquidating Trustee shall not be under any obligation to consult with their retained professionals, and their determination not to do so shall not result in the imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

**ARTICLE VIII**
**CONCERNING THE LIQUIDATING TRUSTEE**

**8.1    Generally.**  The Liquidating Trustee accepts and undertakes to discharge the trust created by this Agreement upon the terms and conditions hereof and of the Plan and Confirmation Order through the exercise of their business judgment. In performing  their duties hereunder, the Liquidating Trustee and their professionals may rely on information reasonably believed by them  to be accurate and reliable.

**8.2    Reliance by Liquidating Trustee.**  Except as otherwise provided in Sections 7.1 or 8.1: (i) the Liquidating Trustee and their professionals may rely and shall be protected in acting upon  any  resolution,  certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or  document believed by them to be genuine and to have been signed or presented by the proper party  or  parties; a n d  (ii) the Liquidating  Trustee may consult with and  retain  legal  counsel  and  other  professionals  to  be  selected  by  him,  and  the  Liquidating Trustee shall not be liable for any actions  taken or suffered by them in accordance with the advice of such counsel, and may also consult with  former counsel, former accountants, and former consultants or advisors of the Debtor or present  and former officers, directors and consultants of the Debtor. The fees of such legal counsel and other professionals for the Liquidating Trustee shall be paid from the Assets in accordance with  the Plan.

**8.3    Counsel and Advisors for Liquidating Trustee.**  (a) The Liquidating Trustee may retain and compensate attorneys, accountants and other professionals to assist in their duties as Liquidating Trustee hereunder on such terms (including on a contingency or hourly basis) as the Liquidating Trustee deems appropriate withoutand subject to Bankruptcy Court approval. Without limiting the foregoing, the Liquidating Trustee may retain any Professional that represented the Debtor or other parties in interest in this Chapter 11 Case.  The Liquidating Trustee shall not be liable  for  any  actions  taken  or  suffered  by  them  in  accordance  with  the  advice  of  such

25

Professionals, and may also consult with and retain current and former accountants, consultants or other professionals of the Debtor, the Debtor's Estate, present and former officers and directors of the Debtor, the Debtor's Estate and each of their respective affiliates or subsidiaries. The actual fees and expenses of post-confirmation Professionals retained by the Liquidating Trustee shall be paid from the Assets and in accordance with the Plan and the Confirmation Order.

Post-confirmation Professionals retained by the Liquidating Trustee need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, the Liquidating Trustee's firm (should the Liquidating Trustee be a part of a professional services firm (the "**LT Firm**")) and its affiliates, as well as counsel, employees, interim management, financial advisors, independent contractors or agents of the Trustee or the LT Firm. The Liquidating Trustee is hereby expressly authorized to utilize the services of the LT Firm, its affiliates and personnel as post-confirmation professionals (rather than utilizing other similarly situated or available personnel or professional services firms) notwithstanding that (a) the Liquidating Trustee may benefit (directly or indirectly) from the compensation paid to the LT Firm, and (b) other persons or entities may be available to provide the same or similar work at similar or more competitive prices. In no event shall the Liquidating Trustee, the LT Firm or their affiliates be subject to a claim of a conflict of interest or breach of fiduciary duty or any other claim arising as a result of the appointment of any such person in accordance with this provision.

**8.4   Liquidating Trust's Funds .**   No provision of this Agreement or the Plan shall require the Liquidating Trustee to expend or risk their own funds or otherwise incur any financial liability in the performance of any of their duties as Liquidating Trustee hereunder, under the Plan, or in the exercise of any of its rights or powers, if the Liquidating Trustee shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to them against such risk or liability is not reasonably assured to him. For

the avoidance of doubt, the Liquidating Trustee shall not be required to rely on the security, reimbursement or indemnity of the LT Firm, its affiliates or their respective insurers in determining whether the assurances described in the preceding sentence are available.

## ARTICLE IX
## PERSONS DEALING WITH THE LIQUIDATING TRUSTEE

~~9.1   **Liquidating Trustee Not Personally Liable.**   Persons dealing with the Liquidating~~

**9.1**   ~~Trustee shall look only to the Assets to satisfy any liability incurred~~**Liquidating Trustee Not Personally Liable.**   Only the Liquidating Trust may be liable for any action taken by the Liquidating Trustee ~~to such person in carrying out the terms of this Liquidating Trust or the Plan. Neither the Liquidating Trust nor~~except as otherwise provided herein, and liability of the Liquidating Trust may only be satisfied from the assets of the Liquidating Trust. The Liquidating Trustee is not personally liable for any obligation of the Liquidating Trust, and the Liquidating Trustee shall not have any personal or individual obligation to satisfy any ~~such~~ liability of the Liquidating Trust unless it is proven that the Liquidating Trustee breached their  fiduciary duty, was grossly negligent, acted with willful misconduct or fraud ~~in ascertaining the pertinent facts or~~ in performing any of the rights, powers or duties herein or in the Plan.

~~9.2   **Authority of Liquidating Trustee.**   Any person dealing with the Liquidating Trustee~~
**9.2**         **Authority of Liquidating Trustee.**  Any person dealing with the Liquidating Trustee shall be fully protected in relying upon the Liquidating Trustee's ~~certificate signed by the Liquidating Trustee~~belief that that such Liquidating Trustee has authority to take any action under this                                                        Agreement.

**ARTICLE X**
**COMPENSATION**

~~**10.1   Compensation of Liquidating Trustee.** The Liquidating Trustee shall be entitled to~~

**10.1   Compensation of Liquidating Trustee.** The Liquidating Trustee shall be entitled to compensation in connection with fulfilling their duties hereunder at their customary hourly rate, plus reasonable out of pocket expenses, to be paid monthly from the Liquidating Trust Assets. The Liquidating Trustee shall not receive or be entitled to receive any other compensation on account of the performance of their duties hereunder.

**10.2   Payment of Costs/Expenses.** The costs and expenses of the Liquidating Trust, and the reasonable fees and expenses of the Liquidating Trustee and the Liquidating Trustee's Professionals, United States Trustee fees, shall be paid out of the Liquidating Trust Assets. Those Professionals shall continue to file fee applications with the Bankruptcy Court for services provided to the Liquidating Trust and Liquidating Trustee, and all requests of Professionals retained by the Liquidating Trust for payment of fees or expenses shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Bankruptcy Court to ensure that such payment conforms to the terms of any engagement agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules.

**ARTICLE XI**
**LIQUIDATING TRUSTEE AND SUCCESSOR LIQUIDATING TRUSTEE**

**11.1   Resignation and Removal.** The Liquidating Trustee may resign at any time; provided, however, that he shall file a motion with the Bankruptcy Court in connection therewith and request that a successor or replacement be appointed in accordance herewith, which motion shall be on notice to the top twenty (20) Creditors holding Allowed Claims and the Office of the United States Trustee. The Office of the United States Trustee or any party in interest, by motion

28

filed with the Bankruptcy Court, or the Bankruptcy Court on its own order to show cause, may seek to remove the Liquidating Trustee for cause, including under Section 324 of the Bankruptcy Code, or, if Section 324 is deemed inapplicable, then for the same reasons that would otherwise suffice under Section 324, for the violation of any material provision of the Plan, or in the event the Liquidating Trustee becomes incapable of acting hereunder as a result of physical or mental disability and such physical or mental disability continues for a period in excess of thirty (30) days (except in the case of death, in which instance the procedures for replacement will begin immediately). In the event of a resignation or removal, the Liquidating Trustee, unless he is incapable of doing so, shall continue to perform their duties hereunder until such a time as a successor is approved by a Final Order of the Bankruptcy Court. In the event the Liquidating Trustee resigns or is removed, the Liquidating Trust Beneficiaries, shall have 90 days to select a successor Liquidating Trustee by filing a motion with the Bankruptcy Court. If the Liquidating Trust Beneficiaries do not select a successor Liquidating Trustee, then the Office of the United States Trustee may file a motion with the Bankruptcy Court seeking an order directing the United States Trustee to select such successor.

**11.2  Appointment of Successor.**  Should the Liquidating Trustee resign or be removed, or die or become incapable of action, a vacancy shall be deemed to exist. In the event of such a vacancy, the Liquidating Trust Beneficiaries shall have 90 days to select a successor Liquidating Trustee by the filing of a motion with the Bankruptcy Court in connection therewith. If the Liquidating Trust Beneficiaries do not so select a successor Liquidating Trustee, then the Office of the United States Trustee may file a motion with the Bankruptcy Court seeking an order directing the United States Trustee to select such successor. The compensation, if any, of the successor Liquidating Trustee shall be (i) stated in the instrument  evidencing such successor Liquidating Trustee's appointment and (ii) included in the motion filed  with the Bankruptcy Court.

**11.3  Acceptance of Appointment by Successor Liquidating Trustee**.  Each successor Liquidating Trustee appointed hereunder shall execute an instrument accepting such appointment. Thereupon such successor Liquidating Trustee shall, without any further act, become vested with all the Estate's properties, rights, powers, trusts, and duties as were held by their predecessor in the Liquidating Trust hereunder, with like effect as if originally named in such instrument; but the retiring Liquidating Trustee shall nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver any instrument or instruments conveying and transferring to such successor Liquidating Trustee upon the Liquidating Trust herein expressed, all the Estate's properties, rights, powers, and trusts of such retiring Liquidating Trustee, and shall duly assign, transfer, and deliver to such successor Liquidating Trustee all property and money held by them hereunder, including the Assets.  Notwithstanding the appointment of a successor Liquidating Trustee, the retiring Liquidating Trustee shall, without limitation, continue to be entitled to the indemnity provided herein for acts and omissions through the effective date of their resignation.

## ARTICLE XII
## CONCERNING THE BENEFICIARIES

**12.1 Limitation on Suits by Beneficiaries.**  No Beneficiary shall have any right by virtue

**12.1  Limitation on Suits by Beneficiaries.**  No Beneficiary shall have any right by virtue of any provision of this Agreement to institute any action or proceeding at law or in equity against any party upon or under or with respect to the Assets.

**12.2 Expenses in Connection with Litigation.**  In connection with any lawsuit or action
**12.2  Expenses in Connection with Litigation.**  In connection with any lawsuit or action by or against the Liquidating Trustee regarding any rights, actions, or omissions under this Trust Agreement or the Plan, the Liquidating Trustee may request any court to require, and any court may in its discretion require, that a party to such action other than the Liquidating Trustee pay all costs and fees associated with such action.

## ARTICLE XIII
## AMENDMENTS

**13.1 Amendments.**  The Liquidating Trustee may make and execute such declarations amending this Agreement for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Agreement or amendments hereto; provided, however, that no such amendment shall permit the Liquidating Trustee to act in any manner which is inconsistent with the Plan or engage in any activity prohibited by this Agreement or affect the Beneficiaries' rights to receive their share of any Distributions under this Agreement or the Plan.

**13.2  Notice and Effect of Amendment.**  Promptly after the execution by the Liquidating Trustee of any declaration of amendment permitted by and pursuant to this Agreement, the Liquidating Trustee shall give notice of the substance of such amendment to (a) all Beneficiaries who request such amendment in writing, and (b) the Office of the United States Trustee. Upon the execution of any such declaration of amendment by the Liquidating Trustee, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities of the Liquidating Trustee and the Beneficiaries under this Agreement shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of this Agreement for any and all purposes.

## ARTICLE XIV
## MISCELLANEOUS PROVISIONS

**14.1    Further Assurances.**  The Debtor and the Liquidating Trustee shall promptly execute and deliver such further instruments and do such further acts as may be necessary or proper to more effectively transfer to the Liquidating Trustee any portion of the Assets intended to be conveyed pursuant to the Plan and this Agreement to otherwise carry out the

31

intentions of this Agreement and the Plan.

14.2 **Invalid Acts.** Any act or omission by the Liquidating Trustee in violation or derogation of any term of this Agreement or otherwise of the Plan shall be *void ab initio*.

14.3 **Retention of Jurisdiction.** The Bankruptcy Court shall retain jurisdiction over this Agreement in order to give effect to the Plan and Confirmation Order. The Bankruptcy Court shall retain jurisdiction over this Agreement and the Liquidating Trust established hereby as set forth in the Plan, including, without limitation, the enforcement, modification and interpretation of its provisions, for the purpose of determining all amendments, applications, claims or disputes with respect to this Agreement, the substitution of the Liquidating Trustee, and all applications, claims and disputes related thereto.

14.4 **Filing Documents.** This Agreement shall be filed or recorded in such office or offices as the Liquidating Trustee may determine to be necessary or desirable. A copy of this Agreement and all amendments thereof shall be maintained in the office of the Liquidating Trustee and shall be available during regular business hours for inspection by any Beneficiary or their duly authorized representative. The Liquidating Trustee shall file or record any amendment of this Agreement in the same places where the original Agreement is filed or recorded. The Liquidating Trustee shall file or record any instrument which relates to any change in the office of the Liquidating Trustee in the same places where the original Agreement is filed or recorded and shall maintain a copy of any such instrument in their office.

14.5 **Intention of Parties to Establish Trust.** This Agreement is not intended to create, and shall not be interpreted as creating, an association, partnership, or joint venture of any kind.

14.6 **Laws as to Construction.** This Agreement shall be governed and construed in accordance with the laws of the State of Florida, without giving effect to the principles of conflicts of law.

32

**14.7    Severability.**  In the event any provision of this Agreement or the application thereof to any person or circumstance shall be finally determined by a court of competent jurisdiction to  be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of  such provision to persons  or  circumstances  other  than  those  as  to  which  it  is held invalid or unenforceable, shall not be affected thereby, and each provision of this Agreement shall be valid  and enforced to the fullest extent permitted by law.

**14.8    No Assignment.**  Except as otherwise provided herein, the obligations, duties, or rights of the Liquidating Trustee under this  Agreement  shall  not  be  assignable,  voluntarily, involuntarily, or by operation of law, and any such attempted assignment shall be void *ab initio*.

**14.9    Calendar Year.**       The Trust will utilize the calendar year for tax  and financial accounting purposes.

**14.10   Inconsistency with Plan.**  To the extent of any inconsistency: (i) the provisions of this Agreement shall control over the provisions of the Disclosure Statement; (ii)   the provisions of the Plan shall control over the contents of this Agreement, and  the Disclosure Statement; and (iii) the provisions of the Confirmation Order shall control over the  contents of the Plan.

**14.11   Effectiveness.**  This Agreement shall become effective on the Effective Date.

**14.12   Notices.**  Any notice or other communication hereunder shall be deemed to have been sufficiently given, for all purposes, if given by being deposited, postage prepaid, in a post office or letter box addressed to the Beneficiary at their address as shown on the records  of the Liquidating  Trustee  (in  the  case  of  notices  to  a  Beneficiary)  and  addressed  to  the  Liquidating Trustee, at the address set forth below (in the case of a notice to the Liquidating Trustee), except that notice of change of address shall be effective only upon receipt thereof. Any notice given by mail in accordance with this paragraph shall be deemed to be effective three days following its deposit in the mail. For any Court filings, it shall be deemed sufficient service for the Liquidating

33

Trustee to limit service to the parties listed on the "Master Service List" that is kept in accordance with Local Rule 2002-1(H)(1). To the extent that it is appropriate to serve the Liquidating Trust Beneficiaries, it is deemed sufficient service for the Liquidating Trustee to serve (in addition to those on the Master Service List): (I) Holders of the Class A Beneficial Interests (a) who have either (i) been scheduled) and not marked as disputed, unliquidated, or contingent) or (ii) have filed a proof of claim and (b) whose claims have not been withdrawn, stricken, or wholly disallowed by an order that is final and nonappealable, and (II) Holders of Class B Beneficial Interests who have interests that have not been withdrawn, stricken or wholly disallowed by an order that is final and nonappealable solely to the extent that such Holders are expected to receive payment from the Liquidating Trust. The Liquidating Trustee may file a motion for procedure to vary or limit notice as appropriate.

**14.13  Confidentiality.**  The Liquidating Trustee and any respective successor (each a "**Covered Person**") shall, during the period that they serve in such capacity under this Agreement and following either the termination of this Agreement or such individual's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, nonpublic information of or pertaining to any entity to which any of the assets of the Liquidating Trust relates or of which it has become aware in its capacity (the "**Information**"), except to the extent disclosure is required by applicable law, order, regulation or legal process. In the event that any Covered Person is requested or required (by oral questions, interrogatories, requests for information or documents, subpoena, civil investigation, demand or similar legal process) to disclose any Information, such Covered Person will furnish only that portion of the Information, which the Covered Person, advised by counsel, is legally required and exercise all reasonable efforts to obtain reliable assurance that confidential treatment will be accorded the Information.

**14.13**  ~~14.14~~ **Counterparts.**  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be signed and acknowledged as of the date set forth in the opening paragraph hereof.

| | |
|---|---|
| **Aventura Hotel Properties, LLC** | |
| | |
| _____ | _____ |
| Francisco Arocha, Manager | Liquidating Trustee |
| _____ | _____ |
| Date | Date |

35

Document comparison by Workshare Compare on Monday, August 16, 2021
3:35:27 PM

| Input: | |
|---|---|
| Document 1 ID | file://\\GJB-FS01\UsersProfiles\jsuarez\Desktop\Florunder\Liquidating Trust Agreement.docx |
| Description | Liquidating Trust Agreement |
| Document 2 ID | file://\\GJB-FS01\UsersProfiles\jsuarez\Desktop\Florunder\Revised Liquidating Trust Agreement - FINAL(1).docx |
| Description | Revised Liquidating Trust Agreement - FINAL(1) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 83 |
| Deletions | 74 |
| Moved from | 11 |
| Moved to | 11 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 179 |

# **EXHIBIT B**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
**www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| **AVENTURA HOTEL PROPERTIES, LLC,** | **Case No. 21-12374-BKC-RAM** |
| **TRIPTYCH MIAMI HOLDINGS, LLC,** | **Case No. 21-12375-BKC-RAM** |
| **Debtor.** | **Jointly Administered Under** |
| _____/ | **Case No. 21-12374-BKC-RAM** |

**DISCLOSURE STATEMENT IN SUPPORT OF FIRST AMENDED CHAPTER 11 PLAN**
**OF LIQUIDATION PROPOSED BY AVENTURA**
**HOTEL PROPERTIES, LLC**

GENOVESE JOBLOVE & BATTISTA, P.A.
Jesus M. Suarez
Fla. Bar No. 60086
jsuarez@gjb-law.com
John H. Genovese
Fla. Bar No. 280852
jgenovese@gjb-law.com
Barry P. Gruher
Fla. Bar No. 960993
bgruher@gjb-law.com
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

*Counsel for Debtor-in-Possession*
*Aventura Hotel Properties, LLC*

Dated:  August ~~11,~~16, 2021

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IN SUPPORT OF FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION ("DISCLOSURE STATEMENT") IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY AVENTURA HOTEL PROPERTIES, LLC, DATED AUGUST 11,16, 2021 (THE "AMENDED PLAN" or "PLAN")[1], AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO SOLICITATION OF VOTES TO ACCEPT THE PLAN MAY BE MADE EXCEPT PURSUANT TO SECTION 1125 OF TITLE 11 OF THE UNITED STATES CODE.

**THE PLAN IS SUBJECT TO THE DEBTOR SUCCESSFULLY CONSUMMATING A SALE OF ITS PRINCIPAL ASSET, AN ACRE OF LAND IN MIAMI DADE COUNTY, FLORIDA.  IN ORDER FOR THE DEBTOR TO SUCCESSFULLY CONFIRM THIS PLAN AND COMPLY WITH ITS OBLIGATION TO OBLIGATIONS TO SENIOR LENDER LV MIDTOWN, LLC UNDER THE LV SETTLEMENT AGREEMENT, IT MUST SELL THE PROPERTY FOR AT LEAST $22 MILLION.  IF THE DEBTOR IS UNABLE CLOSE ON SUCH A TRANSACTION, OR OTHERWISE RENEGOTIATE THE TERMS OF ITS AGREEMENT WITH ITS SENIOR LENDER, EITHER PURSUANT TO THE TERMS OF THE SALE APPROVAL ORDER [ECF NO. 106] OR OTHERWISE, THE DEBTOR MAY INSTEAD ELECT TO SEEK DISMISSAL OR CONVERSION OF ITS BANKRUPTCY CASE PURSUANT TO SECTION 1112 OF THE BANKRUPTCY CODE.**

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE AMENDED PLAN *IN THEIR ENTIRETY* BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  ALL HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER FULLY THE RISK FACTORS SET FORTH IN THIS DISCLOSURE STATEMENT ("RISK FACTORS IN CONNECTION WITH THE PLAN") BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.  PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT, INCLUDING THE DEFINITIONS OF TERMS CONTAINED IN SUCH DOCUMENTS. ALL EXHIBITS TO THE DISCLOSURE STATEMENT ARE INCORPORATED INTO AND ARE A PART OF THIS DISCLOSURE STATEMENT AS IF SET FORTH IN FULL HEREIN.

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN.  ALTHOUGH THE DEBTOR BELIEVES AND HAS MADE EVERY EFFORT TO ENSURE THAT THIS SUMMARY PROVIDES ADEQUATE INFORMATION WITH RESPECT TO THE PLAN, IT DOES NOT PURPORT TO BE COMPLETE AND IS QUALIFIED TO THE EXTENT IT DOES NOT SET FORTH THE ENTIRE CONTENT OF THE PLAN.  IF THERE IS ANY INCONSISTENCY BETWEEN THE PLAN AND THE SUMMARY OF THE PLAN CONTAINED IN THIS DISCLOSURE

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meaning ascribed to such terms in the Plan.

