

**ORDERED in the Southern District of Florida on August 27, 2021.**

_____
Robert A. Mark, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Chapter 11 |
| AVENTURA HOTEL PROPERTIES, LLC, | Case No. 21-12374-BKC-RAM |
| TRIPTYCH MIAMI HOLDINGS, LLC, | Case No. 21-12375-BKC-RAM |
| Debtors. _____/ | Jointly Administered Under Case No. 21-12374-BKC-RAM |

**ORDER AUTHORIZING SALE OF REAL PROPERTY FREE AND CLEAR
OF LIENS, CLAIMS AND ENCUMBRANCES, AND INTERESTS
<u>AND GRANTING RELATED RELIEF</u>**

THIS MATTER came before the Court for hearing on August 25, 2021 at 11:00 A.M., upon the *Debtors' Motion for Entry of an Motion for Entry of an Order (A) Authorizing the Sale of Real Property of the Chapter 11 Estate Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. §363; (B) Establishing Bidding Procedures and Sale Process; (C) Approving Asset Purchase Agreement with Integra Real Estate, LLC; (D) Scheduling Sale Hearing; and (E) Granting Related Relief* [ECF No. 94] (the "<u>Sale Motion</u>") and the *Order*

MIAMI 8693730.2 85186/87018

*Granting Debtors Motion for Entry of an Order (A) Authorizing the Sale of Real Property of the Chapter 11 Estates Free and Clear of Liens, Claims and Encumbrances Pursuant to 11 U.S.C. § 363; B) Establishing Bidding Procedures and Sale Process; (C) Approving Asset Purchase Agreement with Integra Real Estate, LLC; (D) Scheduling Sale Hearing; and (E) Granting Related Relief* (the "<u>Bid Procedures Order</u>").

The Court, having reviewed the Motion and Bid Procedures Order and the record in these cases including, without limitation, the presentations of counsel at the August 25, 2021 hearing and at the hearing on July 26, 2021 at 10:00 a.m., and being otherwise duly advised in the premises, FINDS and CONCLUDES as follows:

A. The Court has jurisdiction over this matter and the Property (as hereinafter defined) pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Determination of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and the statutory predicates for the relief afforded in this Order are 11 U.S.C. §§ 105 & 363.

B. Good and sufficient notice of the relief sought in the Motion and of the Bid Procedures Order has been given to all parties in interest in accordance with Bankruptcy Rule 2002 and the Bid Procedures Order, and no other or further notice is or shall be required and any requirements for other or further notice shall be waived and dispensed with pursuant to Fed. R. Bankr. P. 2002, 6004, 6006 and 9007 and pursuant to the Court's powers under section 105 of the Bankruptcy Code. A reasonable opportunity to object or be heard regarding the relief requested in the Motion has been afforded to all parties-in-interest.

C.  On March 12, 2021, (the "Petition Date"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

D.  As of the Petition Date and the date hereof, Debtor Aventura Hotel Properties, LLC is the owner of the land at 3601 N. Miami Avenue, Miami, Florida 33127 with the following legal description (the "Land") which, together with all plans, drawings, as-built record drawings, transferable consents, authorizations, variances or waivers, permits, entitlements, utility rights, reservations and approvals related thereto, if any, shall be referred to as the "Property".

The land referred to herein below is situated in the County of Miami-Dade, State of Florida, and described as follows:

Parcel I:

Lots 1, 2, 3 & 4, Block 1 and Lots 1, 2, 13, 14 Block 2, of CENTRAL ADDITION BUENA VISTA, according to the Plat thereof, as recorded in Plat Book 3, Page 191, of the Public Records of Miami-Dade County, Florida, less and except the following described property:

The West 15 feet of said Lots 1 & 2, Block 2; also less and except the following:

Beginning at the Northwest corner of Lot 1, Block 1, of CENTRAL ADDITION BUENA VISTA; thence run South along the West line of said Lot 1 for a distance of 100 feet to the Southwest corner of said Lot 1; thence run East along the South line of Lots 1, 2 and 3 of said Block 1 for a distance of 78 feet to the Southeast corner of said Lot 3; thence run North along the East line of said Lot 3 for a distance of 15 feet to a point; thence run West along a line 15 feet North of and parallel with the South line of said Lot 3 and 2 for a distance of 43.03 feet to a point of curve; thence run along the arc of tangential curve to the right having a radius of 20 feet through a central angle of 89°54'30" for an arc distance of 31.38 feet to a point of tangency on a line 15 feet East of and parallel with the West line of said Lot 1; thence run North along a line 15 feet East of and parallel with the West line of said Lot 1 for a distance of 65.03 feet to a point on the North line of said Lot 1; thence run West along the North line of said Lot 1; thence run West along the North line of said Lot 1 for a distance of 15 feet to the POINT OF BEGINNING

AND
Less the South 15 feet of Lot 4, Block 1.

LESS AND EXCEPT

A portion of Lots 1 and 2, Block 1, CENTRAL ADDITION BUENA VISTA, according to the plat thereof, as recorded in Plat Book 3 at Page 191 of the Public Records of Miami-Dade County, Florida, being more particularly described as follows:

Commence at the Southwest corner of said Lot 1; thence N 02°27'42" W along the West line of said Lot 1 for 39.96 feet; thence N 87°37'58" E for 15.00 feet to the Point of Beginning of the hereinafter described Parcel as shown on Road Plat Book 153, at Page 37, of said Public Records of Miami-Dade County, Florida; thence N 85°43'24" E for 0.67 feet; thence S 04°16'36" E for 1.92 feet to a point on a circular curve concave to the Northeast and whose radius point bears N 74°05'03" E; thence Southeasterly along a 32.38 foot radius curve leading to the left through a central angle of 21°46'20" for an arc distance of 12.30 feet to a non-tangent point; thence S41°20'17" E for 7.32 feet; thence S 53°53'12" E for 7.48 feet to a point on a circular curve concave to the Northeast and whose radius point bears N 18°06'27" E; thence Southeasterly along a 25.00 foot radius curve, leading to the left, through a central angle of 20°28'29", for an arc distance of 8.93 feet to a point on the North Right-of-Way line of N.E. 36th Street, as it now exists, also being a point of cusp; thence N 89°54'20" West along said North Right-of-Way line for 4.99 feet to a point of curvature thence Northwesterly along a 20.00 foot radius curve, leading to the right, through a central angle of 89°54'20" for an arc distance of 31.38 feet to a point on the East Right-of-Way line of North Miami Avenue, as it now exists, said point being a point of tangency; thence North 00°00'00" East for 4.99 feet to the Point of Beginning.

Parcel II:

Lots 3, 4 and 12, Block 2, of CENTRAL ADDITION BUENA VISTA, according to the Plat thereof, as recorded in Plat Book 3, Page 191, of the Public Records of Miami-Dade County, Florida, LESS AND EXCEPT the following described property:

The West 15 feet of said Lots 3 and 4, also less and except that part of Lots 3 and 4, Block 2, CENTRAL ADDITION BUENA VISTA, being more particularly described as follows:

Begin at the Northeast corner of said Lot 4; thence Southerly along the Easterly line of said Lots 3 and 4, a distance of 57.67 feet; thence North 82°00'33" West, a distance of 87.46 feet to a point on the Westerly line of said Lot 4; thence Northerly along said Westerly line, a distance of 44.77 feet to the Northwest corner of said Lot 4; thence Easterly along the Northerly line of said Lot 4, a

distance of 86.72 feet to the POINT OF BEGINNING.

ALSO LESS AND EXCEPT that part of the said Lot 12, Block 2, CENTRAL ADDITION BUENA VISTA, being more particularly described as follows: Begin at the Northeast corner of said Lot 12; thence Southerly along the Easterly line of said Lot 12, a distance of 21.93 feet; thence North 82°00'33" West, a distance of 102.60 feet to a point on the Westerly line of said Lot 12, thence Northerly along said Westerly line, a distance of 9.67 feet to the Northwest corner of said Lot 12, thence Easterly along the Northerly line of Lot 12, a distance of 101.70 feet to the POINT OF BEGINNING.