STATEMENT, THE PLAN SHALL CONTROL.  ACCORDINGLY, EACH HOLDER OF A CLAIM SHOULD REVIEW THE PLAN IN ITS ENTIRETY.

THE DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE UNITED STATES BANKRUPTCY CODE AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH OTHER NON-BANKRUPTCY LAW.  PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING CLAIMS AGAINST OR EQUITY INTEREST IN THE DEBTOR SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH IT WAS PREPARED.  THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED TO BE ADVICE ON THE TAX, SECURITIES OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OF ANY DEBTOR AS TO HOLDERS OF CLAIMS AGAINST OR EQUITY INTEREST IN SUCH DEBTOR.

AS TO ANY CONTESTED MATTERS OR OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING ANY DEBTOR OR ANY OTHER PARTY, NOR WILL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, ANY DEBTOR AND DEBTOR-IN-POSSESSION IN THE CHAPTER 11 CASES.

NO HOLDER OF A CLAIM SHOULD RELY ON ANY INFORMATION RELATING TO ANY DEBTOR, ITS RESPECTIVE PROPERTY OR THE PLAN OTHER THAN THAT CONTAINED IN THIS DISCLOSURE STATEMENT AND THE ATTACHED EXHIBITS. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN, AND (I) THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF, AND (II) THE DELIVERY OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF.

THIS DISCLOSURE STATEMENT IS THE ONLY DOCUMENT AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ACCEPTING THE PLAN.  NO REPRESENTATIONS HAVE BEEN AUTHORIZED BY THE BANKRUPTCY COURT CONCERNING ANY DEBTOR OR THE PLAN, EXCEPT AS EXPLICITLY SET FORTH IN THE DISCLOSURE STATEMENT. APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT INDICATE THAT THE BANKRUPTCY COURT RECOMMENDS EITHER ACCEPTANCE OR REJECTION OF THE PLAN NOR DOES SUCH APPROVAL CONSTITUTE A DETERMINATION BY THE BANKRUPTCY COURT OF THE FAIRNESS

OR MERITS OF THE PLAN OR OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT.

EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED HEREIN HAS NOT BEEN AUDITED BY A CERTIFIED PUBLIC ACCOUNTANT AND HAS NOT BEEN PREPARED IN ACCORDANCE WITH ACCOUNTING PRINCIPLES GENERALLY ACCEPTED IN THE UNITED STATES.

ALTHOUGH THE PROFESSIONALS EMPLOYED BY THE DEBTOR HAVE ASSISTED IN PREPARING THIS DISCLOSURE STATEMENT BASED UPON FACTUAL INFORMATION AND ASSUMPTIONS RESPECTING FINANCIAL, BUSINESS, AND ACCOUNTING DATA FOUND IN THE BOOKS AND RECORDS OF THE DEBTOR, THEY HAVE NOT INDEPENDENTLY VERIFIED SUCH INFORMATION AND MAKE NO REPRESENTATIONS AS TO THE ACCURACY THEREOF, INCLUDING SPECIFICALLY IN CONNECTION WITH THE INFORMATION CONTAINED IN THE WATERFALL ANALYSIS ATTACHED TO THIS DISCLOSURE STATEMENT.  THE PROFESSIONALS EMPLOYED BY THE DEBTOR SHALL HAVE NO LIABILITY FOR THE INFORMATION IN THIS DISCLOSURE STATEMENT OR IN THE EXHIBITS ATTACHED HERETO.

THE DEBTOR RESERVES THE RIGHT TO OBJECT TO ANY CLAIM PRIOR TO THE DATE ESTABLISHED BY THE BANKRUPTCY COURT.  ON AND AFTER THE EFFECTIVE DATE OF THE PLAN, THE LIQUIDATING TRUST WILL BE VESTED WITH FULL AUTHORITY TO UNDERTAKE THE CLAIMS OBJECTION PROCESS WITH RESPECT TO ALL CLAIMS THAT HAVE NOT BEEN PREVIOUSLY RESOLVED BY COURT ORDER OR OTHERWISE (INCLUDING, BUT NOT LIMITED TO, GENERAL UNSECURED CLAIMS AND THE SECURED CLAIM OF QR TRIPTYCH).  THE ACTUAL AMOUNTS OF THE DISTRIBUTIONS UNDER THE PLAN TO THE HOLDERS OF ALLOWED GENERAL UNSECURED CLAIMS THAT ARE OBJECTED TO BY THE DEBTOR OR THE LIQUIDATING TRUSTEE, AS THE CASE MAY BE, WILL BE DETERMINED AFTER COMPLETION OF THE CLAIMS OBJECTION PROCESS.

**IRS CIRCULAR 230 NOTICE:**  TO ENSURE COMPLIANCE WITH IRS CIRCULAR 230, HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY HOLDERS OF CLAIMS OR EQUITY INTERESTS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON THEM UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

THIS DISCLOSURE STATEMENT WAS NOT FILED WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT

OR UPON THE MERITS OF THE PLAN. NEITHER THIS DISCLOSURE STATEMENT NOR THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN CONSTITUTES AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION IN WHICH SUCH OFFER OR SOLICITATION IS NOT AUTHORIZED.

THIS DISCLOSURE STATEMENT MAY CONTAIN "FORWARD LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS.

**THE DEBTOR BELIEVES THAT THE PLAN PROVIDES THE BEST POSSIBLE RESULT FOR ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS. THE DEBTOR ALSO BELIEVES THAT THE PLAN WILL ENABLE THE DEBTOR TO ACCOMPLISH THE OBJECTIVES OF AN ORDERLY LIQUIDATION UNDER CHAPTER 11 AND THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF THE DEBTOR AND ITS CREDITORS. THUS, IT IS THE OPINION OF THE DEBTOR THAT THE TREATMENT OF CREDITORS AND EQUITY INTERESTS UNDER THE PLAN CONTEMPLATE A GREATER RECOVERY THAN THAT WHICH IS LIKELY TO BE ACHIEVED CONVERSION OF THE CHAPTER 11 CASE TO ONE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE.**

**IF YOU ARE ENTITLED TO VOTE TO APPROVE THE PLAN, YOU ARE RECEIVING A BALLOT WITH YOUR NOTICE OF THIS DISCLOSURE STATEMENT. THE DEBTOR STRONGLY URGES CREDITORS TO VOTE TO <u>ACCEPT</u> THE PLAN.**

## TABLE OF CONTENTS

### ARTICLE I

**INTRODUCTION AND OVERVIEW**.................................................................1

    1.01    General Terms of the Amended Plan.........................................1

    1.02    Overview of Chapter 11 and the Plan Confirmation Process...............2

    1.03    Summary of Voting Requirements for Plan Confirmation...................3

        (a)    In General....................................................................3

        (b)    Impaired Classes Entitled to Vote.......................................34

        (c)    Unimpaired Classes Deemed to Accept the Plan.........................4

        (d)    Voting Deadline.............................................................4

        (e)    Voting Instructions........................................................4

        (f)    Ballots......................................................................4

        (g)    Additional Information.....................................................4

### ARTICLE II

**THE DEBTOR'S CORPORATE HISTORY**.............................................**5**

    2.01    The Debtor's Corporate Structure........................................5

    2.02    The Debtor's Business Operations........................................6

    2.03    The Debtor's Capital Structure..........................................7

        (a)    The Land.....................................................................7

        (b)    Debt Structure...............................................................8

        (c)    Short Term Cash Financing...............................................8

    2.04    Events Leading Up to the Chapter 11 Bankruptcy Case....................8

        (a)    The COVID-19 Pandemic................................................8

        (b)    Pre-Bankruptcy Restructuring Efforts.....................................9

    2.05    The Bankruptcy Case.....................................................9

        (a)    Claims Asserted Against Debtor.........................................10

        (b)    The QR Triptych Litigation...............................................11

        (c)    The Debtor's Miscellaneous Assets.....................................12

        (d)    The LV Settlement Agreement...........................................12

        (e)    The Sale Motion and Approved Bidding Procedures.....................13

### ARTICLE III

**SUMMARY OF THE PLAN**...................................................**17**

    3.01    Summary..................................................................17

    3.02    Provisions for Treatment of Unclassified Claims.......................17

        (a)    Administrative Claims...................................................17

(b)   Professional Fee Claims .................................................................... ~~17~~18

(c)   Priority Tax Claims ........................................................................... 18

(d)   Statutory Fees ................................................................................... 18

(e)   Summary of Treatment of Claims, Equity Interests and Estimated  Recoveries. ~~18~~19

(f)   Classification of Claims and Equity Interests Under the Plan .............. 22

**ARTICLE IV**

**MEANS OF IMPLEMENTING THE AMENDED PLAN** ..................................... **22**

4.01   The Debtor will Sell the Property .................................................... 22

4.02   The Liquidating Trust ..................................................................... 22

(a)   Execution and Implementation ......................................................... 23

(b)   Liquidating Trust Assets .................................................................. 23

(c)   Liquidating Trustee .......................................................................... 23

(d)   Powers of the Liquidating Trustee .................................................... ~~23~~24

(e)   Corporate Action .............................................................................. ~~25~~26

(f)   Costs and Expenses ........................................................................... ~~25~~26

(g)   Compensation of the Liquidating Trustee .......................................... ~~25~~26

(h)   Retention of Professionals ................................................................. ~~25~~26

(i)   Tax Consequences of Liquidating Trust ............................................. ~~25~~26

(j)   Duration ........................................................................................... ~~26~~27

(k)   Indemnification ................................................................................. ~~26~~27

(l)   Bond ................................................................................................. ~~27~~28

(m)   Resignation, Death or Removal ......................................................... ~~27~~28

(n)   Transfer of Assets Free and Clear of all Liens, Claims and Encumbrances .. ~~28~~29

**ARTICLE V**

**PRESERVATION OF CAUSES OF ACTION** ..................................................... **~~28~~29**

5.01   Transfer of Causes of Action ............................................................ ~~28~~29

5.02   No Release of Any Claim or Causes of Action ................................... ~~28~~29

5.03   Summary and Disclosure of Causes of Action .................................... ~~29~~30

5.04   Summary and Disclosure of Causes of Action .................................... ~~31~~32

**ARTICLE VI**

**PROVISIONS GOVERNING DISTRIBUTIONS** ................................................. **~~31~~32**

6.01   Manner of Cash Payments Under the Amended Plan ......................... ~~31~~32

6.02   Entity Making Distribution ................................................................ ~~31~~32

6.03   Distribution Dates ............................................................................. ~~32~~33

6.04   Record Date for Distributions ........................................................... ~~32~~33

| | | |
|---|---|---|
| 6.05 | Delivery of Distributions | 32 33 |
| 6.07 | Compliance with Tax Requirements | 33 34 |
| 6.08 | No Payments of Fractional Dollars | 33 34 |
| 6.09 | Interests on Claims | 34 35 |
| 6.10 | No Distribution in Excess of Allowed Amount of Claims | 34 35 |
| 6.11 | Setoff and Recoupment | 34 35 |
| 6.12 | De Minimis Distributions; Charitable Donations | 34 35 |
| 6.13 | Withholding of Distributions | 35 36 |
| 6.14 | Distributions in Satisfaction; Allocation | 35 36 |
| 6.15 | No Distributions on Late-Filed Claims | 35 36 |

**ARTICLE VII**
**DISPUTED CLAIMS** ............................................................... **36**

| | | |
|---|---|---|
| 7.01 | Resolution of Disputed Claims | 36 |
| 7.02 | Objection Deadline | 36 37 |
| 7.03 | Estimation of Claims | 36 37 |
| 7.04 | No Distributions Pending Allowance | 36 37 |

**ARTICLE VIII**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ... **37 38**

| | | |
|---|---|---|
| 8.01 | General Treatment: Rejected if not Previously Assumed | 37 38 |
| 8.02 | Bar to Claims Arising from Rejection, Termination or Expiration | 37 38 |
| 8.03 | Rejection of Executory Contracts and Unexpired Leases | 38 |
| 8.04 | Modifications, Amendments, Supplements, Restatements, or Other Agreements. | 38 39 |
| 8.05 | Proof of Claim Based on Assumed Executory Contracts or Unexpired Leases | 38 39 |
| 8.06 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 38 39 |
| 8.07 | Effect of Confirmation Order | 38 39 |
| 8.08 | Indemnification and Reimbursement | 39 |

**ARTICLE IX**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE** .................... **39 40**

| | | |
|---|---|---|
| 9.01 | Conditions Precedent | 39 40 |
| 9.02 | Waiver | 39 40 |

**ARTICLE X**
**EFFECT OF CONFIRMATION; INDEMNIFICATION,**
**INJUNCTIVE AND RELATED PROVISIONS** ................................. **40 41**

| | | |
|---|---|---|
| 10.01 | Compromise and Settlement | 40 41 |
| 10.02 | Binding Effect | 40 41 |
| 10.03 | Discharge of Claims | 40 41 |

| | | |
|---|---|---|
| 10.04 | Discharge of Debtor | 4041 |
| 10.05 | Exculpation | 4142 |
| 10.06 | Limitations on Exculpation | 4142 |
| 10.07 | Injunction | 4142 |
| 10.08 | Release of Liens | 4243 |

**ARTICLE XI**

**RETENTION OF JURISDICTION** ........................ 4243

**ARTICLE XII**

**RISK FACTORS IN CONNECTION WITH THE AMENDED PLAN** ........ 4445

| | | |
|---|---|---|
| 12.01 | Business Risk | 4445 |
| 12.02 | Bankruptcy Risk | 4445 |
| 12.03 | Failure to Close on Sale of Property | 4446 |
| 12.04 | Rejection of Amended Plan | 4546 |
| 12.05 | No Duty to Update Disclosures | 4546 |
| 12.06 | Representations Outside the Disclosure Statement | 4546 |
| 12.07 | Tax and Other Related Considerations | 4547 |

**ARTICLE XIII**

**MISCELLANEOUS PROVISIONS** ........................ 4647

| | | |
|---|---|---|
| 13.01 | Modification of Amended Plan | 4647 |
| 13.02 | Revocation of Amended Plan | 4647 |
| 13.03 | Binding Effect | 4647 |
| 13.04 | Successors and Assigns | 4648 |
| 13.05 | Governing Law | 4648 |
| 13.06 | Reservation of Rights | 4748 |
| 13.07 | Section 1125(e) Good Faith Compliance | 4748 |
| 13.08 | Further Assurances | 4748 |
| 13.09 | Service of Documents | 4749 |
| 13.10 | Filing of Additional Documents | 4849 |
| 13.11 | No Stay of Confirmation Order | 4849 |
| 13.12 | Automatic Stay | 4849 |

**ARTICLE XIV**

**CONFIRMATION REQUIREMENTS** ........................ 4850

| | | |
|---|---|---|
| 14.01 | Standard to Confirm a Plan | 4850 |
| (a) | Best Interest Test | 4950 |
| (b) | Liquidation Analysis | 4950 |

(c)     Feasibility.................................................................................. ~~50~~52

(d)     Acceptance by Impaired Class............................................... ~~50~~52

**ARTICLE XV**

**ALTERNATIVES TO THE PLAN**............................................................ ~~52~~53

15.01   Liquidation Pursuant to Chapter 7 of the Bankruptcy Code........ ~~52~~53

15.02   Alternative Plan of Reorganization........................................ ~~52~~53

15.03   Dismissal of the Chapter 11 Case............................................ ~~52~~54

**ARTICLE XVI**

**CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN**....... ~~53~~54

**ARTICLE XVII CONCLUSION**............................................................... ~~55~~56

## <u>EXHIBITS</u>

EXHIBIT A    Liquidating Analysis

---

**THE DEBTOR HEREBY ADOPTS AND INCORPORATES EACH EXHIBIT ATTACHED TO THIS DISCLOSURE STATEMENT BY REFERENCE AS THOUGH FULLY SET FORTH HEREIN.**

---

**ARTICLE I**
**INTRODUCTION AND OVERVIEW**

**1.01    General Terms of the Plan**

Aventura Hotel Properties, LLC (the "Debtor") proposes a *First Amended Chapter 11 Plan of Liquidation* (and including all Plan Documents and other attachments hereto, as any of the same may be amended from time to time, all of which are incorporated herein by reference and are a part of, the "Plan") dated as of August 11,16, 2021.

**The Amended Plan is subject to the Debtor successfully consummating a sale of its principal asset, an acre of land in Miami Dade County, Florida.  In order for the Debtor to successfully confirm the Amended Plan and comply with its present obligations to senior lender LV Midtown, it must sell the property for at least $22 million.  If the Debtor is unable close on such a transaction, or otherwise renegotiate the terms of its agreement with LV Midtown set forth in the LV Settlement Agreement (as defined below) or otherwise, the Debtor may instead elect to seek dismissal or conversion of its bankruptcy case pursuant to Section 1112 of the Bankruptcy Code.**

This Disclosure Statement and the other documents described herein are being furnished by the Debtor to Creditors in the Debtor's Chapter 11 Case pending before the Bankruptcy Court.  This Disclosure Statement is intended to provide adequate information of a kind, and in sufficient detail, to enable the Debtor's Creditors to make an informed judgment about the Plan, including whether to accept or reject such Plan.  This Disclosure Statement sets forth certain information regarding: (i) the Debtor's prepetition operating and financial history; (ii) the Debtor's need to file for relief under chapter 11 of the Bankruptcy Code; (iii) significant events that have occurred during the Debtor's Chapter 11 Case; (iv) the terms of the Plan; (v) the manner in which distributions will be made under the Plan; (vi) certain effects of confirmation of the Plan; (vii) certain risk factors associated with the Plan; and (viii) the confirmation process and the voting procedures that holders of Claims and Equity Interests entitled to vote under the Plan must follow for their votes to be counted.

This Disclosure Statement is subject to the Bankruptcy Court's approval, as containing information of a kind, and in sufficient detail, adequate to enable a hypothetical, reasonable investor typical of each of the Classes whose votes are being solicited to make an informed judgment with respect to the Plan.  **THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE A DETERMINATION WITH RESPECT TO THE MERITS OF THE PLAN.  ALL CREDITORS ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ITS EXHIBITS CAREFULLY AND IN THEIR ENTIRETY BEFORE DECIDING TO VOTE TO ACCEPT OR REJECT THE PLAN**.

The summary of the Plan provided herein is qualified in its entirety by reference to the Plan.  To the extent that the information provided in this Disclosure Statement and the Plan (including any Plan Supplements) conflict, the terms of the Plan (including any Plan Supplements) will control.  Terms not otherwise specifically defined herein will have the meanings attributed to them in the Plan.  Each definition in this Disclosure Statement and in the

1

Plan includes both the singular and plural. Headings are for convenience or reference and shall not affect the meaning or interpretation of this Disclosure Statement.

On the Effective Dates of the Plan, the Debtor will transfer and vest any and all Assets of the Estate of the Debtor into the Liquidating Trust to be created under the Plan, with such Liquidating Trust under the direction and control of _____ as the Liquidating Trustee therein. The Liquidating Trustee shall have those powers and duties set forth in the Plan, including all of the powers and duties of a chapter 7 trustee or a chapter 11 trustee, including under Sections 704 and 1106 of the Bankruptcy Code.

The Liquidating Trust will be created solely to implement the terms of the Plan. The primary purposes of the Liquidating Trust will be to collect and liquidate the Assets of the Estate, pursue those claims and Causes of Action transferred to, and vested in, the Liquidating Trust and to distribute to the Liquidating Trust Beneficiaries all proceeds from the liquidation of the Assets of the Estate pursuant to the terms of the Plan and in accordance with Treasury Regulation Section 301.7701-4(d). Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided in the Plan otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Assets.

The Plan provides that the Liquidating Trust shall issue beneficial interests in such Liquidating Trust to the Liquidating Trust Beneficiaries. Under the Plan, (i) the Class A Beneficial Interests in the Liquidating Trust will be issued to the Holders of all Allowed Unsecured Claims, and (b) the Class B Beneficial Interests in the Liquidating Trust will be issued to the Holders of the Equity Interests in the Debtor.

The Liquidating Trustee shall make Distributions from the Liquidating Trust in accordance with the Plan to the Liquidating Trust Beneficiaries, in each case on a Pro Rata basis within Class A or Class B as applicable, provided that the Holders of the Class B Beneficial Interests in the Liquidating Trust shall be subordinated in all respects to the Holders of the Class A Beneficial Interests in each such Liquidating Trust. The Liquidating Trustee shall be deemed to have been appointed as the representative of each Estate by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

**1.02    Overview of Chapter 11 and the Amended Plan Confirmation Process**

Chapter 11 of the Bankruptcy Code allows debtors to reorganize or to liquidate and wind up their affairs for the benefit of the debtors and their creditors. Upon the commencement of a chapter 11 case, an estate is created comprised of all the legal and equitable interests of a debtor as of the date the petition is filed, and the current owner(s) and management typically remain in control of the debtor as a debtor-in-possession. The debtor remains in possession of its property without the oversight of a trustee.

Pursuant to section 362 of the Bankruptcy Code, the filing of a chapter 11 petition imposes an automatic stay of all attempts by creditors or third-parties to collect or enforce prepetition claims against a debtor or otherwise interfere with its property or business, unless relief from the automatic stay is obtained from the bankruptcy court.

The Bankruptcy Code is designed to encourage the parties-in-interest in a chapter 11 case to negotiate the terms of a chapter 11 plan so that it may be confirmed. A chapter 11 plan is the vehicle for satisfying or otherwise addressing the claims against and the interests in the debtor. Confirmation of a chapter 11 plan makes it binding on the debtor and all of its creditors and the prior obligations owed by the debtor to such parties are compromised in exchange for the obligations specified in the plan.

After a chapter 11 plan has been filed, the holders of impaired claims against the debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the debtor to file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical, reasonable investor to make an informed judgment about the plan. This Disclosure Statement is presented to holders of Claims against the Debtor entitled to vote under section 1125 of the Bankruptcy Code in connection with the Debtor's solicitation of votes on the Plan.