And

Lots 5 and 6, Block 1, of CENTRAL ADDITION BUENA VISTA, according to the Plat thereof, as recorded in Plat Book 3, Page 191, of the Public Records of Miami-Dade County, Florida, less the South 15.00 feet for road right of way.

Parcel III:

Lots 7 and 8, Block 1, CENTRAL ADDITION BUENA VISTA, according to the Plat thereof, as recorded in Plat Book 3, Page 191, of the Public Records of Miami-Dade County, Florida, less the South 15.00 feet for road right of way.

Parcel IV:

A 10.00 foot alley, vacated by City of Miami Ordinance No. 13492 "MAS Index" 16R5, bounded on the North by the South line of Block 2, CENTRAL ADDITION TO BUENA VISTA, according to the plat thereof as recorded in Plat Book 3 at Page 191; bounded on the West by the Southerly extension of the East line of the West 15.00 feet of said Block 2, bounded on the East by the Southerly extension of the East line of said Block 2, bounded on the South by the North line of Block 1 of said CENTRAL ADDITION TO BUENA VISTA, all of the Public Records of Miami-Dade County, Florida being more particularly described as follows:

Begin of the Southeast corner of said Block 2; thence S00°02'50"E along the Southerly extension of the East line of said Block 2 for 10.00 feet; thence N89°54'40"W along the North line of said Block 1 for 188.61 feet; thence N00°00'00"E along the Southerly extension of the East line of the West 15.00 feet of said Block 2 for 10.00 feet; thence S89°54'40"E along the South line of said Block 2 for 188.60 feet to the Point of Beginning.

E. On July 31, 2018, LV Midtown, LLC ("Secured Creditor" or "LV") extended a loan in the original principal amount of $15,000,000, which is secured by, among other things, a

first-priority mortgage encumbering the Property. LV had commenced a foreclosure lawsuit prior to the Petition Date and these cases were filed prior to a hearing on summary judgment in the foreclosure lawsuit.

F. On June 23, 2021, the Court entered its Order Granting Debtors' Motion to Approve Settlement and Compromise with Secured Creditor LV Midtown, LLC [ECF No. 85], pursuant to which the Court approved a Settlement Agreement between the Debtors and LV (the "LV Settlement") and authorized and directed the Debtors and LV to effectuate the terms of the LV Settlement. As a result of the LV Settlement, LV is the holder of a first priority allowed secured claim in the amount of $20,468,837.91 as of September 15, 2021 (the "LV Secured Claim"), of which it may elect to credit bid an amount up to $19,600,000 pursuant to 11 U.S.C. § 363(k) in connection with a sale process that comports with the LV Settlement, including compliance with certain Milestones set forth therein.

G. On May 19, 2021, QR Triptych, LLC ("QR Triptych") filed Claim No. 6-1 (the "QR Claim"). The QR Claim asserts a claim against Debtor Aventura Hotel Properties, LLC in the principal amount of $8,238,579.20 and contends that it is secured by a subordinate mortgage on the Property. On July 22, 2021, QR Triptych filed an Amended Claim in the amount of $10,597,809.81 to include pre-petition interest, attorney's fees and costs.

H. On June 15, 2021, the Debtors commenced an adversary proceeding against QR Triptych and JQ Real Estate, LLC (Adv. Proc. No. 21-12374-RAM) (the "Avoidance Litigation"). By the adversary proceeding, the Debtors seek to avoid certain transactions that the Debtors allege were paid from the assets of Debtor Aventura Hotel Properties, LLC for the benefit of Debtor Triptych Miami Holdings, LLC. Specifically, the Debtors seek to avoid the subordinated mortgage in favor of QR Triptych as well as $2.2 million allegedly transferred by

Debtor Aventura Hotel Properties, LLC to JQ Real Estate, LLC and $3 million allegedly transferred by Debtor Aventura Hotel Properties, LLC to QR Triptych.