**1.03    Summary of Voting Requirements for Amended Plan Confirmation**

**(a)    In General**

Creditors should refer only to this Disclosure Statement and the Plan and any Court approved solicitations to determine whether to vote to accept or reject the Plan. Under the Bankruptcy Code, only holders of Claims that are "impaired" are entitled to vote to accept or reject the Plan. Under section 1124 of the Bankruptcy Code, a class of claims or interests is deemed to be "impaired" under a plan unless (1) the plan leaves unaltered the legal, equitable and contractual rights to which such claim or interest entitles the holder thereof, or (2) notwithstanding any legal right to an accelerated payment of such claim or interest, the plan, among other things, cures all existing defaults (other than defaults resulting from the occurrence of events of bankruptcy) and reinstates the maturity of such claim or interest as it existed before the default.

An impaired class of creditors votes to accept a plan if the holders of at least two-thirds (2/3) in dollar amount, and more than one-half (1/2) in number, of those creditors that actually cast ballots vote to accept such plan. Those classes that are not impaired are not entitled to vote and are deemed to accept a plan. Those classes that are not entitled to a distribution and will not retain property under a plan are deemed to reject a plan.

A class of equity interest holders is deemed to accept a plan if the holders of at least two-thirds (2/3) in amount of those interest holders that actually cast ballots vote to accept such plan. A class of equity interest holders is impaired, not entitled to vote, and deemed to reject the plan if the plan treats such holders by providing that they will retain no property and receive no distributions under the plan.

**Any Claim in an Impaired Class that is subject to a pending objection or is scheduled as unliquidated, disputed or contingent is not entitled to vote unless the holder of such Claim has obtained an order of the Bankruptcy Court temporarily allowing the Claim for the purpose of voting on the Plan.**

Pursuant to the Bankruptcy Code, only creditors who actually vote on the Plan will be counted for purposes of determining whether the required number of acceptances have been obtained for the Plan.  Failure to deliver a properly completed ballot by the Voting Deadline (as defined herein) will result in an abstention; consequently, the vote will neither be counted as an acceptance or rejection of the Plan.

**(b)      Impaired Classes Entitled to Vote**

The Plan contains 5 Classes.  Claims in Classes 2, 3 5 and the Equity Interests in Class 5 are Impaired and therefore are entitled to vote on the Plan.

**(c)      Unimpaired Classes Deemed to Accept the Amended Plan**

Claims in Class 1 is Unimpaired, and as such will not be solicited and will be deemed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

**(d)      Voting Deadline**

If a Creditor holds a Claim or Equity Interest classified in a voting Class of Claims or Equity Interests under the Plan, the Creditor's acceptance or rejection of such Plan is important and must be in writing and submitted on time.  The record date for determining which Creditors may vote on the Plan is _____ ___, 2021 (the "**Voting Record Date**").  The voting deadline is _____ ___, 2021, at 4:00  p.m. (prevailing Eastern Time) (the "**Voting Deadline**").

**(e)      Voting Instructions**

**IN ORDER FOR A VOTE TO BE COUNTED, THE BALLOT MUST BE PROPERLY COMPLETED IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ON THE BALLOT AND RETURNED TO THE CLERK OF THE COURT OF THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF FLORIDA (MIAMI DIVISION) BY THE VOTING DEADLINE AT THE ADDRESS PRINTED ON THE BALLOT.**

**(f)      Ballots**

Creditors must use only the Ballot or Ballots sent to them with the notice of this Disclosure Statement.  If a Creditor has multiple Claims that it is entitled to vote, it should receive multiple Ballots.  **IF A CREDITOR RECEIVES MORE THAN ONE BALLOT, THEN THE CREDITOR SHOULD ASSUME THAT EACH BALLOT IS FOR A SEPARATE CLAIM AND SHOULD COMPLETE AND RETURN ALL OF THEM.**

**(g)      Additional Information**

If you have any questions about (i) the procedure for voting on your Claim, (ii) the package of materials that you have received, (iii) the amount of your Claim, (iv) obtaining or replacing a Ballot, or (v) obtaining an additional copy of the Plan, this Disclosure Statement, or any exhibits to such documents, please contact the Debtor's counsel, Genovese Joblove &

Battista, P.A., 100 S.E. Second Street, 44th Floor, Miami, FL 33131, Attn: Jesus M. Suarez, telephone: (305) 349-2300, email: jsuarez@gjb-law.com.

## ARTICLE II
## THE DEBTOR'S CORPORATE HISTORY

**2.01    The Debtor's Corporate Structure**

The Debtor is a Florida limited liability company organized on January 9, 2013 and later utilized to acquire, develop, construct and operate a mixed-use project located in the hub of the city's three most dynamic and creative new neighborhoods: Miami Design District, Wynwood Art District, and Midtown/Edgewater Corridor (the "Triptych Project").    In July 2014, the Debtor acquired the land at 3601 N. Miami Avenue, Miami, Florida 33127[2] (the "Land") for purposes of developing the Triptych Project.

*Figure 1: Rendering of Triptych Project*



The Triptych Debtor is an entity that holds 100% of the membership interests of the Debtor.    The Debtor and the Triptych Debtor are headquartered at the offices of HES Group, located at 1001 SW 2nd Avenue, Suite 300, Miami, Florida 33126.

---

[2] The subject real estate is a 0.99-acre, high density, mixed-use zoned site located at 3601, 3610, 3630, 3651, and 3701 North Miami Avenue in Miami-Dade County, Florida. A total of nine parcels were purchased by the Debtor totaling 44,783 square feet and identified as follows: Folio numbers 01-3124-026-0010; 01-3124-026-0050; 01-3124-026-0060; 01-3124- 026-0070; 01-3124-026-0150; 01-3124-026-0160; 01-3124-026-0170; 01-3124-026-0030; 01-3124-026-0040.

**2.02    The Debtor's Business Operations**

On July 10, 2014, the Debtor acquired the Land with the proceeds of a $7.5 million acquisition loan from Midtown Land 8, LLC ("Kresher Loan").

In 2015, the Debtor obtained a Conditional Approval Resolution by the City of Miami Urban Development Review Board for the Triptych Project.  Thereafter, the Debtor obtained an appraisal from CBRE that valued the Land "as is" at $27,500,000.

In 2016, the Debtor entered into a Franchise Agreement with Hilton Worldwide for the branding and management of a 297-room Triptych Curio Collection by Hilton Hotel (the "Hilton Curio Concept").  The Debtor invested approximately $5 million to develop the Hilton Curio Concept, which included obtaining architectural and engineering designs from the world-class Miami-based firm of Bermello, Ajamil & Associates and interior design services from Wilson & Associates.  That same year, the Debtor engaged OHL Construction and entered into a LOI authorizing it to commence pre-construction work for the Triptych Project.

In 2017, the Debtor obtained an appraisal from Landauer Valuation & Advisory that valued the Land "as is" at $33,800,000.  Later that year, the Debtor considered repositioning the Triptych Project to be smaller in scope, but ultimately decided against it.  In November 2017, the Debtor refinanced the Kresher Loan with a $9.5 million loan from 21 Brands, S.A. in exchange for a first priority mortgage against the Land (the "21 Brands Loan").

In 2018, the Debtor received an appraisal from CBRE that valued the Land "as is" at $40 million.  On July 31, 2018, the Debtor entered into a $15 million first mortgage loan with LV Midtown, LLC ("LV Midtown") that was used, in part, to refinance the 21 Brands Loan.  At the same time, the Debtor granted an $8.2 million subordinated mortgage in favor of QR Triptych, LLC ("QR Triptych") and paid it $3 million from the loan proceeds received from LV Midtown.

On October 31, 2019, the Debtor executed a Term Sheet with Hyatt Franchise Corporation to develop and manage a Joie De Vivre by Hyatt Hotel (the "Joire de Vivre Concept").  In December 2019, the Debtor received an appraisal from CBRE that valued the Land "as is" at $42 million.

The Triptych Project was expected to break ground in October 2020 and be completed by October 2023.  However, the timeline was impacted by the COVID-19 pandemic that brought the world to a standstill and brought unprecedented delays and obstacles that frustrated the Debtor's ability to obtain additional capital and construction financing to move forward with the development of the Triptych Project.

**2.03    The Debtor's Capital Structure**

**(a)        The Land**

The Debtor owns the land in fee simple.

*Figure 2: Triptych Project Site*



*Figure 3: Triptych Project Site Detail*



**(b)      Debt Structure**

On July 31 2018, four years after the Debtor acquired the Land, it entered into a loan transaction with LV Midtown (an affiliate of Linkvest Capital Group ("Linkvest")).

The Loan Transaction provided for LV Midtown to make a loan to the Debtor in the principal amount of $15,000,000 secured by, among other things, a first priority mortgage against the Land (the "Linkvest Loan").  The Linkvest Loan is also secured by a pledge by the Triptych Debtor of all of the membership interests in the Debtor, subject to the terms of a Pledge and Security Agreement dated July 31, 2018 (the "Pledge Agreement").

In connection with the Loan Transaction, the Debtor also executed a Redemption Agreement with QR Triptych (the "Redemption Agreement") that provided QR Triptych's interests in the Triptych Debtor to be redeemed in exchange for (i) payment of $3 million from the proceeds of the Linkvest Loan; and (ii) the Debtor executing a promissory note in the original principal amount of $8,238,579 (the "QR Note").  The QR Note is secured by a second priority mortgage against the Land and is subject of a Subordination and Intercreditor Agreement executed between LV Midtown and QR Triptych.  The Debtor and Triptych Debtor have sued to avoid QR Triptych's mortgage and the QR Note, to avoid over $5.2 million in transfers from the Debtor to QR Triptych and to an entity controlled by its principal and to re-characterize QR Triptych's claim against the Debtor as subordinated equity in the Triptych Debtor. *See* §2.05(b), *infra*.

**(c)      Short Term Cash Financing**

The Debtor's short-term cash needs have been typically financed through interest-free advances from HES Group companies.  In certain instances, HES Group companies advanced expenses on the Debtor's behalf.  The Debtor, in turn, repaid the advances as circumstances permitted.  In total, HES Group companies claim to have advanced net cash of over $3 million which remains unpaid.

**2.04    Events Leading Up to the Chapter 11 Bankruptcy Case**

**(a)      The COVID-19 Pandemic**

Beginning in or about December 2019, an international pandemic of unprecedented scale spread across the globe, where inhabitants of all nations were affected by the virus referred to as the coronavirus disease 2019 ("COVID-19").  On March 11, 2020, the World Health Organization announced that the COVID-19 outbreak was properly characterized as a pandemic. . The COVID-19 pandemic resulted in global shutdowns and caused economic and commercial disruptions in various sectors, including a heavy impact on the real estate and hospitality markets. The COVID-19 pandemic and the related restrictions on travel, business activity, and individual movement have had a significant impact on the hospitality industry.

Pandemic induced lockdowns, event cancellations, and stoppage of corporate travel affected the hospitality industry across the board. The Smith Travel Research ("STR") data

reflects that beginning in March 2020, occupancies began to plummet and by late March, the U.S. hotel industry had effectively come to a halt. According to an STR[3] report, in a year-over-year comparison with April 2019, the industry recorded a nearly 64% drop in hotel occupancy and a 79.9% drop in RevPAR[4]. According to another report by Skift Research and McKinsey & Company, "hotel demand may not reach pre-COVID-19 levels until 2023, while revenue per available room may not recover until 2024."

Throughout 2020, there continued to be extraordinary uncertainty; the crisis and ensuing emergency orders severely impaired the value and progress of the Triptych Project. One example of the pandemic's impact on the project was the standstill effect it had on the Debtor's negotiations with a national hotel chain. Due to the COVID-19 pandemic, the deadline to execute certain franchise documents was extended until December 31, 2020, effectively putting Triptych Project, and related negotiations with the national hotel chain, on hold.

**(b)     Pre-Bankruptcy Restructuring Efforts**

In August 2020, LV Midtown initiated a foreclosure proceeding captioned *LV Midtown LLC v. Aventura Hotel Properties, LLC et al.*, Case No. 2020-018857-CA-01, pending in the Eleventh Judicial Circuit in and for Miami-Dade, Florida (the "Foreclosure Case"). Throughout the Foreclosure Case, the Debtors attempted to negotiate an appropriate resolution of the Linkvest Loan that accounts for, among other things, the significant equity in the Land and the various alternatives.

Based on the above unprecedented circumstances and disputes with Linkvest, among other things, the Debtors determined that the filing of a Chapter 11 bankruptcy was in the best interests of the Triptych Project and all of its stakeholders. The Debtor anticipated using the Chapter 11 process to provide the necessary breathing room needed to weather the economic storm caused by the Coronavirus pandemic, to recapitalize and continue development of the Triptych Project, and if necessary, facilitate a sales process for the Land that maximizes the return to all of its stakeholders.

**2.05    The Bankruptcy Case**

On March 12, 2021 (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") and, as a result, the Foreclosure Case has been stayed since the Petition Date by operation of section 362 of the Bankruptcy Code.

On March 15, 2021, the Court granted the Debtors' *Ex-Parte* Motion for Joint Administration [ECF No. 11], providing for the designation of Case No. 21-12374-BKC-RAM as the "Lead Case." To date, a creditors' committee, trustee or examiner has not been appointed

---

[3] Founded in 1985, STR provides premium data benchmarking, analytics and marketplace insights for global hospitality sectors. STR was acquired in October 2019 as a division of CoStar Group, Inc., the leading provider of commercial real estate information, analytics and online marketplaces.

[4] Revenue per available room (RevPAR) is a metric used in the hospitality industry to measure hotel performance. The measurement is calculated by multiplying a hotel's average daily room rate by its occupancy rate. RevPAR is also calculated by dividing a hotel's total room revenue by the total number of available rooms in the period being measured.

in this case.  The Debtors are operating and managing the business and affairs of their respective bankruptcy estates (the "Estates") as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

On April 15, 2021, the Court entered a final Order Granting the Application to Employ Jesus M. Suarez and the Law Firm of Genovese Joblove & Battista, P.A. as Counsel for the Debtors-in-Possession [ECF No. 34].

(a)    **Claims Asserted Against Debtor**

The Debtor's bankruptcy schedules reflect general unsecured claims in the amount of $1,110,273.90, of which the Debtor scheduled $295,242 as disputed as of the Petition Date.  The Debtor's general unsecured creditors are largely trade and professional creditors that remain unpaid and arise from the development of the Project.

On April 1, 2021, the Miami-Dade County Tax Collector filed Claim No. 1-1 in the amount of $427,287.44 plus statutory interest accruing at 18% (the "MDCTC Claim"). The MDCTC Claim represents real estate property taxes past due on the Land and payable to Miami-Dade County for tax years 2020 and estimated tax liability for 2021 (final tax bills will be available on November 1, 2021).

On April 1, 2021, the Miami Dade Tax Collector also gave notice of additional creditors holding tax certificates for tax year 2019 [ECF No. 28] (the "2019 Real Estate Taxes").   The 2019 Real Estate Taxes are secured by a lien on the Land and are $219,890.50 plus interest.

On May 19, 2021, Secured Creditor LV Midtown, LLC  ("LV Midtown" or "Secured Creditor")  filed a secured claim, Claim No. 5-1, in an amount not less than $18,944,582.14, plus accrued interest, attorneys' fees and costs as of the Petition Date (the "Secured Claim") in the Bankruptcy Case.

On May 19, 2021, QR Triptych, LLC ("QR Triptych") filed Claim No. 6-1 [Debtor AHP] (the "QR Claim").   The QR Claim asserts a claim against the Debtor in the amount of $8,238,579.20, and purports to be secured by a subordinate mortgage on the Property.  However, the QR Claim does not contain evidence of the Debtor's alleged indebtedness to QR Triptych and instead relies upon a promissory note evidencing only indebtedness to LV Midtown.

On  July 22, 2021, QR Triptych amended the QR Claim [Claim No. 6-2] to assert a claim for $10,597.809.81, providing for what they claim to be past-due interest and attorneys' fees (the "QR Amended Claim").   The QR Amended Claim includes an alleged promissory note purportedly executed on behalf of  the Debtor that had not been included in the initial QR Claim. The Debtor objected to the QR Claim (as may be amended) in the Avoidance Litigation (defined below).

On May 19, 2021, Elisabeth Eljuri [Claim No. 3-1] and Ivan Sandrea [Claim No. 4-1] filed general unsecured claims against the Debtor in the amounts of $2,170,291 ("Eljuri Claim") and $1,479,005.91 (the "Sandrea Claim").   The Eljuri Claim and Sandrea Claim represent general unsecured creditors that (i) advanced cash into the bank account of the Debtor for the Project; or (ii) paid expenses on directly on  behalf of the Project; or (iii) otherwise conferred a

benefit for the Project.  The Eljuri Claim and Sandrea Claim remain subject to further review and potential objection in whole or in part.

On July 26, 2021, OHL Building, Inc. filed a claim against the Debtor in the amount of $290,892 (the "<u>OHL Claim</u>").   The OHL Claim arises from a complaint that it filed prior to the Petition Date against the Debtor HES Group Holding, LLC in the Eleventh Judicial Circuit in and for Miami Dade County, Florida (Case No. 2020-022171-CA-01).  The OHL Claim remains subject to objection, but was deemed timely filed by the Bankruptcy Court [ECF No 104].

**(b)    The QR Triptych Litigation**

On June 15, 2021, the Debtors commenced an adversary proceeding against QR Triptych and JQ Real Estate, LLC.  *See* Adv. Case No. 21-12374-RAM (the "<u>Avoidance Litigation</u>"). The Debtor and the Triptych Debtor Avoidance Litigation to avoid certain inequitable transactions made for the benefit of QR Triptych - a former equity investor in the Triptych Debtor– that were paid from the assets of the Debtor.  In summary, the Debtor and the Triptych Debtor seek to avoid (i) $2.2 million transferred by the Debtor to Defendant JQRE (an entity related to QR Triptych and to which the Debtors were not indebted); (ii) $3 million transferred by the Debtor to Defendant QR Triptych on account of its equity in the Triptych Debtor; and (iii) the incurrence by the Debtor of an $8.2 million subordinated mortgage in favor of Defendant QR Triptych in exchange for nothing of value to the Debtor. The Debtors also objected to QR Triptych's filed proof of claim and seek mandatory and equitable subordination.

On July 16, 2021, the Defendants in the Avoidance Litigation filed an Answer [Adv. Case ECF No. 8].

On August 6, 2021, the Debtor and Triptych Debtor filed a Motion to Strike the Adversary Defendants' Affirmative Defenses [Adv. Case ECF No. 10].  The Debtor believes the Adversary Defendants have failed to raise legally sufficient affirmative defenses. Notwithstanding, the Defendants may have the opportunity to replead their defenses and to challenge elements of the Debtor's *prima facia* case.  In either respect, the Debtor anticipates that the Adversary Defendants will vigorously defend the claims and will raise litigable issues. For example. the Defendants claim, among other things, the Debtor and Triptych Debtor were alter-ego's of each other and that by allegedly providing value to one entity they are relieved of an obligation to provide value to the other entity.  The Defendants also allege unspecified wrongdoing by the Debtors' Officers and Directors which they claim impairs the ability of the Debtor to prevail in its claims against them.

The Debtor disputes the defenses raised by the Defendants in the Avoidance Litigation and expects to prevail in prosecuting their claims within a reasonable degree of certainty. Nonetheless, all litigation claims are uncertain, costly to prosecute and subject to risk. Additionally, the Debtor is not aware of the financial condition of the Defendants and cannot presently ascertain whether any affirmative recoveries against these Defendants are ultimately collectible.   Notwithstanding, the Debtors believe that many of the issues raised in the Avoidance Litigation are not novel, and are capable of being adjudicated by the Bankruptcy Court within three to six months.

(c)     **The Debtor's Miscellaneous Assets**

The Debtor's schedules reflect (i) accounts receivable in the amount of $704,610.00; (ii) miscellaneous office furnishings of unknown value; and (iii) *de minimis* cash balances in its Debtor-in-Possession account at City National Bank of Florida.  Additionally, the Debtor may hold litigation claims against (i) recipients of otherwise avoidable transfers; (ii) its current and officers and directors; (iii) vendors; (iv) suppliers; and (v) other third parties.

(d)     **The LV Settlement Agreement**

On June 16, 2021, the Court approved a settlement between the Debtors and the Secured Creditor [ECF No. 85] (the "LV Settlement")[5] that provides, among other things for:

(a)     The allowance of Secured Creditor's Secured Claim in the amount of $20,468,837.91 as of September 15, 2021 (the "Payoff Amount").

(b)     Notwithstanding the stipulated Indebtedness and Payoff Amount, the Secured Creditor shall agree to accept a discounted lump sum amount of $19,600,000 ("Release Price") in full and final satisfaction of the Secured Claim against the Estates under 11 U.S.C. § 506 of the Code provided that (a) such Release Price is indefeasibly paid to and actually received by Secured Creditor in cleared funds on or before September 15, 2021, (b) each of the milestones identified in the LV Settlement are completed; and (c) and the Debtors have timely complied with each and every term of the LV Settlement.

(c)     In consideration to the Estates for the compromise of alleged defenses to the claim of the Secured Creditor and for the timely sale and/or liquidation of the Property (as set forth in the LV Settlement), the Secured Creditor consented to a carve-out/surcharge from the Payoff Amount in favor of the bankruptcy estate of Debtor AHP in the amount of $800,000.00 (the "Surcharge Contribution") solely to the extent of available cash proceeds in excess of the Release Price, for the benefit of the Debtors bankruptcy estates (i.e., for the payment of administrative expenses and for distribution to general unsecured creditors). Further, Secured Creditor agreed to a reduction of the Payoff Amount by $68,837.91 (the "Settlement Reduction"), which Settlement Reduction is reflected in the Release Price and Secured Creditor waived any right to assert such amount against the Estates or against any third party (subject to the terms of the LV Settlement).