I.      On July 15, 2021, in compliance with the Milestones set forth in the LV Settlement, the Debtors filed the Sale Motion, which, in the absence of a qualified stalking horse bid, requested approval of an absolute auction process with a deadline of August 23, 2021 for the submission of Qualified Bids (as defined in the Bid Procedures Order).  In addition to establishing bid procedures for the absolute auction sale of the Property, the Sale Motion also requested approval of an Asset Purchase Agreement between the Debtors and Integra Real Estate, LLC, which provided for a purchase price for the Property of $25,500,000, but was subsequently terminated by Integra Real Estate, LLC.

J.      After a hearing on July 22, 2021, the Bid Procedures Order was entered on July 29, 2021, pursuant to which the Court, among other things, approved the bid procedures set forth therein (the "Bid Procedures"), set a deadline of August 23, 2021 for the submission of Qualified Bids (the "Bid Deadline"), and approved the Asset Purchase Agreement between the Debtors and Integra Real Estate, LLC.  Limited objections to the Sale Motion filed by QR Triptych, LLC [ECF No. 102] and Fifteen Midtown Properties, LLC [ECF No. 103] were resolved by the inclusion of language in the Bid Procedures Order providing for (i) the escrow of any cash proceeds from the sale of the Property after payment of LV and certain expenses, and (ii) preserving the rights of Fifteen Midtown Properties, LLC with respect to that certain Parking Rights Agreement between the Debtor and Fifteen Midtown Properties, LLC.

K.      As demonstrated by the record in this case and the representations of Debtors counsel in the Sale Motion, upon the record at the hearing on the Sale Motion, and at other hearings in these cases, the Debtors have marketed the Property since shortly after the Petition

Date through the use of Avison Young, a licensed real-estate broker, in an effort to obtain the highest possible sale price for the Property. The Debtors also marketed the Property prior to the Petition Date.

L. Prior to the Bid Deadline, LV submitted an initial credit bid in the amount of $10,000 (the "LV Credit Bid"), which credit bid was deemed a Qualified Bid in accordance with the Bid Procedures. No other Qualified Bids were received by the Debtor prior to the Bid Deadline or prior to the sale hearing. In addition, no bids were rejected by the Debtors as not meeting the requirements of a Qualified Bid. Accordingly, the Court finds that the LV Credit Bid is the highest and best bid and that LV is the Successful Bidder.

M. The Debtors and LV complied with the Bid Procedures Order and the Bid Procedures in all respects. The Bid Procedures were substantively and procedurally fair to all parties and all potential bidders and afforded notice and a full, fair, and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Property.

N. The transfer of the Property to LV shall be a legal, valid, and effective transfer of the Property and will vest LV with all right, title, and interest of the Debtors to the Property free and clear of all pledges, liens, security interests, mortgages, leases, subleases, options, rights of use or possession, rights of first offer or first refusal, easements, servitudes, restrictive covenants, encroachments, encumbrances, claims, charges, options, third party interests and other interests or restrictions or limitations of any kind thereon and there against (collectively, the "Interests") and free and clear of (i) all claims against the Debtors or the Property arising under or out of, in connection with, or in any way relating to, any acts of the Debtor, (ii) all claims, rights and causes of action against LV or any successor or assign arising by virtue of its acquisition of the Property or based on theories of transferee or successor liability under any law, statute or

regulation of the United States, any state, territory, or possession thereof or the District of Columbia, and (iii) all claims that the Property is subject to any lien or encumbrance by virtue of any obligations, demands, guarantees, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of the Debtor's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise (collectively, "Claims"), in accordance with section 363 of the Bankruptcy Code, with such Interests and Claims to attach to the net proceeds of the sale of the Property EXCEPT that LV will take title subject to (a) the rights of the parties pursuant to that certain Parking Rights Agreement between the Debtor Aventura Hotel Properties, LLC and Fifteen Midtown Properties, LLC recorded July 9, 2014 in the Official Records of Miami-Dade County, Florida; and (b) the first priority lien of the Miami-Dade County Tax Collector for unpaid real estate taxes on the Property, which shall be paid by LV (collectively, the "Excepted Interests").