Further, the Release Price was determined to be the full amount of Secured Creditor's credit bid under 11 U.S.C. § 363(k) or otherwise (the "Credit Bid") with respect to any sale process in respect of the Property that complies with the LV Settlement and that actually closes on or before September 15, 2021.

---

[5] Please refer the Debtors' *Expedited* Motion to Approve Settlement and Compromise with LV Midtown, LLC [ECF No. 55] and the Order Approving the LV Settlement [ECF No. 85] for a complete description of the LV Settlement.

**(e)**      **The Sale Motion and Approved Bidding Procedures**

The Debtor scrutinized proposals from leading international brokerages to facilitate the marketing and sale of the Property.  On April 26, 2021, the Debtors reached an agreement to broker the sale of the Property John Crotty and Avison Young-Florida, LLC ("Avison Young").

On June 1, 2021, the Court granted the Debtors' Motion to Employ Avison Young and approved the Exclusive Sales Listing Agreement with the Avison Young (the "Listing Agreement") [ECF No. 53].

Pursuant to the terms of the Listing Agreement, Avison Young assisted the Debtors in marketing and selling the Triptych Project by: (i) preparing a marketing program; (ii) preparing descriptive marketing materials; (iii) providing advice and assistance in structuring the offering price and sales terms; (iv) exercising reasonable efforts to procure a buyer for the Triptych Project; (v) negotiating, in coordination with Debtors' representatives, the terms and conditions of the sale of the Triptych Project; and (v) distributing marketing information on the Triptych Project to co-brokers.

The Listing Agreement provides for Avison Young to receive a brokerage fee in the amount of 150 basis points (1.50%) of the gross sales price of the Triptych Project (collectively, the "Commission").  In order to facilitate lender approval, Avison Young agreed to waive any commission due or cost advanced by it under the Listing Agreement if the purchase price did not exceed the Release Price.

Upon its retention, Avison Young developed a sales and marketing process and made a call for interested buyers to submit offers on or before June 24, 2021.  In the course of the sales process, Avison Young contacted and marketed the property to over 14,000 hospitality investors, 6,300 potential investors through the Real Clear Markets platform, 2,100 developers, and 1,110 outside brokers.  The marketing efforts resulted in over 3,200 CoStar listing page visits and the execution of 59 confidentiality agreements by potential buyers.

After the expiration of the call for offers, the Debtors analyzed all offers received for the purchase of the Property.  In consultation with Avison Young and counsel, the Debtors exercised their business judgment to advance negotiations for the sale of the Property to Integra.

On July 15, 2021, the Debtor and Integra Real Estate, LLC ("Integra") entered into the Contract for the "As Is" Sale and Purchase of Vacant Land, pursuant to the terms set forth therein (the "Contract") and attached as Exhibit "A" to the Sale Motion (defined below). Pursuant to the Contract, Integra's deadline to complete all due diligence with respect to purchase of Property is Saturday, August 14, 2021 (the "Due Diligence Deadline").

On July 15, 2021, the Debtors filed a Motion for Entry of an Order (A) Authorizing the Sale of Real Property of the Chapter 11 Estate Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §363; (B) Establishing Bidding Procedures and Sale Process; (C) Approving Asset Purchase Agreement with Integra Real Estate, LLC; (D) Scheduling Sale Hearing; and (E) Granting Related Relief [ECF No. 94] (the "Sale Motion").

On July 29, 2021, the Court granted the Sale Motion, Approved the Contract with Integra (the "Sale ~~Procedures~~Approval Order") and made the following findings:

a. The Court has jurisdiction over this matter and over the property of the Debtors pursuant to 28 U.S.C. §§ 157(a) and 1334, venue is proper in this district pursuant to 28 U.S.C. § 1408, and this is a core proceeding pursuant to 28 U.S.C. § 157(b).

b. Good and sufficient notice of the relief sought in the Motion ~~has been~~was given in accordance with Bankruptcy Rule 2002, and no other or further notice ~~is or shall be~~was required and any requirements for other or further notice ~~shall be~~were waived and dispensed with pursuant to Fed. R. Bankr. P. 2002, 6004, 6006 and 9007 and pursuant to the Court's powers under section 105 of the Bankruptcy Code.  A reasonable opportunity to object or be heard regarding the relief requested in the Motion ~~has~~was been afforded to all parties-in-interest.

c. The bidding procedures set forth ~~herein~~in the Sale Approval Order are fair, reasonable and appropriate, and are designed to maximize the recovery on the proposed sale of the Property.

d. The entry of ~~this~~the Sale Approval Order ~~is~~ was in the best interests of the Debtor, its estate, creditors, and all other parties-in-interest.

The Court also scheduled a sale hearing to approve the sale of the Property pursuant to 11 U.S.C. § 363 of the Bankruptcy Code (the "Sale Hearing")  on **Wednesday, August 25, 2021 at 11:00 am EDT**, before the Honorable Robert A. Mark, by Zoom Video Conference.  An Auction (as defined herein below) with respect to sale of the Property, if necessary, shall be conducted before the Honorable Robert A. Mark, by Zoom Video Conference at the Sale Hearing on **Wednesday, August 25, 2021 at 11:00 a.m. EDT** in accordance with the bidding procedures approved by the Bankruptcy Court,

The Sale Procedures Order provides for bidding procedures as set forth below and authorizes and directs the Debtors to carry out the actions reasonably necessary to carry out the bidding procedures. All competitive bidders, creditors and/or interested parties participating in an Auction of the Properties, should it be necessary, shall comply with the following bidding procedures:

i. competing bid(s) shall be made upon substantially similar terms and provisions as contained in the Contract and as otherwise provided in the order(s) of the Bankruptcy Court approving the Motion and Bidding Procedures as set forth herein, provided however, that such competing bids shall not contain a Due Diligence Period and must be subject to and not otherwise provide for the impairment of the Parking Rights Agreement between Debtor and Fifteen Midtown Properties, LLC ("Competing Bid(s)");

ii. Competing Bid(s) shall be received, in writing, by Debtor's counsel **Jesus M. Suarez, Esq., 100 SE Second Street, 44th Floor, Miami, Florida 33301,**

jsuarez@gjb-law.com, by **5:00 p.m. on August 23, 2021** (the "Bid Deadline"), in the form of a fully executed, substantially similar version of the Contract (the "Competing Bid Contract"), along with: (a) a refundable deposit in the amount of five percent (5%) of the purchase price identified in the Competing Bid Contract (the "Competing Bid Deposit") in readily available funds delivered to the Closing Agent (wire transfer instructions shall be provided by the Closing Agent and/or Debtors' counsel upon written request directed to jsuarez@gjb-law.com); provided however, that in the event that the Competing Bid is accepted and approved as the highest and best offer, such Competing Bid Deposit shall be non-refundable; (b) the Competing Bid shall not be subject to any contingency whatsoever, shall be subject to Bankruptcy Court approval, and shall be accompanied by evidence that the prospective buyer submitting the Competing Bid has the ability to consummate the purchase transaction and comply with all terms thereto; and (c) information that indicates to the Debtor, in the Debtor's discretion, and subject to Bankruptcy Court approval, that the prospective buyer's Competing Bid is submitted as a good faith, arm's length transaction entitled to the protections of §363(m) of the Bankruptcy Code;

iii.    the Debtors, in their  discretion in consultation with Secured Creditor, and subject to Bankruptcy Court approval, shall determine whether any Competing Bid(s) received by the Bid Deadline constitute a qualified bid with capacity to close as provided in the respective Competing Bid Contract and may be accepted as a qualified bid (the "Qualified Bid"). Any Competing Bid determined to be a Qualified Bid shall be irrevocable until the selection of the Successful Bidder (as hereinafter defined) and the Back-Up Bidder (which offer shall remain irrevocable until the closing of the sale to the Successful Bidder or the Back-Up Bidder);

iv.    Integra shall be deemed to have submitted a Qualified Bid provided that, at the time of the auction sale, the Due Diligence Deadline has expired, Integra has not terminated the Contract, and Integra has otherwise complied with its obligations thereunder.  Secured Creditor LV Midtown, LLC shall be deemed a Qualified Bidder and may submit a Qualified Bid in an amount not to exceed their 363(k) Bid (as defined below) in the amount of the Release Price without the necessity of otherwise complying with these Bid Procedures;

v.    should the Debtors receive multiple Qualified Bids by the Bid Deadline, the Bankruptcy Court shall conduct the Sale Hearing as a final and absolute auction, at which time the Bankruptcy Court will determine the best and highest offer for sale of the Property (the "Auction"). The Auction shall be conducted via Zoom Video Conference at the Sale Hearing on **Wednesday, August 25, 2021 at 11:00 a.m EDT**.  Only prospective buyers that have been determined to have submitted a Qualified Bid shall be permitted to participate in the Auction;

vi.    any prospective buyers with a Qualified Bid (the "Qualified Bidder(s)") shall be permitted to participate in the Auction. The minimum bidding

increments above the highest and best Qualified Bid accepted at the time of the Auction, shall be not less than two-hundred fifty thousand dollars ($250,000.00) (the "Bid Increment(s)");

       vii.    the competitive bidding among the Qualified Bidders shall continue until the Bankruptcy Court determines it has received the highest and/or best bid for the Property.  The prospective buyer submitting the highest and/or best bid for the Property shall be determined to be the successor bidder ("Successful Bidder");

       viii.    the Qualified Bidder submitting the second highest and/or best Qualified Bid accepted at the Auction, if any, shall be deemed the back-up bidder (the "Back-Up Bidder") and shall be obligated to close on the transaction contemplated under the purchase Contract submitted for approval with such Qualified Bid within seven (7) days from the tendering of written notice by the Debtors to the Back-Up Bidder of the Successful Bidder's failure to close and the Competing Bid Deposit of the Back-Up Bidder shall be held by the Closing Agent until the closing of the sale of the Property, shall be refunded pursuant to part ix below if the Property is sold to the Successful Bidder, and shall be non-refundable if Back-Up Bidder is called upon to close on its Qualified Bid and fails to do so; and

       ix.    notwithstanding the above Bidding Procedures, in the event that Integra or another Qualified Bidder(s) is not deemed to be the Successful Bidder or Back-Up Bidder at the Auction, then all Deposits or Additional Deposits shall be refunded by the Debtors or Closing Agent (collectively, the "Refundable Deposit(s)") to the respective party submitting the Refundable Deposit, within five (5) business days of the Auction or upon further order of the Bankruptcy Court, and Secured Creditor LV Midtown, LLC may exercise its Qualified Bid in an amount not up to the amount 363(k) Bid (as defined below) and shall be the Successful Bidder.

(collectively, the "Bidding Procedures").  Notwithstanding the above Bidding Procedures, Secured Creditor LV Midtown, LLC shall have the right, but not the obligation, to credit bid up to the amount of the Release Price  pursuant to §363(k) of the Bankruptcy Code in connection with the sale of the Property pursuant to this Motion (the "363(k) Bid").  Pursuant to the LV Settlement, the 363(k) Bid is not subject to objection.  In the event that Secured Creditor LV Midtown, LLC exercises its 363(k) Bid option, such bid shall be subject to the Bidding Procedures, except that Secured Creditor LV Midtown, LLC shall not be required to submit a Deposit or Additional Deposit for purposes of bidding at the Auction nor shall Secured Creditor be required to submit a Competing Bid in advance of the auction.

**On August 13, 2021, Integra Real Estate, LLC ("Integra") terminated the sales contract in the amount of $25.5 million to purchase the Property.  The Debtor does not presently have a back-up contract to substitute Integra's terminated Contract.  The Debtor anticipates that Qualified Bids may be received in advance of the Qualified Bid Deadline;**

however the Debtor does not believe it will be able to consummate the Plan if the Successful Bid is less than approximately $22 million.

The Debtor currently lacks any cash to pay closing costs and other ordinary and customary expenses due at closing, including property taxes and real estate commissions. The Debtor may not realize the Sale Proceeds contemplated by the Plan if (i) a Competing Bid Contract is deemed the Successful Bidder and the Purchase Price approved by the Bankruptcy Court is less than the Purchase Price of $25,500,000 offered by Integra in the Contract approved by the Bankruptcy Court in the Sale Approval Order [ECF No. 106]at least $22 million; or (ii) Secured Creditor LV Midtown is deemed to be the Successful Bidder pursuant to its 363K Bid which does not provide for a cash recovery by the Debtor; or (iii) the Surcharge Contribution from LV Midtown's collateral is not applied by the Bankruptcy Court as set forth in the Plan. The Sale of the Property at or near the Purchase Price in the Contract with Integra is necessary in order to consummate the Plan.

## ARTICLE III
## SUMMARY OF THE AMENDED PLAN

### 3.01    Summary

THE FOLLOWING IS A SUMMARY OF SOME OF THE SIGNIFICANT ELEMENTS OF THE PLAN.  THE DISCLOSURE STATEMENT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE MORE DETAILED INFORMATION SET FORTH IN THE PLAN AND THE EXHIBITS AND SCHEDULES THERETO.

The Plan classifies Claims and Equity Interests separately in accordance with the Bankruptcy Code and provides different treatment for different Classes of Claims and Equity Interests. Claims and Equity Interests shall be included in a particular Class only to the extent such Claims or Equity Interests qualify for inclusion within such Class.  The Plan separates the various Claims (other than those that do not need to be classified) into 5 separate Classes.  These Classes take into account the differing nature and priority of Claims against, and Equity Interests in the Debtor.  Unless otherwise indicated, the characteristics and amounts of the Claims or Equity Interests in the following Classes are based on the books and records of the Debtor.

Other than as specifically provided in the Plan, the treatment under the Plan of each Claim and Equity Interest will be in full satisfaction, settlement, release and discharge of all Claims or Equity Interests.  The Liquidating Trustee will make all payments and other distributions to be made under the Plan unless otherwise specified.

### 3.02    Provisions for Treatment of Unclassified Claims

#### (a)    Administrative Claims

Pursuant to the Plan, the Debtor shall pay each holder of an Allowed Administrative Claim, in satisfaction of such Allowed Administrative Claim, the full unpaid amount of such Allowed Administrative Claim in Cash: (1) on the Effective Date or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as

practicable thereafter); (2) if such Claim is Allowed after the Effective Date, on the date such Claim is Allowed or as soon as practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as practicable thereafter); (3) at such time and upon such terms as may be agreed upon by such holder and the Debtor; or (4) at such time and upon such terms as set forth in an order of the Bankruptcy Court; provided, however, that any Claim seeking administrative expense status included as a part of a proof of claim filed in this Chapter 11 Case shall not qualify as an Administrative Claim. The Administrative Claims shall first be paid from the Surcharge Contribution and/or the QR Triptych Surcharge.

**(b)     Professional Fee Claims**

On or prior to the deadline set by the Bankruptcy Court for Professionals to file final fee applications, each Professional shall file with the Bankruptcy Court its final fee application seeking final approval of all fees and expenses from the Petition Date through the Confirmation Hearing.  The Debtor shall pay the Allowed Professional Fee Claim of each Professional from Available Cash in accordance with the Orders of the Bankruptcy Court unless otherwise agreed to by the Holder of such Allowed Professional Fee Claim.  From and after the Confirmation Date until the Effective Date, the Debtor, in the ordinary course of business and without the necessity for any approval by the Bankruptcy Court, shall pay the reasonable fees and necessary and documented expenses of the Professionals during such period.  The Broker Fee shall be satisfied from Sale Proceeds. Any other Professional Fees shall be paid from the Surcharge Contribution and the QR Triptych Surcharge.

**(c)     Priority Tax Claims**

Pursuant to the Plan, the Debtor shall pay each holder of an Allowed Priority Tax Claim, in satisfaction of such Allowed Priority Tax Claim, the full unpaid amount of such Allowed Priority Tax Claim in Cash, on the later of (i) the Effective Date, (ii) the date such Allowed Priority Tax Claim becomes Allowed or as soon as practicable thereafter and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law; provided, however, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Priority Tax Claim.

**(d)     Statutory Fees**

Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the entry of the order confirming the Plan, for pre-confirmation periods and simultaneously file all the Monthly Operating Reports for the relevant periods, indicating the cash disbursements for the relevant period.  The Liquidating Trustee shall further pay the United States Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Liquidating Trustee, until the earlier of the closing of the Chapter 11 Case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing such case or converting such case to another chapter under the United States Bankruptcy Code, and the Liquidating Trustee shall provide to the United States Trustee upon the payment of each post-confirmation payment,

and concurrently filed with the Court, Post-Confirmation Quarterly Operating reports indicating all the cash disbursements for the relevant period. The Statutory Fees shall first be paid from the Surcharge Contribution and the QR Triptych Surcharge.

The table below provides a summary of the classification, treatment and estimated recoveries of Claims and Equity Interests under the Plan. This information is provided in summary form below for illustrative purposes only, is subject to material change based on contingencies related to the claims reconciliation process, and is qualified in its entirety by reference to the provisions of the Plan.

**(e)      Summary of Treatment of Claims, Equity Interests and Estimated Recoveries.**

The table below provides a summary of the classification, treatment and estimated recoveries of Claims and Equity Interests under the Plan. This information is provided in summary form below for illustrative purposes only, is subject to material change based on contingencies related to the claims reconciliation process, and is qualified in its entirety by reference to the provisions of the Plan.

**THE ESTIMATED PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND ARE THEREFORE SUBJECT TO CHANGE.**

| Class | Treatment of Claims and Interests | Estimated Aggregate Claims | Estimated Percentage Recovery |
|---|---|---|---|
| Class 1: Secured Real Estate Tax Claims | Except to the extent that a holder of an Secured Real Estate Tax Claim has been paid by the Debtor prior to the Effective Date or agrees to a different classification and treatment, each holder of an Allowed Secured Real Estate Tax Claim shall receive the full unpaid amount of such Secured Real Estate Tax Claim in Cash, on the later of (i) the Effective Date or as soon as practicable thereafter, (ii) the date such Secured Real Estate Tax becomes Allowed or as soon as practicable thereafter, and (iii) the date such Allowed Other Priority Claim is payable under applicable non-bankruptcy law; provided, however, that the Debtor shall not pay any premium, interest or penalty in connection with such Allowed Other Priority Claim. The Secured Real Estate Tax Claim include (i) Property Taxes; and (ii) Property Tax Certificates. To the extent Property Taxes for Tax Year 2021, the real estate taxes payable by Debtor as Seller under the *Sale Approval Order* shall be escrowed for payment when due by the closing agent designated under the Sale Approval Order to consummate that Closing. | $646,177.92 | 100% |
| Class 2: Allowed Secured Claim of LV Midtown | The Allowed Secured Claim of LV Midtown shall be satisfied by the holder the Allowed Secured Claim of LV Midtown receiving from the Debtor Sale Proceeds from the Closing of the Property up to the amount of the Release Price as provided for in the LV Settlement Agreement net of (i) | $20,468,837.91 | 92.5% as pursuant to LV Settlement Agreement, providing that |

| Class | Treatment of Claims and Interests | Estimated Aggregate Claims | Estimated Percentage Recovery |
|---|---|---|---|
| | ordinary and customary closing costs; (ii) the Secured Real Estate Tax Claims securing the Class 1 Claim; and (iii) the Broker Fee, but only to the extent the Sale Proceeds exceed the Release Price. The Sale Proceeds constitute, in part, the liquidation of the collateral securing the Class 2 Claim, which the Debtor shall liquidate at Closing pursuant to a Confirmation Order authorizing the sale of the Property pursuant to section 363 of the Bankruptcy Code or otherwise; (ii) realization of the indubitable equivalent of the Class 2 Claim, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. § 1129(b)(2)(A)(iii); or (iii) satisfaction of such Class 2 Claim as otherwise authorized by the Code or agreed to by the holder of such Class 2 Claim. Such satisfaction shall occur on the later of the Effective Date or the date each respective Class 2 Secured Claim of LV Midtown is Allowed by a Final Order. Any portion of the Allowed Claim of a holder of a Class 2 Secured Claim of LV Midtown that is not satisfied as part of its Allowed Class 2 Secured Claim of LV Midtown shall be treated as a Class 5 Allowed General Unsecured Claim pursuant to the term of the Plan. | | (i) LV Midtown will accept $19,600,000; and (ii) contribute $800,000 of its collateral as a Surcharge Contribution. |
| Class 3: Disputed Secured Claim of QR Triptych | The Debtor shall reserve and contribute to the Liquidating Trust the Excess Sale Proceeds. The Excess Sale Proceeds shall be held in trust by the Liquidating Trustee and shall be disbursed in accordance with any Final Order, decree or judgment entered by the Bankruptcy Court resolving or adjudicating the Avoidance Litigation after the expiration of all appellate periods of the resolution of any appeals thereof. In the event that the Bankruptcy Court determines, after the exhaustion of all appeals, that the holder of the Disputed Secure Claim of QR Triptych is, in whole or in part, entitled to assert an allowed claim secured against the Property and/or Excess Sale Proceeds, or any portion thereof, then the holder of the Disputed Secured Claim of QR Triptych shall be entitled to (i) receive a distribution of the Excess Sale Proceeds up to the amount the Bankruptcy Court determines the Disputed Secured Claim of QR Triptych, less the QR Triptych Surcharge that the Bankruptcy Court may determine and award under Sections 506(a) and 506(c) of the Bankruptcy Code; (ii) realization of the indubitable equivalent of the Disputed Secured Claim of QR Triptych, including either in the form of Cash equal to the value of such collateral pursuant to section 506(a) of the Bankruptcy Code and/or the return of the collateral securing such Claim in accordance with 11 U.S.C. §1129(b)(2)(A)(iii) of the Bankruptcy Code; or (iii) satisfaction of such Disputed Secured Claim of QR Triptych as otherwise authorized by the Bankruptcy Code or agreed to by the holder of the | $10,597,709.81 | 0%. Claim is disputed in its entirety. |