O.    For the avoidance of doubt, and without limiting the generality of the foregoing, to the extent that the following items assert any *in rem* claims against the Property whatsoever, such *in rem* claims are Claims or Interests for purposes of this Order, are not Excepted Interests, and therefore the Property shall be transferred to LV free and clear of such Claims or Interests as against the Property:  (i) that certain Mortgage, Assignment of Leases and Rents, Fixture Filing and Security Agreement from Aventura Hotel Properties, LLC, a Florida limited liability company to LV Midtown LLC, a Florida limited liability company, dated July 31, 2018, filed of record August 14, 2018, in Official Records Book 31098, Page 4386, in the original principal amount of $15,000,000.00 and the corresponding UCC-1 Financing Statement recorded August 14, 2018 in Official Records Book 31098 Page 4424; (ii) the subordinate Mortgage and Security

MIAMI 8693730.2 85186/87018

Agreement from Aventura Hotel Properties, LLC, a Florida limited liability company to QR TRIPTYCH LLC, a Florida limited liability company, dated July 31, 2018, filed of record August 14, 2018, in Official Records Book 31098, Page 4432, in the original principal amount of $8,238,579.20, together with Assignment of Rents and Leases and Agreements Affecting Real Estate from Aventura Hotel Properties, LLC, a Florida limited liability company to QR TRIPTYCH LLC, a Florida limited liability company, filed of record August 14, 2018 in Official Records Book 31098, Page 4457;  and (iii) the Claims of OHL Building Inc. as set forth in Case No. 2020-022171-CA-01 filed in Miami-Dade County Circuit Court.

     P.     The Debtors may sell the Property free and clear of all Interests and Claims of any kind or nature whatsoever other than the Excepted Interests set forth above because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  Those parties with Claims or Interests in the Property that did not object or that withdrew their objections to the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  To the extent that any parties have not consented or been deemed to have consented, such parties with Claims or Interests in the Property fall within one or more of the other subsections of sections 363(f) of the Bankruptcy Code.

     Q.     With respect to the subordinate mortgage lien claimed by QR Triptych, LLC, the Property may be sold free and clear of the subordinate mortgage lien and any other Interests and Claims held by QR Triptych, LLC pursuant to 11 U.S.C. § 363(f)(1)(3) & (5) because (a) Florida law permits a foreclosure sale free and clear of such subordinate mortgage lien, (b) QR Triptych, LLC could be compelled in a legal or equitable proceeding to accept a money satisfaction of its mortgage lien, and/or (c) QR Triptych, LLC's interest is in bona fide dispute as set forth in the Avoidance Litigation.

MIAMI 8693730.2 85186/87018

R.  LV would not consummate the sale if the sale of the Property were not free and clear of all Interests and Claims (other than the Excepted Interests) relating to the Property, the ownership or operation Debtors' business or the ownership or operation of the Property prior to the transfer of the Property, or if LV would, or in the future could, be liable for any such Interests or Claims (other than the Excepted Interests).

S.  Although the sale of the Property to LV is for a nominal credit bid of $10,000 (the "Credit Bid"), the LV Secured Claim exceeds $20 million and, in accordance with Florida law, in the event that LV pursues a deficiency judgment, the state court having jurisdiction over the deficiency claims, if any, will consider the fair market value of the Property as of the date of the transfer hereunder irrespective of the Credit Bid, such that this Order shall not constitute res judicata and/or collateral estoppel as to the fair market value of the Property. *Ahman v. Cobb Corner, Inc.*, 762 So.2d 944 (4th DCA 2000). Accordingly, given the amount of the LV Secured Claim and that the Debtors and any guarantors shall receive credit for the fair market value of the Property, the Court finds that the sale is fair and reasonable and shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law. No other person or entity, or group of persons or entities, has offered to purchase the Property for an amount that would provide greater value to the Debtors than LV, including through the reduction of claims against the Debtors' estates.