| Class | Treatment of Claims and Interests | Estimated Aggregate Claims | Estimated Percentage Recovery |
|---|---|---|---|
| | Disputed Secured Claim of QR Triptych.  If the Disputed Secured Claim of QR Triptych is recharacterized as equity in the Triptych Debtor by a final, non-appealable order, decree or judgment of the Bankruptcy Court, then it shall be treated in accordance with the treatment provided for in any plan of reorganization that may be confirmed for the Triptych Debtor or as otherwise provided for under applicable law | | |
| Class 4: Allowed General Unsecured Claims | In full satisfaction, settlement, release, extinguishment and discharge of each such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive a Class A Beneficial Interest in the Liquidating Trust on a Pro Rata basis with all other Holders of Allowed General Unsecured Claims.  Such Class A Beneficial Interest shall entitle such Holder to Distributions from time to time from the Liquidating Trust, as determined by the Liquidating Trustee in the exercise of his business judgment after accounting for any Liquidating Trust Reserves, on a Pro Rata basis with the Holders of all Class A Beneficial Interests in the Liquidating Trust, which Distributions will be made from Available Cash on deposit from time to time with the Liquidating Trust, provided that the maximum Distributions to the Holders of Allowed General Unsecured Claims shall be the full amount of each Allowed General Unsecured Claim without interest.  The first Distribution shall be made as soon as reasonably practicable following the Effective Date, provided however, that any Distribution to the Holders of Disputed Claims shall be reserved in the Disputed Claims Fund.  No Distribution shall be made to Holders of Allowed General Unsecured Claims unless and until (i) all Allowed Administrative Claims, all Allowed Professional Fee Claims, all Allowed Priority Tax Claims, all U.S. Trustee Fees and all Claims in Classes 2 and 3 have been paid in full, reserved or otherwise resolved, and (ii) the Liquidating Trustee has paid or reserved for all obligations of the Liquidating Trust and has established the Liquidating Trust Reserve in connection therewith.    Notwithstanding, the Liquidating Trustee may distribute to Holders of Allowed General Unsecured Claims (i) any portion of the Surcharge Contribution received as a Liquidating Trust Asset and not otherwise used by the Liquidating Trustee to pay expenses of the Liquidating Trust; and (ii) any Sale Proceeds in excess of the Disputed Claim of QR Triptych | $4,759,570.81 | Unknown |
| Class 5: Allowed Equity Interests | In full satisfaction, settlement, release, extinguishment and discharge of the Allowed Class 6 Equity Interest, the Triptych Debtor shall receive a Class B Beneficial Interest in the Liquidating Trust, which Class B Beneficial Interest shall entitle the Triptych Debtor Triptych to receive Distributions from time to time from the Liquidating Trust, as determined by the Liquidating Trustee in the exercise of their business | Unknown | Unknown |

| Class | Treatment of Claims and Interests | Estimated Aggregate Claims | Estimated Percentage Recovery |
|---|---|---|---|
| | judgment after accounting for any Liquidating Trust Reserves, from Available Cash on deposit from time to time with the Liquidating Trust, provided that no Distribution shall be made to the Triptych Debtor Triptych on account of the Allowed Class 5 Equity Interest unless and until (i) all Allowed Administrative Claims, all Allowed Professional Fee Claims, all Allowed Priority Claims, all Allowed Priority Tax Claims, all U.S. Trustee Fees, all Claims in Classes 2 and 3 and all Allowed General Unsecured Claims in Class 4 represented by the Class A Beneficial Interests have been paid in full, reserved or otherwise resolved, and (ii) the Liquidating Trustee has paid or reserved for all obligations of the Liquidating Trust and has established the Liquidating Trust Reserve in connection therewith. | | |

**(f)     Classification of Claims and Equity Interests Under the Amended Plan**

The following table designates the Classes of Claims against and Equity Interests in the Debtor under the Plan, and specifies which Classes are (a) Impaired or Unimpaired by the Plan, (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to accept or reject the Plan.

| Class | Claim | Status | Entitled to Vote? |
|-------|-------|--------|-------------------|
| 1 | Secured Real Estate Tax Claims | Unimpaired | No; Deemed to Accept the Plan |
| 2 | Allowed Secured Claim of LV Midtown | Impaired | Yes |
| 3 | Disputed Secured Claim of QR Triptych | Impaired | Yes |
| 4 | Allowed General Unsecured Claims | Impaired | Yes |
| 5 | Allowed Equity Interests | Impaired | Yes |

**ARTICLE IV**
**MEANS OF IMPLEMENTING THE AMENDED PLAN**

**4.01    The Debtor will Sell the Property**

The Plan will be funded through the sale of the Property in the manner described in the Sale Approval Order.  *See* Section §2.05(e), *supra*.

**4.02    The Liquidating Trust**

On the Effective Date of the Plan, (i) the Liquidating Trust shall be created and shall be governed by the terms of the Liquidating Trust Agreement, (ii) the Liquidating Trust Assets shall vest in, and be transferred to, the Liquidating Trust, which Liquidating Trust shall constitute, be appointed as and be deemed a representative of the Debtor's Estate pursuant to and in accordance with the terms of Section 1123(b)(3)(B) of the Bankruptcy Code solely for the benefit of the Liquidating Trust Beneficiaries, and (iii) the Liquidating Trust, through the Liquidating Trustee, is and shall, among the other powers set forth herein and in the Liquidating Trust Agreement, be authorized and appointed to investigate, prosecute, enforce, pursue and settle any and all Causes of Action, provided however, that any settlement of a Cause of Action proposed by the Liquidating Trustee shall require the approval of the Bankruptcy Court upon the filing of a motion in connection therewith.

NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, THE VESTING IN AND TRANSFER OF THE LIQUIDATING TRUST ASSETS TO THE LIQUIDATING TRUST SHALL BE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OF ANY KIND WHATSOEVER. NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, NO ASSETS OF

THE DEBTOR OR THE DEBTOR'S ESTATE SHALL VEST IN THE DEBTOR OR ANY OTHER PERSON OR ENTITY FROM AND AFTER THE EFFECTIVE DATE, OTHER THAN THE LIQUIDATING TRUST.

**(a)** **Execution and Implementation**

On or before the Effective Date, the Liquidating Trust Agreement shall be executed by the Debtor and the Liquidating Trustee and all other necessary steps shall be taken to establish the Liquidating Trust, which shall be for the benefit of the Liquidating Trust Beneficiaries thereunder. The Liquidating Trust is created solely to implement the terms of the Plan. The primary purposes of the Liquidating Trust is to collect and liquidate the Assets of the Debtor's Estate, pursue those claims and Causes of Action transferred to, and vested in, the Liquidating Trust and distribute to the Liquidating Trust Beneficiaries all proceeds from the liquidation of the applicable Assets pursuant to the terms of the Plan and in accordance with Treasury Regulation Section 301.7701-4(d). Under no circumstances shall the Liquidating Trustee have any power to engage in any trade or business or any other activity except as specifically provided herein or otherwise reasonably necessary and advisable for the orderly liquidation and distribution of the Liquidating Trust Assets of the Debtor's Estate.

**(b)** **Liquidating Trust Assets**

The Liquidating Trust shall consist of the Liquidating Trust Assets from the Debtor's Estate after any required Distributions by the Debtor on the Effective Date. The Debtor shall transfer the Liquidating Trust Assets to the Liquidating Trust. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code and any other applicable law. In connection with the transfer of the Liquidating Trust Assets to the Liquidating Trust, such Liquidating Trust Assets, including, without limitation, Causes of Action, shall vest in the Liquidating Trust on the Effective Date.

**(c)** **Liquidating Trustee**

The Liquidating Trust shall be governed by the Liquidating Trustee according to the Liquidating Trust Agreement for the Liquidating Trust. The Liquidating Trustee for the Liquidating Trust shall mean _____ (the "Liquidating Trustee"), the Liquidating Trustee named to administer the Liquidating Trust, and all successor Liquidating Trustees. The Liquidating Trustee shall be deemed to have been appointed as the respective Estate's representative for the Debtor by the Bankruptcy Court pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

**(d)** **Powers of the Liquidating Trustee**

In furtherance of and consistent with the purpose of the Liquidating Trust and the Plan, the Liquidating Trustee shall, among other things, have the rights, powers and duties of a chapter 7 trustee under Section 704 of the Bankruptcy Code and a chapter 11 trustee under section 1106 of the Bankruptcy Code and shall include, without limitation, the following: (i) to hold, manage, dispose of, sell, convert to Cash, and distribute the Liquidating Trust Assets, including

~~investigating, prosecuting and resolving the Causes of Action; (ii) to hold the Liquidating Trust Assets for the benefit of the Liquidating Trust Beneficiaries that are entitled to distributions therefrom under the Plan, whether their Claims are Allowed on or after the Effective Date; (iii) in the Liquidating Trustee's reasonable business judgment, to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Liquidating Trust Assets, including Causes of Action; (iv) to monitor and enforce the implementation of the Plan; (v) to file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Liquidating Trust or the Debtor; (vi) in the Liquidating Trustee's reasonable business judgment, to reconcile and object to Claims against the Debtor or the Liquidating Trust, and manage, control, prosecute and/or settle on behalf of the Estate and/or Liquidating Trust's Objections to Claims on account of which the Liquidating Trustee will be responsible (if Allowed) for making Distributions under the Plan; (vii) to take all actions necessary, and create any documents necessary, to wind up the affairs of the Debtor and to implement the Plan; (viii) to hold, manage, and distribute Cash or non-Cash Liquidating Trust Assets obtained through the exercise of its power and authority; (ix) to act as a signatory to the Debtor for all purposes, including those associated with the novation of contracts or other obligations arising out of the sales of the Debtor's Assets; (x) to dispose of the books and records transferred to the Liquidating Trustee in a manner deemed appropriate by the Liquidating Trustee in accordance with applicable law; provided, however, that the Liquidating Trustee shall not dispose of any books and records that are reasonably likely to pertain to pending litigation in which the Debtor or its current or former managers, partners, officers or directors are a party without further order of the Bankruptcy Court; (xi) to take all necessary action and file all appropriate motions to obtain an order closing the Chapter 11 Case; (xii) to enter into and exercise rights under contracts that are necessary or desirable to the administration of the Liquidating Trust and execute any documents or pleadings related to the liquidation of the Liquidating Trust Assets or other matters related to the Liquidating Trust; (xiii) to establish~~ <ins>and maintain bank accounts</ins> ~~and terminate such accounts as the Liquidating Trustee deems appropriate; (xiv) to set off amounts owed to the Debtor against distributions to Liquidating Trust Beneficiaries; (xv) to bring suits or defend itself against such suits, if any, as the Liquidating Trustee determines in connection with any matter arising from or related to the Plan or the Liquidating Trust Agreement that affects in any way the rights or obligations of the Liquidating Trust, the Liquidating Trustee or the Liquidating Trust Beneficiaries; (xvi) to obtain and maintain insurance coverage with respect to the liabilities and obligations of the Liquidating Trustee; (xvii) to take all actions necessary and appropriate to minimize any adverse state or federal tax consequences to the Liquidating Trust Beneficiaries provided such actions do not result in an adverse tax consequence to the Liquidating Trust and are consistent with and are not contrary to the treatment of the Liquidating Trust as a "grantor trust" for United States federal income tax purposes; and (xviii) to take such other and further actions as are permitted by the Plan and are not inconsistent with the Plan and the Liquidating Trust Agreement. In all circumstances, the Liquidating Trustee shall act in the best interests of all beneficiaries of the Liquidating Trust in furtherance of the purposes of the Liquidating Trust.~~ <ins>.  In connection with the administration of the Liquidating Trust, except as otherwise set forth herein, the Trustee is authorized to perform only those acts necessary and desirable to accomplish the purposes of the Liquidating Trust.  The Liquidating Trust shall succeed the rights of the Debtor necessary to protect, conserve and liquidate all Liquidating Trust Assets as quickly as reasonably practicable.  Subject to the limitations set forth in this Trust Agreement, the Plan and the Confirmation Order, the Liquidating Trustee may exercise all</ins>

powers granted it hereunder related to, or in connection with, the collection, prosecution, liquidation, and distribution to the Beneficiaries, of the Trust Assets. Without limiting, but subject to, the foregoing, the Liquidating Trustee shall be expressly authorized:

(a)    To open and maintain bank accounts on behalf of or in the name of the Liquidating Trust, calculate and make Distributions and take other actions consistent with the Plan and the implementation thereof, including the establishment, re-evaluation, adjustment and maintenance of appropriate reserves, in the name of the Liquidating Trust.

(b)    To receive, conserve and manage the Trust Asset

(c)    To hold legal title to any and all Trust Assets.

(d)    Subject to the applicable provisions of the Plan, to prosecute, collect and liquidate the Trust Assets.

(e)    To take discovery from third parties, including but not limited to, issuing Fed.R.Bankr.P. 2004 subpoenas and discovery requests.

(f)    Make decisions regarding the retention or engagement of Trustee's Professionals and to pay, from the Trust Assets and the proceeds thereof, the fees and charges incurred by the Liquidating Trust and the fees and expenses of the Liquidating Trustee's Professionals, as well as the disbursements, expenses or related support services relating to the implementation of the Plan and performance by the Trustee of its duties under this Agreement. To pay all lawful, expenses, debts, charges and liabilities of the Liquidating Trust.

(g)    To wind down the affairs of the Trust including the filing of final tax returns, if applicable, establish any administrative reserves necessary to close the Trust and make all Distributions to the Beneficiaries provided for or contemplated by the Plan.

(h)    To withhold from the amount distributable to any Person such amount as may be sufficient to pay any tax or other charge which the Trustee has determined, in its sole discretion, may be required to be withheld therefrom under the income tax laws of the United States or of any state or political subdivision thereof. In the exercise of its discretion and judgment, the Trustee may enter into agreements with taxing or other governmental authorities for the payment of such amounts as may be withheld in accordance with the provisions of this section.

(i)    To enter into any agreement or execute any document required by or consistent with the Plan and perform all obligations thereunder.

(j)    To abandon in any commercially reasonable manner, including abandonment or donation to a charitable organization of its choice, any assets if it concludes that they are of no significant value or benefit to the Liquidating Trust.

(k)    Except as otherwise set forth in this Trust Agreement, to have exclusive power to prosecute and/or settle all causes of actions including, without limitation, Avoidance Actions or any other causes of action or counterclaims as described in the Plan and Disclosure Statement (the "Causes of Action") and exercise, participate in or initiate any proceeding before the Bankruptcy Court or any other court of competent and appropriate jurisdiction and voluntarily participate as a party or otherwise in any administrative proceeding, arbitration, mediation, or other nonjudicial proceeding and litigate or settle such Actions on behalf of the Liquidating Trust, and pursue such actions to settlement or final order, all in accordance with the terms of

this Agreement.

(l)    To hold any unclaimed Distributions or payment to a Beneficiary in accordance with this Agreement, the Confirmation Order and the Plan.

(m)    To purchase or create and carry all insurance policies and pay all insurance premiums and costs it deems necessary or advisable.

(n)    To implement and/or enforce all provisions of the Plan.

(o)    To collect and liquidate all Trust Assets pursuant to the Plan, the Confirmation Order and this Agreement and to ultimately close the Chapter 11 Case.

(p)    To object to Claims and supervise and administer the resolution, settlement and payment of such Claims and the distribution to the Beneficiaries in accordance with this Agreement and the Plan. Specifically, the Liquidating Trustee may compromise or settle any such Claim (disputed or otherwise) free of any restrictions other than those restrictions expressly imposed by the Plan, the Confirmation Order or this Agreement.

(q)    Exercise such rights of setoff as the Debtor or the Estate may have had against any Beneficiary and/or seek Court approval of such exercise.

(r)    Voluntarily engage in arbitration or mediation with regard to any dispute.

(s)    To (i) seek a determination of tax liability under section 505 of the Bankruptcy Code, (ii) file, if necessary, any and all tax information returns required with respect to the Liquidating Trust treating the Liquidating Trust as a grantor trust pursuant to Treas. Reg. 1.67-4(a) or otherwise, (iii) make tax elections by and on behalf of the Liquidating Trust and (iv) pay taxes, if any, payable by the Liquidating Trust.

(t)    To make all distributions to holders of Allowed Claims provided for or contemplated by the Plan. Resolve issues pe1taining to the retention or disposal of the Liquidating Trust's administrative and business records.

(u)    To perform any other actions or duties required to be performed by the Liquidating Trustee pursuant to the provisions of the Plan and/or Confirmation Order.

For the avoidance of doubt, and without limitation of the foregoing, the Liquidating Trustee shall explicitly have the authority to: (i) investigate, prosecute, settle, liquidate, dispose of, and/or abandon any and all Claims and Causes of Action, subject to Bankruptcy Court approval, after notice and hearing; and (ii) file all tax and regulatory forms, returns, reports and other documents and financial information required with respect to the Debtor or the Liquidating Trust, and request a prompt determination of such requests; and (iii) investigate, prosecute, settle, liquidate, dispose of, and/or abandon any and all other Claims and Causes of Action reserved in the Plan, subject to Bankruptcy Court approval, after notice and hearing.

**(e)    Corporate Action**

All actions contemplated to be performed by the Debtor pursuant to the Plan, or any corporate or partnership action to be taken by or required of the Debtor, shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the shareholders, partners, members or managers of the Debtor.  All Persons, governmental units, title agencies,

licensing agencies and offices of recordation may rely upon the authority vested in the Debtor in order to effectuate the Plan and the transactions contemplated herein.

### (f)    Costs and Expenses

The costs and expenses of the Liquidating Trust, and the reasonable fees and expenses of the Liquidating Trustee and the Liquidating Trustee's Professionals, United States Trustee fees, shall be paid out of the Liquidating Trust Assets for the Liquidating Trust.  Those Professionals shall continue to file fee applications with the Bankruptcy Court for services provided to the Liquidating Trust and Liquidating Trustee, and all requests of Professionals retained by the Liquidating Trust for payment of fees or expenses shall be made by means of an interim or final fee application and shall be subject to the approval of, and review by, the Bankruptcy Court to ensure that such payment conforms to the terms of any engagement agreement, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules.

### (g)    Compensation of the Liquidating Trustee

The Liquidating Trustee shall be entitled to reasonable compensation at his standard hourly rates.

### (h)    Retention of Professionals

The Liquidating Trustee may retain and compensate attorneys, accountants and other professionals (collectively, the "Professionals") to assist in his duties as Liquidating Trustee under the Plan and Liquidating Trust on such terms (including on a contingency or hourly basis) as the Liquidating Trustee deems appropriate without Bankruptcy Court approval. Without limiting the foregoing, the Liquidating Trustee may retain any Professional that represented the Debtor or other parties in interest in this Chapter 11 Case.

### (i)    Tax Consequences of Liquidating Trust

For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtor, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as: (A) a transfer of the Liquidating Trust Assets (subject to any obligations relating to those assets) directly to those Holders of Allowed Claims and Equity Interests receiving Beneficial Interests in the Liquidating Trust (the "Liquidating Trust Beneficial Interests"), followed by (B) the transfer by such Liquidating Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets in exchange for the Liquidating Trust Beneficial Interests.

Accordingly, those Holders of Allowed Claims and Equity Interests receiving Liquidating Trust Beneficial Interests shall be treated for United States federal income tax purposes as the grantors and deemed owners of their respective share of the Liquidating Trust Assets. The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes. Notwithstanding the foregoing, (i) in the event that any portion of a Liquidating Trust is treated as a "qualified settlement fund" pursuant to Section 1.468B-1 of the Treasury Regulations, the United States federal income tax consequences shall be determined in accordance with the rules set forth in Section 468B of the Internal Revenue

Code and the Treasury Regulations thereunder; and/or (ii) in the event that the Liquidating Trustee timely elects to treat any Liquidating Trust Assets allocable to the Disputed Claims Fund as a "disputed ownership fund" pursuant to Section 1.468B-9(c)(2)(ii) of the Treasury Regulations, any Holders of such Disputed Claims shall, to the extent of such Disputed Claims, not be treated as having received any portion of the Liquidating Trust Assets transferred to the Liquidating Trust hereunder and shall not be deemed as grantors of the Liquidating Trust to the extent of such Disputed Claims

### (j)    Duration

The Liquidating Trust shall remain in existence and continue in full force and effect until all of the following shall have occurred: (a) the Liquidating Trust Assets have been reduced to Cash or the Liquidating Trustee has determined that it is impractical or not in the best interest of the Liquidating Trust Beneficiaries to do so; (b) all costs, expenses and obligations incurred in administering the Liquidating Trust have been paid and discharged; (c) the Liquidating Trust Assets have been distributed to the Liquidating Trust Beneficiaries in accordance with the Plan; and (d) a final report has been filed and a Final Decree closing the Chapter 11 Case has been entered; provided, however, that the Liquidating Trust shall not remain in existence more than five years from the date of the Liquidating Trust Agreement, unless extended pursuant to the terms hereof. If warranted by the facts and circumstances provided for in the Plan, and subject to the approval of the Bankruptcy Court of a motion of the Liquidating Trustee seeking an extension of the term of the Liquidating Trust as necessary to the purpose of the Liquidating Trust, then the term of the Liquidating Trust may be extended for a finite term based on the particular circumstances. Each extension must be approved by the Bankruptcy Court within six months of the beginning of the extended term with notice thereof to all Liquidating Trust Beneficiaries. Notwithstanding the foregoing, the Liquidating Trust shall in no event remain in existence for more than twenty-one years from the Effective Date.