T.  LV negotiated the LV Settlement with the Debtors in good faith and from arm's length bargaining positions and submitted its credit bid in good faith and without collusion with any other potential bidder. There is no evidence that LV nor any other party colluded to control the sale price. LV is not an insider or affiliate of the Debtors. Accordingly, LV is entitled to the

benefits and protections provided by 11 U.S.C. § 363(m) of the Bankruptcy Code in connection with the sale and the sale is not subject to avoidance pursuant to 11 U.S.C. § 363(n).

U.  Fed. R. Bankr. P. 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." The Debtors and LV have requested that the Sale Order be effective immediately by providing that the fourteen (14) day stay under Fed. R. Bankr. P. 6004(h) be waived. The court finds that there is no reason for delay in the implementation of this Order and waives the fourteen (14) day stay.

V.  The Debtors have full authority to execute all documents necessary or desirable in order to consummate the sale without the necessity of any consents, approvals, or corporate action whatsoever.

NOW THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is GRANTED, solely to the extent set forth herein.

2. The findings of fact set forth above and conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052, as made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 9014. To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3. Any objections to the entry of this Order or the relief provided herein that have not been withdrawn, waived, or settled and that are not otherwise addressed herein, including all reservations of rights included therein, are hereby overruled on the merits.

4. Notice of the hearing on the Motion and the relief granted herein was fair and equitable under the circumstances and complied in all respects with 11 U.S.C. § 102(1) and Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006. A reasonable opportunity to object or be heard with respect to the Sale Motion, the Bid Procedures, and the sale has been afforded to all interested persons and entities and such notice was good and sufficient. To the extent required in order to grant the relief herein, good cause exists to shorten notice pursuant to Federal Rule of Bankruptcy Procedure 2002(a).

5. Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized and directed to consummate the sale pursuant to and in accordance with the terms and conditions of this Order.

6. The Debtor is authorized and directed to execute and deliver to LV all instruments and documents that may be reasonably necessary or desirable to consummate the sale including, for the avoidance of doubt, the execution and delivery of a quitclaim deed in favor of LV, and to take all further actions as may be requested by LV for the purpose of assigning, transferring, granting, conveying and conferring to LV or reducing to possession, the Property, or as may be necessary or appropriate to the performance of the obligations as set forth in this Order. Notwithstanding the foregoing, the Debtors shall be not be required to pay for any documentary stamps or other closing costs and expenses to effectuate the transfer of the Property to LV.

7. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Property shall be transferred to LV, and the transfer of the Property to LV hereunder shall constitute a legal, valid, and effective transfer of the Property and shall vest LV with all right, title, and interest of the Debtors in and to the Property free and clear of all Interests and Claims of any kind or nature whatsoever, other than the Excepted Interests.

MIAMI 8693730.2 85186/87018

8. This Order (a) shall be effective as a determination that, as of the transfer of the Property hereunder to LV, all Interests and Claims of any kind or nature whatsoever existing in or against the Property prior to the transfer of the Property (other than the Excepted Interests) have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or contracts.  Each and every federal, state, and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the sale.

9. LV is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests and Claims with respect to the Property of any kind or nature whatsoever (other than the Excepted Interests).  The Court reserves jurisdiction to enter such further orders as may be necessary to enable LV to obtain and convey title to the Property free and clear of any and all Interests and Claims including, without limitation, an order directing that the appropriate party execute a release of any instrument presently of record encumbering the Property (other than the Excepted Interests).