### (k)    Indemnification

The Liquidating Trustee and the Liquidating Trustee's attorneys, employees, officers, directors, agents, representatives, and Professionals, as the case may be, shall be held harmless and shall not be liable for actions taken or omitted in their capacity as, or on behalf of, the Liquidating Trustee, except those acts that are determined by Final Order to have arisen out of their own intentional fraud, willful misconduct or gross negligence, and each shall be entitled to be indemnified, held harmless, and reimbursed for fees and expenses including, without limitation, reasonable attorney's fees, which such Persons and Entities may incur or may become subject to or in connection with any action, suit, proceeding or investigation that is brought or threatened against such Persons or Entities in respect of that person's or entity's or the Liquidating Trustee's actions or inactions regarding the implementation or administration of the Plan, the Liquidating Trust or the Liquidating Trust Agreements or the discharge of their duties hereunder or thereunder, except for any actions or inactions that are determined by Final Order to have arisen from intentional fraud, willful misconduct or gross negligence.

Any claim of the Liquidating Trustee and the other parties entitled to indemnification under this section, to be indemnified, held harmless, or reimbursed shall be satisfied solely from the Liquidating Trust Assets, including but not limited to the Available Cash, or any applicable

insurance coverage. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of their retained professionals regardless of whether such advice is provided in writing or verbally. Notwithstanding the foregoing, the Liquidating Trustee shall not be under any obligation to consult with his retained professionals, and his determination not to do so shall not result in the imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence, or intentional fraud.

**(l)    Bond**

As a condition to serving as Liquidating Trustee, the Liquidating Trustee, and any successor trustee, shall post a bond in favor of the Liquidating Trust in an amount that is not less than the amount of Cash held by the Liquidating Trust on the Effective Date, which bond shall be in substantially the same form as is required by the United States Trustee for trustees in the Southern District of Florida.

For the avoidance of doubt, the Liquidating Trust shall be responsible for all costs associated with the posting of the foregoing bond, including the premium associated with such bond. In addition, the Liquidating Trustee is hereby authorized, out of funds available from the Liquidating Trust, to obtain all reasonably necessary insurance coverage for himself and the Liquidating Trust, their agents, representatives, employees or independent contractors whether as a named insured on the policies or otherwise, including, but not limited to, coverage with respect to (a) appropriate directors and officers/trustee liability insurance,(b) any property that is or may in the future become the property of the Liquidating Trust, and (c) the liabilities, duties, and obligations of the Liquidating Trustee and the Liquidating Trust. Such bond shall be subject to discharge and release upon an appropriate motion and order from the Bankruptcy Court upon the Liquidating Trustee's resignation, death or removal, or for other cause.

**(m)    Resignation, Death or Removal**

The Liquidating Trustee may resign at any time; provided, however, that he shall file a motion with the Bankruptcy Court in connection therewith and request that a successor or replacement be appointed in accordance herewith, which motion shall be on notice to the top twenty (20) Creditors holding Allowed Claims and the Office of the United States Trustee. The Office of the United States Trustee or any party in interest, by motion filed with the Bankruptcy Court, or the Bankruptcy Court on its own order to show cause, may seek to remove the Liquidating Trustee for cause, including under Section 324 of the Bankruptcy Code, or, if Section 324 is deemed inapplicable, then for the same reasons that would otherwise suffice under Section 324, for the violation of any material provision of the Plan, or in the event the Liquidating Trustee becomes incapable of acting hereunder as a result of physical or mental disability and such physical or mental disability continues for a period in excess of thirty (30) days (except in the case of death, in which instance the procedures for replacement will begin immediately).

In the event of a resignation or removal, the Liquidating Trustee, unless he is incapable of doing so, shall continue to perform his duties hereunder until such a time as a successor is approved by a Final Order of the Bankruptcy Court. In the event the Liquidating Trustee resigns or is removed, the Liquidating Trust Beneficiaries, shall have 90 days to select a successor

Liquidating Trustee by filing a motion with the Bankruptcy Court. If the Liquidating Trust Beneficiaries do not select a successor Liquidating Trustee, then the Office of the United States Trustee may file a motion with the Bankruptcy Court seeking an order directing the United States Trustee to select such successor.

**(n)    Transfer of Assets Free and Clear of all Liens, Claims and Encumbrances**

NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, THE VESTING IN AND TRANSFER OF THE LIQUIDATING TRUST ASSETS TO THE LIQUIDATING TRUST SHALL BE FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS OF ANY KIND WHATSOEVER.

NOTWITHSTANDING ANYTHING IN THE PLAN TO THE CONTRARY, NO ASSETS OF THE DEBTOR OR THE DEBTOR'S ESTATE SHALL VEST IN THE DEBTOR OR ANY OTHER PERSON OR ENTITY FROM AND AFTER THE EFFECTIVE DATE OTHER THAN THE LIQUIDATING TRUST.

## ARTICLE V
## PRESERVATION OF CAUSES OF ACTION

### 5.01    Transfer of Causes of Action

Pursuant to the terms of the Plan, all Causes of Action are being transferred to the Liquidating Trust.  On and as of the Effective Date, all Causes of Action shall be preserved and vested in the Liquidating Trust.  After the Effective Date, the Liquidating Trust, through the Liquidating Trustee, will have the right to pursue, not pursue, enforce, file, settle, compromise, release, withdraw, arbitrate or litigate any Cause of Action that vests in the Liquidating Trust, provided, however, that any settlement of a Cause of Action shall require the approval of the Bankruptcy Court upon the filing of a motion and a hearing.

### 5.02    No Release of Any Claim or Causes of Action

THE PLAN DOES NOT, AND IS NOT INTENDED TO, RELEASE ANY CAUSE OF ACTION OR OBJECTIONS TO CLAIMS, AND ALL SUCH RIGHTS ARE SPECIFICALLY RESERVED IN FAVOR OF THE LIQUIDATING TRUST.  Creditors are advised that legal rights, claims and rights of action the Debtor may have against them, if they exist, are retained under the Plan for prosecution unless a specific order of the Bankruptcy Court authorizes the Debtor to release such claims.  As such, Creditors are cautioned not to rely on (i) the absence of the listing of any legal right, claim or right of action against a particular Creditor in the Disclosure Statement, the Plan, or the Schedules, or (ii) the absence of litigation or demand prior to the Effective Date of the Plan as any indication that the Debtor or Liquidating Trustee do not possess or do not intend to transfer to or vest any Cause of Action in the Liquidating Trustee if a particular Creditor votes to accept the Plan.  It is the expressed intention of the Plan to preserve rights, objections to Claims, and rights of action of the Debtor, whether now known or unknown, for the benefit of the Liquidating Trusts.  A Cause of Action shall not, under any circumstances, be waived as a result of the failure of the Debtor to describe such Cause of Action with specificity in the Plan or in the Disclosure Statement; nor shall the Liquidating Trustee, as a

result of such failure, be estopped or precluded under any theory from pursuing any such Cause of Action.  Nothing in the Plan operates as a release of any Cause of Action.

**5.03    Summary and Disclosure of Causes of Action**

The Debtor does not presently know the full extent of the Causes of Action and, for purposes of voting on the Plan, all Creditors and Holders of Equity Interests are advised that the Liquidating Trustee will have substantially the same rights that a Chapter 7 trustee would have with respect to the Causes of Action.  Accordingly, neither a vote to accept either Plan by any Creditor or Holder of an Equity Interest nor the entry of the Confirmation Order will act as a release, waiver, bar or estoppel of any Cause of Action against such Creditor or any other Person or Entity.  Confirmation of the Plan and entry of the Confirmation Order is not intended to and shall not be deemed to have any res judicata or collateral estoppel or other preclusive effect that would precede, preclude, or inhibit prosecution of such Cause of Action following Confirmation of the Plan.

For avoidance of doubt, the Debtor and the Liquidating Trustee specifically preserve any and all claims and Causes of Action against any of the following for actions taken or omitted to be taken that caused either of the Debtor damage or harm: (i) any Holders of Equity Interests; (ii) QR Triptych, LLC; (iii) JQ Real Estate, LLC; (iv) Jesus Quintero; and (vi) ZP Investments, LLC (collectively, the "Known Targets") for the enforcement and collection of amounts owed in connection therewith to the Debtor and the avoidance of any releases provided by the Debtor or transfers of property interests of the Debtor.  For the further avoidance of Doubt, the Avoidance Litigation shall be transferred to the Liquidating Trust and the Liquidating Trustee shall be substituted as plaintiff on behalf of the Debtor.

In addition to the above, the Causes of Action which are all specifically preserved under the Plan, include, without limitation, specifically the following:

i.    Any and all claims and causes of action, including Causes of Action, under state or federal law against the Known Targets , any and all present and former managers, partners (limited or general partners), directors, officers, shareholders, principals, employees, agents and affiliates of, the Debtor and of any affiliates of the Debtor, and any professionals employed by the Debtor, including accountants, auditors and lawyers, including without limitation, in any way related to, including providing aid and assistance in connection with: (i) the operation, management, funding and fund raising of the Debtor, including without limitation, breach of fiduciary duty, negligence, negligent management, fraud, civil theft, civil RICO or conspiracy, conversion, alter ego, misrepresentation, professional malpractice, corporate advantage, theft of corporate opportunities, wasting of corporate assets, equitable subordination of claims, breach of contract and federal or state statutory claims (including securities laws violations), as well as aiding and abetting any of the above; (ii) the sale, transfer, exchange or disposition of any property of or securities in the Debtor or any of its affiliates, or any partnership interests, preferred stock, common stock or equity or similar interest or securities therein, either prior to or after the Petition Date; or (iii) the conversion, misappropriation or misapplication of property of the Debtor or any of its affiliates or any products or proceeds therefrom.

      ii.    Any and all claims, choses in action, causes of action suits, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payments and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured and whether assertable directly or derivatively, in law, equity or otherwise, which are owned or held by, or have accrued to, the Debtor or the Estate, whether arising before or after the Petition Date, including without limitation, those which are: (i) property of the Estate of the Debtor under and pursuant to Section 541 of the Bankruptcy Code; (ii) for subrogation and contribution; (iii) for turnover; (iv) for avoidable transfers and preferences under and pursuant to Sections 542 through 550 and 553 of the Bankruptcy Code and applicable state law; (v) to determine the extent, validity and priority of liens and encumbrances; (vi) for surcharge under Section 506(c) of the Bankruptcy Code; (vii) for subordination under Section 510 of the Bankruptcy Code; (viii) related to federal or state securities laws; (ix) direct or derivative claims or causes of action of any type or kind; (x) for professional malpractice against professionals employed by the Debtor; (xi) against any and all former managers, partners (limited or general partners), officers and directors of the Debtor, including for breach of fiduciary duty or improper distributions; (xii) under and pursuant to any policies of insurance maintained by the Debtor, including without limitation, the directors' and officers' liability insurance policy; (xiii) for theft of corporate opportunity; (xiv) for collection on accounts, accounts receivables, loans, notes receivables or other rights to payment; (xv) for the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; (xvi) which arise under or as a result of any section of the Bankruptcy Code, including Section 362; and (xvii) against any lender of the Debtor related in any way to the lending relationship with the Debtor, and further including but not limited to claims against any such lender for exerting excessive or unreasonable control over the Debtor, for, charging, taking, reserving, collecting or receiving interest in excess of the highest lawful rate, for any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, or any cause of action or defense based on the negligence of such lender, for any "lender liability" theories, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing; and (xviii) all claims against any Person with any connections with or to the Debtor, based in law or equity, including, without limitation, under the Bankruptcy Code, federal law or state law, whether direct, indirect, derivative or otherwise and whether asserted or unasserted as of the Effective Date.

      iii.    Any and all claims and causes of action involving or in any way related to the collection of accounts receivables, notes receivables, loans receivables or other receivables owed to the Debtor; and

      iv.    Any and all claims and causes of action seeking to subordinate, equitably or otherwise, Claims filed against the Estate, or to re-characterize such Claims as Equity Interests in the Debtor;

v.    The Estate shall remain open, even if the Chapter 11 Case has been closed, as to any and all Causes of Action until such time as the Causes of Action have been fully administered and the recoveries therefrom have been received.

## 5.04    Summary and Disclosure of Causes of Action

The Liquidating Trust (a) may commence or continue in any appropriate court, tribunal or any other appropriate setting (e.g., American Arbitration Association or other arbitration association) any suit or other proceeding for the enforcement of any Cause of Action which the Debtor had or had power to assert immediately prior to the Effective Date, and (b) may settle or adjust such Cause of Action; provided, however, that from and after the Effective Date, the Liquidating Trust shall be authorized to compromise and settle any Cause of Action or objection to a Claim upon approval by the Bankruptcy Court after notice and a hearing.

**ARTICLE VI**
**PROVISIONS GOVERNING DISTRIBUTIONS**

## 6.01    Manner of Cash Payments Under the Amended Plan

Any Distribution pursuant to the Plan, to the extent posted in the United States mail, shall be deemed made when deposited by the Debtor or the Liquidating Trustee (or their respective agent(s)), as applicable, into the United States mail, or paid by wire transfer.  At the option of the Debtor or the Liquidating Trustee, as applicable, any Cash payment to be made pursuant to the Plan shall be made, at the election of the Debtor or the Liquidating Trustee, as applicable, by check drawn on a domestic bank, by wire transfer, or by ACH, from a domestic bank, or other method mutually agreed upon by the holder of the Allowed Claim and the Debtor.  Whenever any Distribution to be made under the Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on that due date.

## 6.02    Entity Making Distribution

Except as otherwise provided in the Plan, Distributions to holders of Allowed Claims and Allowed Equity Interests shall be made by the Debtor, if before the Effective Date, or the Liquidating Trustee if on or after the Effective Date.  The Debtor and the Liquidating Trustee shall not be required to give any bond or surety or other security for the performance of their duties, unless otherwise ordered by the Bankruptcy Court.

**6.03    Distribution Dates**

Distributions to holders of Claims and Equity Interests shall be made as provided in Articles II and III of the Plan.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**6.04    Record Date for Distributions**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims or Equity Interests that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Record Date will be treated as the holders of those Claims or Equity Interests (as applicable) for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to the transfer may not have expired by the Record Date.  The Debtor or Liquidating Trustee, as applicable, shall have no obligation to recognize any transfer of any Claim or Equity Interest occurring after the Record Date.  In making any Distribution with respect to any Claim or Equity Interest, the Debtor or Liquidating Trustee, as applicable, shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim or Equity Interest filed with respect thereto or on the Schedules as the holder thereof as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that was known to the Debtor as of the Record Date.

**6.05    Delivery of Distributions**

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the holders of Allowed Claims and Allowed Equity Interests shall be made by the Debtor or Liquidating Trustee, as applicable, at (a) the address of each holder as set forth in the Schedules, unless superseded by the address set forth on proofs of Claim or Equity Interest filed by such holder or (b) the last known address of such holder if no proof of Claim or Equity Interest is filed or if the Debtor or Liquidating Trustee, as applicable, have not been notified in writing of a change of address.

**6.06    Undeliverable and Unclaimed Distributions**

In the event that any Distribution to any holder of an Allowed Claim or Allowed Equity Interest made by the Debtor or Liquidating Trustee, as applicable is returned as undeliverable, the Debtor or Liquidating Trustee, as applicable, shall use commercially reasonable efforts to determine the current address of each holder, but no Distribution to such holder shall be made unless and until the Debtor or Liquidating Trustee, as applicable, has determined the then current address of such holder; provided, however, that all Distributions to holders of Allowed Claims or Allowed Equity Interests made by the Debtor or Liquidating Trustee, as applicable, that are unclaimed for a period of ninety (90) days after the date of the first attempted Distribution shall have its, his or her Claim or Equity Interest for such undeliverable Distribution deemed satisfied

and will be forever barred from asserting any such Claim or Equity Interest against the Debtor or Liquidating Trustee, as applicable, or their property.  Any Distributions which are undeliverable or have not been negotiated within the time set forth above shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revested in the Debtor or Liquidating Trustee, as applicable.  The Debtor or Liquidating Trustee, as applicable, shall have no further obligation to make any Distribution to the holder of such Claim or Equity Interest on account of such Claim or Equity Interest, and any entitlement of any holder of such Claim or Equity Interest to any such Distributions shall be extinguished and forever barred; provided, however, that the holder of such Claim or Equity Interest may receive future Distributions on account of such Claim or Equity Interest by contacting the Debtor or Liquidating Trustee, as applicable, at some point prior to the final Distribution.

**6.07    Compliance with Tax Requirements**

The Debtor or Liquidating Trustee, as applicable, may withhold and pay to the appropriate taxing authority all amounts required to be withheld pursuant to the Tax Code or any provision of any foreign, state or local tax law with respect to any payment or Distribution on account of Claims or Equity Interests; *provided*, *however*, that the Debtor or Liquidating Trustee, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims or Equity Interests without first filing a notice with the Court (and serving such notice on the holder of the Claim or Equity Interest) describing the nature and amount of the proposed withholding and providing the Creditor or holder of Equity Interest an opportunity to object.  All such amounts withheld and paid to the appropriate taxing authority shall be treated as amounts distributed to such holders of the Claims or Equity Interests.

The Debtor or Liquidating Trustee, as applicable, shall be authorized to collect such tax information from the holders of Claims or Equity Interests (including social security numbers or other tax identification numbers) as it in its sole discretion deems necessary to effectuate the Plan.  In order to receive Distributions under the Plan, all holders of Claims or Equity Interests will need to identify themselves to the Debtor or Liquidating Trustee, as applicable, and provide all tax information the Debtor or Liquidating Trustee, as applicable, deem appropriate (including completing the appropriate Form W-8 or Form W-9, as applicable to each holder).  The Debtor or Liquidating Trustee, as applicable, may refuse to make a Distribution to any holder of a Claim or Equity Interest that fails to furnish such information within the time period specified by the Debtor or Liquidating Trustee, as applicable, and such Distribution shall be deemed an unclaimed Distribution under the Plan, and, provided further that, if the Debtor or Liquidating Trustee, as applicable, fail to withhold in respect of amounts received or distributable with respect to any such holder and such Debtor are later held liable for the amount of such withholding, such holder shall reimburse the Debtor or Liquidating Trustee, as applicable, for such liability.  Notwithstanding any other provision of the Plan, each holder of an Allowed Claim or Equity Interest that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit.

**6.08    No Payments of Fractional Dollars**

Notwithstanding any other provision of the Plan to the contrary, no payment of fractional dollars shall be made pursuant to the Plan. Whenever any payment of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding down of such fraction to the nearest whole dollar.

## 6.09    Interests on Claims

Except as specifically provided for in the Plan or the Confirmation Order or required by the Bankruptcy Code, interest shall not accrue on Claims or Equity Interests and no holder of a Claim or Equity Interest shall be entitled to interest on any Claim accruing on or after the applicable Petition Date. Interest shall not accrue on any General Unsecured Claim that is a Disputed Claim in respect of the period from the Effective Date to the date a final Distribution is made thereon if and after that Disputed Claim becomes an Allowed Claim. Except as expressly provided herein or in a Final Order of the Bankruptcy Court, no prepetition Claim shall be Allowed to the extent that it is for post-petition interest or similar charges.

## 6.10    No Distribution in Excess of Allowed Amount of Claims

Notwithstanding anything to the contrary contained in the Plan, no holder of an Allowed Claim shall receive in respect of that Claim any Distribution in excess of the Allowed amount of such Claim.

## 6.11    Setoff and Recoupment

The Debtor or Liquidating Trust, as applicable, may setoff against, or recoup from, any Claim or Equity Interest and the Distributions to be made pursuant to the Plan in respect thereof, any Claims or defenses of any nature whatsoever that such Debtor or Liquidating Trust, as applicable, or the Estate may have against the holder of such Claim or Equity Interest, but neither the failure to do so nor the allowance of any Claim or Equity Interest under the Plan shall constitute a waiver or release by the Debtor or Liquidating Trustee, as applicable, or the Estate of any right of setoff or recoupment that any of them may have against the holder of any Claim or Equity Interest. Any such setoffs or recoupments may be challenged in Bankruptcy Court. Notwithstanding any provision in the Plan to the contrary, nothing therein shall bar any creditor from asserting its setoff or recoupment rights to the extent permitted under section 553 or any other provision of the Bankruptcy Code; provided, however, that such setoff or recoupment rights are timely asserted; provided further that all rights of the Debtor or Liquidating Trustee, as applicable, and the Estate with respect thereto are reserved.

## 6.12    De Minimis Distributions; Charitable Donations

Notwithstanding anything to the contrary in the Plan, the Debtor or Liquidating Trustee, as applicable, shall not be required to make a Distribution to any Creditor of holder of an Equity Interest if the dollar amount of the Distribution is less than $10 or otherwise so small that the cost of making that Distribution exceeds the dollar amount of such Distribution. On or about the time that the final Distribution is made, the Debtor or Liquidating Trustee, as applicable, may make a donation of undistributable funds as defined by Local Rule 3011-1(C)(1), in the reasonable discretion of the Debtor or Liquidating Trustee, as applicable, to the following

organizations (each of which qualifies for not-for-profit status under section 501(c)(3) of the Tax Code) with undistributable funds if, in the reasonable judgment of the Debtor or Liquidating Trustee, as applicable, the cost of calculating and making the final Distribution of the undistributable funds remaining is excessive in relation to the benefits to the or holders of Claims or Equity Interests who would otherwise be entitled to such Distributions: (i) the Bankruptcy Bar Foundation of the Bankruptcy Bar Association of the Southern District of Florida; (ii) Legal Services of Greater Miami, Inc.; (iii) Dade Legal Aid- Put Something Back Program; or (iv)  Miami Foundation for Mental Health, Inc.