10. Except for the Excepted Interests set forth in this Order, effective upon the transfer of the Property to LV hereunder, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding Interests or Claims of any kind or nature whatsoever against the Debtors or the Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, the operation of the Debtors' business prior to the Closing, or the transfer of the Property to LV, hereby are forever barred, estopped, and permanently enjoined from asserting such persons' or entities' Interests or Claims against the Property or LV, or its successors or assigns, property, or assets, provided however, that nothing herein shall preclude the assertion, commencement, or continuation against LV of any *in personam* claims, causes of action, defenses, affirmative defenses, or counterclaims that may exist directly against LV based on any alleged act or omission of LV including, without limitation, QR Triptych, LLC's claim alleging damages caused by LV having allegedly breached the Intercreditor Agreement prior to the Petition Date, with any such claims being subject to any defenses, affirmative defenses, or counterclaims that may be asserted by LV.

11. Except for the Excepted Interests, LV shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Property by virtue of its acquisition of the Property. Without limiting the generality of the foregoing, and except as otherwise specifically provided herein, LV shall not be liable for any claims against the Debtors or any of its predecessors or affiliates except for the Excepted Interests, and LV shall have no successor or vicarious liabilities of any kind or character whether known or unknown as of the date of the transfer of the Property, now existing or hereafter arising, whether fixed or

contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing, including, but not limited to, (a) liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the closing date (except for the Excepted Interest for real property taxes) and (b) liabilities based on any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity.  Under no circumstances shall LV be deemed a successor of or to the Debtors for any Interest or Claim against or in the Debtors or the Property of any kind or nature whatsoever.

12. This Court retains jurisdiction over any matter or dispute arising from or relating to the implementation of this Order including, but not limited to, retaining jurisdiction to (a) determine the nature, character and ownership of the Property, (b) compel delivery of the Property to LV, (c) interpret, implement, and enforce the provisions of this Order, and (d) protect LV against any Interests or Claims with respect to the Debtors or Property, of any kind or nature whatsoever other than the Excepted Interests.

13. The sale is undertaken by LV in good faith, as that term is used in section 363(m) of the Bankruptcy Code. Accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale shall not affect the validity of the sale as to LV, except to the extent such authorization is duly stayed pending such appeal prior to such consummation. LV is a purchaser in good faith of the Property, and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.  The sale authorized by this Order is not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

14. The terms and provisions of this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates and creditors, LV and its affiliates,

successors and assigns, and shall be binding in all respects upon any affected third parties including, but not limited to, all persons asserting Interests or Claims with respect to the Property, notwithstanding any subsequent appointment of any trustee(s) or similar party under any chapter of the Bankruptcy Code and notwithstanding any subsequent dismissal of the Debtors bankruptcy cases.

15. All of the provisions of this Order are nonseverable and mutually dependent.

16. Notwithstanding the possible applicability of Bankruptcy Rules 6004(h), 6006(d), 7062 and 9014 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry, and the Debtor and LV are authorized to close the sale immediately upon entry of this Order although LV shall not be required to close the sale until the deadline for the filing of an appeal of this Order has expired without the filing of a timely notice of appeal or, if such a notice is filed, the final and non-appealable resolution of such appeal.

17. Debtors shall serve copies of this Order by mail, postage prepaid to: (a) all creditors of the Debtors; (b) counsel to all secured creditors claiming interests in the subject Property; (c) all holders of Interests or Claims against the Debtors or the Property; (e) the Office of the United States Trustee for the Southern District of Florida; (f) known entities holding or asserting a security interest in or lien against the Property; (g) taxing authorities whose rights may be affected by a sale of the Property; (h) all government agencies required to receive notice of proceedings under the Bankruptcy Rules; and (i) all parties that have requested notice pursuant to Bankruptcy Rule 2002.

# # #

Submitted by:
Jeffrey I. Snyder, Esq.
Bilzin Sumberg Baena Price & Axelrod, LLP

MIAMI 8693730.2 85186/87018

1450 Brickell Avenue, Suite 2300
Miami, FL 33131