**6.13    Withholding of Distributions**

Any federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from Distributions pursuant to the Plan.  The Debtor or Liquidating Trustee, as applicable, may withhold from amounts distributable pursuant to the Plan to any Person or Entity any and all amounts, determined in the reasonable discretion of the Debtor or Liquidating Trust, as applicable, required to be withheld by any law, regulation, rule, ruling, directive, or other governmental requirement.  The Debtor or Liquidating Trust, as applicable, shall not make any such withholdings described in this paragraph (other than routine tax withholdings with respect to employee-related claims (if any)) from any payment or Distribution on account of Claims or Equity Interests without first filing a notice with the Court (and serving such notice on the holder of the Claim or Equity Interest) describing the nature and amount of the proposed withholding and providing the Creditor or holder an opportunity to object.

**6.14    Distributions in Satisfaction; Allocation**

Except for the obligations expressly imposed by the Plan and the property and rights expressly retained under the Plan, if any, the Distributions and rights that are provided in the Plan shall be in complete satisfaction and release of all Claims against, liabilities in, Liens on, obligations of and Equity Interests in the Debtor and their Estate, whether known or unknown, that arose or existed prior to the Effective Date.  Distributions received in respect of Allowed Claims will be allocated first to the principal amount of such Claims, with any excess allocated to unpaid accrued interest (if any).

**6.15    No Distributions on Late-Filed Claims**

Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was required to be filed and was first filed after the applicable bar date in the Chapter 11 Case shall automatically be deemed a late-filed Claim that is disallowed in the Chapter 11 Case, without the need for (a) any further action by the Debtor or Liquidating Trustee, as applicable, (b) an order of the Bankruptcy Court.  Nothing in this paragraph is intended to expand or modify the applicable bar dates or any orders of the Bankruptcy Court relating                                                                                      thereto.

## ARTICLE VII
## DISPUTED CLAIMS

**7.01    Resolution of Disputed Claims**

The Debtor or the Liquidating Trustee, as applicable, shall have the right to make and file objections to Claims or Equity Interests in the Bankruptcy Court.  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, all Disputed Claims or Equity Interests shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

**7.02    Objection Deadline**

All objections to Disputed Claims or Equity Interests shall be filed no later than the Claims Objection Bar Date, unless otherwise ordered by the Bankruptcy Court after notice and a hearing, with notice only to those parties entitled to notice in the Chapter 11 Case pursuant to Bankruptcy Rule 2002.

**7.03    Estimation of Claims**

At any time, the Debtor or Liquidating Trustee, as applicable, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim or Equity Interests to the extent permitted by section 502(c) of the Bankruptcy Code regardless of whether the Debtor or Liquidating Trustee, as applicable, have previously objected to such Claim or Equity Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim or Equity Interest at any time during litigation concerning any objection to such Claim or Equity Interest, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates any contingent or unliquidated Claim or Equity Interest, that estimated amount shall constitute either the Allowed amount of such Claim or Equity Interest or a maximum limitation on the Claim or Equity Interest, as determined by the Bankruptcy Court.

If the estimated amount constitutes a maximum limitation on the Claim or Equity Interest, the Debtor or Liquidating Trustee, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim or Equity Interest.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims or Equity Interests may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**7.04    No Distributions Pending Allowance**

Notwithstanding any other provision in the Plan, if any portion of a Claim or Equity Interest is disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim or Equity Interest unless and until such Disputed Claim or Equity Interest becomes an Allowed Claim or Allowed or Equity Interest.

To the extent that a Disputed Claim or Equity Interests ultimately becomes an Allowed Claim or Equity Interest, Distributions (if any) shall be made to the holder of such Allowed Claim or Equity Interest in accordance with the provisions of the Plan.  Upon allowance, a holder of the Allowed Disputed Claim or Equity Interest shall receive any Distributions that would have been made up to the date of allowance to such holder under the Plan had the Disputed Claim or Equity Interest been allowed on the Effective Date.

## ARTICLE VIII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.01 General Treatment: Rejected if not Previously Assumed**

Within fourteen (14) days prior to the Confirmation Hearing, the Debtor shall file and serve a Notice of all contracts and unexpired leases that it intends to assume together with a Schedule of Cure Amounts for any leases or contracts that will be assumed under the Plan (the "Cure Schedule"). Any party objecting the proposed cure amount as set forth in the Cure Schedule shall file an objection within three (3) days prior to the Confirmation hearing. If no objection is filed, then the proposed cure amount will be deemed approved. Each Debtor shall have forty-five (45) days from the Effective Date to supplement the Cure Schedule and the Bankruptcy Court will determine any disputes regarding, and assign to the Liquidating Trust (the "Assumption Schedule"). Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, upon the Effective Date, all executory contracts and unexpired leases that exist between the Debtor and any Person or Entity shall be deemed rejected, unless included on the CureAssumption Schedule or previously assumed. The Liquidating Trustee shall have sixty (60) days from the Effective Date to supplement the Assumption Schedule and the Bankruptcy Court will determine any disputes regarding any cure or rejection damages. Subject to the occurrence of the Effective Date, entry of the Confirmation Order shall constitute approval of such assumption or rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption or rejection is in the best interests of the Debtor, the Liquidating TrusteeTrust, their Estate, and all parties in interest in the Chapter 11 Case.

**8.02 Bar to Claims Arising from Rejection, Termination or Expiration**

Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in herein ("General Treatment; Rejected if not Previously Assumed") or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtor or Liquidating Trustee, as applicable, no later than thirty (30) days after (a) the *date of the entry of any order of the Bankruptcy Court authorizing rejection*, with respect to any executory contract or unexpired lease rejected by the Debtor or otherwise pertaining to such order, or (b) the *Confirmation Date*, with respect to any executory contract or unexpired lease that is deemed rejected pursuant hereto ("General Treatment; Rejected if not Previously Assumed").

Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtor, or the Estate, assets, properties, or interests in property, or the Liquidating Trustee, or the Estate, assets, properties, or interests in property. Nothing

42

contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor or the Liquidating Trustee of any objections to such Claim if asserted.

**8.03    Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, the Debtor will reject all of the executory contracts and unexpired leases not listed on the ~~Cure~~Assumption Schedule.

**8.04    Modifications, Amendments, Supplements, Restatements, or Other Agreements.**

Unless otherwise provided in the Plan, each executory contract or unexpired lease that is assumed pursuant to the Plan will include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such executory contract or unexpired lease, and all rights related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated, or is rejected or repudiated pursuant to the Plan or separate motion and Final Order of the Bankruptcy Court.

**8.05    Proof of Claim Based on Assumed Executory Contracts or Unexpired Leases**

Any and all proofs of claim relating to executory contracts or unexpired leases that have been assumed in the Chapter 11 Case will be deemed amended and superseded by the amount of Cure Claim identified in the Plan, the Confirmation Order or other order of the Bankruptcy Court authorizing assumption of executory contracts to the Debtor or the Liquidating Trustee.

**8.06    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

All Allowed Cure Claims will be satisfied by the Debtor by payment of the Cure in Cash to (i) holders of such Cure Claims or on the Effective Date or as soon as reasonably practicable thereafter, or (ii) on such other terms as may be either ordered by the Bankruptcy Court or agreed by the Debtor and the applicable contract counter-party without any further notice to or action, order, or approval of the Bankruptcy Court.  Any provisions or terms of executory contracts or unexpired leases to be assumed and assigned pursuant to the Plan that are, or may be, alleged to be in default, shall be satisfied solely by the Cure, or by an agreed-upon waiver of the Cure.

**8.07    Effect of Confirmation Order**

Entry of the Confirmation Order will constitute a finding of adequate assurance of future performance by the Liquidating Trustee within the meaning of section 365 of the Bankruptcy Code.  Any objections relating to adequate assurance of future performance, or any other matters relating to the assumption and assignment of executory contracts and unexpired leases (other than Cure Claim disputes) must be asserted as an objection to confirmation of the Plan. Assumption of any executory contract or unexpired lease pursuant to the Confirmation Order or other order of the Bankruptcy Court will limit the Claims of any such contract counter-party to

the (i) Allowed Cure Claim and (ii) Claims for ongoing performance under the unexpired lease or executory contract by Reorganized Debtor pursuant to section 365(k) of the Bankruptcy Code.

**8.08    Indemnification and Reimbursement**

Subject to the occurrence of the Effective Date, all Allowed Claims against the Debtor for indemnification, defense, reimbursement, or limitation of liability of current or former directors, officers, or employees of the Debtor against any Claims, costs, liabilities or causes of action as provided in the Debtor's operating agreement, bylaws, other organizational documents, or applicable law, shall, to the extent such indemnification, defense, reimbursement, or limitation is owed in connection with one or more events or omissions occurring before the Petition Date, be paid only to the extent of any applicable insurance coverage.  Nothing contained in the Plan shall affect the rights of partners, managers, directors, officers or employees under any insurance policy or coverage with respect to such Claims, costs, liabilities or Causes of Action or limit the rights of the Debtor or the Debtor's Estate to object to or otherwise contest or challenge Claims or rights asserted by any current or former partner, manager, officer, director or employee of the Debtor.

**ARTICLE IX**
**CONDITIONS PRECEDENT TO THE EFFECTIVE DATE**

**9.01    Conditions Precedent**

The following are conditions precedent to the Effective Date that must be satisfied or waived by the Debtor:

       i.    The Successful Bidder pursuant to the Sale Approval Order shall have been awarded to a Successful Bid that provides sufficient Sale Proceeds for the Debtor to perform under the terms proposed in this Plan;

      ii.    ~~i.~~ The Court shall have entered the Confirmation Order in form and substance acceptable to the Debtor confirming and approving the Plan in all respects;

      iii.    ~~ii.~~ There shall be no stay or injunction in effect with respect to the Confirmation Order;

      iv.    ~~iii.~~ The Plan Documents shall be in a form and substance reasonably acceptable to the Debtor, and have been duly executed and delivered; provided, however, that no party to any such agreements and instruments, may unreasonably withhold its execution and delivery of such documents to prevent this condition precedent from occurring.

**9.02    Waiver**

Notwithstanding the foregoing conditions, the Debtor reserves, in its sole discretion, the right to waive the occurrence of any condition precedent or to modify any of the foregoing conditions precedent.   Any such written waiver of a condition precedent set forth in the Plan may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and

without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date or Confirmation Date (as applicable) shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.

**ARTICLE X**
**EFFECT OF CONFIRMATION; INDEMNIFICATION,**
**INJUNCTIVE AND RELATED PROVISIONS**

**10.01  Compromise and Settlement**

Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Equity Interests.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromises or settlements are fair, equitable, reasonable and in the best interests of the Debtor, the Estate and holders of Claims and Equity Interests.

**10.02  Binding Effect**

Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtor, Liquidating Trust, and any holder of a Claim against, or Equity Interest in, such Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted such Plan.

**10.03  Discharge of Claims**

Except as provided herein, the rights afforded in the Plan and the payments and Distributions to be made hereunder shall discharge all existing debts, Claims and Equity Interests, of any kind, nature, or description whatsoever against or in the Debtor or any of its assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided herein, upon the Effective Date, all existing Claims against and Equity Interests in the Debtor shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Liquidating Trust, its successors or assignees, or any of its assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting against each Reorganized Debtor any such discharged Claim against or Equity Interest in the Debtor.

**10.04  Discharge of Debtor**

Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation of the Plan will not discharge Claims against the Debtor; provided, however, that no Holder of any Claim or Equity

Interest may, on account of such Claim or Equity Interest, seek or receive any payment or other Distribution from, or seek recourse against, any of the Estate, the Liquidating Trust, the Liquidating Trustee, and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

## 10.05   Exculpation

**Notwithstanding anything contained herein the contrary, Genovese Joblove & Battista, P.A. (and its respective employees, attorneys, professionals and agents) shall neither have nor incur any liability relating to the Chapter 11 Case to any Entity for any and all Claims and Causes of Action arising after the applicable Petition Date and through the Effective Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan or distributing property thereunder, the Disclosure Statement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other post-petition act taken or omitted to be taken in connection with the Chapter 11 Case; provided, however, that the foregoing provisions of this Article shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence, fraud or willful misconduct.**

## 10.06   Limitations on Exculpation

Nothing in the Plan shall be construed to release or exculpate any Person from, or require indemnification of any Person against losses arising from criminal conduct, intentional unauthorized misuse of confidential information that causes damages, or limit the liability of the professionals of the Debtor to the Debtor pursuant to Rule 4-1.8(h) of the Florida Rules of Professional Conduct ("Limiting Liability for Malpractice").

## 10.07   Injunction

From and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner against the Debtor, the Liquidating Trust, the Estate, and their successors and assigns, and their assets and properties, as the case may be, any suit, action or other proceeding, on account of or respecting any Claim or Equity Interest, demand, liability, obligation, debt, right, Cause of Action, interest or remedy released or satisfied or to be released or satisfied pursuant to the Plan or the Confirmation Order.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, from and after the Effective Date, all Entities shall be precluded from asserting against the Debtor, the Liquidating Trust, the Estate, and their successors and assigns and their assets and properties, any other Claims or Equity Interests based upon any documents, instruments, or any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.

The rights afforded in the Plan and the treatment of all Claims and Equity Interests in the Plan shall be in exchange for and in complete satisfaction of Claims and Equity Interests against the Debtor or any of its assets or properties solely to the extent that (a) such Claims or Equity Interests have been released or satisfied pursuant to the Plan or the Confirmation Order or (b) such Claims, Equity Interests, actions or assertions of Liens relate to property that will be distributed pursuant to the Plan or the Confirmation Order.  On the Effective Date, all such Claims against, and Equity Interests in, the Debtor shall be satisfied and released in full.

Except as otherwise expressly provided for in the Plan or in obligations issued pursuant to the Plan, all Persons and Entities are permanently enjoined, on and after the Effective Date, on account of any Claim or Equity Interest satisfied and released pursuant to the Plan or Confirmation Order, from:

    i.   commencing or continuing in any manner any action or other proceeding of any kind against the Debtor, the Liquidating Trust, the Estate and their successors and assigns and their assets and properties;

    ii.   enforcing, attaching, collecting or recovering by any manner or means any judgment, award, decree or order against the Debtor, the Liquidating Trust, the Estate and their successors and assigns and their assets and properties;

    iii.   creating, perfecting or enforcing any encumbrance of any kind against the Debtor, the Liquidating Trust, the Estate and their successors and assigns and their assets and properties; and

    iv.   commencing or continuing in any manner any action or other proceeding of any kind in respect of any Claim or Equity Interest or Cause of Action released or settled hereunder).

**10.08   Release of Liens**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges or other security interests against property of the Estate distributed under the Plan shall be fully released and discharged and all of the right, title and interest of any holder of such mortgages, deeds of trust, Liens, pledges or other security interest shall revert to the Liquidating Trust.

**ARTICLE XI**
**RETENTION OF JURISDICTION**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall, after the Effective Date, retain such jurisdiction over the Chapter 11 Case and all Entities with respect to all matters related to the Chapter 11 Case, the Debtor, the Liquidating Trust, and the Plan as is legally permissible, including, without limitation, jurisdiction to:

(i)    i. allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim against or Equity Interest in the Debtor, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the allowance or priority of Claims or Equity Interest;

(ii)    ii. grant, deny or otherwise resolve any and all applications of Professionals or Persons retained in the Chapter 11 Case by the Debtor for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending on or before the Effective Dates;Date;

(iii)    iii. resolve any matters related to the assumption, assignment or rejection of any executory contract or unexpired leases to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom;

(iv)    iv. ensure that Distributions to holders of Allowed Claims or Equity Interests are accomplished pursuant to the provisions of the Plan, including by resolving any disputes regarding, as applicable, the Debtor's or Liquidating Trust's entitlement to recover assets held by third parties;

(v)    v. decide or resolve any motions, contested or litigated matters (including but not limited to any adversary proceeding) and any other matters and grant or deny any applications involving the Debtor that may be pending on the Effective Date or instituted by the Liquidating TrusteeTrust after the Effective Date;

(vi)    vi. enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all other contracts, instruments, releases, indentures and other agreements or documents adopted in connection with the Plan or the Disclosure Statement;.

(vii)    vii. issue injunctions, enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the Effective Date or enforcement of the Plan, except as otherwise provided in the Plan;

(viii)    viii. enforce Articles within thethis Plan;

(ix)    ix. resolve any cases, controversies, suits or disputes with respect to the injunction and other provisions contained in the PlanArticle XI, and enter such orders as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

(x)    x. resolve any issues or matters related to the Liquidating Trust;

(xi)    xi. enter and implement such orders as necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

49

(xii)    ~~xii.~~ resolve any other matters that may arise in connection with or related to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document adopted in connection with the Plan or the Disclosure Statement; and

(xiii)    ~~xiii.~~ enter an order and a Final Decree closing the Chapter 11 Case.

## ARTICLE XII
## RISK FACTORS IN CONNECTION WITH THE AMENDED PLAN

The holders of Claims against and Equity Interests in the Debtor should read and carefully consider the following risk factors, as well as the other information set forth in this Disclosure Statement (and the documents delivered together herewith), before deciding whether to vote to accept or reject the Plan.  These risk factors should not, however, be regarded as constituting the only risks associated with the Plan and their implementation.

### 12.01   Business Risk

The holders of Claims should consider the following business risk factors associated with the Plan:

i.    The Plan contemplates that the will be able to sell the Property pursuant to the Sale Approval Order for a minimum sales price of $22 million.  If the Debtor is unable to secure such a transaction, either pursuant to the terms of the Sale Approval Order (as is defined in the Plan ) or otherwise, the Debtor may elect to seek dismissal or conversion of its bankruptcy case pursuant to section 1112 of the Bankruptcy Code.

ii.    ~~i.~~ The Debtor may not close on the sale of the Property; and

iii.    ~~ii.~~ The Debtor may not realize the Sale Proceeds contemplated by the Waterfall Analysis if (i) a Competing Bid Contract is deemed the Successful Bidder's and the Purchase Price approved by the Bankruptcy Court is less than the Purchase Price in the Contract presently approved by the Bankruptcy Court in the Sale Approval Order [ECF No. 106] of $25,500,000; or (ii) LV Midtown is deemed to be the Successful Bidder pursuant to its 363K Bid which does not provide for a cash recovery by the Debtor; or (iii) the Surcharge Contribution from LV Midtown's collateral is not applied by the Bankruptcy Court as set forth in the Amended Plan.

### 12.02   Bankruptcy Risk

Although the Debtor believes the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will confirm the Plan as proposed.  Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the re-solicitation of votes.

### 12.03   Failure to Close on Sale of Property

The Plan provides for the transfer of the Property to the Successful Bidder as set forth in the Sale Approval Order [ECF No. 106].  In the event that the Auction contemplated by the Sale Approval Order does result in the sale of the Property to a Successful Bidder or Back-Up Bidder, then Debtor will not proceed with confirmation of the Plan.  Additionally, the ~~Debtor may not be able to consummate the Plan (or may need to amend the Plan) if a Competing Bid Contract is deemed the Successful Bidder's and the Purchase Price approved by the Bankruptcy Court is less than the Purchase Price in the Contract presently approved by the Bankruptcy Court in the Sale Approval Order [ECF No. 106] of $25,500,000.~~ Amended Plan contemplates that the will be able to sell the Property pursuant to the Sale Approval Order for a minimum sales price of $22 million.  If the Debtor is unable to secure such a transaction, either pursuant to the terms of the Sale Approval Order (as is defined below) or otherwise, the Debtor may elect to seek dismissal or conversion of its bankruptcy case pursuant to section 1112 of the Bankruptcy Code. .   The Auction is currently scheduled for Wednesday, August 25. 2021 at 11:00 a.m.   If the Auction results in a Purchase Price less than $~~25,500,000.~~22,000,000,  the Debtor may elect not to proceed with the confirmation of the Plan.

### 12.04   Rejection of **Amended** Plan

Classes 2, 3, 4 and 5 under the Plan are the only Classes that are entitled to vote to accept or reject the Plan.  If the requisite acceptances are not received by at least one Impaired Class, the Debtor will not be able to seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code, because at least one Impaired Class will not have voted in favor of the Plan as required by section 1129(a)(10) of the Bankruptcy Code.  In addition, the Debtor may seek to accomplish an alternative restructuring of its capitalization and obligations to creditors and obtain acceptances to an alternative plan of reorganization for the Debtor, or otherwise, the Debtor may be required to liquidate the Estate under chapter 7 or 11 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to the Debtor's creditors and equity holders as those proposed in the Plan.

### 12.05   No Duty to Update Disclosures

The Debtor has no duty to update the information contained in this Disclosure Statement as of the date hereof, unless otherwise specified herein, or unless the Debtor is required to do so pursuant to an order of the Bankruptcy Court.  Delivery of the Disclosure Statement after the date hereof does not imply that the information contained herein has remained unchanged.

### 12.06   Representations Outside the Disclosure Statement

This Disclosure Statement contains representations concerning or related to the Debtor and the Plan that are conditionally approved by the Bankruptcy Code and the Bankruptcy Court. Please be advised that any representations or inducements outside this Disclosure Statement and

any related documents which are intended to secure your acceptance or rejection of the Plan should not be relied upon by holders of Claims that are entitled to vote to accept or reject the Plan.

**12.07   Tax and Other Related Considerations**

A discussion of potential tax consequences of the Plan is provided below; however, the content of this Disclosure Statement is not intended and should not be construed as tax, legal, business or other professional advice.  Holders of Claims and/or Equity Interests should seek advice from their own independent tax, legal or other professional advisors based on their own individual                                                                                        circumstances.

# ARTICLE XIII
## MISCELLANEOUS PROVISIONS

**13.01  Modification of Amended Plan**

Subject to the limitations contained in the Amended Plan, the Debtor reserves the right in its sole discretion, in accordance with the Bankruptcy Code and the Bankruptcy Rules to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code; provided, however, that (1) any pre-Confirmation Date amendments shall not materially or adversely affect the interests, rights or treatment of any Allowed Claims or Equity Interests under the Plan as required under and in accordance with Section 1127 of the Bankruptcy Code or applicable Bankruptcy Rules; and (2) after the entry of the Confirmation Order, the Liquidating Trustee may, upon order of the Bankruptcy Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code, or remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

**13.02  Revocation of Amended Plan**

The Debtor reserves the right in its sole discretion to revoke or withdraw the Plan prior to the entry of the Confirmation Order, and to file subsequent chapter 11 plans.  If the Debtor revokes or withdraws the Plan or if entry of the Confirmation Order or the Effective Date does not occur, then: (1) the Plan shall be null and void in all respects; and (2) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Entity; (b) prejudice in any manner the rights of either of the Debtor or any other Entity; or (c) constitute an admission of any sort by either of the Debtor or any other Entity.

**13.03  Binding Effect**

On the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or present or former direct or indirect holder of an Equity Interest in, the Debtor and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a Distribution under the Plan.

**13.04   Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to herein shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

**13.05   Governing Law**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules apply, unless otherwise stated, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida without giving effect to the principles of conflict of laws thereof.

**13.06   Reservation of Rights**

The Plan shall have no force or effect unless and until the Effective Date occurs.  Neither the filing of the Plan, any statement or provision contained therein, nor the taking of any action by the Debtor or any Entity with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) any Debtor with respect to the holders of Claims or Equity Interests or other parties-in-interest; or (2) any holder of a Claim or other party-in-interest prior to the Effective Date.

**13.07   Section 1125(e) Good Faith Compliance**

Confirmation of the Plan shall act as a finding by the Bankruptcy Court that the Debtor and its representatives have acted in "good faith" under sections 1125(e) and 1129(a)(3) of the Bankruptcy Code.

**13.08   Further Assurances**

The Debtor, all holders of Claims receiving Distributions hereunder, and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan or the Confirmation Order.

**13.09   Service of Documents**

Any pleading, notice or other document required herein to be served on or delivered to the Debtor shall be sent by both email and first class, certified U.S. mail, postage prepaid as follows:

**If before the Effective Date under the Amended Plan, to:**

**AVENTURA HOTEL PROPERTIES, LLC**
c/o HES Group
Attn: Francisco Arocha
1001 S.W Second Avenue
Suite 300
Miami, Florida 33130

**GENOVESE JOBLOVE & BATTISTA, P.A.**
Attn:  Jesus M. Suarez
100 SE 2nd Street, 44th Floor
Miami, FL 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
Email: jsuarez@gjb-law.com

**If after the Effective Date under the Amended Plan, to:**

_____
Liquidating Trustee

**13.10   Filing of Additional Documents**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**13.11   No Stay of Confirmation Order**

The Debtor shall request that the Court waive stay of enforcement of the Confirmation Order otherwise applicable, including pursuant to Federal Rules of Bankruptcy Procedure 3020(e), 6004(h) and 7062.

**13.12   Automatic Stay**

The automatic stay provided for under section 362 of the Bankruptcy Code shall remain in effect in the Chapter 11 Case until the Effective Date.

**ARTICLE XIV**
**CONFIRMATION REQUIREMENTS**

**14.01   Standard to Confirm a Plan**

In order for the Plan to be confirmed, the Bankruptcy Code requires that the Bankruptcy Court determine that the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code and that the disclosures concerning such Plan have been adequate and have included information concerning all payments made or promised in connection with such Plan and these Chapter 11 Case.  The Bankruptcy Code also requires that: (1) the Plan be accepted by the requisite votes of Creditors except to the extent that confirmation despite dissent is available under Bankruptcy Code section 1129(b); (2) the Plan is feasible (that is, there is a reasonable probability that the Debtor will be able to perform its obligations under its Plan without needing further financial reorganization not contemplated by such Plan); and (3) the Plan is in the "best interests" of all Creditors in that Chapter 11 Case (that is, Creditors will receive at least as much under such Plan as they would receive in a hypothetical liquidation case under chapter 7 of the Bankruptcy Code).  To confirm each such Plan, the Bankruptcy Court must find that all of the above conditions are met, unless the applicable provisions of Bankruptcy Code section 1129(b) are employed to confirm such Plan, subject to satisfying certain conditions, over the dissent or deemed rejections of Classes of Claims.

Set forth below is a summary of the relevant statutory confirmation requirements.

(a)    **Best Interest Test**

Each Holder of a Claim or Interest in an Impaired Class must either (i) accept the Plan or (ii) receive or retain under such Plan Cash or property of a value, as of the Effective Date of such Plan, that is not less than the value such Holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.  The Bankruptcy Court will determine whether the Cash and property issued under such Plan to each Holder of a Claim or Interest equals or exceeds the value that would be allocated to such Holders in a liquidation under chapter 7 of the Bankruptcy Code (the "Best Interests Test").

(b)    **Liquidation Analysis**

For purposes of the Best Interest Test, in order to determine the amount of liquidation value available to Creditors, the Debtor has prepared a liquidation analysis (the "Liquidation Analysis"), which concludes that in a Chapter 7 liquidation, holders of pre-petition unsecured Claims would receive less of a recovery than the recovery they would receive under the Plan. This conclusion is premised upon the assumptions set forth in the Liquidation Analysis, which the Debtor believes is  reasonable. The Debtor's Liquidation Analysis is attached as **Exhibit "A"** hereto.  The Debtor believes the Holders of Claims against and Equity Interests in the Debtor will have an equal or greater recovery as a result of an orderly chapter 11 liquidation as discussed herein and under the Plan than could be realized in a chapter 7 liquidation for the Debtor for the following reasons.

To determine the value that a Holder of a Claim or Interest in an Impaired Class would receive if the Debtor were liquidated under chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtor's Property if the Debtor's Chapter 11 Case had been converted to chapter 7 liquidation cases and the Debtor's Property were liquidated by a chapter 7 trustee (the "Liquidation Value").  The Liquidation Value would consist of the net proceeds from the disposition of the Debtor's Assets, augmented by Cash held by the Debtor and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 reorganization case.

As explained below, the Liquidation Value available for satisfaction of Claims and Equity Interests in the Debtor would be reduced by: (a) the costs, fees and expenses of the liquidation under chapter 7, which would include disposition expenses and the compensation of a trustee and his or her counsel and other professionals retained, (b) the fees of the chapter 7 trustee, and (c) certain other costs arising from conversion of the Chapter 11 Case to chapter 7. Here, the Debtor believes that Holders of Allowed General Unsecured Claims will clearly benefit from the reorganization of the Debtor under the terms of the Plan.

Moreover, under the Plan, the Debtor will avoid the increased costs and expenses of a chapter 7 liquidation, including the fees payable to a chapter 7 trustee and his or her professionals.  The Cash to be distributed to Creditors would be reduced by the chapter 7 trustee's statutory fee, which is calculated on a sliding scale from which the maximum compensation is determined based on the total amount of moneys disbursed or turned over by the

58

chapter 7 trustee. Bankruptcy Code § 326(a) permits reasonable compensation not to exceed 3% of the proceeds in excess of $1 million distributable to creditors.[6] The chapter 7 trustee's professionals, including legal counsel and accountants, would add substantial administrative expenses that would be entitled to be paid ahead of Allowed Claims and Equity Interests against the Debtor. These chapter 7 trustee fees would reduce the funds available for distribution to the Debtor's Creditors from additional recoveries such as preferential payments, expunged Administrative Expense Claims and the proceeds of successful Estate litigation or settlement.

It is also anticipated that a chapter 7 liquidation would result in a significant delay in payments being made to Creditors. Bankruptcy Rule 3002(c) provides that conversion of a chapter 11 case to chapter 7 will trigger a new bar date for filing claims against the Debtor, and that the new bar date will be 90 days after the first date set for the meeting of creditors called under section 341 of the Bankruptcy Code. Not only would a chapter 7 liquidation delay distribution to Creditors, but it is possible that additional claims that were not asserted in the Chapter 11 Case, or were late-filed, could be filed against the Debtor. Reopening the bar date in connection with conversion to chapter 7 would provide these and other claimants an additional opportunity to file claims against the Estate.

For the reasons set forth above, the Debtor believes that the Plan provides a superior recovery for Holders of Claims and Interests, and the Plan meet the requirements of the Best Interests Test.

### (c)  Feasibility

In connection with confirmation of the Plan, the Bankruptcy Court will be required to determine that the Plan is feasible pursuant to Section 1129(a)(11) of the Bankruptcy Code. Therefore, even if the Plan is accepted by each Class of Claims and Interests voting on the Plan, and even if the Bankruptcy Court determines that the Plan satisfy the Best Interests Test, the Bankruptcy Code requires that, in order for the Plan to be confirmed by the Bankruptcy Court, it must be demonstrated that consummation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor.

The Plan proposes the liquidation of the Debtor and a wind down of its business and operational affairs. The Plan is feasible provided the Debtor realizes approximately the Sale Proceeds contemplated in the Plan and in the Liquidation Analysis. Accordingly, the Debtor believes that the Plan complies with the financial feasibility standard of Section 1129(a)(11) of the Bankruptcy Code.

### (d)  Acceptance by Impaired Class

Bankruptcy Code § 1129(b) provides that a plan can be confirmed even if it has not been accepted by all impaired classes as long as at least one impaired class of claims has accepted it. The process by which non-accepting classes are forced to be bound by the terms of a plan is commonly referred to as "cramdown." The Bankruptcy Court may confirm the Plan at the

---

[6] Bankruptcy Code § 326(a) permits a chapter 7 trustee to receive 25% of the first $5,000 distributed to creditors, 10% of additional amounts up to $50,000, 5% of additional distributions up to $1 million and reasonable compensation up to 3% of distributions in excess of $1 million.

request of the Debtor notwithstanding either the Plan's rejection (or deemed rejection) by impaired classes as long as such Plan "does not discriminate unfairly" and is "fair and equitable" as to each impaired class that has not accepted it.  A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to classes of equal rank.

A class of claims under a plan accepts the plan if the plan is accepted by creditors that hold at least two-thirds in amount and more than one-half in number of the allowed claims in the class that actually vote on the plan.  A class of interests accepts the plan if the plan is accepted by holders of interests that hold at least two-thirds in amount of the allowed interests in the class that actually vote on a plan.

A class that is not "impaired" under a plan is conclusively presumed to have accepted the plan.  Solicitation of acceptances from such a class is not required.  A class is "impaired" unless (i) the legal, equitable and contractual rights to which a claim or interest in the class entitles the holder are not modified, or (ii) the effect of any default is cured and the original terms of the obligation are reinstated.

A plan is fair and equitable as to a class of secured claims that rejects the plan if the plan provides (i)(a) that the holders of claims included in the rejecting class retain the liens securing those claims, whether the property subject to those liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims, and (b) that each holder of a claim of such class receives on account of that claim deferred cash payments totaling at least the allowed amount of that claim, of a value, as of the effective date of the plan, at least equal to the value of the holder's interest in the estate's interest in such property; (ii) for the sale, subject to Bankruptcy Code § 363(k), of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of the liens, with the liens to attach to the proceeds of the sale, and the treatment of the liens on proceeds under clause (i) or (ii) of this paragraph; or (iii) for the realization of the indubitable equivalent of such claims.

A plan is fair and equitable as to a class of unsecured claims that rejects the plan if the plan provides (i) for each holder of a claim included in the rejecting class to receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim, or (ii) that the holder of any claim or interest that is junior to the claims of such rejecting class will not receive or retain on account of such junior claim or interest any property at all.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides (i) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greater of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest, or (ii) that the holder of any interest that is junior to the interest of such rejecting class will not receive or retain under the plan on account of such junior interest any property at all.  The Debtor believes the Plan to be both fair and equitable.

## ARTICLE XV
## ALTERNATIVES TO THE AMENDED PLAN

In the event the Plan is not confirmed or consummated, then the alternatives are as follows:

### 15.01   Liquidation Pursuant to Chapter 7 of the Bankruptcy Code

The Debtor could be liquidated under chapter 7 of the Bankruptcy Code.  The Debtor believes that liquidation would result in lower aggregate distributions being made to creditors than those provided for in the Plan, which is demonstrated by the Liquidation Analysis discussed above and attached as Exhibit "A" to the Disclosure Statement.

### 15.02   Alternative Amended Plan of ~~Reorganization~~Liquidation

The Debtor believes that failure to confirm the Plan will lead inevitably to an expensive and protracted Chapter 11 Case.  In formulating and developing the Plan, the Debtor have explored numerous other alternatives and engaged in an extensive negotiating process with LV Midtown.

The Debtor believes that not only ~~do~~does the Amended Plan fairly adjust the rights of various Classes of Claims, but also that the Amended Plan provides superior recoveries to the Debtor's creditors over any alternative capable of rational consideration (such as a chapter 7 liquidation), thus enabling many stakeholders to maximize their returns.  Rejection of the Plan in favor of some alternative method of reconciling the Claims and Interests will require, at the very least, an extensive and time consuming process (including the possibility of protracted and costly litigation) and will not result in a better recovery for any Class of Claims or Interests.

THE DEBTOR BELIEVES THAT CONFIRMATION OF THE PLAN IS PREFERABLE TO ANY ALTERNATIVE BECAUSE THE PLAN MAXIMIZES THE AMOUNT OF DISTRIBUTIONS TO ALL HOLDERS OF CLAIMS AND INTERESTS AND ANY ALTERNATIVE TO CONFIRMATION OF THE PLAN WILL RESULT IN SUBSTANTIAL DELAYS IN THE DISTRIBUTION OF ANY RECOVERIES. **THEREFORE, THE DEBTOR RECOMMENDS THAT ALL HOLDERS OF IMPAIRED CLAIMS ENTITLED TO VOTE ON THE PLAN VOTE TO ACCEPT THE PLAN.**

### 15.03   Dismissal of the Chapter 11 Case

Dismissal of the Debtor's Chapter 11 Case would have the effect of restoring (or attempting to restore) all parties to the status quo ante.  Upon dismissal of the Debtor's Chapter 11 Case, the Debtor would lose the protection of the Bankruptcy Code, thereby requiring, at the very least, an extensive and time consuming process of negotiation with the creditors of the Debtor, and possibly resulting in costly and protracted litigation in various jurisdictions.  The Debtor believes that these actions would seriously undermine its ability to obtain financing and could lead ultimately to the liquidation of the Debtor under chapter 7 of the Bankruptcy Code. Therefore, the Debtor believes that dismissal of the Debtor's Chapter 11 Case is not a viable alternative to the Plan.

## ARTICLE XVI
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE AMENDED PLAN

The following discussion summarizes certain federal income tax consequences expected to result from the consummation of the Plan. This discussion is only for general information purposes and only describes the expected tax consequences to Holders entitled to vote on the Plan. It is not a complete analysis of all potential federal income tax consequences and does not address any tax consequences arising under any state, local or foreign tax laws or federal estate or gift tax laws. This discussion is based on the Internal Revenue Code of 1986, as amended, Treasury Regulations promulgated thereunder, judicial decisions, and published rulings and administrative pronouncements of the IRS, all as in effect on the date of the Disclosure Statement. These authorities may change, possibly retroactively, resulting in federal income tax consequences different from those discussed below. No ruling has been or will be sought from the IRS, and no legal opinion of counsel will be rendered, with respect to the matters discussed below. There can be no assurance that the IRS will not take a contrary position regarding the federal income tax consequences resulting from the consummation of the Plan or that any contrary position would not be sustained by a court.

This discussion does not address all federal income tax considerations that may be relevant to a particular Holder in light of that Holder's particular circumstances or to Holders subject to special rules under the federal income tax laws, such as financial institutions, insurance companies, brokers, dealers or traders in securities, commodities or currencies, tax-exempt organizations, tax-qualified retirement plans, partnerships and other pass-through entities, foreign corporations, foreign trusts, foreign Estate, Holders who are not citizens or residents of the U.S., Holders subject to the alternative minimum tax, and Holders who have a functional currency other than the U.S. dollar.

HOLDERS SHOULD CONSULT THEIR TAX ADVISORS REGARDING THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO THEM OF THE CONSUMMATION OF THE PLAN, AS WELL AS ANY TAX CONSEQUENCES ARISING UNDER ANY STATE, LOCAL OR FOREIGN TAX LAWS, OR ANY OTHER FEDERAL TAX LAWS.

**TO COMPLY WITH INTERNAL REVENUE SERVICE CIRCULAR 230, TAXPAYERS ARE HEREBY NOTIFIED THAT (a) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES IN THE DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY ANY TAXPAYER, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON A TAXPAYER UNDER THE INTERNAL REVENUE CODE, (b) ANY SUCH DISCUSSION IS WRITTEN IN CONNECTION WITH THE PROMOTION OR MARKETING OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN, AND (c) TAXPAYERS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

Payments of interest, dividends and certain other payments are generally subject to backup withholding at the applicable withholding rate unless the payee of such payment furnishes such payee's correct taxpayer identification number (social security number or employer identification number) to the payor. The Debtor may be required to withhold the

applicable percentage of any payments made to a Holder who does not provide his, her or its taxpayer identification number. Backup withholding is not an additional tax, but an advance payment that may be refunded to the taxpayer by the IRS to the extent that the backup withholding results in an overpayment of tax by such taxpayer in such taxable year.

In accordance with the Plan, each Holder of an Allowed General Unsecured Claim against the Debtor shall be entitled to receive his, her or its Distributions under the Plan. Each Holder of an Allowed General Unsecured Claim may recognize gain or loss upon receipt of such Distributions equal to the difference between the "amount realized" by such Creditor and such Creditor's adjusted tax basis in his, her or its Claim. The amount realized is equal to the value of such Creditor's Distributions. Any gain or loss realized by an Unsecured Creditor should constitute ordinary income or loss to such creditor unless such Claim is a capital asset in the hands of such Unsecured Creditor. If a Claim is a capital asset and it has been held for more than one year, such Creditor may realize long-term capital gain or loss.

The federal income tax consequences to such Creditors may differ and will depend on factors specific to each such Creditor, including, but not limited to: (i) whether the Creditor's Claim (or a portion thereof) constitutes a Claim for principal or interest, (ii) the origin of the Creditor's Claim, (iii) the type of consideration received by the Creditor in exchange for the Claim, (iv) whether the Creditor is a United States person or a foreign person for United States federal income tax purposes, (v) whether the Creditor reports income on the accrual or cash basis method, and (vi) whether the Creditor has taken a bad debt deduction or otherwise recognized a loss with respect to the Claim.

**THERE ARE MANY FACTORS THAT WILL DETERMINE THE TAX CONSEQUENCES TO EACH SUCH CREDITOR OR EQUITY INTEREST HOLDER. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN IS COMPLEX AND IN SOME CASES UNCERTAIN. THEREFORE, IT IS IMPORTANT THAT EACH CREDITOR AND EQUITY INTEREST HOLDER OBTAIN HIS, HER OR ITS OWN PROFESSIONAL TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN**

THE FOREGOING DISCUSSION OF FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION PURPOSES ONLY AND IS NOT TAX ADVICE. EACH HOLDER SHOULD CONSULT ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN DESCRIBED HEREIN. NEITHER THE DEBTOR NOR ITS PROFESSIONALS WILL HAVE ANY LIABILITY TO ANY PERSON OR HOLDER ARISING FROM OR RELATED TO THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.

**ARTICLE XVII**
**CONCLUSION**

The Debtor believes that confirmation and implementation of the Plan is preferable because they will provide the greatest recovery to Holders of Claims and Equity Interests. Other alternatives do not include the Investment Guarantee Amount or the Exit Financing, and could involve significant delay, uncertainty and substantial administrative costs and are likely to reduce any return to creditors who hold Claims and holders of Equity Interests. The Debtor urges the Holders of Claims and Equity Interests who are entitled to vote on the Plan to vote to accept the Plan.

**Dated: August ~~11,~~16, 2021**

**AVENTURA HOTEL**
**PROPERTIES, LLC**

By:   /s/ Francisco Arocha
 Name: Francisco Arocha
 Title:   Manager

**GENOVESE JOBLOVE & BATTISTA, P.A.**
*Counsel for Aventura Hotel Properties, LLC, the Debtor-in-Possession*
100 SE 2nd Street, 44th Floor
Miami, FL 33131-2100
Telephone: (305) 349-2300
Facsimile: (305) 349-2310

By:   /s/  *Jesus M. Suarez*
     Jesus M. Suarez
     Fla. Bar No. 60086
     jsuarez@gjb-law.com
     John H. Genovese
     Fla. Bar No. 280852
     jgenovese@gjb-law.com
     Barry P. Gruher
     Fla. Bar No. 960993
     bgruher@gjb-law.com

Document comparison by Workshare Compare on Monday, August 16, 2021
3:37:49 PM

| Input: | |
|---|---|
| Document 1 ID | file://\\GJB-FS01\UsersProfiles\jsuarez\Desktop\Florunder\Disclosure Statement - FINAL VI(1).docx |
| Description | Disclosure Statement - FINAL VI(1) |
| Document 2 ID | file://\\GJB-FS01\UsersProfiles\jsuarez\Desktop\Florunder\FA Disclosure Statement  -  FINAL(1).docx |
| Description | FA Disclosure Statement  -  FINAL(1) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 215 |
| Deletions | 148 |
| Moved from | 5 |
| Moved to | 5 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 373 |